1  VICTOR OTTEN, (SBN 165800)
   vic@ottenlawpc.com
2  KAVITA TEKCHANDANI, (SBN 234873)
   kavita@ottenlawpc.com
3  OTTEN LAW, PC
   3620 Pacific Coast Highway, #100
4  Torrance, California 90505
   Telephone:  (310) 378-8533
5  Facsimile:    (310) 347-4225

6

7

8                    UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  ARCONIC INC., et al.,                CASE NO. 2:14-cv-06456 GW

12            Plaintiffs,                Assigned to Honorable George H. Wu

13        v.                             **DECLARATION OF VICTOR OTTEN IN SUPPORT OF MOTION TO DISQUALIFY THE LAW FIRM BASSI, EDLIN, HUIE & BLUM**

14  APC INCESTMENT CO., et al.
            Defendants.                  [Filed concurrently with the Notice of Motion; Declaration of Larry Patsouras; Memorandum of Points and Authorities; and [Proposed] Order]

15
16
17
18                                       Date:  March 22, 2018
                                         Time:  8:30 am
19                                       Place: Courtroom 9D

20                                       Complaint Filed: August 8, 2014

21

22

23  I, Victor Otten, declare as follows:

24      1.  I am attorney licensed to practice under the laws of the State of California and

25  am duly admitted to practice before this court.  I am a partner at Otten Law, PC

26  which is the attorney of record for Defendant Kekropia, Inc. I have personal

27  knowledge of the facts set forth herein, and if called as a witness, I could and would

28  competently testify to the matters stated herein.

2.  Defendant Kekropia, Inc. ("Kekropia") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Santa Fe Springs, California.

3.  The Fifth Amended Complaint ("FAC") alleges that in 1995, Kekropia, which is owned by Larry Patsouras, acquired the property commonly described as 11630-11700 Burke Street, Santa Fe Springs, California and remains as the current property owner. This property is referred to as the "Patsouras Source Property" in the F AC. (FAC ¶ 343, lns 18:23; Docket No. 528).

4.  In a recent review of documents in the possession of an environmental consultant previously hired by Kekropia to investigate environmental conditions at the Patsouras Source Property, I learned that Jaffe, Trutanich, Scantia & Blum ("JTS&B") formerly represented Larry Patsouras and Kekropia regarding similar legal and factual issues as those being litigated in _Arconic Inc., et al. vs. APC Investment Co., et al._, Case No.: 2:14-cv-06456 GW. The records that I reviewed included, but are not limited to, the following:

  i)  Remedial Investigation Work Plan prepared for JTS&B for the property located at 11630-11700 Burke Street, Santa Fe Springs dated November 25, 1994.

  ii)  Preliminary Draft Remedial Investigation Report prepared for JTS&B for the property located at 11630-11700 Burke Street, Santa Fe Springs dated December 22, 1994.

5.  JTS&B's representation of Kekropia began at least as early as November 1994, when it requested that Environmental Audit prepare a Remedial Investigation Work Plan prepared for the Patsouras Property.

6.  On February 18, 1998, JTS&B filed _Kekropia, Inc. vs. Talco, et al_., Case No. 2:98-cv-01132-WJR-CWX ("Talco Litigation"). From my review of the complaint, I learned that Kekropia alleged that William K. Palley, Palley Supply Company, and other former tenants were responsible for the environmental contamination in the soil at

the Kekropia Site.  The Talco Litigation was eventually settled. I am informed and believe and, on that basis, allege that Fireman's Fund and Federal Insurance Company were involved in the Talco Litigation.

7.  Pursuant to Central District Local Rule 7-3, my efforts to meet and confer in an attempt to resolve the issues to be raised in this motion with law firm Bassi, Edlin, Huie & Blum ("BEH&B") are detailed in paragraphs 8, 9, 11, and 12, 13 below.

