Robert P. Doty (State Bar No. 148069)
rdoty@coxcastle.com
Christopher W. Gribble (State Bar No. 285337)
cgribble@coxcastle.com
COX, CASTLE & NICHOLSON LLP
50 California Street, Suite 3200
San Francisco, CA  94111-4710
Telephone:  (415) 262-5100
Facsimile:  (415) 262-5199

Attorneys for Defendant
PALMTREE ACQUISITION CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCONIC, et al.,, <br><br> Plaintiffs, <br><br> vs. <br><br> APC INVESTMENT CO., et al.,, <br><br> Defendants. | Case No. 2:14-cv-06456-GW (Ex) <br><br> **MOVING DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date:   June 28, 2018 <br> Time:   8:30 a.m. <br> Judge:  The Honorable George Wu <br> Place:  Courtroom 9D, 9th Floor |

071915\9559799v3

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1, the moving defendants submit the following statement of material facts as to which they contend there is no genuine issue, as well as conclusions of law, all of which entitle the moving defendants to summary judgment as a matter of law:

### STATEMENT OF UNCONTROVERTED MATERIAL FACTS

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| **The Site and the Parties** ||
| 1:  Plaintiffs allege that this lawsuit arises from an approximately 4.5-mile "plume" of contaminated groundwater situated south/southwest of the former Omega Chemical Corporation processing plant in Whittier. | *Fifth AC*, ¶ 2. |
| 2:  Plaintiffs face potentially joint and several liability for the entire Omega Superfund Site. | *Fifth AC*, ¶¶ 7–8. |
| 3:  Plaintiffs allege that properties overlying the OU-2 groundwater, and located down gradient from the Omega processing plant, have contributed to the contamination, including chlorinated and non-cholorinated solvents and hexavalent chromium. | *Fifth AC*, ¶ 3; *Doty Dec*., Ex. 4, 4. |
| 4:  The caption page on the Fifth Amended Complaint reads "Contribution; Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601, *et seq*." as the first claim for relief. | *Fifth AC*, caption page. |
| 5:  The First Claim for Relief, which begins on page 97, is styled as "Contribution under CERCLA," and Paragraph 405 roots that claim in Section 113(f). | *Fifth AC,* at p. 97:17-19, ¶405. |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 6:  The Third Claim for Relief seeks declaratory judgment "for contribution" and also cites to Section 113(f). | *Fifth AC*, at ¶ 426. |
| **7**: Plaintiffs filed this action on August 15, 2014. | Dkt. No. 1. |
| 8:  Paragraph 9 of the operative complaint refers to "tens of millions of dollars in capital expenditures for years to come" and "millions" of dollars of costs already incurred. | *Fifth AC*, ¶ 9. |
| 9:  The "tens of millions" of dollars "for years to come" include costs for the pumping and treating contaminated groundwater. | *Fifth AC*, ¶ 9. |
| 10:  EPA has depicted the remediation system as including extraction wells, conveyance piping, and treatment equipment. | *Doty Dec.*, Ex. 5, p. 6, Fig. 3 ("Possible groundwater treatment technologies" |
| 11:  Paragraph 2 of the Fifth Amended Complaint identifies "hexavalent chromium and chlorinated and non-chlorinated solvents" as contaminants. | *Fifth AC*, ¶ 2. |
| 12: On February 28, 2001, Judge Hatter's approval of a settlement (styled as a Consent Decree) (the "2001 Settlement") was entered. | *Doty Dec.*, Ex. 13. |
| 13: The 2001 Settlement required investigation of groundwater in what later became OU-2. | *Doty Dec.*, Ex. 13, Appendix A, p. 6, Task 3 ("Task 3" of the Appended Statement of Work) to that agreement provided that "[t]he Settling Work Defendants will install three sentinel groundwater monitoring wells at two or three locations downgradient of phase 1a Area and upgradient of Water Supply Well 30R3.") |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 14:  On February 27, 2004, OPOG and an affiliated limited liability company filed the first of two substantially identical CERCLA contribution actions regarding the Omega Superfund Site. | *Doty Dec.*, Ex. 18. |
| 15:  The complaint, filed on February 27, 2004 in case no. 2:04-cv-01340, alleges that the defendants were liable for contribution for "all past and future response actions and costs." | *Doty Dec.*, Ex. 18, ¶ 156. |
