LATHROP GAGE LLP
Nancy Sher Cohen, Bar No. 81706
   ncohen@lathropgage.com
Ronald A. Valenzuela, Bar No. 210025
   rvalenzuela@lathropgage.com
1888 Century Park East, Suite 1000
Los Angeles, California 90067-1623
Telephone: 310.789.4600
Facsimile: 310.789.4601

John M. Terry (*admitted pro hac vice*)
   jterry@lathropgage.com
1515 Wynkoop Street, Suite 600
Denver, CO 80202
Telephone: (720) 931-3200
Facsimile: (720) 931-3201

Attorneys for Plaintiffs
Arconic Inc., et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCONIC INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>APC INVESTMENT CO., et al.,<br><br>    Defendants.<br><br>AND RELATED CROSS ACTIONS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS | Case No. 2:14-cv-06456 GW (Ex.)<br><br>**DECLARATION OF GENE A. LUCERO IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: STATUTE OF LIMITATIONS**<br><br>Hearing Date: August 6, 2018<br>Time: 8:30 a.m.<br>Location: Courtroom 9D, 9th Floor<br>    350 W. 1st Street<br>    Los Angeles, CA 90012<br><br>Judge: Hon. George H. Wu |

## DECLARATION OF GENE A. LUCERO

I, Gene A. Lucero, declare as follows:

1. I make this declaration in support of Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment re: Statute of Limitations ("Plaintiffs' Supp. Brief"). The facts stated in this declaration are based on my personal knowledge and if called as a witness, I would and could competently testify thereto.

2. I have been associated with the Omega Chemical Corporation Property and the required remediation at the Property beginning in 1994, representing several potentially responsible parties ("PRPs"). I continued to be involved after 1999 when EPA classified the Omega Property as a Superfund Site. ("Omega Site"). For the 19 years between 1994 and 2013, when I retired from my former law firm, Latham & Watkins, I continued to represent my clients and participate on their behalf in the Omega Chemical Potentially Responsible Parties Organized Group ("OPOG").[1] During that period, since my clients were large volume generators who made attorney and consultant time available as part of their agreement with the members of OPOG, I acted as common counsel with respect to certain matters that affected OPOG members over this period.

3. After my retirement, I no longer represented individual members of OPOG in connection with the Omega Site, but my role as common counsel for OPOG expanded, covering all aspects of Operable Unit 2 ("OU2") of the Omega Site, including the negotiation of the OU2 Consent Decree with EPA, which I spearheaded, and covering additional assignments relevant to OPOG's activities at

---

[1] A previous declaration that I submitted to the Court in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment re: Statute of Limitations, I inadvertently suggested that my association with the Omega Chemical Corporation Property and the required remediation at the Property began in 1995. To clarify, my association began in 1994.

- 2 -

**Lathrop Gage LLP**
**1888 Century Park East, Suite 1000**
**Los Angeles, California 90067-1623**

1  OU1 and OU3.

2      4.    As part of my duties for the members of OPOG whom I represented, and as common counsel for OPOG, I kept myself apprised of EPA's actions relating to the Omega Site through regular discussions with EPA and by reviewing documentation regarding the Omega Site that was published by EPA, or its consultants, as it became available.  Further details regarding my participation on behalf of my clients and as common counsel for OPOG are set forth in my previous declaration (Dkt. # 770-18) submitted with Plaintiff's Opposition to Defendants' Motion for Summary Judgment Re: Statute of Limitations (the "Motion"), and I hereby incorporate the facts set forth in that declaration as if fully set forth herein.

    5.    As reflected in my previous declaration (Dkt. # 770-18), EPA issued SNLs regarding OU2 in 2012, and requested the recipients submit Good Faith Offers ("GFO"). Through 2012 and 2013, OPOG and EPA negotiated on the GFO. While OPOG and one other PRP reached agreement on a settlement term sheet with EPA in 2014, negotiations on a final OU2 Consent Decree and Statement of Work continued through 2015.

