1    ROBERT P. DOTY (State Bar No. 148069)
     rdoty@coxcastle.com
2    CATHY T. MOSES (State Bar No. 254791)
     cmoses@coxcastle.com
3    COX, CASTLE & NICHOLSON LLP
     50 California Street, Suite 3200
4    San Francisco, CA 94111
     Telephone: (415) 262-5100
5    Facsimile: (415) 262-5199

6    Attorneys for Defendant
     PALMTREE ACQUISITION CORPORATION

7

8

              **UNITED STATES DISTRICT COURT**
9
              **CENTRAL DISTRICT OF CALIFORNIA**
10

11    ARCONIC INC., et al.,             Case No. 2:14-CV-06456-GW(Ex.)

12            Plaintiffs,

13            vs.                **MOVING DEFENDANTS' REPLY
                                           TO PLAINTIFFS OFFER OF
14    APC INVESTMENT CO., et al.,       PROOF RE: COSTS BARRED BY
                                           THE STATUTE OF LIMITATIONS**
15           Defendants.
                                 **DATE: August 6, 2018
16                                          TIME: 8:30 a.m.
                                         JUDGE: The Honorable George Wu
17                                          PLACE: Courtroom 9D, 9th Floor**

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1                                      MOVING DEFENDANTS' REPLY TO PLAINTIFFS' OFFER OF
                                                  PROOF IN RE THE STATUTE OF LIMITATIONS
                                                        2:14-CV-06456-GW-E

TABLE OF CONTENTS

Page No.

I. SUMMARY OF MOVING DEFENDANTS' POSITION ................................................ 1

II. ARGUMENT ................................................................................................................ 2

   A.   Plaintiffs' 2004 Lawsuit Sought Site-Wide Contribution, Not OU-1-Only Contribution. ................................................................................................ 2

      1.   Plaintiffs' 2004 Lawsuit Came on the Heels of EPA Stating Publicly that the Entire Omega Superfund Site, not Just OU-1, would Require Decades of Groundwater Work and Costs in Excess of $100 Million. ................................................................ 3

      2.   Plaintiffs' 2004 Contribution Lawsuit Encompassed the Entire Omega Superfund Site, Not Just OU-1. ................................................ 3

      3.   The 2007 Settlement Was Similarly Site-Wide, and it Imposed Obligations on Plaintiffs That Are Indistinguishable from Activities Listed In Exhibit 1. ............................................................ 4

   B.   The Record Demonstrates That All of the Costs Now Sought Are Covered By the 2007 Agreement and Were In Process Long Before the OU-2 Consent Decree Imposed Any Obligations on Plaintiffs. ................ 5

      1.   Plaintiffs' OU-2 Response Activities Started When Plaintiffs' Only Obligations Relative to OU-2 Arose From the 2007 Settlement. ........................................................................................ 5

      2.   The 2007 Settlement Obligated Plaintiffs to do Key Tasks Listed in Exhibit 1 and it Fully Anticipated Other Tasks Listed There. ................................................................................................ 7

      3.   Plaintiffs' Numbers Cannot Be Reconciled Without Including OU-2 Costs. ............................................................................... 9

      4.   Plaintiffs' Post-Settlement Actions Confirm that OU-2 Cleanup Costs Were Resolved in the 2007 Settlement. ................. 10

      5.   The Court Should Now Resolve this Motion by Applying the "With Respect To Standard" Congress Established in Section 113(g)(3)(B). .......................................................................... 11

   C.   The Legal Arguments in Plaintiffs' Sur-Reply Are Unavailing. ................. 13

      1.   Plaintiffs' Assertion that They Could Not Bring a Section 113 Claim for OU-2 Costs in 2007 is Clearly Wrong. .......................... 13

      2.   Plaintiffs' Assertion that There is a "Payments Made/Duty to Pay" Trigger for the Limitations Period is Also Wrong. ................. 13

      3.   Plaintiffs' Whack-a-Mole Approach Should be Rejected. ............................ 13

III. CONCLUSION ........................................................................................................ 14

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO

071915\9872487v1

i

MOVING DEFENDANTS' REPLY TO PLAINTIFFS' OFFER
OF PROOF IN RE THE STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

1

TABLE OF AUTHORITIES

Page No.

2

**Cases**

*ASARCO v. Celanese Chem. Co.,* 792 F.3d 1203, 1214-15 (9th Cir. 2015) .................................... 14, 15

*FTC v. Stefanchik,* 559 F.3d 924, 929 (9th Cir. 2009) ........................................................ 11

*RSR Corp. v. Commercial Metals Co.,* 496 F.3d 552, 557 (6th Cir. 2007) ............................................. 9

**Statutes**

42 U.S.C. § 113(f)(1) ........................................................................................................... 4, 13

42 U.S.C. § 113(f)(3)(B)…………………………………………………………………………14

42 U.S.C. § 113(g)(3) .......................................................................................................... 2

42 U.S.C. § 113(g)(3)(B) .................................................................................................... 2, 11, 13

42 U.S.C. § 9613(f)(1) ........................................................................................................ 4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1

ii

MOVING DEFENDANTS' REPLY TO PLAINTIFFS' OFFER
OF PROOF IN RE THE STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

# I.   SUMMARY OF MOVING DEFENDANTS' POSITION

At the July 12th hearing, the Court asked for an offer of proof, not exceeding 15 pages, to enable the Court to assess whether the costs Plaintiffs now seek fall within the scope of the 2007 Settlement.  In their 27-page submittal (counting only the new material), Plaintiffs provide approximately 7 pages that directly address the Court's request—25 lines in their brief (beginning at 4:12), a 2-page chart (Exhibit 1), and the Keener Declaration.

That information supports granting the pending motion, because it demonstrates that the 2007 Settlement obligated Plaintiffs to do what Exhibit 1 says they have done—engage with EPA and bear the burden of whatever requests or demands EPA made in regard to Regional Response Work and the regional groundwater contamination attributed to the "Site" ("Site" being expressly defined to mean the entire Omega Superfund Site, not just OU-1).

The remainder of Plaintiffs' filing cannot obscure the other central, undisputed facts of this matter:

- The 2004 complaint addressed in footnote 15 of the Tentative, Exhibit 18 in the April 30th Doty Declaration (copy attached here as Exhibit A for convenience) is a CERCLA contribution action seeking **all** past and future costs associated with the Omega Superfund Site, not just OU-1.

- The 2007 Settlement resolved Plaintiffs' site-wide contribution action by obligating Plaintiffs to satisfy EPA's demands for Regional Response Work, via a consent decree negotiated per Section 3.02 of the 2007 Settlement or via insurance/indemnity should EPA resort to litigation (Plaintiffs have characterized their obligations using both insurance and indemnity terminology).

- Plaintiffs have never claimed that a single dollar listed in Exhibit 1 falls outside the scope of the 2007 Settlement such that either they or Moving

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1

1

MOVING DEFENDANTS' REPLY TO PLAINTIFFS' OFFER
OF PROOF IN RE THE STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

1    Defendants could now sue Plaintiffs' counter-parties in the 2007

2    Settlement over any expenditure listed on Exhibit 1.

3    The 2007 Settlement thus plainly meets the "with respect to" standard Congress

4    placed in Section 113(g)(3)(B). The agreement is, in fact, quite similar to the

5    agreement in the *ASARCO* case. Both fact patterns involve a mixture of (1) specific

6    tasks that were known to the settling parties when they executed the settlement—here,

7    the OU-1 tasks described in Exhibit 26 to the first Doty Declaration—and (2)

8    anticipated future demands by the regulators.[1]

9    Moreover, from 2007 to 2010, Plaintiffs not only had the three-year period

10   provided by Section 113(g)(3); they did, in fact, use that period to litigate the very

11   claim they now say they lacked Article III standing to assert—Contribution under

12   CERCLA. Tellingly, nowhere in Plaintiffs' small mountain of filings on this motion is

13   there a single paragraph where Plaintiffs explain why they could not include Moving

14   Defendants in the CERCLA contribution action that Judge Hatter heard from 2004 to

15   2010.

## II.   ARGUMENT

17   The Court identified two areas that needed follow-up briefing—what costs were

18   covered by the 2007 Settlement and, per footnote 15, what claims and relief were

19   pursued in Plaintiffs' 2004 CERCLA contribution lawsuit. Because the latter sets the

20   stage for the former, Moving Defendants address Plaintiffs' 2004 CERCLA

21   contribution lawsuit in Section A and then turn to Plaintiffs' offer of proof in Section B.

22   Section C addresses Plaintiffs' legal arguments as possible in light of the Court's

23   admonition that it understood the parties' arguments.

### A.   Plaintiffs' 2004 Lawsuit Sought Site-Wide Contribution, Not OU-1-Only Contribution.

---

[1] April 30 Declaration of Robert P. Doty ("Doty Dec.") Ex. 26. Citations are per the format noted in footnote 11 of the Tentative.

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1

2

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE: STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

1
2
3
4

### 1. Plaintiffs' 2004 Lawsuit Came on the Heels of EPA Stating Publicly that the Entire Omega Superfund Site, not Just OU-1, would Require Decades of Groundwater Work and Costs in Excess of $100 Million.

5
6
7
8
9
10
11
12
13
14
15
16
17

On February 12, 2004, EPA convened a public meeting at a hotel near LAX to discuss cleanup of the Omega Superfund Site.  Doty Dec. Ex. 17.  EPA's PowerPoint presentation highlighted (1) CERCLA's strict, retroactive, and joint and several liability, (2) a groundwater plume extending far down gradient from the Omega Chemical processing plant; (3) EPA's "assumed" remedy—pump and treat groundwater for decades; and (4) costs on the order of $100-200 million.  *Id.* Ex. 17A (at 10-14 for plume maps, 15 for the "assumed" remedy, 31 for joint and several liability, and 42 for the cost range).  Neither the invitation letter for the meeting nor the PowerPoint slides suggest that EPA was focused on OU-1 to the exclusion of OU-2, even though the OU-1/OU-2 nomenclature had been used by EPA since 2001.  Dkt. 770-20 at 4:7-8 (Mr. Takata explaining those terms date to 2001).  Notably, Plaintiffs' non-litigation counsel, Mr. Lucero, attended the meeting and makes no claim that it was limited to OU-1.  Dkt. 770-18 n.6.

18
19

### 2. Plaintiffs' 2004 Contribution Lawsuit Encompassed the Entire Omega Superfund Site, Not Just OU-1.

20
21
22
23
24
25
26

On February 26, 2004, 14 days after EPA's presentation, Plaintiffs filed their first CERCLA contribution lawsuit (the "2004 Complaint") through their unincorporated association ("OPOG").  Doty Dec. Ex. 18 = Exhibit A hereto.  As both Paragraph 5 and the Prayer make clear, however, OPOG's members were the real parties in interest.  Paragraph 5 explains that OPOG's members "could otherwise sue in this action in their own right."  *Id.* at 8.  The Prayer sought recovery for costs incurred by "Plaintiff OPOG **and its members**."  *Id.* at 28:12-19; *id.* at 29:7-12 (emphasis supplied).