8.  By email dated November 28, 2017, I alerted Paul Ramussen, the partner at BEH&B handling this matter, to the fact that two of his partners, Mr. Huie and Mr. Blum, and their previous law firm, JTS&B, had represented Kekropia and Larry Patsouras in various matters related the Patsouras Source Property and that there appeared to be a conflict of interest by email dated. Attached as <u>Exhibit 1</u> to this declaration is a true and correct copy of my email to Mr. Rassmussen.

9.  Mr. Ramussen responded to my email stating that neither Mr. Blum or Mr. Huie "recognize the names Larry Patsouras and Kekropia and have no recollection of working on any matters involving them.  Do you have any information that either of them actually worked on the Kekropia litigation against Palley?" Attached to this declaration as <u>Exhibit 2</u> is a true and correct copy of Mr. Rasmussen's email.

10.  In the deposition transcript of the environmental consultant used by JTS&B in the Talco Litigation recently obtained by Otten Law, PC, the deponent, Steve Bright, testified that he attended a meeting with Mr. Blum and several other people from JTS&B. Attached as <u>Exhibit 3</u> to this declaration is a copy of the relevant transcript: page 32, lns., 1:17).

11. On December 5, 2017, I sent a detailed meet and confer letter to Paul Ramussen. The letter set forth the underlying facts of the previous representation of Kekropia and requested that BEH&B withdraw from the litigation. Neither Mr. Rasmussen or anyone from BEH&B ever responded to this correspondence. A true and correct copy of that letter is attached hereto as <u>Exhibit 4</u>.

12. On January 13, 2018, I sent Mr. Rasmussen an email and a copy of this Motion

1 | to Disqualify BEH&B. A true and correct copy of that letter is attached hereto as
2 | Exhibit 5.

3 |    13. On January 17, 2018, I conferred with Mr. Rasmussen after the deposition of
4 | the Kekropia's prior environmental consultant, Steve Bright, first retained by JTS&B
5 | in the Talco litigation regarding these issues. At no point did Mr. Rasmussen indicate
6 | that an ethical wall had ever been created at BEH&B regarding this conflict, that
7 | Larry Patsouras or Kekropia, Inc. had been notified of the conflict of interest, or that
8 | his firm had obtained a written conflict waiver. Mr. Rasmussen only inquired if the
9 | conflict would require his firm from representing Ferro Corp.

10 |    14. I am informed and believe and, on that basis, allege that Kekropia has never
11 | used or stored hazardous substances at it's property. Instead, Kekropia cleaned up
12 | the minor environmental contamination at the property after it became the owner.
13 | One of Kekropia's defenses is that if there was a release at the property that
14 | contributed to the OU-2 Facility groundwater contamination, it was caused by a prior
15 | owner or operator at the property. The basis of this belief is derived from: i)
16 | reviewing environmental reports related to the Patsouras Property; ii) the complete
17 | lack of evidence that the Plaintiffs in Arconic Inc., et al. vs. APC Investment Co., et
18 | al., Case No.: 2:14-cv-06456 GW have demonstrating the fate and transport of a
19 | hazardous waste from the soil at the Patsouras Property to groundwater; iii)
20 | reviewing public records; iv) what portions of the Talco Litigation could be located,
21 | and v) consultation with experts.

22 |    I declare under penalty of perjury under the laws of the United States of America
23 | that the foregoing is true and correct.

24 |    Executed on February 13, 2018, at Los Angeles, California.

25 |
26 |    By: _____
27 |         Victor Otten, Esq.,
        Attorney for Kekropia, Inc.
28 |

EXHIBIT 1

| | |
|---|---|
| **From:** | Victor Otten |
| **To:** | Paul D. Rasmussen |
| **Subject:** | Re: Depo schedule |
| **Date:** | Tuesday, November 28, 2017 12:13:54 PM |
| **Attachments:** | image001.png |

Paul,

I want to alert you to something and will follow this up with a letter. It has recently come to our attention that two of the partners at your firm including Fred Bloom used to represent Larry Patsouras and Kekropia. The representation was when they work at Jaffe Trutanich Scantina and bloom. The representation involved representing Kekropia in a lawsuit against palley for contamination. Obviously there is a conflict of interest for your firm to represent palley in this action. We therefore request that your firm withdraw as counsel. I will send you a formal letter later