| 16:  Correspondence and memoranda from the spring and summer of 2004, document an exchange of technical criticism and responses thereto concerning a cost estimate Dr. Perina prepared for EPA. | *Doty Dec.*, Ex. 4, Ex. 19, Ex. 20. |
| 17:  The 2007 Settlement was executed in 2006 and its approval was entered on the docket March 9, 2007. | *Doty Dec.*, Ex. 23. |
| 18:  Settlement approval motion papers filed in late 2006 (a memorandum of points and authorities and two declarations) reference the $101.5 million cost estimate prepared by Dr. Perina in 2004. | *Doty Dec.*, Ex. 7, ¶ 9; *id.*, Ex. 22, ¶ 10; *id.*, Ex. 24 ¶ 6. |
| 19:  Plaintiffs' discovery response confirms that the $101M cost estimate referenced in the 2007 Settlement's approval motion papers was derived from Dr. Perina's 2004 memo. | *Doty Dec.*, Ex. 25, Response No. 3 (admitting that the "approximately $101M cost estimate referenced in the 2007 Settlement Approval Papers . . . was derived from . . . [Dr. Perina's] 2004 EPA Memo . . . "). |
| 20:  The 2004 Cost Estimate describes the contaminated groundwater plume as being "at least" 2.5 miles long. | *Doty Dec.*, Ex. 19, p. 2. |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 21: Dr. Perina's cost estimate assumes "extraction and treatment of contaminated groundwater," which Dr. Perina characterized as "pump and treat" using a "complex treatment train" to address the mixture of chemicals in the plume. | *Doty Dec.*, Ex. 19, p. 2-3. |
| 22: Dr. Perina's cost estimate lists extraction wells, water conveyance pipelines, a treatment plant, and discharge pipelines as components of the remediation system. | *Doty Dec.*, Ex. 19, p.3. |
| 23: The 2004 Cost Estimate assumes "the pump and treat system [would] operate [for] 30 years" (with soil remediation taking 3 years). | *Doty Dec.*, Ex. 19, p. 3. |
| 24: The 2004 Cost Estimate addresses PCE (identified by its formal name, tetrachloroethylene), hexavalent chromium, and other identified compounds, and contaminants that "may be identified in the future." | *Doty Dec*, Ex. 19, p. 2-3. |
| 25: Dr. Perina's estimate for soil remediation costs was $3.9 million, with the groundwater pump and treat work costing $97.5 million (including $500,000 to purchase land for a treatment plant). | *Doty Dec.*, Ex. 19, p. 5, Tab. 1. |
| 26: EPA estimated the cost of pumping and treating groundwater at OU-1 at $6.4 million. | *Doty Decl.*, Ex. 26, p. 2. |
| 27: Section 2.03 of the settlement agreement approved by Judge Hatter on March 9, 2007 in case no. 2:04-cv-01340 (the "2007 Settlement") defines the "Claims" addressed to include "liabilities of any nature . . . that are based on or arise from the Site." | *Doty Dec.*, Ex. 6.a, § 2.03. |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 28:  The 2007 Settlement Agreement defines "Site" in Section 2.19 as "the Omega Chemical Corporation Superfund Site listed on the National Priorities List on January 19, 1999, 64 Fed. Reg. 2945." | *Doty Dec.*, Ex. 6.a, § 2.19. |
| 29: Section 2.16 of the 2007 Settlement Agreement defines "Regional Response Work" to mean "Work that the Governments require the Parties, or any of them, to perform, or which they perform at the request or demand of the Governments or any of them, regarding regional groundwater contamination alleged to be attributed to the Site." | *Doty Dec.*, Ex. 6.a, § 2.16. |
| 30:  Section 5.01 of the 2007 Settlement provides a release for "Settled Matters." | *Doty Dec.*, Ex. 6.a, § 5.01. |
| 31: Section 5.02(j) causes Claims for Regional Response Work to be Settled Matters, not the Excluded Matters. | *Doty Dec.*, Ex. 6.a, §§ 5.01, 5.02(j). |
| 32:  Section 3.01 of the 2007 Settlement provides that except for the Excluded Matters (and certain ministerial actions), the settling defendants were relieved of all "responsibilities," "including but not limited to, all response costs associated with the Site." | *Doty Dec.*, Ex. 6.a, § 3.01. |
| 33:  Sixty-seven of OPOG's member corporations executed a joint and several performance guaranty backstopping the commitments made through OPOG and its affiliate, OPOG LLC. | *Doty Dec.*, Ex. 6.a, Exs. D, E. |
| 34:  Sections 5.03, 6.01, and 2.21 of the 2007 Settlement preserve the settling plaintiffs' rights to further recovery from one group of settling defendants and from third parties. | *Doty Dec.*, Ex. 6.a, §§ 5.03, 6.01, 2.21. |