    6.    After EPA lodged the OU2 Consent Decree in 2016, OPOG and the other cooperating PRP began limited OU2 Consent Decree work based on the term sheet. Since court approval in 2017, OPOG has continued to implement the OU2 Consent Decree and Statement of Work under the ongoing oversight of EPA through the present.

    7.    As part of my work for OPOG, I am also familiar with OPOG's attempts to recover response costs from other PRPs. In 2004, I participated in numerous discussions with EPA concerning what EPA was doing to explore *de minimis* settlements and *ability to pay* settlements with non-OPOG Generators and what EPA intended to do about *de minimis* Generators that had not joined OPOG or agreed to participate in the OU1 CD.

    8.    As explained in greater detail in my previous declaration (Dkt. # 770-

- 3 -

18), OPOG filed two lawsuits relating to OU1 response costs, one in 2004 and one in 2005, against various generators who had sent materials to the Omega Chemical Property.[2] Those OU1 lawsuits resulted in a number of settlements between groups of generator parties, one of which was judicially approved in 2007 (the "2007 Settlement"). I participated in discussions concerning how to memorialize that settlement and am familiar with the agreement memorializing the 2007 Settlement (the "2007 Agreement").

9. Attached hereto as Exhibit A is a true and correct copy of the "OPOG Members Making OPOG Members Assurance," to the 2007 Agreement, which is appended to that document as Exhibit D.

10. Attached hereto as Exhibit B is a true and correct copy of the "OPOG Members Assurance" to the 2007 Agreement, which is appended to that document as Exhibit E. Exhibits D and E to the 2007 Agreement are being provided with my declaration because they were not provided with the copy of the 2007 Agreement that Mr. Doty submitted as an exhibit to is Declaration.

11. The Plaintiffs in the 2004/2005 lawsuits that entered into the 2007 Settlement were OPOG and OPOG, LLC (":LLC"). The LLC is a limited liability company created by OPOG to hold title to property on which the OU1 remediation system would be built. Members of OPOG were larger volume generators that had sent hazardous substances to the Omega Chemical Property. In 2007, there were approximately 77 OPOG members representing approximately 52% of the total

---

[2] The 2004 lawsuit was ultimately amended to include the 2005 Defendants and a CERCLA Section 107 claim was added to the original CERCLA 113 claim. That amendment occurred after December 2004, when the Supreme Court handed down its decision in *Cooper Industries v. Aviall Services,* 543 U.S. 157 (2004). To many practicing in the environmental area, including many of the attorneys representing individual members of OPOG, the *Aviall* decision raised the question whether a contribution claim could be brought under Section 107 as well as Section 113. Accordingly, out of an abundance of caution, a Section 107 claim was added to the 2004 action.

volume of materials sent to Omega Chemical for processing by all Omega Chemical generators.

12. The Defendants in that litigation that entered into the 2007 Settlement was a group 53 *de minimis* generators ("*De Minimis* Generators") that had not, prior to the 2007 settlement, contributed any money towards the ongoing OU1 remediation required by EPA under the 2001 OU1 CD between EPA and OPOG members. The *De Minimis* Generators represented about 2% of the total number of Omega Chemical generator PRPs and 1.5% of the total volume of materials sent to Omega Chemical for processing.

13. I participated in some of the discussions amongst OPOG members, and was briefed on others, concerning the assumption of site-wide liability and the scope of the release that would be provided under the 2007 Settlement.

14. Beginning at the time that OPOG initiated its OU1 cost recovery litigation, I also worked closely with the attorney primarily responsible for representing OPOG in the litigation proceedings involving other PRPs in connection with the Omega Site and made it a point to stay apprised of all such proceedings. Additionally, I worked directly with those charged by OPOG with processing, assessing and responding to any requests or demands, including any request or demands for payment of response costs or performance of response work in connection with the Omega Site, that were tendered to OPOG, or any of its members, by other PRPs. I insisted on receiving copies of any such requests or demands so that I could personally review and analyze them.