27
28

The Prayer also makes clear that Plaintiffs sought every dollar they would ever spend at the Omega Superfund Site not just OU-1 dollars.  The Prayer twice notes that

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1

3

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

they were seeking "costs expended and **to be expended** by . . . Plaintiff OPOG and its members **in response to** the **releases and/or threatened releases** of hazardous substances **from the Omega Site.**" *Id.* (emphasis supplied).  The term "Omega Site" is defined in Paragraph 4 of the 2004 Complaint to mean the "Omega Chemical Superfund Site," not OU-1 or any other limited portion of this Superfund site.  *Id.* at 8.[2]

The caption page of the 2004 Complaint lists two causes of action, and both are for "Contribution under CERCLA."  *Id.* at 1.  Each cause of action identifies the CERCLA "facility" at issue as the "Omega Site," not OU-1 or any other limited portion of this Superfund site.  *Id.* ¶¶ 148, 158.  Both causes of action invoke CERCLA Section 113(f)(1), the version of CERCLA contribution activated when litigation over a facility is or has been filed under Section 106 or 107 of CERCLA.  *Id.* at ¶¶ 150, 160; *compare* 42 U.S.C. § 9613(f)(1) (authorizing Section 113(f)(1) claims during **or** after litigation filed under Sections 106 and 107).  Plaintiffs could rely on Section 113(f)(1) because they had been sued in 2000 by EPA under both Sections 106 and 107.  Dkt. 785 (EPA's 2000 complaint which was not limited to OU-1, or the "Phase 1a" area as OU-1 was then known).

### 3. The 2007 Settlement Was Similarly Site-Wide, and it Imposed Obligations on Plaintiffs That Are Indistinguishable from Activities Listed In Exhibit 1.

As the Tentative correctly notes, "Site" is defined in the 2007 Settlement to mean the entire Omega Superfund Site, just as it was defined in Plaintiffs' 2004 Complaint.  Tentative at 10-11.  Thus, in a site-wide fashion, the 2007 Settlement addressed the burdens and obligations of being "pursue[d]" by EPA.  Doty Dec. Ex. 6A § 1.02 (freedom from being "pursue[d]" by EPA noted as consideration).  More importantly for purposes of evaluating Plaintiffs' offer of proof, under Section 3.02(a) of the 2007 Settlement, Plaintiffs could not sit back and do nothing vis-à-vis EPA and this

---

[2] The definition of site and the Prayer thus dispose of Plaintiffs' claim that only OU-1 was "the subject of Plaintiffs' previous cost recovery efforts."  Dkt. 789 at 1:23-24.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO

071915\9872487v1

4

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

Superfund site after Judge Hatter approved the 2007 Settlement (as Plaintiffs claimed at the hearing and claim at Dkt. 789 at 11:1-14:1).

To the contrary, under the 2007 Settlement Plaintiffs were contractually obligated to engage with EPA with the objective of securing, at a minimum, site-wide EPA-sanctioned contribution protection for Plaintiffs' counter-parties in the 2007 Settlement. Doty Dec. Ex. 6A § 3.02(a). Nothing in either Section 1.02 or 3.02(a) suggests that Plaintiffs could limit the mandated negotiations to OU-1.

The 2007 Settlement also provides that if at any point in the mandated dialogue/negotiation process, EPA (or a state regulatory body) "request[ed] or demand[ed]" any manner of "work . . . regarding regional groundwater contamination alleged to be attributed to the Site," all such work was Regional Response Work under Section 2.16 and a "Settled" matter, not an "Excluded" matter, under Sections 5.01 and 5.02. Doty Dec. Ex. 6A §§ 2.16, 5.01 and 5.02. As between the settling parties, **all responsibility for Regional Response Work and the costs thereof fell to Plaintiffs** except for certain limited payments that might be required of the parties listed on Exhibit A in the future. *Id.* §§ 3.01(a) and 5.03.

With Footnote 15 in the Tentative and its relationship to the 2007 Settlement thus addressed, Moving Defendants turn now to the details of Plaintiffs' offer of proof.

**B.     The Record Demonstrates That All of the Costs Now Sought Are Covered By the 2007 Agreement and Were In Process Long <u>Before</u> the OU-2 Consent Decree Imposed <u>Any</u> Obligations on Plaintiffs.**

**1.     Plaintiffs' OU-2 Response Activities Started When Plaintiffs' <u>Only</u> Obligations Relative to OU-2 Arose From the 2007 Settlement.**

The Exhibit 1 portion of Plaintiffs' offer of proof addresses costs incurred over a nearly 10-year period from January 2009 to the present. For the vast majority of that period, Plaintiffs' obligations vis-à-vis OU-2 were as stated in the 2007 Settlement: (1) engage with EPA to secure EPA-sanctioned site-wide contribution protection for

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1

5

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE: STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

1    Plaintiffs' counter-parties in the 2007 Settlement (Section 3.02); (2) assume

2    responsibility for any "requests or demands" EPA might make concerning Regional

3    Response Work; (Sections 3.01(a), 2.16, and 2.19—assumption of responsibilities and

4    costs, definition of Regional Response Work, and definition of "Site," respectively);

5    and (3) endure being "pursued" by EPA (Section 1.02's statement of consideration).

6         Conversely, Plaintiffs had **no** legal obligations relative to OU-2 under the

7    consent decree approved by this Court until the end of March 2017.  Paragraph 99 of

8    that decree is quite specific on this point.  It provides that the agreements in the decree

9    are "voidable" at the "sole discretion of any Party" until this Court had approved the

10   decree.  If voided, the agreement could not be used as evidence in any litigation.  The

11   decree was thus literally not worth the paper it was printed on prior to this Court's late

12   March 2017 approval order.  Dkt. 29-1 ¶ 99 (case no. 2:16-cv-02696-GW-E) (page

13   85:4-7 in the original).

14        By the time the decree became enforceable and binding, at the end of March

15   2017, Plaintiffs' OU-2 die had long-since been cast.  Exhibit 1 confirms that Plaintiffs

16   were already millions of dollars into the OU-2 response action by March 2017.  All of

17   the following had occurred **before** the March 2017 decree had **any** legal force

18   whatsoever:  (1) EPA has issued the ROD (2011); (2) EPA had issued Special Notice

19   Letters requesting settlement offers (2012); (3) Plaintiffs had formed their working

20   partnership with McKesson (2014-2015); (4) Plaintiffs had negotiated a term sheet

21   (2014-2015); and (5) Plaintiffs had (in 2016) begun work "based on [the] term sheet"

22   reached through the discussions/negotiations with EPA that were required and

23   contemplated by Section 3.02 of the 2007 Settlement.[3]

24   _____

25   [3] But for Plaintiffs need to conform history to their strained legal arguments, the
     timeline for their OU-2 work would have begun in the previous century.  Exhibit 1

26   treats EPA's 2009 request for input on the remedial investigation as response work.
     But EPA requested OU-2 remedial investigation from Plaintiffs in the 1990s.  *See* Dkt.

27   740 at 5:16-6:2; Doty Dec. Ex. 9 (Plaintiffs' 1996 groundwater testing 1,700 feet

28   downgradient from the Omega plant site).  Exhibit 1 similarly treats assessment of

## 2. The 2007 Settlement Obligated Plaintiffs to do Key Tasks Listed in Exhibit 1 and it Fully Anticipated Other Tasks Listed There.

Section 3.02(a) of the 2007 Settlement required Plaintiffs to enter into discussions with EPA, and Section 3.02(b) anticipated one or more consent decrees resulting from Plaintiffs' dialogue with EPA.  Doty Dec. Ex. 6A § 3.02(a)-(b).  With the exception of 2011, Exhibit 1 identifies such discussions and consent decree negotiations with EPA in every annual period from 2009 onward.  In other words, **the very thing Plaintiffs were contractually obligated to do under Section 3.02— conduct discussions/negotiations with EPA—is specifically and repeatedly characterized as response work in Exhibit 1 for the years 2012 - 2015.**

This fact defeats Plaintiffs' mantra that "everything OU-2 was a remote contingency under the 2007 Settlement."  *E.g.,* Dkt. 789 11:1-14:1.  Discussions and negotiations with EPA cannot qualify as 24-carat gold response activity in Exhibit 1 but then be dismissed as mere contingent detritus when mandated by Section 3.02 of the 2007 Settlement.  And, *a fortiori*, Plaintiffs' claim that they incurred no costs under the 2007 Settlement (Dkt. 789 at 5:-7) is false.  Delivering the contribution protection and releases envisioned by Section 3.02 may have taken Plaintiffs 10 years, but Plaintiffs **did** perform on their commitment to deliver those benefits.  Plaintiffs performed by, among other things, spending money to work with EPA on preparing for and implementing the cleanup program everyone could see coming as of the February 12, 2004 EPA meeting discussed above in Section A.1.

Section 1.02 of the 2007 Settlement reinforces this point.  It articulates the consideration for the agreement with reference to which of the settling parties would, post-agreement, deal with the risks and burdens should EPA "pursue" further work at

---

down gradient source properties as OU-2 work.  But similar work and discussions with EPA occurred in 1998, 2000, and 2003.  Doty Dec. Exs. 10, 11, 12, and 16 (first bullet). In light of foregoing, Plaintiffs' claim that EPA's 2009 request "triggered" Plaintiffs' OU-2 work (Dkt. 789 at 4:23) is not well taken.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO

071915\9872487v1

7

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

the Omega Superfund Site.  Doty Dec. Ex. 6A § 1.02.  The 2009 and 2012-2018 rows in Exhibit 1 identify costs associated with being pursued by EPA (first for comments on the RI and then for a Good Faith Offer and settlement).  All of that activity is plainly within the ambit of the 2007 Settlement.  Indeed, footnote 5 of Plaintiffs' latest filing explains that being "pursue[d] by EPA" (the very burden transferred by the 2007 Settlement) is what drove Plaintiffs' expenditures during 2011-2014.  Dkt. 789 at 5 n.5.

Further, as noted on page 10 of the Tentative, Section 2.01 of the 2007 Settlement addresses "request[s]" and "demand[s]" for work related to the regional groundwater contamination.  The boxes within Plaintiffs' Exhibit 1 for 2009, 2010, and 2012 reference various "requests" by EPA.  The boxes for 2013-2015 list follow-up discussions triggered by the 2012 "request" for a Good Faith Offer.  All such activity in those years is consequently, and explicitly, anticipated and addressed by Section 2.01 of the 2007 Agreement.