Sent from my iPhone

On Nov 28, 2017, at 12:08 PM, Paul D. Rasmussen <prasmussen@behblaw.com> wrote:

-

EXHIBIT 2

## Victor Otten

**From:** Victor Otten
**Sent:** Tuesday, November 28, 2017 2:00 PM
**To:** Paul D. Rasmussen
**Subject:** Re: Depo schedule

It does not matter if they worked on the file. The law is clear on this

Sent from my iPhone

On Nov 28, 2017, at 1:58 PM, Paul D. Rasmussen <prasmussen@behblaw.com> wrote:

> Vic:
>
> Fred Blum and Jeremy Huie do not recognize the names Larry Patsouras and Kekropia and have no recollection of working on any matters involving them.  Do you have any information that either of them actually worked on the Kekropia litigation against Palley?
>
> Thanks,
> Paul
>
> **Paul Rasmussen**
> *Partner*
>
> <image001.png>
>
> 515 S. Flower Street, Suite 1020   Los Angeles, CA 90071
> direct (213) 412-2668 | main (213) 412-2661
> fax (213) 652-1992
>
> website | vCard | contact | map | email
>
> **San Francisco | Los Angeles**
>
> This communication may contain privileged and confidential information and is intended only for the addressee(s). Any other use is prohibited. If you have receive this message erroneously, please destroy it.
>
> **From:** Victor Otten [mailto:vic@ottenlawpc.com]
> **Sent:** Tuesday, November 28, 2017 12:44 PM
> **To:** Paul D. Rasmussen <prasmussen@behblaw.com>
> **Subject:** Re: Depo schedule
>
> Hui
>
> Sent from my iPhone
>
> On Nov 28, 2017, at 12:24 PM, Paul D. Rasmussen <prasmussen@behblaw.com> wrote:
>
>> Vic:
>>
>> Who is the other partner?

1

EXHIBIT 3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NEKROPIA, INC., a California     )
corporation,                     )
                                 )
                                 )
           Plaintiffs,           )
                                 ) .
                                 )
     vs.                         ) Case No. 98-1132
                                 )
                                 )        MJR (CWx)
WILLIAM K. PALLEY, etc., et al.,)
                                 )
                                 )
           Defendants.           )
_____  )


DEPOSITION OF STEVEN A. BRIGHT


VOLUME I

(Pages 1 through 293)


Taken on Tuesday, December 21, 1999, at 10:14 a.m.

---

1       Deposition of STEVEN A. BRIGHT, taken before
2  Robin A. Ravise, a Certified Shorthand Reporter for
3  the State of California, with principal office in
4  the County of Orange, commencing at 10:14 a.m.,
5  Tuesday, December 21, 1999, in the law offices of
6  Stradling, Yocca, Carlson & Rauth, 660 Newport
7  Center Drive, Suite 1600, Newport Beach, California.
8
   APPEARANCES OF COUNSEL:
9
        For the Plaintiff:
10
            TRUTANICH - MICHEL, LLP
11          Attorneys at Law
            Port of Los Angeles Office
12          407 North Harbor Boulevard
            San Pedro, California  90731-3356
13          (310) 548-0410
            BY:  SCOTT D. PINSKY
14
15      For the Defendant WILLIAM K. PALLEY:
16          STRADLING, YOCCA, CARLSON & RAUTH
            A Professional Corporation
17          660 Newport Center Drive
            Suite 1600
18          Newport Beach, California  92660
            (949) 725-4130
19          BY:  DONALD J. HAMMAN
20
        For the Defendant TALCO:
21
            LAW OFFICES OF RICHARD D. SIEVERT
22          A Professional Corporation
            15910 Ventura Boulevard
23          Suite 1650
            Encino, California  91436
24          (818) 461-3400
            BY:  RICHARD SIEVERT
25