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO

071915\9559799v3

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 35:  As against the settling defendants listed on Exhibit A to the 2007 Settlement, and subject to a cap at $93 million, the plaintiffs could recover specified additional payments if "Total Collective Costs" eventually exceed $70 million. | *Doty Dec.*, Ex. 6.a, § 5.03. |
| 36:  Section 2.21 of the 2007 Settlement defines "Total Collective Costs" to include Plaintiffs' costs, as well as costs "attributable to . . . (c) PRPs from whom the [plaintiffs have or do] otherwise settle with, . . . and (e) PRPs from whom the [plaintiffs] recover[ ] through litigation to judgment." | *Doty Dec.*, Ex. 6.a, § 2.21. |
| 37:  The motion papers submitted to Judge Hatter to obtain his approval for the 2007 Settlement explain that the settlement resolves claims regarding responsibilities for the Omega Site, including claims for response costs under the completed UAO 95-15, [OU-1]. | *Doty Dec.*, Ex. 6.a, p. 4-5. |
| 38:  The motion papers submitted to Judge Hatter to obtain his approval for the 2007 Settlement explain that the settlement resolves claims regarding Response Work called for under the Consent Decree, as amended, and any future Regional Response Work, except as specially limited in the Settlement Agreement. | *Doty Dec.*, Ex. 6.a, p. 4-5. |
| 39:  Section 2.09 of the 2007 Settlement defines "Governments' to mean the federal government, the State of California, including two of its main environmental regulatory agencies, and local government entities. | *Doty Dec.*, Ex. 6.a, § 2.19. |

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 40: On October 6, 2010, in *U.S. v. Alcoa Inc.*, Case No. 2:10-cv-05051- TJH-PLA, the United States and the so-called "Settling Work Defendants" (many of whom are now plaintiffs to this lawsuit) entered into a Consent Decree (Dkt. No. 8) (the "2010 Consent Decree") that extended to the entire Omega Superfund Site. | *Doty* Dec., Ex. 32. |
| 41: The 2010 Consent Decree defines "Site" to mean the "Omega Chemical Corporation Superfund Site, listed on the National Priorities List on January 19, 1999, 64 Fed. Reg. 2950." | *Doty Dec.*, Ex. 32, p. 10:21-22. |
| 42: Paragraph 88 of the 2010 Consent Decree provides: "Settling Defendants agree not to assert any claims or causes of action under Section 107(a) and 113 of CERCLA that they may have for all matters relating to the Site against any person that has entered or in the future enters into a final CERCLA Section 122(g) *de minimis* settlement, or a final settlement based on limited ability to pay, with EPA with respect to the Site." | *Doty Dec.*, Ex. 32, ¶ 88; <br><br> *Id.*, Ex. 32, ¶4, at 10:21-22. |

## CONCLUSIONS OF LAW

1. The Plaintiffs' First and Third Causes of Action in the Fifth Amended Complaint are claims for contribution.

2. The Plaintiffs' claims for contribution seek costs that are all covered in the 2007 Settlement.

3. This action was filed more than three years after the March 9, 2007 entry of the 2007 Settlement and, as such, the Plaintiffs' claims for contribution are time-barred by CERCLA Section 113(g)(3)(B).

1    DATED:  April 30, 2018          COX, CASTLE & NICHOLSON LLP

2

3                                    By:_____/s/  Robert P. Doty_____
                                         Robert P. Doty
4                                        Christopher W. Gribble
                                         Attorneys for Defendant
5                                        PALMTREE ACQUISITION CORPORATION

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28