15. At the time Plaintiffs entered into the 2007 Settlement, Plaintiffs were not aware of any judgment against the *De Minimis* Generators arising from their sending hazardous substances to Omega Chemical, nor were they aware of any other suits pending against *De Minimis* Generators relating to the Omega Site.

16. The settling *De Minimis* Generators to the 2007 Settlement have not notified OPOG or Plaintiffs that the federal or state governments have made a

request or demand that those generators perform or pay for any "regional response work," as that term is defined in the 2007 Settlement. Nor have they ever tendered to Plaintiffs, OPOG, or the LLC any request or demand that OPOG, any individual member of OPOG, or the LLC assume, pay for, or undertake any of the *De Minimis* Generators' responsibilities at the Omega Site.

17. Part of my duties as common counsel for OPOG include being generally familiar with the nature and amount of costs OPOG has incurred in connection with OU1 and OU2. Some OU2 response costs were expended prior to the lodging of the OU2 CD in 2016 because they were necessary to allow Plaintiffs to successfully negotiate the OU2 CD.

18. It is my understanding, based on information provided to me by OPOG's technical consultant, Jack Keener, that OPOG expended approximately $16 million of OU1 costs as of 2007, and which today, along with the expenditures for OU3 related costs, have reached approximately $50 million in in total. Plaintiffs are not seeking to recover any of the OU1 or OU3 related expenditures in this lawsuit and such costs are therefore not at issue in this case.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 19, 2018 in Los Angeles, California.

_____
Gene A. Lucero

# Exhibit A

PRIVILEGED AND CONFIDENTIAL
SETTLEMENT COMMUNICATION

# EXHIBIT D
## TO OMEGA CHEMICAL SITE
## SETTLEMENT AGREEMENT

### OPOG MEMBERS MAKING OPOG MEMBERS ASSURANCE

1. Alcoa Inc. (on behalf of Alcoa Electronic Packaging, Inc., Alcoa Global Fasteners for TRE/Weslock and Alumax for Amerimax Building Products for Admiral Aluminum)
2. Allied Signal Inc.
3. Alpha Therapeutic Corporation
4. American Standard Inc. acting through its Trane business
5. Applied Micro Circuits Corporation
6. Astro Aluminum Treating Company
7. BASF Corporation
8. Baxter Healthcare Corporation
9. Bio Science Enterprises
10. Boeing Satellite Systems, Inc.
11. BP AMOCO Chemical Company
12. Cal Mart by Tucson Valley Liquidating Trust by J. Emery Barker, Trustee
13. California Hydroforming Co., Inc.
14. CC Industries Inc. (Federal Envelope)
15. Center Line Wheel Corporation
16. Chemical Waste Management, Inc.
17. Cintas Corporation (successor to Unitog Company)
18. Coastcast Corporation
19. Coatings Resource Corporation.
20. Crosby & Overton Inc.
21. CTL Printing Inc.
22. Dude, Inc.
23. Engraph Inc./ Patton Sonoco Products
24. FHL Group
25. General Dynamics Corporation (Hughes Missile System)
26. GulfStream Aerospace Corp.
27. Hercules Corporation, Inc.
28. Hexcel Corporation (Ciba-Geigy)
29. Hitachi Home Electronics (America), Inc.
30. Honeywell Inc. (Sperry Aerospace & Marine Group)
31. International Paper Company
32. K.C. Photo Engraving Co.
33. Kinder Morgan Liquids Terminals, LLC, formerly known as GATX Terminals Corporation
34. LA County MTA (So. California RTD)
35. Luxfer USA Limited
36. Majon Inc./Hurst Labeling
37. Manville Corporation (Celite Corp.)