Finally, Sections 6.01 and 2.21 of the 2007 Settlement anticipate litigation against non-party PRPs.  The results of that litigation help determine whether and when Plaintiffs can obtain further recovery from certain of their counter-parties (i.e., those listed on Exhibit A to the agreement).  Doty Dec. Ex. 6A §§ 6.01, 2.21, and 5.03.  The 2011 row in Exhibit 1 identifies work to identify additional PRPs, particularly those associated with hexavalent chromium.  Similar work is noted in 2012 and 2013 (for Cr6, which is chemistry shorthand for hexavalent chromium), and in 2014 and 2015 (for pursuit of McKesson, one of the so-called down gradient source properties).  All of that activity falls within the scope of Sections 6.01 and 2.21 of the 2007 Settlement.

In sum, after Judge Hatter approved the 2007 Settlement, Plaintiffs undertook activities that conform **perfectly** to both what is required and what is anticipated in the 2007 Settlement.

/ / /

/ / /

### 3. Plaintiffs' Numbers Cannot Be Reconciled Without Including OU-2 Costs.

For Plaintiffs' offer of proof to reconcile with the undisputed facts of this matter, OU-2 costs had to be the vast bulk of what was resolved by the 2007 settlement. And that is the relevant inquiry here—**what** was settled not the *de minimis* status of Plaintiffs' generator counter-parties in the 2007 Settlement. *RSR Corp. v. Commercial Metals Co.,* 496 F.3d 552, 557 (6th Cir. 2007) (the statute looks to what was settled, not who settled).

As the Tentative notes, by 2007 Plaintiffs' had no less than $101.5 million dollars of Omega Superfund Site cleanup costs on their minds. Tentative at 9. The Keener Declaration indicates that OU-1 accounted for only $16 million of that total, and Mr. Keener did not identify any OU-3 costs as of 2007. Dkt. 789-3 ¶ 6. Plaintiffs' offer of proof thus highlights an $85.5 million hole, unexplained by Plaintiffs, as of 2007. That hole can only be filled by reference to the "regional" part of the groundwater cleanup at this Superfund site, i.e., OU-2. *See* Tentative at 10 (top half of the page).

Further confirmation for that conclusion is provided by switching from a 2007 perspective to a 2018 perspective. Using the Bureau of Labor Statistics' on-line inflation calculator, the $101.5 million of costs presented to Judge Hatter in 2007 are $124.6 million today. https://www.bls.gov/data/inflation_calculator.htm (last accessed July 24th at 5:00 p.m.). The Keener Declaration indicates that as of 2018, OU-1/OU-3 costs total approximately $50 million. Dkt. 789-3 ¶ 6. The difference is $74.6 million, and that is roughly the middle of the OU-2 cleanup cost range as most recently estimated by EPA. Doty Dec. Ex. 5 at 4 (OU-2 cost estimates ranging from $61 million to $81 million); *id.* at 2 ("PRPs to spend an estimated $70 million" on the OU-2 pump and treat systems).

In sum, Plaintiffs' numbers support only one conclusion: OU-2 was the heart of the dog in 2007, not some "contingent" flea that might get chewed on later.

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1

9

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE: STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

### 4. Plaintiffs' Post-Settlement Actions Confirm that OU-2 Cleanup Costs Were Resolved in the 2007 Settlement.

As noted during the colloquy on July 12th, the attorney for Plaintiffs' counter-parties in the 2007 Settlement (Albert Cohen of the Loeb and Loeb firm in Los Angeles) was deposed in this matter in (February 2018).  He testified that he had discussions with Plaintiffs' counsel (Mr. Lucero) in the summer of 2017 about the OU-2 consent decree and getting his (Mr. Cohen's) clients added as parties covered by the release and contribution protection provisions in that 2017 decree.  In the portion of the transcript provided in Doty Dec. Ex. 27, the examination used EPA's May 2016 fact sheet (Doty Dec. Ex. 5) for a description of the OU-2 cleanup, and the approximately $60-$80 million range of potential OU-2 costs.  Moving Defendants asked Mr. Cohen the following:

> Q:  "At any point since the [2007 Settlement] was signed, has any representative of OPOG . . . said to you words to the effect of ["]what we settled back in 2006 is different from this 60-80 million dollars' worth of [OU-2] costs" in EPA's fact sheet?
>
> A:  "No."
>
> Q:  "Setting aside any things you have been advised by clients, are you aware of **any** facts that would indicate that the $60- to $80 million of costs in EPA's Fact Sheet **are not within the costs . . . you all addressed in the [2007] Settlement Agreement?**"
>
> A:  [after objections and colloquy] **"I'm not aware of any."**[4]

Mr. Cohen is not, of course, the only relevant percipient witness.  Mr. Lucero is knowledgeable about the 2007 Settlement and his dealings with Mr. Cohen last summer.  Mr. Lucero has now submitted two declarations in connection with the

---

[4] Doty Dec. Ex. 27 at 5-7 (79:21-81:12 in the original, with the cited portions highlighted in yellow) (emphasis here supplied).

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO                     071915\9872487v1                     10                     MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

1    pending motion.  Dkt. 770-18 and Dkt. 789-2.  Neither disputes Mr. Cohen's testimony

2    that all OU-2 cleanup costs were included in the 2007 settlement.

3         Mr. Lucero also has never claimed that OU-2 cleanup work falls outside the

4    definition of Regional Response Work (Section 2.16 of the agreement); nor has he

5    claimed that Plaintiffs' OU-2 cleanup method is materially different from the work

6    described in Dr. Perina's 2004 memo.  Mr. Lucero has never claimed that either the

7    OU-2 work or the related costs fall outside of the "Release for Settled Matters"

8    provided in Section 5.01 of the 2007 Settlement.  He has never claimed that OU-2

9    cleanup costs are excluded from the definition of Total Collective Costs (Section 2.21),

10   or from the calculations called for by Section 5.03 of the 2007 settlement.  Perhaps

11   most importantly, Mr. Lucero has specifically addressed Plaintiffs' 2004 contribution

12   lawsuit (and the companion 2005 lawsuit), but he **never** claims that OU-2 costs were

13   outside the scope of the Prayer in either action.  Dkt. 770-18 ¶17.

14        Plaintiffs' star witness is thus mute on topics one would think he would address

15   quite vigorously if Plaintiffs' OU-2 costs were, in fact, left unresolved by the 2007

16   Settlement.  His silence speaks volumes.  In regards to whether Plaintiffs' OU-2 costs

17   are within or outside the scope of the 2007 Settlement, Plaintiffs are "non-movant[s]

18   [with only] bald assertions or a mere scintilla of evidence in [their] favor," and that is

19   "insufficient to withstand summary judgment."  Tentative at 14 (*citing FTC v.*

20   *Stefanchik,* 559 F.3d 924, 929 (9th Cir. 2009)).

### 5.  The Court Should Now Resolve this Motion by Applying the "With Respect To" Standard Congress Established in Section 113(g)(3)(B).

24        The language Congress crafted in Section 113(g)(3)(B) mandates one

25   straightforward question:  Is the 2007 Settlement an agreement "with respect to" the

26   costs now being sought?  Clearly, the answer is "yes" for the following reasons:

27        &#8226;  In February 2004, five years after the Site was listed on the NPL due to

28           extensive groundwater contamination (Doty Dec. Ex. 3 at 2:24-3:5), EPA

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO

071915\9872487v1

11

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

announced its "assumed" remedy—a pump and treat operation projected to cost in excess of $100 million over decades, and Plaintiffs began CERCLA contribution litigation, seeking every dollar they would ever spend at this Superfund site.

- Plaintiffs were paid millions of dollars to take on the burdens of being EPA's dance partner for the OU-2 cleanup; indeed, Plaintiffs freely admit that they sold unconditional, no-limits insurance covering "the risk . . . down the road" of being "jointly and severally liable . . . for all of OU-2." Dkt. 770 at 14:26-15:5.

- As required by the 2007 Settlement, Plaintiffs commenced negotiations with EPA and reached an OU-2 term sheet in 2014, three years **before** they would have **any** obligation whatsoever under the OU-2 Consent Decree and at a time when the 2007 Settlement was the **only** thing obligating Plaintiffs to do anything in regard to OU-2.

- Performing their obligations under the 2007 Settlement has left Plaintiffs **exactly** where they had to anticipate they would be—parties to an OU-2 consent decree of the type envisioned in Section 3.02.

- Nowhere in their voluminous filings on this motion have Plaintiffs **ever** claimed that the OU-2 cleanup work falls outside the 2007 Settlement's definition of Regional Response Work, outside its release provision, or outside its definition of Total Collective Costs.

- Last but certainly not least, Plaintiffs have **never** taken the position with their counter-parties in the 2007 Settlement that Plaintiffs' OU-2 costs are in any way, shape, or form distinct from the costs settled in the 2007 Settlement.  To the contrary, they added Mr. Cohen's "Exhibit B" clients to the 2017 Consent Decree without payment of one additional penny precisely because the 2007 Settlement comprehensively and definitively resolved OU-2 liability.

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
SAN FRANCISCO

071915\9872487v1

12

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

Moving Defendants respectfully submit that the record now provides evidentiary clarity, and thus their motion should be granted.[5]

### C.   The Legal Arguments in Plaintiffs' Sur-Reply Are Unavailing.

#### 1.   Plaintiffs' Assertion that They Could Not Bring a Section 113 Claim for OU-2 Costs in 2007 is Clearly Wrong.

Plaintiffs make this claim at page 4:3-11, 9:1-2, and in Section IV.B of their latest filing.  This claim does not pass the straight face test.  Plaintiffs litigated a CERCLA contribution claim, inclusive of OU-2, from February 2004 until January 2010.  Doty Dec. Ex. 29 at 40 (PACER docket sheet for the 2004 Complaint).  In other words, Plaintiffs not only could have litigated an OU-2 contribution claim as of 2007, they **were** litigating that claim during all of 2007.

#### 2.   Plaintiffs' Assertion that There is a "Payments Made/Duty to Pay" Trigger for the Limitations Period is Also Wrong.

This argument is found primarily at Dkt. 2:2-9 and Section IV.A in Plaintiffs' latest filing.  It was addressed extensively in Moving Defendants' Reply.  Dkt. 779 at 3:1-8:13.  It was properly rejected on page 20 of the Tentative.  The Ninth Circuit clearly has not read Plaintiffs' hoped-for limitations into Section 113(g)(3)(B), and it has cast great doubt on the propriety of Plaintiffs' request for this Court to read Plaintiffs' proposed limitations into that part of the statute.

#### 3.    Plaintiffs' Whack-a-Mole Approach Should be Rejected.

Plaintiffs' latest filing plays this game repeatedly, positing Section 107 and Section 113(f)(3)(B) bailouts should their Section 113(f)(1) claim meet its end in this motion, and by pretending they have not previously litigated a CERCLA contribution claim inclusive of OU-2.  *E.g.,* Dkt. 789 at n.4.  None of Plaintiffs' whack-a-mole

---

[5] Focusing on the question posed by the text of the statute also dispenses with more of Plaintiffs' footnote 4 whack-a-mole approach to CERCLA litigation.  Dkt. 789 at 5 n.4; *compare* Tentative at 21 (noting Plaintiffs' ever-shifting theories).