---

1  APPEARANCES (Cont'd.):
2
3       For the Defendant BAROID EQUIPMENT:
4           RODI, POLLOCK, PETTKER, GALBRAITH &
            CAHILL
5           Attorneys at Law
            444 South Flower Street
6           Suite 1700
            Los Angeles, California  90017
7           (213) 895-4900
            BY:  SONJA INGLIN
8
        Also Present:
9
            MICHAEL WOLFF
10          JACK L. SHEDD
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

1                    INDEX
2  Examination By:                Page
3  Mr. Hamman ------------------------------    6
   Mr. Sievert ----------------------------  161
4  Ms. Inglin ------------------------------  199
   Mr. Sievert ----------------------------  278
5  Mr. Hamman ------------------------------  278
6
7                  EXHIBITS
8  Defendants'      Description        Page
9    1     Laboratory reports, Boring
           Logs and chain of
10         custody records
           (retained by counsel) --------- 13
11
     2     Assessment and Remediation
12         Reports
           (retained by counsel) --------- 13
13
     3     Correspondence from various
14         legal firms
           (retained by counsel) --------- 14
15
     4     Bids from various vendors,
16         copies of the field log book,
           miscellaneous reports and
17         chain of custody records
           (retained by counsel) --------- 15
18
     5     Copies of portions of documents
19         related to adjacent off-site
           properties
20         (retained by counsel) --------- 15
21   6     Report done by Professional Service
           Industries and AIG Consultants
22         (retained by counsel) --------- 15
23   7     Copy of all bills
           (retained by counsel) --------- 15
24
25

Multi-Page™                                          (BRIGHT, V.I 12-27-99)

1    THE WITNESS: Well, I believe that's
2  correct. But again, if we can go to the RAP, I can
3  tell you exactly. Because these areas are
4  highlighted in the plan. It's much easier to tell.
5    BY MR. HAMMAN: Q. We will get there in a
6  minute, I promise.
7      And then the clarifier is down here
8  where MW-1 is?
9    A. This general area right in here
10 (indicating).
11   Q. It's not up at what's marked as the
12 "industrial waste water clarifier"; is that right?
13   A. Correct.
14   Q. And then the historical stained area
15 is down here in this circle that's kind of darkened;
16 is that right?
17   A. Right around boring E-12.
18   Q. And all of these lie between the
19 warehouse to the east and Building Number 2 to the
20 west; is that correct?
21   A. Correct.
22   Q. Where is the Remedial Action Plan
23 that you've been referring to?
24   A. Right here.
25   Q. What's the date on that Remedial

Page 29

1  prepared for Mr. Patsouras-Kekropia to implement the
2  Remedial Action Plan.
3      If you could do me a favor, Don, and
4  hand me stack 10. It might be in with the permits,
5  now that I think about it.
6    Q. Sure.
7    A. Thank you.
8    Q. You've looked through a couple of
9  stacks, and I don't mean to ask for a needle in a
10 haystack and then sit here and watch you go through
11 all of these stacks. Maybe we will come across it
12 later.
13      But you recall that you got final
14 approval from the Santa Fe Springs Fire Department,
15 according to your proposal, in February 1998; is
16 that correct?
17   A. Correct.
18   Q. And was any remedial action taken
19 pursuant to that Remedial Action Plan?
20   A. To the best of my knowledge, no.
21   Q. Why is it that there was no
22 remediation?
23   MR. PINSKY: If you know.
24   THE WITNESS: We just haven't been
25 authorized by Kekropia to do it.