PRIVILEGED AND CONFIDENTIAL
SETTLEMENT COMMUNICATION

38. Masco Plumbing Products, Inc. as indemnitor for Norris Industries, Inc.
39. McDonnell Douglas Helicopter Company, a wholly owned subsidiary of McDonnell Douglas Corporation, a wholly owned subsidiary of The Boeing Company
40. MCP Foods (by Hexion Specialty Chemicals, Inc. and Firmenich Incorporated)
41. Metropolitan Water District of So. California
42. Northrop Grumman Systems Corporation
43. Ohline Corp.
44. Pacific Bell Telephone Company
45. Pilkington/Swedlow
46. Raytheon Company
47. Reichhold, Inc.
48. Robinson Prezioso, Inc.
49. Safety-Kleen Systems, Inc.
50. Schering Corporation
51. Sempra Energy Solutions
52. Shiley, Inc. (Pfizer)
53. Sigma Casting Corporation
54. Signet Armorlite, Inc.
55. Soco West, Inc. as successor to Holchem, Inc.
56. Sparton Technology, Inc.
57. State of California acting by and through the Department of Transportation
58. Texaco Inc.
59. Texas Instruments (Brown Burr)
60. The Boeing Company
61. The Sherwin-Williams Company
62. Treasure Chest
63. Union Oil Company of California
64. Univar Corp., Univar USA Inc. (f/k/a Van Waters & Rogers Inc., Vopak Distribution Americas Inc.)
65. Walt Disney Pictures and Television
66. Weber Aircraft
67. Yort, Inc. (Troy Lighting, Int. - Tiffany Division)

# Exhibit B

PRIVILEGED AND CONFIDENTIAL
SETTLEMENT COMMUNICATION

## EXHIBIT E

## OPOG MEMBERS ASSURANCE

The OPOG Members listed on Exhibit D agree that if the Group fails to carry out any of the commitments set forth in the Omega Chemical Site Settlement Agreement, (hereinafter the "Underlying Obligations") the OPOG Members will do so, subject to the rights of the Group and the OPOG Members to contest any obligation to EPA or any other regulatory agency under any Consent Decree or Other Agreements without imposing any additional risks or obligations on the Settling Parties. The obligations of the OPOG Members to carry out the Underlying Obligations are joint and several, unconditional and irrevocable, except as provided in the Underlying Obligations. However, should this OPOG Members Assurance ("Assurance") be invoked against one or more but not all of the OPOG Members, such member or members shall have a right of contribution against the other OPOG Members. The OPOG Members shall be responsible for the "orphan share" if any resulting from the dissolution or insolvency of any OPOG Member. However, the right of an OPOG Member to seek contribution against another OPOG Member shall not affect any OPOG Member's obligation under this Assurance to satisfy the Underlying Obligations.

The commitments under this Assurance shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, as a result of any waiver, release, surrender, alteration or compromise in the Underlying Obligations, and will not be subject to any defense or set off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of any of the Underlying Obligations or any discharge of debtor from any of the Underlying Obligations under bankruptcy or similar proceeding. Further, the OPOG Members waive any and all benefits which might otherwise be available to them under California Commercial Code § 3605, California Civil Codes §§ 2809, 2810, 2819, 2839, 2845, 2850, 2899 and 3433, or any comparable provision of any other applicable law, as well as any and all other rights, defenses and benefits limiting the liability of or exonerating guarantors or sureties otherwise afforded by law.

The OPOG Members hereby waive presentment, demand and protest of any Underlying Obligations and also waive notice of protest for non payment. The OPOG Members acknowledge that all the waivers set forth herein are freely granted, after consultation with competent counsel, since it is the intent and purpose of the OPOG Members that all of the commitments hereunder be absolute, independent and unconditional, except as provided in the Underlying Obligations, under any and all circumstances.

This Assurance will be governed by and construed in accordance with the laws of the State of California; any suit brought hereon may be brought in the County of Los Angeles, State of California.

The undersigned represents and warrants that it has authority to sign this Assurance on behalf of each of the OPOG Members listed in Exhibit D. An OPOG resolution authorizing Larry G. Gutterridge to sign this OPOG Members Assurance on behalf of the individual members of OPOG has been duly enacted pursuant to the procedures set forth in and the authority granted by the OPOG PRP Agreement. A record of the authorization is set forth as Exhibit F.

**OMEGA CHEMICAL PRP GROUP**

Dated: May 2, 2006

Signature: _____

Typed Name: Larry G. Gutterridge

Title: Counsel