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
SAN FRANCISCO

071915\9872487v1

13

MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

1   "analysis" is viable.  First, Plaintiffs have never presented a valid Section 107 claim in

2   this action, nor could they do so.  As the portion of *Whittaker* cited on page 18 of the

3   Tentative makes clear, a Section 107 claim would require there to be no "pending"

4   Section 106 or 107 litigation in which Plaintiffs have been sued.  However, at all times

5   since August 2007, Plaintiffs have been defendants in the *Angeles* case pending with

6   Judge Hatter.  The preclusive impact of that pending case on Plaintiffs' resort to

7   Section 107 has already been briefed in this Court.  Dkt. 502.  As noted there,

8   Plaintiffs' filings with Judge Hatter confirm that the *Angeles* case concerns the

9   "regional groundwater."  *Id.* at 3:16-4:23.

10      Second, even if Plaintiffs cured the pleading problem noted in footnote 22 of the

11   Tentative, their resort to 42 U.S.C. § 113(f)(3)(B) would fail.  Section 113(f)(3(B)

12   cannot be used to revive a time-barred Section 113(f)(1) claim, *ASARCO v. Celanese*

13   *Chem. Co.,* 792 F.3d 1203, 1214-15 (9th Cir. 2015), because that version of whack-a-

14   mole "circumvent[s] the statute of limitations" and rewards those who, like Plaintiffs

15   here, failed at "diligent pursuit of contribution claims following the entry of [a

16   judicially approved] settlement[]."  *Id.* at 1215.

17      Third, by seeking site-wide CERCLA contribution in 2004, for all past and future

18   costs at this Superfund site, and by obtaining judicial approval for settlements worth

19   millions of dollars via their 2004 site-wide, "all costs past and future" claim, Plaintiffs

20   necessarily took the position that such a contribution claim existed long before EPA

21   filed its 2016 *United States v. Abex* lawsuit, and long before this Court approved the

22   OU-2 Consent Decree, the events Plaintiffs now say gave them the ability to pursue

23   contribution.  Based on authorities previously presented Plaintiffs should be judicially

24   estopped from claiming that they had no site-wide, OU-2-inclusive CERCLA

25   contribution claim as of 2007.  Dkt.779 at 13:10-14:6.

26              **III.   CONCLUSION**

27      Plaintiffs have no authority suggesting that CERCLA contribution litigation may

28   proceed one PRP class at a time—i.e., generators only in the 2004 Complaint followed

LAW OFFICES OF
**COX, CASTLE &**
**NICHOLSON LLP**
SAN FRANCISCO     071915\9872487v1                    14                    MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

by down gradient owner/operators a decade later.  The statute instead proceeds by discrete sets of costs.  Tentative at 18-19 (discussion of *Whittaker*).  Plaintiffs' 2004 Complaint was for all costs, past and future, and so too was the 2007 Settlement. Plaintiffs thus had until 2010 to add Moving Defendants to the contribution lawsuit Judge Hatter heard.  Doing that posed no difficulty, however.  Exhibit 1 says Plaintiffs had what they consider to be OU-2 costs by 2009, and in February 2009 EPA gave Plaintiffs a list of down gradient parties including five of the Moving Defendants.  Doty Dec. Ex. 30.  Thus, the only "absurdity" here is Plaintiffs' request that this Court "ignore" the "express language of the statute," Dkt. 789 at 10:17-24, when *ASARCO* tells the Court not to do that.  792 F.3d at 1211.

In light of the record now available, summary judgment should be entered in Moving Defendants' favor on all of Plaintiffs' CERCLA claims.

DATED:  July 26, 2018                         COX, CASTLE & NICHOLSON LLP


                                              By: */s/  Robert P. Doty*
                                              Robert P. Doty
                                              Attorneys for Defendant
                                              PALMTREE ACQUISITION
                                              CORPORATION

LAW OFFICES OF
**COX, CASTLE &
NICHOLSON LLP**
SAN FRANCISCO          071915\9872487v1          15          MOVING DEFENDANTS' REPLY IN SUPPORT OF THEIR
MSJ RE:  STATUTE OF LIMITATIONS
2:14-CV-06456-GW-E

# Exhibit A

# EXHIBIT 18

1   Larry G. Gutteridge (SBN 105734)
    HANNA AND MORTON LLP
2   444 South Flower Street, Suite 1500
    Los Angeles, California 90071-2916
3   Telephone: (213) 628-7131
    Facsimile: (213) 623-3379
4
5   Keith F. Millhouse (SBN 126082)
    MILLHOUSE LAW GROUP
6   2815 Townsgate Road, Suite 330
    Westlake Village, California 91361
7   Telephone: (805) 230-2280
    Facsimile: (805) 230-2281
8
    Attorneys for Plaintiffs
9   OMEGA CHEMICAL PRP GROUP LLC
    OMEGA CHEMICAL PRP GROUP

10

11              UNITED STATES DISTRICT COURT

12      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13                              CV04-1340 GHK (RCx)

14  OMEGA CHEMICAL PRP GROUP       CASE NO.
    LLC, a Delaware limited liability
15  company, and OMEGA CHEMICAL    COMPLAINT FOR:
    PRP GROUP, an unincorporated
16  association                    1. CONTRIBUTION UNDER
17              Plaintiffs,           CERCLA AGAINST
                                      NON-FEDERAL DEFENDANTS;
18      v.
                                   2. CONTRIBUTION UNDER
19  AARON THOMAS COMPANY,             CERCLA AGAINST THE
    INC., a California corporation;   FEDERAL DEFENDANTS
20  ACTION PRINTED CIRCUITS,
    a California corporation;
21  AEROSCIENTIFIC
    CORPORATION, a California
22  corporation; AIR CONDITIONING
    CO. INC., a California corporation;
23  AIRCRAFT CYLINDER &
    TURBINE, INC., a California
24  corporation; ALPS ELECTRIC
    (NORTH AMERICA), INC.,
25  a California corporation;
    ARRAL INDUSTRIES, INC.,
26  a California corporation;
    ASHLAND, INC., an Ohio
27  corporation; AUTO COACH INC.,
    a California corporation;
28  BALDWIN PARK UNIFIED

3

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
001

EXHIBIT 18
002

```
2/27/2004 1:07:49 PM  Receipt #: 60000
        Cashier : NPONCE (LA 1-1)
Paid by: DDS LEGAL SUPPORT
CV04-1340
2004-086900   ...5 = Filing Fee Civil(1)
Amount :                      $60.00
CV04-1340
2004-510000   11 = Special Fund F/F(1)
Amount :                      $90.00
Check Payment : 3889 /        150.00
Total Payment :               150.00
```

1   SCHOOL DISTRICT, a California
    local school district; BEVELITE
2   ADLER, a California corporation;
    BOB NOBLES CHEVROLET, INC.,
3   a California corporation; BOWEN
    PRINTING, INC., a California
4   corporation; BUD'S OIL SERVICE,
    an Arizona corporation; C & W
5   PALLET, a California corporation;
    CABOT CORPORATION,
6   a Delaware corporation; CARVIN
    CORP., a California corporation;
7   CAST METAL FINISHING,
    a California corporation;
8   CBS BROADCASTING, INC.,
    a New York corporation;
9   CENTRE PROPERTIES LTD,
    an Illinois corporation;
10  CHATSWORTH PLATING CO.,
    a California corporation;
11  CHEM TECH SYSTEMS,
    a California corporation;
12  CHESAPEAKE INDUSTRIES, INC.,
    a Maryland corporation;
13  CHIERA, INC., a California
    corporation; CHILDREN'S
14  HOSPITAL OF LOS ANGELES,
    a non-profit California corporation;
15  CITY OF IRVINE, a California
    municipal corporation; CITY OF
16  LOS ANGELES, a California
    municipal corporation; CITY STEEL
17  TREATING, a California
    corporation; CLOPAY
18  CORPORATION, a Maryland
    corporation; COLUMBIA
19  SHOWCASE & CABINET CO.,
    a California corporation;
20  COMPETITIVE TRAILERS INC.,
    a California corporation; COUNTY
21  OF ORANGE, a California general
    law county; COUNTY OF SAN LUIS
22  OBISPO, a California general law
    county; CROWN COACH, INC.,
23  a Delaware corporation; CURTIS
    TECHNOLOGY, INC., a California
24  corporation; DALE CARTER'S
    SACRAMENTO PLATING, INC.,
25  a California corporation; DARNER
    MOTOR SALES, INC., an Arizona
26  corporation; DENSO SALES
    CALIFORNIA, INC., a California
27  corporation; DOMESTIC LINEN,
    a California corporation;
28  DURA PHARMACEUTICALS,

2

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
003

1   INC., a Delaware corporation;
    EAGLE MARINE SERVICES,
2   LTD., a Delaware corporation;
    EARL SCHEIB PAINT & SUPPLY
3   CO., a California corporation;
    ED-LIN AUTO BODY, INC.,
4   a California corporation; F.M.
    THOMAS AIR CONDITIONING,
5   a California corporation; FONG &
    FONG PRINTERS AND
6   LITHOGRAPHERS, INC.,
    a California corporation; FRESNO
7   UNIFIED SCHOOL DISTRICT,
    a California local school district;
8   GALLAGHER & FERGUSON ENG,
    a California corporation; GEO
9   INTERNATIONAL
    CORPORATION, a Delaware
10  corporation; GOOD MARC, INC.,
    a Nevada corporation; GRAYCON,
11  INC., a California corporation;
    GROUP ONE LABEL, INC.,
12  a California corporation; HARMON
    INDUSTRIES, INC., a Missouri
13  corporation; HERMETIC SEAL
    CORPORATION, a Delaware
14  corporation; HIGH VOLTAGE
    TRANSFORMER SERVICES CO.,
15  INC., a California corporation; HLM
    LABELING INCORPORATED,
16  a California corporation; HOLLY
    DECORATIONS, INC., a California
17  corporation; I & I DEBURRING,
    INC., a California corporation;
18  I COAT COMPANY, a California
    corporation; I CORP., dba DIGMOR
19  CALIFORNIA, an Ohio corporation;
    IMO INDUSTRIES, INC.,
20  a Delaware corporation; INDALEX
    INC., dba COLUMBIA PACIFIC
21  ALUMINUM, an Oregon
    corporation; INTERNATIONAL
22  LABEL & TAPE CO., a California
    corporation; IT CORPORATION,
23  a California corporation; J AND S
    LABORATORIES
24  INCORPORATED, a California
    corporation; JACKSON
25  CORPORATION, a California
    corporation; JET PROPULSION
26  LABORATORY, a Division of the
    California Institute of Technology,
27  a California non-profit corporation;
    KEY MECHANICAL SERVICE
28  COMPANY, a California