Page 31

1  Action Plan?
2    A. June 16th, 1997.
3    Q. And was that Remedial Action Plan
4  ever approved by the Santa Fe Springs Fire
5  Department?
6    A. Yes.
7    Q. When was it approved by the Santa Fe
8  Springs Fire Department?
9    A. I don't recall the exact date.
10   Q. Do you have some documentation that
11 would show that?
12   A. It's in the file.
13   Q. Which file would that be in? You
14 know what? If it's going to take some time to look
15 for it, we will look for it on a break.
16   A. January 7th, 1998. That was a
17 preliminary approval. The final approval was
18 February 2nd of 1998.
19   Q. Who signed the preliminary approval?
20   A. I don't have — hang on. I'll look.
21   Q. Before you leave that stack, what
22 were you looking at when you told me it was
23 preliminarily approved January 7, and you got final
24 approval February 2nd?
25   A. It was a proposal that we had

Page 30

1    BY MR. HAMMAN: Q. Prior to the time that
2  you prepared the Remedial Action Plan, did you
3  personally have any meetings with Carmen Trutanich
4  or Jack Glaser concerning the subject property?
5    A. Yes.
6    Q. And which one or which ones did you
7  meet with?
8    A. I can recall one meeting where they
9  both were there, as well as some other counsel from
10 Jaffe, Trutanich.
11   Q. Who were the other attorneys from
12 Jaffe at that point?
13   A. As I recall, Fred Bloom, Joe
14 Briavich. Those are the others that I recall.
15   Q. And where did that meeting take
16 place?
17   A. In the offices of Jaffe, Trutanich.
18   Q. And did anybody other than you and
19 the attorneys attend that meeting?
20   A. Yes.
21   Q. Who else?
22   A. Larry Patsouras.
23   Q. And what's your best estimate as to
24 when that meeting occurred?
25   A. There's another individual, if you

Page 32

EXHIBIT 4

# OTTEN LAW, PC

## ATTORNEYS

December 5, 2017

VIA EMAIL (prasmussen@behblaw.com) and MAIL
Bassi Edlin Huie & Blum LLP
Paul Rasmussen, Esq.
15 S. Flower Street, Suite 1020
Los Angeles, CA 90071

    Re:  *Alcoa Inc., et al. vs. APC Investment Co., et al*.
       Case No.: 2:14-cv-06456 GW (Ex.)

Dear Mr. Rasmussen:

This is in follow up to my previous emails regarding the conflict of interest that your firm has in the above referenced litigation. Two of your partners, Fred Blume and Jeremy Huie, previously worked and/or were principals of the law firm Jaffe, Trutanich, Sctina & Blume ("JTSB'). Your partners' former firm represented my clients Larry Patsouras, Kekropia, Inc., and El Greco, Inc. in matters related to environmental contamination at the property located at 11630-11700 Burke Street, Santa Fe Springs ("Site").

In a recent review of documents that were in the possession of Mr. Patsouras' environmental consultant, Steve Bright, we learned that JTSB's former representation of Larry Patsouras and Kekropia, Inc. involved the same legal and factual issues being litigated in *Alcoa Inc., et al. vs. APC Investment Co., et al*., Case No.: 2:14-cv-06456 GW.

The limited records that we have located include, but are not limited to, the following:

1. Remedial Investigation Work Plan prepared for JTSB for the property located at 11630-11700 Burke Street, Santa Fe Springs dated November 25, 1994.

2. Preliminary Draft Remedial Investigation Report prepared for JTSB for the property located at 11630-11700 Burke Street, Santa Fe Springs dated December 22, 1994.

3. Letter dated February 6, 1998 from JTSB to Richard Sivert, Esq. related to Talco's use of the property.

On February 18, 1998, JTSB filed *Kekropia, Inc. vs. Talco*, et al. Case No. 2:98-cv-01132-WJR-CWX, a cost recovery which alleged that William K. Palley and Palley Supply Company were responsible for the environmental contamination at the Kekropia Site. William K. Palley and

Bassi Edlin Huie & Blum LLP
Paul Rasmussen, Esq.
December 5, 2017

Palley Supply Company were defendants in that action. That lawsuit was settled but groundwater contamination was carved out of the agreement which provided that Kekropia, Inc. could reopen the case against Palley and Palley Supply Company and the other settling defendants in the event it was sued for contaminating the groundwater.