3

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
004

1  corporation; LAGUNA
LABORATORIES, INC., a California
2  corporation; LARSCO, INC.,
a California corporation;
3  LOS ANGELES UNIFIED SCHOOL
DISTRICT, a California local school
4  district; LUBRICATION COMPANY
OF AMERICA, a California
5  corporation; MAGNETIC DATA,
INC., a California corporation;
6  MALLINCKRODT, INC.,
a Delaware corporation; MAXON
7  INDUSTRIES, INC., a California
corporation; MAYONI
8  ENTERPRISES, a California
corporation; McGRAW EDISON
9  COMPANY, a Delaware corporation;
MICROPOLIS, a Delaware
10  corporation; MID-CAL PAINTING
& DRYWALL, INC., a California
11  corporation; MIGHTY MOVER
TRAILERS, INC., a California
12  corporation; MINSON
CORPORATION, a California
13  corporation; MNEMONICS INC.,
a California corporation; MORGAN
14  GALLACHER, INC., a California
corporation; NORTHSTAR
15  ELECTRONICS, INC., a Texas
corporation; OMNI METAL
16  FINISHING, INC., a California
corporation; PAINTING &
17  STRIPPING CORPORATION OF
AMERICA, a California corporation;
18  PAN PACIFIC FISHERIES, INC.,
a California corporation; PARA
19  PLATE & PLASTICS CO. INC.,
a California corporation;
20  PASADENA CITY COLLEGE,
a California community college;
21  PASMINCO INCORPORATED,
a California corporation; PEERLESS
22  CINE PRODUCTS, a California
corporation; PENSKE
23  CORPORATION, a California
corporation; PETRO LOCK, INC.,
24  a California corporation;
PETROLEUM TESTING SERVICE
25  INC., a California corporation;
PHILIPS ELECTRONICS NORTH
26  AMERICA CORPORATION,
a Delaware corporation; PHOTO
27  CHEMICAL PRODUCTS OF
CALIFORNIA, INC., a California
28  corporation; PRECISION TAG &

4

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
005

1   LABEL CORPORATION,
    a California corporation; PREMIER
2   REFRACTORIES, INC., a Delaware
    corporation; PUTZMEISTER INC.,
3   a Delaware corporation; QUAKER
    CHEMICAL CORPORATION,
4   a Pennsylvania corporation;
    R AND R INDUSTRIAL WASTE
5   HAULERS, INC., a California
    corporation; RAPHAEL, INC.,
6   a California corporation; RICCOBON
    & COMPANY, a California
7   corporation; RINCHEM CO. INC.,
    a New Mexico corporation;
8   RIVERSIDE COUNTY
    PUBLISHING CO., a California
9   corporation; ROBERTS MFG CO.,
    a California corporation; S/R
10  SWEEPS CO., a California
    corporation; SERVIDYNE
11  INCORPORATED, a Georgia
    corporation; SHARPE
12  MANUFACTURING CO.,
    a California corporation; SIMPSON
13  STRONG-TIE COMPANY INC.,
    a California corporation; SOLDER
14  STATION-ONE, INC., a California
    corporation; SOUTHWEST
15  CHEMICAL CO., a California
    corporation; SQUARE D
16  COMPANY, a Delaware corporation;
    SUMMIT ENVIRONMENTAL
17  CORP., a Nevada corporation;
    THE SIGNS AND SERVICES
18  COMPANY, a California corporation;
    TYCO INTERNATIONAL (US) INC.,
19  a Massachusetts corporation;
    U.S. FOODSERVICE INC.,
20  a Delaware corporation; UNICOR
    FEDERAL PRISON INDUSTRIES,
21  a United States Government
    corporation; UNISTRUT
22  CORPORATION, a Delaware
    corporation; UNITED STATES
23  COAST GUARD, an entity of the
    United States Government;
24  UNITED STATES DEPARTMENT
    OF AGRICULTURE, FOREST
25  SERVICE, an entity of the
    United States Government;
26  UNITED STATES DEPARTMENT
    OF DEFENSE, AIR FORCE,
27  an entity of the United States
    Government; UNITED STATES
28  DEPARTMENT OF DEFENSE,

5

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
006

1   ARMY, an entity of the United States
    Government; UNITED STATES
2   DEFENSE LOGISTICS AGENCY,
    an entity of the United States
3   Government; UNITED STATES
    DEPARTMENT OF ENERGY,
4   an entity of the United States
    Government; UNITED STATES
5   DEPARTMENT OF VETERANS
    AFFAIRS, an entity of the
6   United States Government; UTILITY
    BODY COMPANY, a California
7   corporation; VALLEY MOTOR
    CENTER, INC., a Delaware
8   corporation; VENTURA
    TOWNEHOUSE, INC., a California
9   corporation; VICTOR GRAPHICS,
    a Maryland corporation; VITAREL
10  MICROELECTRONICS, INC.,
    a California corporation; WESTERN
11  CIRCUITS INC., a California
    corporation; WILDER'S PAINTING,
12  a California corporation,

13          Defendants.

14

15

16      Plaintiffs OMEGA CHEMICAL PRP GROUP LLC and OMEGA

17  CHEMICAL PRP GROUP allege as follows:

18

19              **JURISDICTION AND VENUE**

20      1.      This Court has subject matter jurisdiction over these claims pursuant to

21  28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 9613(b) (CERCLA

22  contribution).

23      2.      This action involves the Omega Chemical Corporation Superfund Site

24  in Whittier, California.

25      3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that

26  the claims for relief arose in this District and the releases or threatened releases of

27  hazardous substances giving rise to these claims occurred in this District.

28  (42 U.S.C. § 9613(b)).

                                    6

EXHIBIT 18
007

## PARTIES

### PLAINTIFFS

4.     Plaintiff OMEGA CHEMICAL PRP GROUP LLC, a Delaware limited liability company ("Omega Group LLC"), is the owner of claims for contribution which have previously been assigned to it by entities that have been identified as potentially responsible parties in connection with the Omega Chemical Corporation Superfund Site, located in Whittier, California ("Omega Site") and which have expended monies in response to releases and/or threatened releases of hazardous substances from the Omega Site.

5.     Plaintiff OMEGA CHEMICAL PRP GROUP is an unincorporated association ("OPOG") that has expended monies in response to releases and/or threatened releases of hazardous substances from the Omega Site and has members who could otherwise sue in this action in their own right.

6.     Investigations are ongoing regarding the claims and the parties responsible for damages, injuries, and the costs as alleged therein. The allegations of this Complaint are made on information and belief and are based upon the investigation conducted to date. This Complaint will be amended or supplemented if additional investigation or analysis so warrants.

### NON-FEDERAL DEFENDANTS

7.     At all times herein relevant, Defendant AARON THOMAS COMPANY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

8.     At all times herein relevant, Defendant ACTION PRINTED CIRCUITS was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

7

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
008

1      9.     At all times herein relevant, Defendant AEROSCIENTIFIC

2   CORPORATION was a corporation incorporated under the laws of the State of

3   California, authorized to do business in the State of California, County of

4   Los Angeles.

5      10.     At all times herein relevant, Defendant AIR CONDITIONING CO.

6   INC., was a corporation incorporated under the laws of the State of California,

7   authorized to do business in the State of California, County of Los Angeles.

8      11.     At all times herein relevant, Defendant AIRCRAFT CYLINDER &

9   TURBINE, INC., was a corporation incorporated under the laws of the State of

10  California, authorized to do business in the State of California, County of

11  Los Angeles.

12     12.     At all times herein relevant, Defendant ALPS ELECTRIC

13  (NORTH AMERICA), INC., was a corporation incorporated under the laws of the

14  State of California, authorized to do business in the State of California, County of

15  Los Angeles.

16     13.     At all times herein relevant, Defendant ARRAL INDUSTRIES, INC.,

17  was a corporation incorporated under the laws of the State of California, authorized

18  to do business in the State of California, County of Los Angeles.

19     14.     At all times herein relevant, Defendant ASHLAND, INC., was a

20  corporation incorporated under the laws of the State of Ohio, authorized to do

21  business in the State of California, County of Los Angeles.

22     15.     At all times herein relevant, Defendant AUTO COACH INC., was a

23  corporation incorporated under the laws of the State of California, authorized to do

24  business in the State of California, County of Los Angeles.

25     16.     At all times herein relevant, Defendant BEVELITE ADLER was a

26  corporation incorporated under the laws of the State of California, authorized to do

27  business in the State of California, County of Los Angeles.

28     17.     At all times herein relevant, Defendant BOB NOBLES CHEVROLET,

8

EXHIBIT 18
009

1    INC., was a corporation incorporated under the laws of the State of California,

2    authorized to do business in the State of California, County of Los Angeles.

3         18.    At all times herein relevant, Defendant BOWEN PRINTING was a

4    corporation incorporated under the laws of the State of California, authorized to do

5    business in the State of California, County of Los Angeles.

6         19.    At all times herein relevant, Defendant BUD'S OIL SERVICE was a

7    corporation incorporated under the laws of the State of Arizona, authorized to do

8    business in the State of California, County of Los Angeles.

9         20.    At all times herein relevant, Defendant C & W PALLET was a

10   corporation incorporated under the laws of the State of California, authorized to do

11   business in the State of California, County of Los Angeles.

12        21.    At all times herein relevant, Defendant CABOT CORPORATION was

13   a corporation incorporated under the laws of the State of Delaware, authorized to do

14   business in the State of California, County of Los Angeles.

15        22.    At all times herein relevant, Defendant CARVIN CORP. was a

16   corporation incorporated under the laws of the State of California, authorized to do

17   business in the State of California, County of Los Angeles.

18        23.    At all times herein relevant, Defendant CAST METAL FINISHING

19   was a corporation incorporated under the laws of the State of California, authorized

20   to do business in the State of California, County of Los Angeles.

21        24.    At all times herein relevant, Defendant CBS BROADCASTING, INC.,

22   was a corporation incorporated under the laws of the State of New York, authorized

23   to do business in the State of California, County of Los Angeles.

24        25.    At all times herein relevant, Defendant CENTRE PROPERTIES LTD.

25   was a corporation incorporated under the laws of the State of Illinois, authorized to

26   do business in the State of California, County of Los Angeles.

27        26.    At all times herein relevant, Defendant CHATSWORTH PLATING

28   CO. was a corporation incorporated under the laws of the State of California,

9

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
010

1    authorized to do business in the State of California, County of Los Angeles.

2        27.    At all times herein relevant, Defendant CHEM TECH SYSTEMS was

3    a corporation incorporated under the laws of the State of California, authorized to

4    do business in the State of California, County of Los Angeles.