The Plaintiffs in *Alcoa Inc., et al. vs. APC Investment Co., et al*. allege that historical business operations at the Site are responsible for the vertical migration of chlorinated solvents from the soil to groundwater. The issue is that while Kekropia and Palley Supply Company share some defenses, they are clearly adverse to each other.

Palley's insurers – Fireman's Fund – was involved in the *Kekropia, Inc. vs. Talco* litigation. In fact, as part of William Palley's bankruptcy proceedings, the court ordered that Kekropia, Inc. could proceed against Palley's insurance in any subsequent litigation.

In *Alcoa Inc., et al. vs. APC Investment Co., et al*., your client and my client have been sued for allegedly contaminating the groundwater which is part of the Omega plume. They are directly adverse. As explained below, there is a presumption that JTSB gained knowledge regarding Larry Patsouras and Kekropia, Inc. through their prior representation and that the confidential information gained is imputed to their new firm, Bassi Edlin Huie & Blum LLP. Because of this, Bassi Edlin Huie & Blum LLP must cease to represent Palley Supply Company or Fireman's Fund in this litigation.

## Vicarious Disqualification in Alcoa

The court's paramount concern is the preservation of public trust in the administration of justice and the integrity of the bar. (*City & County of San Francisco v. Cobra Solutions, Inc*., supra, 38 C4th at 846) Therefore, a client's right to be represented by counsel of choice must yield to considerations of ethics that affect the integrity of the judicial process. (*Comden v. Sup.Ct. (Doris Day Distrib. Co*.) (1978) 20 C3d 906, 915; *Collins v. State of Calif*. (2004) 121 Cal.App. 4th 1112, 1124; *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1204)

There are certain ethical lines that an attorney, whether a solo practitioner or a partner at a prestigious law firm, simply cannot cross in the representation of their clients. "All attorneys share certain basic obligations of professional conduct, obligations that are essential to the integrity and function of our legal system." (*Shadow Traffic Network v. Superior Court*, 24 Cal.App.4th 1067 (1994), quoting *In re Complex Asbestos Litigation*, 232 Cal.App.3d 572, 602 (1991)). Where a former client seeks to have a previous attorney, or an employee of that attorney disqualified from serving as counsel, the governing test requires that the client demonstrate a "substantial relationship" between the subjects of the antecedent and current representations. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275) Here, there is no question that there is a substantial relationship between JTSB's previous representation of Kekropia and the current representation of Palley Supply Company by Bassi Edlin Huie & Blum LLP.

An automatic or "per se" disqualification is the rule for simultaneous representation of current clients with adverse interests (and no informed written consent) "in all but a few instances." (*Flatt*

2

Bassi Edlin Huie & Blum LLP
Paul Rasmussen, Esq.
December 5, 2017

*v. Sup.Ct.* (Daniel) (1994) 9 C4th 275, 284)—primary value at stake is attorney's duty and client's legitimate expectation of loyalty; see *Blue Water Sunset, LLC v. Markowitz* (2011) 192 CA4th 477; *White v. Experian Information Solutions* (CD CA 2014) 993 F.Supp.2d 1154, 1161).

*Kirk v. First American Title Insurance Company*, 183 Cal.App.4th 776 (2010) seems to acknowledge that attorneys with a conflict of interest from a previous client could be screened to prevent the disqualification of their new firm. Under Kirk, "Once the moving party in a motion for disqualification has established that an attorney is tainted with confidential information, a rebuttable presumption arises that the attorney shared that information with the attorney's law firm. The burden then shifts to the challenged law firm to establish 'that the practical effect of formal screening has been achieved. The showing must satisfy the trial court that the [tainted attorney] has not had and will not have any involvement with the litigation, or any communication with attorneys or employees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed.' (*In re Complex Asbestos Litigation*, 232 Cal.App.3d at p. 596.)" The courts also require implementing proper screening and the placement of an "ethical wall," neither of which has been done by Bassi Edlin Huie & Blum LLP.