5        28.    At all times herein relevant, Defendant CHESAPEAKE

6    INDUSTRIES, INC., was a corporation incorporated under the laws of the State of

7    Maryland, authorized to do business in the State of California, County of

8    Los Angeles.

9        29.    At all times herein relevant, Defendant CHIERA, INC., was a

10   corporation incorporated under the laws of the State of California, authorized to do

11   business in the State of California, County of Los Angeles.

12       30.    At all times herein relevant, Defendant CHILDREN'S HOSPITAL OF

13   LOS ANGELES was a non-profit corporation incorporated under the laws of the

14   State of California, authorized to do business in the State of California, County of

15   Los Angeles.

16       31.    At all times herein relevant, Defendant CITY STEEL TREATING was

17   a corporation incorporated under the laws of the State of California, authorized to

18   do business in the State of California, County of Los Angeles.

19       32.    At all times herein relevant, Defendant CLOPAY CORPORATION

20   was a corporation incorporated under the laws of the State of Maryland, authorized

21   to do business in the State of California, County of Los Angeles.

22       33.    At all times herein relevant, Defendant COLUMBIA SHOWCASE &

23   CABINET CO. was a corporation incorporated under the laws of the State of

24   California, authorized to do business in the State of California, County of

25   Los Angeles.

26       34.    At all times herein relevant, Defendant COMPETITIVE TRAILERS

27   INC., was a corporation incorporated under the laws of the State of California,

28   authorized to do business in the State of California, County of Los Angeles.

10

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
011

1    35.    At all times herein relevant, Defendant CROWN COACH, INC., was a

2    corporation incorporated under the laws of the State of Delaware, authorized to do

3    business in the State of California, County of Los Angeles.

4    36.    At all times herein relevant, Defendant CURTIS TECHNOLOGY,

5    INC., was a corporation incorporated under the laws of the State of California,

6    authorized to do business in the State of California, County of Los Angeles.

7    37.    At all times herein relevant, Defendant DALE CARTER'S

8    SACRAMENTO PLATING, INC., was a corporation incorporated under the laws

9    of the State of California, authorized to do business in the State of California,

10   County of Los Angeles.

11   38.    At all times herein relevant, Defendant DARNER MOTOR SALES,

12   INC., was a corporation incorporated under the laws of the State of Arizona,

13   authorized to do business in the State of California, County of Los Angeles.

14   39.    At all times herein relevant, Defendant DENSO SALES

15   CALIFORNIA, INC., was a corporation incorporated under the laws of the State of

16   California, authorized to do business in the State of California, County of

17   Los Angeles.

18   40.    At all times herein relevant, Defendant DOMESTIC LINEN was a

19   corporation incorporated under the laws of the State of California, authorized to do

20   business in the State of California, County of Los Angeles.

21   41.    At all times herein relevant, Defendant DURA PHARMACEUTICALS,

22   INC., was a corporation incorporated under the laws of the State of Delaware,

23   authorized to do business in the State of California, County of Los Angeles.

24   42.    At all times herein relevant, Defendant EAGLE MARINE SERVICES,

25   LTD., was a corporation incorporated under the laws of the State of Delaware,

26   authorized to do business in the State of California, County of Los Angeles.

27   43.    At all times herein relevant, Defendant EARL SCHEIB PAINT &

28   SUPPLY CO. was a corporation incorporated under the laws of the State of

11

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
012

1   California, authorized to do business in the State of California, County of

2   Los Angeles.

3       44.    At all times herein relevant, Defendant ED-LIN AUTO BODY, INC.,

4   was a corporation incorporated under the laws of the State of California, authorized

5   to do business in the State of California, County of Los Angeles.

6       45.    At all times herein relevant, Defendant F.M. THOMAS AIR

7   CONDITIONING was a corporation incorporated under the laws of the State of

8   California, authorized to do business in the State of California, County of

9   Los Angeles.

10      46.    At all times herein relevant, Defendant FONG & FONG PRINTERS

11  AND LITHOGRAPHERS, INC., was a corporation incorporated under the laws of

12  the State of California, authorized to do business in the State of California, County

13  of Los Angeles.

14      47.    At all times herein relevant, Defendant GALLAGHER & FERGUSON

15  ENG was a corporation incorporated under the laws of the State of California,

16  authorized to do business in the State of California, County of Los Angeles.

17      48.    At all times herein relevant, Defendant GEO INTERNATIONAL

18  CORPORATION was a corporation incorporated under the laws of the State of

19  Delaware, authorized to do business in the State of California, County of

20  Los Angeles.

21      49.    At all times herein relevant, Defendant GOOD MARC, INC., was a

22  corporation incorporated under the laws of the State of Nevada, authorized to do

23  business in the State of California, County of Los Angeles.

24      50.    At all times herein relevant, Defendant GRAYCON, INC., was a

25  corporation incorporated under the laws of the State of California, authorized to do

26  business in the State of California, County of Los Angeles.

27      51.    At all times herein relevant, Defendant GROUP ONE LABEL, INC.,

28  was a corporation incorporated under the laws of the State of California, authorized

12

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
013

1    to do business in the State of California, County of Los Angeles.

2        52.    At all times herein relevant, Defendant HARMON INDUSTRIES,

3    INC., was a corporation incorporated under the laws of the State of Missouri,

4    authorized to do business in the State of California, County of Los Angeles.

5        53.    At all times herein relevant, Defendant HERMETIC SEAL

6    CORPORATION was a corporation incorporated under the laws of the State of

7    Delaware, authorized to do business in the State of California, County of

8    Los Angeles.

9        54.    At all times herein relevant, Defendant HIGH VOLTAGE

10   TRANSFORMER SERVICES CO., INC., was a corporation incorporated under the

11   laws of the State of California, authorized to do business in the State of California,

12   County of Los Angeles.

13       55.    At all times herein relevant, Defendant HLM LABELING

14   INCORPORATED was a corporation incorporated under the laws of the State of

15   California, authorized to do business in the State of California, County of

16   Los Angeles.

17       56.    At all times herein relevant, Defendant HOLLY DECORATIONS,

18   INC., was a corporation incorporated under the laws of the State of California,

19   authorized to do business in the State of California, County of Los Angeles.

20       57.    At all times herein relevant, Defendant I & I DEBURRING, INC., was

21   a corporation incorporated under the laws of the State of California, authorized to

22   do business in the State of California, County of Los Angeles.

23       58.    At all times herein relevant, Defendant I COAT COMPANY was a

24   corporation incorporated under the laws of the State of California, authorized to do

25   business in the State of California, County of Los Angeles.

26       59.    At all times herein relevant, Defendant I CORP., dba DIGMOR

27   CALIFORNIA, was a corporation incorporated under the laws of the State of Ohio,

28   authorized to do business in the State of California, County of Los Angeles.

13

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
014

60.   At all times herein relevant, Defendant IMO INDUSTRIES, INC., was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California, County of Los Angeles.

61.   At all times herein relevant, Defendant INDALEX INC., dba COLUMBIA PACIFIC ALUMINUM, was a corporation incorporated under the laws of the State of Oregon, authorized to do business in the State of California, County of Los Angeles.

62.   At all times herein relevant, Defendant INTERNATIONAL LABEL & TAPE CO. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

63.   At all times herein relevant, Defendant IT CORPORATION was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

64.   At all times herein relevant, Defendant J AND S LABORATORIES INCORPORATED was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

65.   At all times herein relevant, Defendant JACKSON CORPORATION was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

66.   At all times herein relevant, Defendant KEY MECHANICAL SERVICE COMPANY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

67.   At all times herein relevant, Defendant LAGUNA LABORATORIES, INC., was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California, County of Los Angeles.

68.   At all times herein relevant, Defendant LARSCO, INC., was a

14

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
015

1   corporation incorporated under the laws of the State of California, authorized to do
2   business in the State of California, County of Los Angeles.

3       69.    At all times herein relevant, Defendant LUBRICATION COMPANY
4   OF AMERICA was a corporation incorporated under the laws of the State of
5   California, authorized to do business in the State of California, County of
6   Los Angeles.

7       70.    At all times herein relevant, Defendant MAGNETIC DATA, INC.,
8   was a corporation incorporated under the laws of the State of California, authorized
9   to do business in the State of California, County of Los Angeles.

10       71.    At all times herein relevant, Defendant MALLINCKRODT, INC., was
11   a corporation incorporated under the laws of the State of Delaware, authorized to do
12   business in the State of California, County of Los Angeles.

13       72.    At all times herein relevant, Defendant MAXON INDUSTRIES, INC.,
14   was a corporation incorporated under the laws of the State of California, authorized
15   to do business in the State of California, County of Los Angeles.

16       73.    At all times herein relevant, Defendant MAYONI ENTERPRISES was
17   a corporation incorporated under the laws of the State of California, authorized to
18   do business in the State of California, County of Los Angeles.

19       74.    At all times herein relevant, Defendant McGRAW EDISON
20   COMPANY was a corporation incorporated under the laws of the State of
21   Delaware, authorized to do business in the State of California, County of
22   Los Angeles.

23       75.    At all times herein relevant, Defendant MICROPOLIS was a
24   corporation incorporated under the laws of the State of Delaware, authorized to do
25   business in the State of California, County of Los Angeles.

26       76.    At all times herein relevant, Defendant MID-CAL PAINTING &
27   DRYWALL, INC., was a corporation incorporated under the laws of the State of
28   California, authorized to do business in the State of California, County of Los Angeles.

15

1    77.    At all times herein relevant, Defendant MIGHTY MOVER

2    TRAILERS, INC., was a corporation incorporated under the laws of the State of

3    California, authorized to do business in the State of California, County of Los Angeles.

4    78.    At all times herein relevant, Defendant MINSON CORPORATION

5    was a corporation incorporated under the laws of the State of California, authorized

6    to do business in the State of California, County of Los Angeles.

7    79.    At all times herein relevant, Defendant MNEMONICS INC. was a

8    corporation incorporated under the laws of the State of California, authorized to do

9    business in the State of California, County of Los Angeles.

10    80.    At all times herein relevant, Defendant MORGAN GALLACHER,

11    INC., was a corporation incorporated under the laws of the State of California,

12    authorized to do business in the State of California, County of Los Angeles.

13    81.    At all times herein relevant, Defendant NORTHSTAR

14    ELECTRONICS, INC., was a corporation incorporated under the laws of the State

15    of Texas, authorized to do business in the State of California, County of

16    Los Angeles.

17    82.    At all times herein relevant, Defendant OMNI METAL FINISHING,

18    INC., was a corporation incorporated under the laws of the State of California,

19    authorized to do business in the State of California, County of Los Angeles.

20    83.    At all times herein relevant, Defendant PAINTING & STRIPPING

21    CORPORATION OF AMERICA was a corporation incorporated under the laws of

22    the State of California, authorized to do business in the State of California, County

23    of Los Angeles.

24    84.    At all times herein relevant, Defendant PAN PACIFIC FISHERIES,

25    INC., was a corporation incorporated under the laws of the State of California,

26    authorized to do business in the State of California, County of Los Angeles.