The specific elements of an effective screen will vary from case to case, although two elements are necessary: First, the screen must be timely imposed; a firm must impose screening measures when the conflict first arises. It is not sufficient to wait until the trial court imposes screening measures as part of its order on the disqualification motion. (*Klein v. Superior Court*, 198 Cal.App.3d at pp. 906, 913-914; see also *Hitachi, Ltd. v. Tatung Co.* (N.D.Cal. 2006) 419 F.Supp.2d 1158, 1165.) Here, no screening measures were taken by Bassi Edlin Huie & Blum LLP.

Second, it is not sufficient to simply produce declarations stating that confidential information was not conveyed or that the disqualified attorney did not work on the case; an effective wall involves the imposition of preventive measures to guarantee that information will not be conveyed. (*SpeeDee Oil*, 20 Cal.4th at pp. 1142, 1151-1152 & fn. 5.)

In addition, *Kirk* describes the elements of a proper ethical wall which includes geographic distance, a waiver of all fees by tainted attorney(s) (so neither Mr. Huie nor Mr. Blume could collect fees in this matter) and several others.

## Conclusion

Mr. Huei and Mr. Blume's involvement in the previous litigation mentioned is an automatic or "per se" disqualification in the instant case. While case law creates limited exceptions to this rule, Bassi Edlin Huie & Blum LLP cannot meet the proper screening and requirements to have created a proper ethical wall for Mr. Huie and Mr. Blume. We are requesting that Bassi Edlin Huie & Blum LLP recuse itself from this litigation. We are also requesting that any firm Fireman's fund or Pally Suppley Company substitute into this litigation not be provided with any files related to prior representation of Kekpropia, Inc. It is not my desire to bring any conflict motions, however California law and the interests of my clients would require I do so should Bassi Edlin Huie & Blum LLP continue their representation. Please confirm by close of business on December 8, 2017 that you will withdraw as counsel of record for this litigation.

3

Bassi Edlin Huie & Blum LLP
Paul Rasmussen, Esq.
December 5, 2017

Sincerely,

/s/ _____

Vic Otten, Esq.
for OTTEN LAW, PC

Bassi Edlin Huie & Blum LLP
Paul Rasmussen, Esq.
December 5, 2017

EXHIBIT 5

| From: | Victor Otten |
|---|---|
| To: | "Paul D. Rasmussen"; "Michael E. Gallagher" |
| Cc: | Kavita Tekchandan |
| Bcc: | |
| Subject: | Conflict |
| Date: | Saturday, January 13, 2018 3:12:00 PM |
| Attachments: | image001.png |
| | Motion to Disqualify.pdf |

Paul,

This is in follow up to my letter dated December 5, 2017 regarding the conflict of interest between your firm and Kekropia, Inc.  which I never received a response. Attached is our draft motion to disqualify your firm from representing the intervening insurers (Pally Supply Company) and Ferro Corporation. This is our request to formally meet and confer regarding the conflict prior to filing our motion.  We are generally available next week to meet and confer.

As none of the environmental releases at the Kekropia Site were caused by my client, we will ultimately be looking at the intervenors for indemnity. As the law presumes that your firm has confidential information related to Kekropia and the Site, this must be addressed.

The law and facts are set forth in the draft motion. If we have missed something that changes the analysis, please let us know.

Assuming we are correct on the conflict, we are willing to explore ways to resolve the conflict without your firm having to be disqualified.
Vic


Victor Otten, Esq.



## OTTEN LAW, PC
### ATTORNEYS

3620 Pacific Coast Hwy #100 | Torrance, California 90505
P (310) 378-8533 | F (310) 347-4225 | E vic@ottenlawpc.com | W www.ottenlawpc.com

This e-mail is confidential and is legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. To do so could violate state and Federal privacy laws. Thank you for your cooperation. Please contact Rosa  at 310-378-8533 if you need assistance.
Please consider the environment before printing this e-mail message.

EXHIBIT 6