27    85.    At all times herein relevant, Defendant PARA PLATE & PLASTICS

28    CO. INC. was a corporation incorporated under the laws of the State of California,

16

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
017

1   authorized to do business in the State of California, County of Los Angeles.

2        86.    At all times herein relevant, Defendant PASMINCO

3   INCORPORATED was a corporation incorporated under the laws of the State of

4   California, authorized to do business in the State of California, County of Los Angeles.

5        87.    At all times herein relevant, Defendant PEERLESS CINE

6   PRODUCTS was a corporation incorporated under the laws of the State of

7   California, authorized to do business in the State of California, County of Los Angeles.

8        88.    At all times herein relevant, Defendant PENSKE CORPORATION

9   was a corporation incorporated under the laws of the State of California, authorized

10   to do business in the State of California, County of Los Angeles.

11        89.    At all times herein relevant, Defendant PETRO LOCK, INC., was a

12   corporation incorporated under the laws of the State of California, authorized to do

13   business in the State of California, County of Los Angeles.

14        90.    At all times herein relevant, Defendant PETROLEUM TESTING

15   SERVICE INC. was a corporation incorporated under the laws of the State of

16   California, authorized to do business in the State of California, County of Los Angeles.

17        91.    At all times herein relevant, Defendant PHILIPS ELECTRONICS

18   NORTH AMERICA CORPORATION was a corporation incorporated under the

19   laws of the State of Delaware, authorized to do business in the State of California,

20   County of Los Angeles.

21        92.    At all times herein relevant, Defendant PHOTO CHEMICAL

22   PRODUCTS OF CALIFORNIA, INC., was a corporation incorporated under the

23   laws of the State of California, authorized to do business in the State of California,

24   County of Los Angeles.

25        93.    At all times herein relevant, Defendant PRECISION TAG & LABEL

26   CORPORATION was a corporation incorporated under the laws of the State of

27   California, authorized to do business in the State of California, County of

28   Los Angeles.

17

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
018

1      94.    At all times herein relevant, Defendant PREMIER REFRACTORIES,

2 INC., was a corporation incorporated under the laws of the State of Delaware,

3 authorized to do business in the State of California, County of Los Angeles.

4      95.    At all times herein relevant, Defendant PUTZMEISTER INC., was a

5 corporation incorporated under the laws of the State of Delaware, authorized to do

6 business in the State of California, County of Los Angeles.

7      96.    At all times herein relevant, Defendant QUAKER CHEMICAL

8 CORPORATION was a corporation incorporated under the laws of the State of

9 Pennsylvania, authorized to do business in the State of California, County of

10 Los Angeles.

11      97.    At all times herein relevant, Defendant R AND R INDUSTRIAL

12 WASTE HAULERS, INC., was a corporation incorporated under the laws of the

13 State of California, authorized to do business in the State of California, County of

14 Los Angeles.

15      98.    At all times herein relevant, Defendant RAPHAEL, INC., was a

16 corporation incorporated under the laws of the State of California, authorized to do

17 business in the State of California, County of Los Angeles.

18      99.    At all times herein relevant, Defendant RICCOBON & COMPANY

19 was a corporation incorporated under the laws of the State of California, authorized

20 to do business in the State of California, County of Los Angeles.

21      100.    At all times herein relevant, Defendant RINCHEM CO. INC. was a

22 corporation incorporated under the laws of the State of New Mexico, authorized to

23 do business in the State of California, County of Los Angeles.

24      101.    At all times herein relevant, Defendant RIVERSIDE COUNTY

25 PUBLISHING CO. was a corporation incorporated under the laws of the State of

26 California, authorized to do business in the State of California, County of

27 Los Angeles.

28      102.    At all times herein relevant, Defendant ROBERTS MFG CO. was a

18

EXHIBIT 18
019

1   corporation incorporated under the laws of the State of California, authorized to do

2   business in the State of California, County of Los Angeles.

3       103.   At all times herein relevant, Defendant S/R SWEEPS CO. was a

4   corporation incorporated under the laws of the State of California, authorized to do

5   business in the State of California, County of Los Angeles.

6       104.   At all times herein relevant, Defendant SERVIDYNE

7   INCORPORATED was a corporation incorporated under the laws of the State of

8   Georgia, authorized to do business in the State of California, County of Los Angeles.

9       105.   At all times herein relevant, Defendant SHARPE

10  MANUFACTURING CO. was a corporation incorporated under the laws of the

11  State of California, authorized to do business in the State of California, County of

12  Los Angeles.

13      106.   At all times herein relevant, Defendant SIMPSON STRONG-TIE

14  COMPANY INC. was a corporation incorporated under the laws of the State of

15  California, authorized to do business in the State of California, County of Los Angeles.

16      107.   At all times herein relevant, Defendant SOLDER STATION-ONE,

17  INC., was a corporation incorporated under the laws of the State of California,

18  authorized to do business in the State of California, County of Los Angeles.

19      108.   At all times herein relevant, Defendant SOUTHWEST CHEMICAL

20  CO. was a corporation incorporated under the laws of the State of California,

21  authorized to do business in the State of California, County of Los Angeles.

22      109.   At all times herein relevant, Defendant SQUARE D COMPANY was a

23  corporation incorporated under the laws of the State of Delaware, authorized to do

24  business in the State of California, County of Los Angeles.

25      110.   At all times herein relevant, Defendant SUMMIT ENVIRONMENTAL

26  CORP. was a corporation incorporated under the laws of the State of Nevada,

27  authorized to do business in the State of California, County of Los Angeles.

28      111.   At all times herein relevant, Defendant THE SIGNS AND SERVICES

19

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
020

1   COMPANY was a corporation incorporated under the laws of the State of

2   California, authorized to do business in the State of California, County of Los Angeles.

3          112.   At all times herein relevant, Defendant TYCO INTERNATIONAL

4   (US) INC. was a corporation incorporated under the laws of the State of

5   Massachusetts, authorized to do business in the State of California, County of Los Angeles.

6          113.   At all times herein relevant, Defendant U.S. FOODSERVICE INC.

7   was a corporation incorporated under the laws of the State of Delaware, authorized

8   to do business in the State of California, County of Los Angeles.

9          114.   At all times herein relevant, Defendant UNISTRUT CORPORATION

10   was a corporation incorporated under the laws of the State of Delaware, authorized

11   to do business in the State of California, County of Los Angeles.

12          115.   At all times herein relevant, Defendant UTILITY BODY COMPANY

13   was a corporation incorporated under the laws of the State of California, authorized

14   to do business in the State of California, County of Los Angeles.

15          116.   At all times herein relevant, Defendant VALLEY MOTOR CENTER,

16   INC., was a corporation incorporated under the laws of the State of Delaware,

17   authorized to do business in the State of California, County of Los Angeles.

18          117.   At all times herein relevant, Defendant VENTURA TOWNEHOUSE,

19   INC., was a corporation incorporated under the laws of the State of California,

20   authorized to do business in the State of California, County of Los Angeles.

21          118.   At all times herein relevant, Defendant VICTOR GRAPHICS was a

22   corporation incorporated under the laws of the State of Maryland, authorized to do

23   business in the State of California, County of Los Angeles.

24          119.   At all times herein relevant, Defendant VITAREL

25   MICROELECTRONICS, INC., was a corporation incorporated under the laws of

26   the State of California, authorized to do business in the State of California, County

27   of Los Angeles.

28          120.   At all times herein relevant, Defendant WESTERN CIRCUITS INC.

20

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
021

1   was a corporation incorporated under the laws of the State of California, authorized
2   to do business in the State of California, County of Los Angeles.

3       121.   At all times herein relevant, Defendant WILDER'S PAINTING was a
4   corporation incorporated under the laws of the State of California, authorized to do
5   business in the State of California, County of Los Angeles.

6       122.   At all times herein relevant, Defendant BALDWIN PARK UNIFIED
7   SCHOOL DISTRICT was a department, agency and/or instrumentality of the State
8   of California, doing business in the County of Los Angeles.

9       123.   At all times herein relevant, Defendant FRESNO UNIFIED SCHOOL
10   DISTRICT was a department, agency and/or instrumentality of the State of
11   California, doing business in the County of Los Angeles.

12       124.   At all times herein relevant, Defendant JET PROPULSION
13   LABORATORY, A DIVISION OF THE CALIFORNIA INSTITUTE OF
14   TECHNOLOGY, was a non-profit department, agency and/or instrumentality of the
15   State of California, doing business in the County of Los Angeles.

16       125.   At all times herein relevant, Defendant LOS ANGELES UNIFIED
17   SCHOOL DISTRICT was a department, agency and/or instrumentality of the State
18   of California, doing business in the County of Los Angeles.

19       126.   At all times herein relevant, Defendant PASADENA CITY COLLEGE
20   was a department, agency and/or instrumentality of the State of California, doing
21   business in the County of Los Angeles.

22       127.   At all times herein relevant, Defendant CITY OF IRVINE was a
23   municipality incorporated under the laws of the State of California.

24       128.   At all times herein relevant, Defendant CITY OF LOS ANGELES was
25   a municipality incorporated under the laws of the State of California.

26       129.   At all times herein relevant, Defendant COUNTY OF ORANGE,
27   CALIFORNIA, was a general law county of the State of California.

28       130.   At all times herein relevant, Defendant COUNTY OF SAN LUIS

21

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
022

1    OBISPO, CALIFORNIA, was a general law county of the State of California.

2        131.   Each of the Non-Federal Defendants is a "person" as defined in

3    CERCLA § 101(21), 42 U.S.C. § 9601(21).

4

5                         **FEDERAL DEFENDANTS**

6        132.   At all times herein relevant, Defendant UNICOR FEDERAL PRISON

7    INDUSTRIES was a United States Government corporation.

8        133.   At all times herein relevant, Defendant UNITED STATES COAST

9    GUARD was an entity of the United States Government.

10       134.   At all times herein relevant, Defendant UNITED STATES

11   DEPARTMENT OF AGRICULTURE, FOREST SERVICE was an entity of the

12   United States Government.

13       135.   At all times herein relevant, Defendant UNITED STATES

14   DEPARTMENT OF DEFENSE, AIR FORCE was an entity of the United States

15   Government.

16       136.   At all times herein relevant, Defendant UNITED STATES

17   DEPARTMENT OF DEFENSE, ARMY was an entity of the United States

18   Government.

19       137.   At all times herein relevant, Defendant UNITED STATES DEFENSE

20   LOGISTICS AGENCY was an entity of the United States Government.

21       138.   At all times herein relevant, Defendant UNITED STATES

22   DEPARTMENT OF ENERGY was an entity of the United States Government.

23       139.   At all times herein relevant, Defendant UNITED STATES

24   DEPARTMENT OF VETERANS AFFAIRS was an entity of the United States

25   Government.

26       140.   Each of the Federal Defendants is a "person" as defined in CERCLA

27   § 101(21), 42 U.S.C. § 9601(21).

28

22

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
023

### GENERAL ALLEGATIONS

141.   The Omega Chemical Corporation operated a spent solvent and refrigerant recycling and treatment facility from approximately 1976 through 1991, at 12504 East Whittier Boulevard, Whittier, California.  During Omega Chemical Corporation's years of operations, drums and bulk loads of waste solvent, chemicals and hazardous materials from various industrial activities and generators were processed at the Omega Site and other activities occurred respecting hazardous substances received at the Omega Site.

142.   The EPA issued Unilateral Administrative Order 95-15 ("UAO") on May 9, 1995, and amended the same in September 1995.  Among other things, the UAO required the removal of various containers of materials, drums of hazardous waste and decommissioning of certain equipment at the Omega Site.  The second portion of the UAO required an investigation of the extent of soil and groundwater contamination at, or from, the Omega Site.

143.   In response to the UAO, assignors to Plaintiff Omega Chemical LLC and members of Plaintiff OPOG undertook to characterize and remove various drums from the Omega Site, decommission equipment, remove grossly contaminated soils and began the investigation of the extent of any soil and groundwater contamination.

144.   On January 9, 1999, pursuant to CERCLA § 105, 42 U.S.C. § 9605, EPA placed the Omega Site on the National Priorities List, set forth at 40 C.F.R., Part 300, Appendix B.  64 Fed. Reg. 2950.

145.   On or about April 1, 1999, the EPA issued special notice letters to a group of potentially responsible parties, including assignors to Plaintiff Omega Chemical LLC and members of Plaintiff OPOG, in connection with the Omega Site.  On or about May 28, 1999, assignors to Plaintiff Omega Chemical LLC and members of Plaintiff OPOG, among others, submitted a good faith response to the special notice letter.  On February 28, 2001, the EPA and assignors to Plaintiff

23

EXHIBIT 18
024

1   Omega Chemical LLC and members of Plaintiff OPOG, among other parties,

2   entered into a Partial Consent Decree for work on the Omega Site. *United States of*

3   *America v. Abex Aerospace Division, et al.*, U.S.D.C. (Central District—CA,

4   Western Div.) CV-00-012471.  The work is being conducted by assignors to

5   Plaintiff Omega Chemical LLC, Plaintiff OPOG and members of Plaintiff OPOG,

6   in accordance with the requirements of the Partial Consent Decree and its

7   Appendices.  The work being performed by the Plaintiff Omega Chemical LLC,

8   Plaintiff OPOG and members of Plaintiff OPOG constitutes a response action

9   pursuant to CERCLA § 113.

10          146.   There were, and are, releases and threatened releases, within the

11   meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22), of hazardous substances,

12   including, but not limited to, perchloroethylene ("PCE") and trichloroethylene

13   ("TCE"), at the Omega Site.

14

15                          **FIRST CAUSE OF ACTION**

16          **(Contribution Under CERCLA Against Non-Federal Defendants)**

17          147.   Plaintiffs incorporate herein by reference each and every allegation in

18   paragraphs 1 through 146, inclusive.

19          148.   The Omega Site is a "facility" as that term is defined in CERCLA,

20   42 U.S.C. § 9601(9).

21          149.   Non-Federal Defendants, and each of them, are a "person" as that term

22   is defined within the meaning of CERCLA, 42 U.S.C. § 9601(21), that is

23   potentially liable for costs incurred in response to the release or threatened release

24   of hazardous substances.

25          150.   CERCLA § 113(f)(1), 42 U.S.C. § 9613(g)(2), provides that any

26   person may seek contribution from any other person who is liable or potentially

27   liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

28          151.   Non-Federal Defendants, individually and collectively, either

                                    24

EXHIBIT 18
025

1    generated, transported or arranged for the disposal or treatment of hazardous

2    substances, owned or possessed by them as that term is defined in CERCLA

3    § 101(9), 42 U.S.C. § 9601(9) at the Omega Site.

4         152.   Non-Federal Defendants, and each of them, have caused, or are

5    otherwise responsible for, the releases and/or threatened releases of hazardous

6    substances as those terms are defined in CERCLA, 42 U.S.C. §§ 9601(22) and (14)

7    respectively, into the environment at, or from, the Omega Site.

8         153.   The releases and/or threatened releases of hazardous substances of

9    Non-Federal Defendants, and each of them, have caused and continue to cause

10   contamination of the soil, groundwater and environment at and from the Omega

11   Site.

12        154.   The releases and/or threatened releases of hazardous substances into

13   the environment have caused Plaintiff OPOG and its members and Plaintiff Omega

14   Group LLC's assignors to incur response costs in excess of $6,500,000 for the

15   defense, investigation and response to said releases and threatened releases for

16   which Non-Federal Defendants, and each of them, are liable under CERCLA,

17   42 U.S.C. §§ 9607 and 9613.

18        155.   The response costs incurred and/or to be incurred by Plaintiff OPOG and its

19   members and  Plaintiff Omega Group LLC's assignors have been and will be necessary

20   and consistent with the National Contingency Plan.

21        156.   Non-Federal Defendants, and each of them, are liable to Plaintiffs for

22   contribution and indemnification under CERCLA, 42 U.S.C. §§ 9607 and 9613 for all

23   past and future response actions and costs in such amounts as determined by the Court

24   using such equitable factors as appropriate.

25   ///

26   ///

27   ///

28   ///

25

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
026

## SECOND CAUSE OF ACTION

### (Contribution Under CERCLA Against the Federal Defendants)

157.   Plaintiff OPOG incorporates herein by reference each and every allegation in paragraphs 1 through 156, inclusive.

158.   The Omega Site is a "facility" as that term is defined in CERCLA, 42 U.S.C. § 9601(9).

159.   Federal Defendants, and each of them, are a "person" as that term is defined within the meaning of CERCLA, 42 U.S.C. § 9601(21), that is potentially liable for costs incurred in response to the release or threatened release of hazardous substances.

160.   CERCLA § 113(f)(1), 42 U.S.C. § 9613(g)(2), provides that any person may seek contribution from any other person who is liable or potentially liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

161.   Federal Defendants, individually and collectively, either generated, transported or arranged for the disposal or treatment of hazardous substances, owned or possessed by them as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9) at the Omega Site.

162.   Federal Defendants, and each of them, have caused, or are otherwise responsible for, the releases and/or threatened releases of hazardous substances as those terms are defined in CERCLA, 42 U.S.C. §§ 9601(22) and (14) respectively, into the environment at, or from, the Omega Site.

163.   The releases and/or threatened releases of hazardous substances of Federal Defendants, and each of them, have caused and continue to cause contamination of the soil, groundwater and environment at and from the Omega Site.

164.   The releases and/or threatened releases of hazardous substances into the environment have caused Plaintiff OPOG and its members to incur response costs in excess of $6,500,000 for the defense, investigation and response to said

26

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
027

1  releases and threatened releases for which Federal Defendants, and each of them,

2  are liable under CERCLA, 42 U.S.C. §§ 9607 and 9613.

3     165.   The response costs incurred and/or to be incurred by Plaintiff OPOG

4  and its members have been and will be necessary and consistent with the National

5  Contingency Plan.

6     166.   Federal Defendants, and each of them, are liable to Plaintiff OPOG for

7  contribution and indemnification under CERCLA, 42 U.S.C. §§ 9607 and 9613 for

8  all past and future response actions and costs in such amounts as determined by the

9  Court using such equitable factors as appropriate.

10

11                              **PRAYER**

12     WHEREFORE, Plaintiff Omega Group LLC and Plaintiff OPOG pray for

13  judgment as follows:

14     1.   For contribution and/or indemnification from Non-Federal Defendants

15  of costs and damages equal to all of, or that portion of, the costs expended and to be

16  expended by Plaintiff Omega Group LLC's assignors and Plaintiff OPOG and its

17  members in response to the releases and/or threatened releases of hazardous

18  substances from the Omega Site that the Court determines to be allocable to

19  Non-Federal Defendants;

20     2.   For a declaration that Non-Federal Defendants, and each of them, are

21  liable under CERCLA for all of, or that portion of, the costs of response necessary

22  to investigate, respond to, and abate the releases and threatened releases of

23  hazardous substances from the Omega Site that the Court determines to be allocable

24  to each Defendant;

25     3.   For a declaration that Non-Federal Defendants, and each of them, shall

26  be liable for contribution and/or indemnity of the costs of response to be incurred

27  by Plaintiff Omega Group LLC's assignors and Plaintiff OPOG and its members in

28  the future, pursuant to obligations under the Partial Consent Decree, CERCLA,

                                 27
                    COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
028

1   which the Court determines to be allocable to each Defendant;

2       4.      For a judicial determination declaring the rights and obligations of the

3   parties in connection with the claims for relief asserted in this action;

4       5.      For reasonable attorneys' fees and costs of suit incurred herein; and

5       6.      For such other and further relief as the Court may deem just and

6   proper; and

7       WHEREFORE, Plaintiff OPOG prays for judgment as follows:

8       1.      For contribution and/or indemnification from Federal Defendants of

9   costs and damages equal to all of, or that portion of, the costs expended and to be

10  expended by Plaintiffs OPOG and its members in response to the releases and/or

11  threatened releases of hazardous substances from the Omega Site that the Court

12  determines to be allocable to Federal Defendants;

13      2.      For a declaration that Federal Defendants, and each of them, are liable

14  under CERCLA for all of, or that portion of, the costs of response necessary to

15  investigate, respond to, and abate the releases and threatened releases of hazardous

16  substances from the Omega Site that the Court determines to be allocable to each

17  Federal Defendant;

18      3.      For a declaration that Federal Defendants, and each of them, shall be

19  liable for contribution and/or indemnity of the costs of response to be incurred by

20  Plaintiffs OPOG and its members in the future, pursuant to its obligations under the

21  Partial Consent Decree, CERCLA and California law, which the Court determines

22  to be allocable to each Federal Defendant;

23      4.      For a judicial determination declaring the rights and obligations of the

24  parties in connection with the claims for relief asserted in this action;

25      5.      For reasonable attorneys' fees and costs of suit incurred herein; and

26      6.      For such other and further relief as the Court may deem just and

27  proper.

28

28

COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
029

1    Dated:        February 26, 2004          HANNA AND MORTON LLP

2

3                                            By: _____

4                                                Larry G. Gutterridge

5                                            MILLHOUSE LAW GROUP

6

7                                            By: _____

8                                                Keith F. Millhouse

9                                            Attorneys for Plaintiff
                                             OMEGA CHEMICAL PRP GROUP LLC
                                             OMEGA CHEMICAL PRP GROUP
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       29
                             COMPLAINT FOR CONTRIBUTION UNDER CERCLA

EXHIBIT 18
030

# EXHIBIT 19