PETER A. NYQUIST (SBN 180953)
pnyquist@GreenbergGlusker.com
SEDINA L. BANKS (SBN 229193)
sbanks@GreenbergGlusker.com
SHERRY E. JACKMAN (SBN 274030)
sjackman@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone:  310.553.3610
Fax:  310.553.0687

ATTORNEYS FOR DEFENDANT UNION PACIFIC
RAILROAD COMPANY
[Additional Counsel Listed on Following Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCONIC INC., et al., | **JOINT RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES BY DEFS. (A) PMC SPECIALTIES GROUP, INC. AND FERRO CORPORATION (PMC PROPERTY)** |
| Plaintiffs, | |
| v. | **(B) UNION PACIFIC RAILROAD COMPANY (CHRYSLER PROPERTY),** |
| APC INVESTMENT CO., et al., | **(C) HALLIBURTON AFFILIATES, LLC.; INTERVENORS FIREMAN'S FUND INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY, AS INSURERS OF PALLEY SUPPLY COMPANY; AND KEKROPIA, INC. (PATSOURAS PROPERTY)** |
| Defendants. | |
| | [Joint Reply Brief; Declarations; Requests for Judicial Notice; and Requests for Evidentiary Rulings filed concurrently] |
| | **Date:      May 17, 2021** |
| | **Time:      8:30 a.m.** |

_GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP_
_2049 Century Park East, Suite 2600_
_Los Angeles, California 90067_

88151-00029/4016830.1

MOVING DEFENDANTS' RESPONSE TO
STATEMENT OF GENUINE DISPUTES

| | | Judge: | The Honorable George Wu |
|---|---|---|---|
| | | Place: | Courtroom 9D, 9th Floor |

AND RELATED CROSS
ACTIONS, COUNTERCLAIMS
AND THIRD-PARTY
COMPLAINTS

Additional Counsel

WILLIAM D. WICK (SBN 063462)
bwick@ww-envlaw.com
ANNA L. NGUYEN (SBN 226829)
anguyen@ww-envlaw.com
WACTOR & WICK LLP
3640 Grand Avenue, Suite 200
Oakland CA 94610-2023
Telephone: (510) 465-5750
ATTORNEYS FOR DEFENDANT HALLIBURTON AFFILIATES, LLC

EARL L. HAGSTRÖM, ESQ. (SBN 150958)
ehagstrom@behblaw.com
DANIEL E. TROWBRIDGE, ESQ. (SBN 301301)
dtrowbridge@behblaw.com
BASSI, EDLIN, HUIE & BLUM LLP
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:  (415) 397-9006
Facsimile:  (415) 397-1339
ATTORNEYS FOR DEFENDANT PMC SPECIALTIES GROUP, INC. AND
FERRO CORPORATION

FARHEENA HABIB, ESQ. (SBN 243405)
fhabib@behblaw.com
BASSI, EDLIN, HUIE & BLUM LLP
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:  (415) 397-9006
Facsimile:  (415) 397-1339
ATTORNEYS FOR INTERVENERS FIREMAN'S FUND INSURANCE
COMPANY AND FEDERAL INSURANCE COMPANY, AS INSURERS FOR
PALLEY SUPPLY COMPANY

VICTOR J. OTTEN (SBN 165800)
vic@ottenlawpc.com
OTTEN LAW, PC
5857 Pine Avenue, Suite B
Chino Hills, CA 91709
Telephone:  (310) 378-8533
Facsimile:  (310) 347-4225
ATTORNEYS FOR DEFENDANT KEKROPIA, INC.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO
STATEMENT OF GENUINE DISPUTES

Pursuant to the Court's May 1, 2018 Order (Dkt. 753), the following Moving Defendants submit the below Response to Plaintiffs' Statement of General Disputes:

## MOVING DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| **I. PMC Property**<br><br>**Moving Defendants: PMC Specialties Group, Inc. and Ferro Corporation** | |
| 1.    Plaintiffs disposed of thousands of tons of their hazardous wastes at the former Omega Chemical facility (now the epicenter of the Omega Superfund Site) over a 15-year period.<br><br>Supporting Evidence:<br>• Declaration of Earl Hagström in Support of PMC Specialties Group, Inc. and Ferro Corporation's (collectively, "PMC") Motion for Summary Judgment Re: CERLCA Liability ("Hagström Decl."), Ex. A [Excerpts of Final Remedial Investigation/Feasibility Study Reports Omega Chemical Corporation Superfund Site Operable Unit 2] ("OMEGA OU-2 RI/FS") at § 8.1.2 p. 8-4. | **Response:** Partially disputed, not supported by the cited evidence and immaterial.<br><br>**Evidence:** Plaintiffs do not dispute that they, or their predecessors, affiliated entities, assignees or obligees, are companies that allegedly sent chemicals to the Omega Chemical Corporation ("Omega Chemical") in Whittier, CA for appropriate processing and recycling, and that EPA contends that Omega Chemical failed to process, recycle or dispose of those chemicals properly. Docket No. 526, Fifth AC, ¶ 7; Docket No. 903-1, at #18605-18606 (Pls. Br. on Common Issues of L. in Support of Mot. for Partial Summ. J. as to Certain Elements of CERCLA Liability).<br><br>Plaintiffs also do not dispute the Omega Chemical facility is a |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Superfund site. Docket No. 770-2, at #14437 (Ex. A, 28) (OU-2 ROD, at 2-1). Plaintiffs do not dispute that Omega Chemical operated from approximately 1976 to 1991, an approximately 15-year period. *Id*.

The evidence cited does not state that Plaintiffs disposed of thousands of tons of their hazardous wastes at the former Omega Chemical facility over a 15-year period. *See* Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at # 17799) (OMEGA OU-2 RI/FS, at 8-4). It also does not state the Omega Chemical facility is now the "epicenter" of the Omega Chemical Superfund Site ("Omega Site").

Plaintiffs object to paragraph 3 as immaterial for purposes of deciding this motion for summary judgment. This fact does not bear on whether Plaintiffs can meet their burden to demonstrate: (1) the PMC Property is a CERCLA facility; (2) Defendants PMC Specialties Group, Inc. ("PMC") and Ferro Corporation ("Ferro") (together, the "PMC Defendants") are one of the four classes of persons that are liable under CERCLA; and (3) whether there has been a "release" or "threatened release" of hazardous substances from the PMC Property into OU-2 Groundwater (as defined in Footnote 1). *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 |

2

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

1.      Moving Parties' Response[1]

Responding Party's dispute is immaterial, Plaintiff acknowledges that the Omega Chemical facility it sent materials to their disposal resulted in the release of a plume over four miles long.

Supporting Evidence:
- Declaration of Earl Hagström in Support of PMC Specialties Group, Inc. and Ferro Corporation's (collectively, "PMC") Motion for Summary Judgment Re: CERLCA Liability ("Hagström Decl."), Ex. A [Excerpts of Final Remedial Investigation/Feasibility Study Reports Omega Chemical Corporation Superfund Site Operable Unit 2] ("OMEGA OU-2 RI/FS") at § 8.1.2 p. 8-4.

| 2.      Plaintiffs' toxic wastes contaminated not only the soil and groundwater at and under the Omega | **Response:** Partially disputed and not supported by the cited evidence. |
|---|---|

---

[1] While Plaintiffs improperly attempt to raise legal arguments in its responses to Statement of Genuine Disputes, it misstates the standard to which it is subject.  As the Statement of Uncontroverted facts and subsequent responses to the same are not the proper vehicle for making legal arguments, Plaintiffs' improper legal arguments do not constitute "Controverted material facts" and as a result, PMC will not address them here.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Site itself, but also contaminated the groundwater flowing from the Site—a plume of contamination that now extends at least *four and a half miles* downgradient of the Omega Site. The contaminated groundwater plume was designated by the U.S. Environmental Protection Agency ("EPA") as "Operable Unit 2," or "OU-2" for short.<br><br>Supporting Evidence:<br>• Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4. | **Evidence:** Plaintiffs do not dispute soil and groundwater at and under the Omega Site is contaminated. Docket No. 770-2, at #14432 (Ex. A, 16) (OU-2 ROD, at 1-1).<br><br>Plaintiffs do not dispute that EPA defines Operable Unit-2 of the Omega Site as "the contamination in groundwater generally downgradient and originating from the former Omega Chemical Corporation (Omega Chemical) facility in Whittier, California, much of which has commingled with chemicals released at other areas overlaying the OU2 groundwater plume."[2] *Id*.; RFJN, Ex. 5, at 111 (OU-2 Consent Decree).<br><br>Plaintiffs do not dispute that EPA describes the OU2 Groundwater contamination as a "continuous plume that is approximately 4 ½ miles long and 1 ½ miles wide." Docket No. 770-2, at #14437 (Ex. A, 21) (OU-2 ROD, at 1-1).<br><br>The PMC Defendants mischaracterize the evidence cited. Section 8.1.2 of the OMEGA OU-2 RI/FS does not specifically identify Plaintiffs as |

[2] OU-2 is defined in the September 2011 EPA OU-2 Record of Decision and in the March 31, 2017 OU-2 Consent Decree, entered between Plaintiffs and EPA; it is composed of contaminated groundwater generally downgradient of OU-1, commingled with chemicals released from properties near or within the OU-2 boundary, which is shown graphically in both the 2011 EPA Record of Decision and the 2017 Consent Decree (hereafter, "OU-2 Groundwater"). Docket No. 770-2, at #14432 (Ex. A, 000016) (OU-2 ROD, at 1-1); RFJN, Ex. 5, at 111 (OU-2 Consent Decree).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | responsible for the soil and groundwater contamination at and under the Omega Site, or the OU-2 Groundwater contamination downgradient of the Site. In fact, it acknowledges the Omega plume "flows under a densely developed commercial-industrial area, there are additional facilities whose releases of hazardous substances have reached groundwater and become commingled with the Omega contamination," and the OMEGA OU-2 RI/FS might not have "identified all sources of contamination within the OU2 area." *See* Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at # 17799) (OMEGA OU-2 RI/FS, at 8-4). |

2.    Moving Parties' Response

Plaintiff admits this fact is uncontroverted.  Plaintiffs do not dispute that they are responsible for soil and groundwater contamination at and under the Omega Site, and the OU-2 Groundwater contamination downgradient of the Site.  Plaintiff cites no evidence to controvert this uncontroverted fact, nor can it.

Notably, Plaintiff did not object to any of PMC's evidence.

Supporting Evidence:
- Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4.

| | |
|---|---|
| 3.    EPA identified the Plaintiffs as the primary source of OU-2 contamination, and EPA's environmental contractor, CH2M Hill, confirmed after years of investigation that Plaintiffs' waste releases from the | **Response:** Partially disputed, not supported by the cited evidence and immaterial.<br><br>**Evidence:** Plaintiffs do not dispute that EPA asserts Plaintiffs are responsible |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| former Omega Chemical facility are "the main source of contamination in OU-2.<br><br>Supporting Evidence:<br>• Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4. | for remediating the OU-2 Groundwater contamination. Docket No. 526, Fifth AC, ¶ 8; Docket No. 903-2, at #18629-18630 (Pls. Memo. of Points & Authorities in Support of Mot. for Partial Summ. J. as to Certain Elements of CERCLA Liability).<br><br>Plaintiffs do not dispute EPA's environmental contractor, CH2M Hill, conducted a Remedial Investigation ("OMEGA OU-2 RI/FS") of the Omega Site and § 8.1.2 of the report states "[t]he former Omega Chemical facility is the main source of groundwater contamination at OU2." Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at # 17799) (OMEGA OU-2 RI/FS, at 8-4).<br><br>The PMC Defendants, however, mischaracterize the evidence cited. Section 8.1.2 of the OMEGA OU-2 RI/FS does not specifically identify Plaintiffs as the primary source of the OU-2 Groundwater contamination. *See id.* In fact, it acknowledges the Omega plume "flows under a densely developed commercial-industrial area, there are additional facilities whose releases of hazardous substances have reached groundwater and become commingled with the Omega contamination," and the OMEGA OU-2 RI/FS might not have "identified all sources of contamination within the OU2 area." *Id.* |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Plaintiffs' object to paragraph 3 because their responsibility for contributing to the OU-2 Groundwater contamination is immaterial for purposes of deciding this motion for summary judgment. In this phase of the litigation, certain elements of the PMC Defendants' liability under CERCLA is at issue, not Plaintiffs'. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |
| 3.  Moving Parties' Response<br><br>Plaintiffs admit this fact is uncontroverted.  Plaintiffs' response does not dispute that they are responsible for soil and groundwater contamination at and under the Omega Site, and the OU-2 Groundwater contamination downgradient of the Site. Plaintiffs cite no evidence to controvert this uncontroverted fact, nor can they.<br><br>Supporting Evidence:<br>• Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4. | |
| 4.  For more than a decade, EPA has been investigating and identifying other parties that owned or operated on properties in the path of the OU-2 plume to assess whether operations or spills on any of those properties during the parties' ownership or operation of the property may have resulted in the incremental addition of hazardous | **Response:** Partially disputed, not supported by the cited evidence, misleading and immaterial.<br><br>**Evidence:**  Plaintiffs do not dispute the OMEGA OU-2 RI/FS was issued in August 2010, more than a decade ago. Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at # 17799) (OMEGA OU- |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| substances to the mass of Plaintiffs' contaminants already present in the OU-2 plume.  These parties are referred to as "potentially responsible parties" or PRPs.<br><br>Supporting Evidence:<br><br>    Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4. | 2 RI/FS, at 8-4).<br><br>The PMC Defendants mischaracterize the evidence cited and describe in a self-serving way. *See* Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at # 17799) (OMEGA OU-2 RI/FS, at 8-4). Section 8.1.2 of the OMEGA OU-2 RI/FS states: "The Omega plume is over 4 miles long, and because it flows under a densely developed commercial-industrial area, there are additional facilties whose releases of hazardous substances have reached groundwater and become commingled with the Omega contamination." *Id*. The OMEGA OU-2 RI/FS does not state the additional facilities whose releases of hazardous substances have reached groundwater and become commingled with the Omega contamination resulted in an "incremental addition of hazardous substances." *See id*. It also does not specifically identify Plaintiffs as the parties responsible for the "mass" of "contaminants already present in the OU-2 plume." *See id*.<br><br>Plaintiffs' object to paragraph 4 because their responsibility for contributing to the OU-2 Groundwater contamination is immaterial for purposes of deciding this motion for summary judgment. In this phase of the litigation, certain elements of the PMC Defendants' liability under CERCLA is at issue, not Plaintiffs'. In addition, |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | EPA's conduct of the Remedial Investigation is not determinative of the outcome of this summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

4.   Moving Parties' Response

Plaintiff does not controvert this fact with any supporting evidence. While Plaintiff argues that PMC mischaracterizes the evidence, Plaintiffs do not dispute that EPA has been investigating the Omega OU2 Superfund Site and the contamination emanating therefrom for more than ten years, and that it has been attempting to identify additional responsible parties. Plaintiffs cites no evidence to controvert this uncontroverted fact, nor can they.

Supporting Evidence:
- Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4.

| | |
|---|---|
| 5.   After identifying the universe of PRPs, EPA sent two types of letters to the PRPs, a "General Notice Letter" and a "Special Notice Letter." These letters inform the PRPs regarding their identification as a PRP, their potential liability at the Omega Superfund site, information regarding the site and other PRPs, and negotiations for the cleanup of the site.<br><br>Supporting Evidence: | **Response:** Partially disputed, not supported by the cited evidence and immaterial.<br><br>**Evidence:** Plaintiffs do not dispute that EPA sent "General Notice Letters" ("GNLs") or "Special Notice Letters" to numerous PRPs. Hagstrom Decl., Ex. B, at 21 (Docket No. 526, Fifth AC, ¶ 68 (alleging each defendant received a SNL, GNL or has not yet received a |

9

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Hagstrom Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4; Ex. B, [5AC] ¶ 68-83, 97-98 | notice letter)). The statement that EPA sent GNLs and SNLs to "the universe of PRPs" is overstated and misleading, and contradicted by the very evidence the PMC Defendants cite. Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at # 17799) (OMEGA OU-2 RI/FS, at 8-4). Section 8.1.2 of the OMEGA OU-2 RI/FS states: "The Omega plume is over 4 miles long, and because it flows under a densely developed commercial-industrial area, there are additional facilities whose releases of hazardous substances have reached groundwater and become commingled with the Omega contamination. Other sources of groundwater contamination at OU2 have been identified based on information obtained from file reviews and findings from field investigations. This investigation may not have identified all sources of contamination within the OU2 area, and the EPA may conduct additional investigations in the future." *Id*. Under CERCLA, EPA is not required to send notice letters to all entities that contributed contamination to OU-2 Groundwater and the Agency has not done so. EPA acknowledges there are state-led actions to clean up known source properties that are continuing to contribute to the OU-2 Groundwater contamination and that those actions |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| | must work in parallel with the EPA OU-2 groundwater containment remedy. *See* Dkt. 770-2, at #14433, #14440-14441 (Ex. A, 17, 24-25) (OU-2 ROD, at 1-2, 2-4, 2-5).<br><br>None of the evidence cited by the PMC Defendants describes the contents of a notice letter, though Plaintiffs do not dispute such information is set forth in Hagstrom Decl., Ex B. (Docket No. 526, Fifth AC, §§ 4-5).<br><br>Plaintiffs object to paragraph 5 as immaterial for purposes of deciding this motion for summary judgment. Though strong circumstantial evidence of Defendants' liability, EPA's issuance of a notice letter to the PMC Defendants would not directly prove any of the elements of PMC's or Ferro's liability under CERCLA and is, therefore, immaterial. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

5.    Moving Parties' Response

Plaintiff does not dispute EPA has been investigating the site for more than 10 years and that it has sent General or Special Notice letters to all entities and

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| individuals it has identified in its more than decade long investigation.<br><br>Supporting Evidence:<br><br>Hagstrom Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4; Ex. B, [5AC] ¶ 68-83, 97-98. | |
| 6.      EPA has *not* identified PMC, as a PRP following its investigation of the Omega OU-2 Plume, and has not issued any General Notice Letters or Special Notice Letters to PMC.<br><br>Supporting Evidence:<br>• Hagstrom Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4; Ex. B, [5AC] ¶ 68-83, 97-98. | **Response:** Partially disputed, mischaracterizes the evidence cited and immaterial.<br><br>**Evidence:** Plaintiffs do not dispute that, to date, EPA has not sent a GNL or SNL to PMC or Ferro. Hagstrom Decl., Ex. B (Docket No. 526, Fifth AC, ¶¶ 68, 97-98 (alleging PMC and Ferro have not yet received a notice letter)).<br><br>The evidence PMC and Ferro cite plainly states that EPA recognizes its investigations to date "may not have identified all sources of contamination within the OU2 area, and the EPA may conduct additional investigations in the future." Hagstrom Decl., Ex. A (Docket No. 902-47, at #17799 (Ex. A, 6) (OMEGA OU-2 RI/FS, at 8-4)). EPA could issue a GNL or SNL to PMC or Ferro in the future.<br><br>CERCLA does not require EPA to send notice letters to all entities that contributed contamination to OU-2 Groundwater. EPA acknowledges there are state-led actions to clean up known source properties that are continuing to contribute to the OU-2 Groundwater |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO
STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | contamination and that those actions must work in parallel with the EPA OU-2 Groundwater containment remedy. *See* Dkt. 770-2, at #14433, #14440-14441 (Ex. A, 17, 24-25) (OU-2 ROD, at 1-2, 2-4, 2-5). |
| | Finally, Plaintiffs object to paragraph 6 as immaterial for purposes of deciding this motion for summary judgment. Though strong circumstantial evidence of the PMC Defendants' liability, EPA's issuance of a notice letter to PMC or Ferro would not directly prove any of the elements of PMC's or Ferro's liability under CERCLA and is, therefore, immaterial. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

6.    Moving Parties' Response

Plaintiffs do not dispute that EPA has not identified PMC as a PRP following its investigation of the Omega OU-2 Plume, or that EPA has not issued any General Notice Letters or Special Notice Letters to PMC.  Plaintiff offers no evidence to controvert this uncontroverted fact.  Plaintiff only argues that after more than a decade, EPA might identify additional responsible parties, citing a 2010 report.  Notably, after an additional 11 years, EPA still has not identified PMC as a PRP, and has not issued any General Notice Letters or Special Notice Letters to PMC.

EPA's Guidance Document regarding Transmittal of Notice Letters provides that

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| "General Notice letters should be sent to all parties where there is sufficient evidence to make a preliminary determination of potential liability under section 107 of CERCLA."<br><br>Supporting Evidence:<br><br>Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4; Ex. B, [5AC] ¶ 68-83, 97-98.<br><br>Interim Guidance on Notice Letters, Negations, and Information Exchange, J. Winston Porter, US EPA, October 19, 1987 (https://www.epa.gov/sites/production/files/documents/tran-notlet-mem.pdf). | |
| 7.    PMC has not received either a General Notice Letter or Special Notice Letter and Plaintiff has not identified PMC as a "General Notice Letter" or "Special Notice Letter" defendant.<br><br>Supporting Evidence:<br>• Hagstrom Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4; Ex. B, [5AC] ¶ 68-83, 97-98. | **Response:** Undisputed, but immaterial.<br><br>**Evidence:** Plaintiffs incorporate their response to paragraph 6 herein. |
| 7.    Moving Parties' Response<br><br>This fact is uncontroverted.  PMC offered evidence in support of this fact, and Plaintiffs offered no evidence to dispute it.  Plaintiffs did not assert evidentiary objections to PMC's evidence. | |
| 8.    The PMC Site is located on 9.1 acres comprised of 10 parcels with separate Assessor Parcel Numbers and located at 10051 Romandel Avenue, Santa Fe Springs, California. | **Response:** Undisputed, but not supported by the evidence cited and, therefore, does not comply with Fed. R. Civ. P. 56(c)(1)(A). |

MOVING DEFENDANTS' RESPONSE TO
STATEMENT OF GENUINE DISPUTES

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Supporting Evidence:<br>• Declaration of Richard Vogl in Support of PMC Specialties Group, Inc. and Ferro Corporation's Motion for Summary Judgment Re: CERLCA Liability ("Vogl Decl.") ¶ 12a. | |
| 8.    Moving Parties' Response<br><br>This fact is uncontroverted.  PMC offered evidence in support of this fact, and Plaintiffs offered no evidence to dispute it.  Plaintiffs did not assert any evidentiary objections to PMC's evidence. | |
| 9.    The PMC SITE was operated as a chemical manufacturing plant operated by others beginning in approximately 1938 until 1986 when PMC operations began.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 12b. | **Response:** Partially disputed as incomplete.<br><br>**Evidence:** Ferro acquired certain parcels of the PMC Site by December 16, 1975, and Ferro admits it owned and operated a specialty chemical manufacturing facility at the PMC SITE from approximately 1976 until 1986. Declaration of Nancy Sher Cohen Supp. of Opp'n to Defs.' Mot. for Summ. J. ("Cohen Decl."), Exs. 6, at 81_ (Ferro Corp.'s Supp. Responses to Pls.' First Set of Interrogatories (Oct. 13, 2017), Supp. Response No. 4, at p. 8)), 2, at 21 (Waterstone Envtl., Inc., Site Audit Report Of The Former Productol Facility (Jan. 18, 1999) at 7 (Ferro Corporation purchased the plant and operated it until 1986 when the plant was purchased by PMC |

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Specialties, Inc.)). |
| 9.    Moving Parties' Response<br><br>This fact is uncontroverted.  PMC offered evidence in support of this fact, and Plaintiffs offered no evidence to dispute it.  Plaintiffs did not assert any evidentiary objections to PMC's evidence. | |
| 10.    Operations at the PMC Site were discontinued in 1992.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 12b. | **Response:** Undisputed, but misleading.<br><br>**Evidence:** Plaintiffs do not dispute various documents state operations at the PMC Site were discontinued in 1992. Nevertheless, there was already significant soil contamination at the PMC Property by the time operations were discontinued in 1992. Rebuttal Expert Report of Robert D. Mutch, Jr. P.Hg., P.E. ("Mutch Rebuttal Report"), Mar. 4, 2021, at § 2.7, Appendix A at 6-10. And, contamination remains in soil and groundwater at the PMC Property at present. Cohen Decl., Ex. 3, at 31-37 (Waterstone Envtl., Inc., Removal Action Workplan, May 22, 2020) at 40-46). |
| 10.    Moving Parties' Response<br><br>This fact is uncontroverted.  PMC offered evidence in support of this fact, and Plaintiffs offered no evidence to dispute it. | |
| 11.    The PMC SITE has been subject to California Department of Health Services (DHS) oversight since 1988 | **Response:** Partially disputed and immaterial.<br><br>**Evidence:** Mot. at 15. Plaintiffs do not |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| and California Department of Toxic Substances Control (DTSC) oversight since approximately 2006, resulting in PMC undertaking and completing multiple site assessment actions.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 12c. | dispute that the PMC Property has been subject to regulatory oversight by the entities referenced. But, PMC has not begun, yet alone completed, remediation of the soil contamination that has been present on the PMC Property for decades. Cohen Decl., Ex. 3, at 31-37_ (Waterstone Environmental, Inc., Removal Action Workplan, May 22, 2020, at 40-46). Contamination remains in soil and groundwater at the PMC Property at present. *Id. See also* Mutch Rebuttal Report, Mar. 4, 2021, at § 2.8 (site assessments are not equivalent to cleaning up the site and, to date, PMC has only submitted workplans to DTSC but not undertaken actual cleanup of the site).<br><br>Plaintiffs object to paragraph 11 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

11.   Moving Parties' Response

This fact is uncontroverted, as Plaintiff admits the Site has been subject to DHS/DTSC oversight since 1988, and Plaintiff does not dispute PMC has undertaken and completed multiple Site assessment activities.  As demonstrated

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| by Plaintiffs' response to Uncontroverted Fact 12, it is apparent that Plaintiff does not dispute that remedial activity has been undertaken.<br><br>Supporting Evidence:<br><br>Vogl Decl., ¶ 12c.  Plaintiffs' Statement of Genuine Disputes, at 12. | |
| 12.     The site operational equipment, all storage tanks, including 171 above-ground storage tanks and conveyance piping and structures were demolished and/or removed by November 1993.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions] | **Response:** Partially disputed as incomplete and misleading. Immaterial.<br><br>**Evidence:** Plaintiffs do not dispute McLaren/Hart Envtl. Eng'g decommissioned the PMC chemical facility between August 1992 and November 1993, which included "cleaning, demolishing, and removing all above-ground tanks, process equipment, pipelines and towers; and abatement of asbestos-containing material (ACM)." Cohen Decl., Ex. 15, at 188 (McLaren/Hart Envtl. Eng'g, Facility Decommissioning Report for PMC Specialties, Inc. (May 1994) at 1-1).<br><br>Significantly, there was already significant soil contamination at the PMC Property prior to 1992. Mutch Rebuttal Report, Mar. 4, 2021, at § 2.7, Appendix A at pp. 6-10.<br><br>And, despite the decommissioning activities from August 1992 to November 1993, contamination remains in soil and groundwater at the PMC Property at present. Cohen Decl., Ex._3, at 31-37_(Waterstone Envtl., Inc., Removal Action Workplan, May |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 22, 2020) at 40-46). Plaintiffs object to paragraph 12 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |
| 12.   Moving Parties' Response<br><br>This fact is uncontroverted, Plaintiffs do not dispute that all of the site operational equipment was removed by November 1993.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions] | |
| 13.   Following the demolition, the PMC Site was capped with asphalt and rolled base material and engineering controls were placed in certain areas to prevent rainwater from causing chemicals to leach in the soil and groundwater.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions]. | **Response:** Partially disputed. Immaterial. Actions taken at the PMC Property to date have not prevented chemicals to leach in the soil and groundwater, as no remedial action designed to directly address the soil contamination has yet been implemented.<br><br>**Evidence:**<br><br>Mot. at 15; Cohen Decl., Ex. 3, at 31-37_(Waterstone Environmental, Inc., Removal Action Workplan, May 22, 2020, at 40-46). |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Plaintiffs object to paragraph 13 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |
| 13.    Moving Parties' Response<br><br>This fact is uncontroverted.  Plaintiffs' response does not identify any dispute with the stated fact that the PMC Site was capped with asphalt and rolled base material and engineering controls were placed in certain areas to prevent rainwater from causing chemicals to leach in the soil in groundwater. Nor does it dispute that PMC took the remaining remedial actions set forth in Ex. S to the Vogl Declaration.  Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions]. | |
| 14.    Despite its extensive investigation of the Omega Chemical Site and the Omega OU-2 Plume, EPA has never identified Ferro Corporation or PMC Specialties Group, Inc. (collectively, "PMC") as a responsible party, or even a potentially responsible party with respect to the Omega OU-2 Plume.<br><br>Supporting Evidence:<br>• Hagstrom Decl., Ex. A [OMEGA | **Response:** Partially disputed as unsupported by the evidence cited and immaterial.<br><br>**Evidence:** Plaintiffs do not dispute that, to date, EPA has not sent a GNL or SNL to PMC or Ferro. Hagstrom Decl., Ex. B (Docket No. 526, Fifth AC, ¶¶ 68, 97-98 (alleging PMC and Ferro have not yet received a notice letter)). |

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| OU-2 RI/FS] at § 8.1.2 p. 8-4. | The cited evidence does not state EPA has undertaken "extensive investigations." *See* Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at #17799) (OMEGA OU-2 RI/FS at § 8.1.2 p. 8-4). It does not state that EPA has never identified the PMC Defendants as a "responsible party" or "even a potentially responsible party with respect to the Omega OU-2 Plume." *Id*. |
| | In fact, the evidence the PMC Defendants cite plainly states that EPA recognizes its investigations to date "may not have identified all sources of contamination within the OU2 area, and the EPA may conduct additional investigations in the future." Hagstrom Decl., Ex. A (Docket No. 902-47, at #17799 (Ex. A, 6) (OMEGA OU-2 RI/FS, at 8-4)). EPA could issue a GNL or SNL to PMC or Ferro in the future. |
| | Plaintiffs object to paragraph 14 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 14.    Moving Parties' Response<br><br>This fact is uncontroverted.  Plaintiffs have offered no evidence to dispute, nor does it dispute, that despite its decades long superfund investigation, EPA has never identified Ferro Corporation or PMC Specialties Group, Inc. (collectively, "PMC") as a responsible party, or even a potentially responsible party with respect to the Omega OU-2 Plume.  While Plaintiff offers a statement that EPA may not have identified all sources of contamination, this RI/FS was from 2010. In yet another decade, EPA has not identified PMC as a responsible party with respect to the OMEGA Superfund Site or OU-2 Groundwater or sent a General or Special Notice letter, despite its more than two decades of investigation.<br><br>Supporting Evidence:<br>• Hagström Decl., Ex. A [OMEGA OU-2 RI/FS] at § 8.1.2 p. 8-4. | |
| 15.    Plaintiffs allege that certain disposals occurred at the PMC Site during the time it was owned or operated by PMC.<br><br>Supporting Evidence:<br>• Hagstrom Decl., Ex. B, [5AC] ¶ 375-378. | **Response:** Partially disputed as incomplete.<br><br>**Evidence:** Plaintiffs allege disposals occurred at the PMC Site during the time it was owned and operated by Ferro and PMC. Hagstrom Decl., Ex. B at 100-103 (Docket No. 526, Fifth AC, ¶¶ 368-378); Plaintiffs' Request for Judicial Notice in Support of Opposition to Defs.' Joint Mots. for Summ. J. re: CERCLA Liability ("Opp'n RFJN"), Exs. 8, at 75-78 (SFSFD, Fire Investigation Report No. 528 (Mar. 18, 1979) (release of chemicals during fire at plant), 9, at 79 (DTSC, Abandoned Site Project, Oct. 19, 1980 Driveby (Oct. 19, 1980) at 1 (documenting sloppy storage of chemicals in drums on bare ground and along railroad tracks), 10, at 86 (DTSC, Abandoned Site Project, Report (Mar. |

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 1981) at 3 (documenting considerable number of stored drums on unpaved segments of property and potential for contamination via runoff during storm), 11, at 96 (Dept. of Health Services, Facility Inspection Report (Feb. 8, 1985) at 10 (documenting signs of chemical spills by railroad tracks and brownish liquid leaking onto unpaved ground from pipe in naphthenic acid plant area), 12, at_113 (Dept. of Health Srvs., Notice of Violation & Directive to Comply (Feb. 22, 1985) (signs of soil contamination along railroad tracks by naphthalene-cresylate loading area and throughout unpaved areas by the naphthenic acid plant area)<br><br>*See also*, Appendix A to Mutch Rebuttal Report, Mar. 4, 2021, at pp. 1-6. |

15.    Moving Parties' Response

This fact is uncontroverted.  While Plaintiffs' response includes several extraneous facts, it does not dispute the asserted fact.

Supporting Evidence:
- Hagstrom Decl., Ex. B, [5AC] ¶ 375-378.

| | |
|---|---|
| 16.    Plaintiffs identify the chemicals allegedly released or disposed of at the PMC Site, between 1987-1992, as benzene, cresol, MEK, phenol, propylene, styrene, and sulfuric acid.<br><br>Supporting Evidence: | **Response:** Disputed as incomplete.<br><br>**Evidence:** Plaintiffs also allege that, in 2011, EPA concluded that cresol and phenol had been disposed of at the PMC Property. Hagstrom Decl., Ex. B, at 101 (Dkt. No. 902-48, at #17894, |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| • Hagstrom Decl., Ex. B, [5AC] ¶ 373. | Fifth AC, ¶ 373). Plaintiffs allege that, in 1987, a storage tank was removed from the PMC Property and soil underneath was found to be contaminated with ethylbenzene and other chemicals. *Id*. at ¶ 375. In the same paragraph, Plaintiffs allege Defendant PMC stopped using a chemical storage tank holding benzene, p-cresol, ethylbenzene and 2-4-dimethylphenol because it had two cracks in the side and a one-inch hole in the bottom. *Id*.

Plaintiffs also allege that, between 1986 and 2002, soil investigations at the PMC Property revealed the presence of numerous hazardous substances, including: ethylbenzene; PCE; TCE; toluene; naphthalene; and 1,1,2-TCA. *Id*. at ¶ 376.

Plaintiffs' discovery responses identified disposals and releases of: acetone, methyl ethyl ketone, chloroform, naphthalene, benzene, toluene, ethylbenzene and xylenes, *inter alia*. Cohen Decl., Ex. 7, at 98-110 (Plaintiffs' Supp. Responses to Def. PMC's First Set of Interrogs. No. 2 & 3 (Jan. 22, 2018)); Ex. 8, at 125-136 (Plaintiffs' Supp. Responses to Def. Ferro's First Set of Interrogs. No. 2 & 3 (Jan. 22, 2018)).

Plaintiffs were not obligated to conduct expert discovery in Phase I, the liability phase, unless and until a party filed a |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | motion for summary judgment or partial summary judgment. *See* Nov. 23, 2020 Order re Briefing and Expert Discovery Schedule – Liability Summary-Judgment Motions (Docket No. 888). Additional chemicals have been detected in soil and groundwater at the PMC Site. Mutch Rebuttal Report, Mar. 4, 2021, Appendix A at pp. 6-10 (1,1,2-TCA, 1,2-Dibromo-3-chloropropane, benzene, PCE, toluene, antimony, arsenic, hexavalent chromium, mercury, nickel, and selenium detected in soil at the PMC Site), pp. 10-14 (1,1,1-TCA, PCE, DEHP, trans-1,2-DCE, benzene, cis-1,2-DCE, TCE, toluene, and methylene chloride detected in groundwater at the PMC Site). |
| 16.   Moving Parties' Response<br><br>This fact is not controverted.  Plaintiffs offer no evidence to dispute the stated fact nor do they object to the evidence asserted. | |
| 17.   Relying only on information and belief, Plaintiffs conclude without any basis that contaminants have migrated into the soil and the groundwater, and have migrated offsite to support its claim that PMC is a source of contamination of another downgradient property.<br><br>Supporting Evidence:<br>• Hagstrom Decl., Ex. B, [5AC] ¶ | **Response:** Disputed. Plaintiffs do not contend that PMC is a source of contamination of another downgradient piece of real property; instead, Plaintiffs contend that the PMC Property is a source of contamination in OU-2 Groundwater. The soils at the PMC Property are contaminated with various CERCLA hazardous substances, as is the groundwater, and contaminated groundwater has |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 379-384. | migrated offsite.<br><br>**Evidence:** Hagstrom Decl., Ex. B, at 102-104, (Dkt. No. 902-48, at #17895-17897, ¶¶ 379-384); 40 C.F.R. § 302.4; Cohen Decl., Exs. 5, at 55-56, 68, 71, 73  (Waterstone Environmental, Inc., Final Environmental Characterization Report (Sept. 30, 2013) at 18-19 & Table 3 at 12, 15, 17),_16, at 194 (Kaman Sciences Corp., Soil and Groundwater Assessment in the Vicinity of Tank T-81 (Jun. 1988) at 3-5); Mutch Rebuttal Report, Mar. 4, 2021, at 2-11 to 2-12 & Fig. 2-18, Appendix A at pp. 6-13. |

17.    Moving Parties' Response

Plaintiffs have only made conclusory allegations in its opposition in an effort to salvage their claims after Defendants motion for summary judgment was filed. Plaintiff's Complaint states "Upon information and belief, the hazardous substances present in the soil at the PMC Source Property have migrated and continue to migrate into the saturated zone beneath the property and have come to be located in groundwater….Groundwater analysis completed in the region indicates that benzene and toluene have migrated downgradient from the PMC Source Property." 5AC, ¶ 377

"Upon information and belief, contaminants in the soil and in groundwater from the soil at the PMC Source Property have migrated offsite in the same general direction as the regional groundwater flow…" 5AC, ¶ 379.

"However, evidence from a downgradient site, OFRP, has confirmed that releases of benzene and toluene from the PMC Source Property are impacting offsite groundwater." 5AC, ¶ 385.

"Upon information and belief, the source of contamination at the OFRP site is the

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| PMC Source Property.'  5AC, ¶ 386.<br><br>Mr. Mutch's conclusory assertions are speculative and lack support.  The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18[3].  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18. | |
| 18.    Plaintiffs only allege that Benzene and toluene migrated to the Oil Field Reclamation Project ("OFRP") Site, which sits in between the PMC Site and the Omega OU-2 Plume to the west and downgradient of the PMC Site.<br><br>Supporting Evidence:<br>• Hagström Decl., Ex. B, [5AC] ¶ 383-386. | **Response:** Disputed. Plaintiffs' Fifth Amended Complaint asserts numerous allegations against Defendants PMC Specialties Group, Inc. and Ferro Corp., including that contaminants in the soil and in the groundwater from the soil at the PMC Source Property have migrated offsite in the same general direction as the regional groundwater flow.<br><br>**Evidence:** Hagstrom Decl., Ex. B, [5AC] ¶¶ 97-98; 115; 367-386; 396-426.<br><br>Plaintiffs were not obligated to conduct expert discovery in Phase I, the liability |

[3] The yellow highlights on the version attached to the Hagström Reply Declaration were added by PMC and reflect those results which were unavailable, unreliable, estimated, and/or below the detection limit.

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | phase, unless and until a party filed a motion for summary judgment or partial summary judgment. *See* Nov. 23, 2020 Order re Briefing and Expert Discovery Schedule – Liability Summary-Judgment Motions (Docket No. 888). Groundwater contamination from the PMC Site migrates into the OU-2 Groundwater plume. Mutch Rebuttal Report, Mar. 4, 2021, at § 2.1, Figures 2-5 through 2-9, Appendix A to Mutch Rebuttal Report, Mar. 4, 2021, at pp. 5-14 & Figure 1-1. |

18. Moving Parties' Response

Plaintiffs have only made this conclusory allegations in its opposition in an effort to salvage their claims after Defendants motion for summary judgment was filed. Plaintiff's Complaint states "Upon information and belief, the hazardous substances present in the soil at the PMC Source Property have migrated and continue to migrate into the saturated zone beneath the property and have come to be located in groundwater….Groundwater analysis completed in the region indicates that benzene and toluene have migrated downgradient from the PMC Source Property." 5AC, ¶ 377

"Upon information and belief, contaminants in the soil and in groundwater from the soil at the PMC Source Property have migrated offsite in the same general direction as the regional groundwater flow…" 5AC, ¶ 379.

"However, evidence from a downgradient site, OFRP, has confirmed that releases of benzene and toluene from the PMC Source Property are impacting offsite groundwater." 5AC, ¶ 385.

"Upon information and belief, the source of contamination at the OFRP site is the PMC Source Property.' 5AC, ¶ 386.

Mr. Mutch's conclusory assertions are speculative and lack support.  The groundwater modeling relied upon by Mr. Mutch does not take into account the

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling". Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6. Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source], which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18. *Id.* ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.<br><br>Notably, Plaintiffs failed to object to the evidence offered by PMC. | |
| 19.   In Plaintiffs' responses to PMC's discovery, Plaintiffs' only allege "groundwater contamination from the [PMC Site] may intersect OU-2 given that the groundwater flow direction from that property has been determined to be to the southwest."<br><br>Supporting Evidence:<br>• Hagstrom Decl., Ex. C, [Ferro Corporation's Interrogatories to Plaintiffs] Nos. 3-4, Ex. D, [Plaintiffs' Supplemental Resp. to Ferro Corporation's Interrogatories to Plaintiffs] No. 3-4; Ex. E, [PMC Interrogatories to Plaintiffs], No. 3, Ex. F, [PMC Supplemental Resp. to PMC's Interrogatories to Plaintiffs] No. 3. | **Response:** Disputed.<br><br>**Evidence:** Plaintiffs were not obligated to conduct expert discovery in Phase I, the liability phase, unless and until a party filed a motion for summary judgment or partial summary judgment. *See* Nov. 23, 2020 Order re Briefing and Expert Discovery Schedule – Liability Summary-Judgment Motions (Docket No. 888). Groundwater contamination from the PMC Site migrates into the OU-2 Groundwater plume. Mutch Rebuttal Report, Mar. 4, 2021, at § 2.1, Figures 2-5 through 2-9, Appendix A to Mutch Rebuttal Report, Mar. 4, 2021, at pp. 5-14 & Figure 1-1. |
| 19.   Moving Parties' Response | |

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| This fact is uncontroverted.  Plaintiffs offer no dispute that in its discovery responses, these are the only allegations asserted regarding the hypothetical possibly that contamination may intersect OU2 groundwater.<br><br>Mr. Mutch's conclusory assertions are speculative and lack support.  The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.<br><br>Notably, Plaintiffs did not assert evidentiary objections as to PMC's Evidence. | |
| 20.     The PMC Site is not located above or adjacent to the OU-2 Facility.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 17, Ex. C [site map], G [PMC Plot Plan] and H [map showing OFRP]. | **Response:** Disputed and immaterial.  The PMC Source Property is located on 10051 Romandel Avenue, Santa Fe Springs, California. The eastern boundary of Operable Unit No. 2, according to PMC's expert, Mr. Richard Vogel, passes 1,000 feet to the west of the PMC Source Property, although CH2M HILL appears to have placed it closer.<br><br>**Evidence:** Mot. at 14; Vogl Decl. ¶ 11a; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, at Fig. 1-4).<br><br>Plaintiffs object to paragraph 20 as |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |
| 20.   Moving Parties' Response<br><br>While Plaintiff's response states that the fact is disputed, it does not actually dispute that the PMC Site is not located adjacent or above the Omega OU-2 Plume.  Notably, Plaintiffs did not object to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 17, Ex. C [site map], G [PMC Plot Plan] and H [map showing OFRP]. | |
| 21.   The available data demonstrates that no mixing, commingling, or intersection of the PMC Plume and the Omega OU-2 Plume has occurred.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶¶ 10-23, Ex. C [site map], G [PMC Plot Plan] and H [map showing OFRP]. | **Response:** Disputed and immaterial. Plaintiffs need only establish a plausible migration pathway, not mixing, commingling or intersection.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.3 & Figs. 2-5 to 2-9, 2-18; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (August 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 _ (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report (May 11, 2020) at Figs. 2.5, 4.7, 5.11). |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Plaintiffs object to paragraph 21 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

21. Moving Parties' Response

While Plaintiff states that it disputes the fact, it does not actually state any facts in dispute. Instead, it makes a legal argument that Defendants uncontroverted fact is not relevant, a complete misstatement of the law. Plaintiff has not described any dispute as to the stated uncontroverted fact that no mixing, commingling, or intersection of the PMC Plume and the Omega OU-2 Plume has occurred, it simply argues it is not material to the motion.

Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling". Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6. Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source], which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18. *Id.* ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.

Notably, Plaintiffs did not assert evidentiary objections to PMC's evidence.

Supporting Evidence:

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| • Vogl Decl., ¶¶ 10-23, Ex. C [site map], G [PMC Plot Plan] and H [map showing OFRP]. | |
| 22.    The distinct chemical and physical characteristics of each plume demonstrate the PMC Plume has not reached, commingled or intersected the Omega OU-2 Plume.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶¶ 10f, 11c, 20b-c, Ex. Q-1, Q-2 [Chemical Fingerprint Analysis] | **Response:** Disputed and immaterial. Plaintiffs need only establish a plausible migration pathway, not mixing, commingling or intersection.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.3, 2.6 & Figs. 2-5 to 2-9, 2-18; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (August 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183_(Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report (May 11, 2020) at Figs. 2.5, 4.7, 5.11).<br><br>Plaintiffs object to paragraph 22 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |
| 22.    Moving Parties' Response<br><br>While Plaintiff states that it disputes the fact, it does not actually state any facts in dispute.  Instead, it makes a legal argument that Defendants uncontroverted fact is not relevant, a complete misstatement of the law.  Plaintiff has not described any dispute as to the stated uncontroverted fact that no mixing, commingling, or | |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |

intersection of the PMC Plume and the Omega OU-2 Plume has occurred, it simply argues it is not material to the motion.  The fact that the groundwater data identifying the distinct chemical and physical characteristics of demonstrates contaminants have not reached, commingled or intersected the OU-2 Plume is absolutely relevant to the determination of the motion.

Mr. Mutch's conclusory assertions are speculative and lack support.  The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.

Notably, Plaintiffs did not object to PMC's evidence.

| | |
| --- | --- |
| 23.    The most frequently detected chemicals at the highest concentrations in the Omega OU-2 Plume is characterized by the VOCs, trichloroethylene ("TCE"), perchloroethylene ("PCE"), and 1, 1 dichloroethene ("1, 1-DCE") (collectively "Omega OU-2 Marker Chemicals")<br><br>Supporting Evidence:<br>• Vogl Decl., ¶¶ 20b, Ex. Q-1, Q-2 [Chemical Fingerprint Analysis]. | **Response:** Disputed as misleading and immaterial.<br><br>**Evidence:** There are more than three contaminants in OU-2 Groundwater, and benzene is included on the list. Mutch Rebuttal Report, Mar. 4, 2012, at § 2.6. Benzene is present in both the OU-2 Groundwater plume and groundwater at the PMC Site. *Id.*; RFJN, Ex. 1, at 42-43 (listing benzene as contaminant of potential concern in OU-2 Groundwater); Cohen Decl., Ex. 10, at 173_(Waterstone Envtl., Inc., Envtl. Characterization Report— Former Productol Site (July 12, 2000) |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | at 2) (identifying chemicals detected in groundwater at the PMC Site at elevated concentrations, including benzene).

Plaintiffs object to paragraph 23 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

23.    Moving Parties' Response

Plaintiffs do not dispute the uncontroverted fact originally offered, that the Omega OU-2 Plume is characterized by high concentrations of TCE, PCE and 1,1-DCE.

Notably, Plaintiffs did not assert evidentiary objections to PMC's evidence.

| 24.    The most frequently detected chemicals at the highest concentrations in the PMC Plume are naphthalene and benzene.

Supporting Evidence
- Vogl Decl., ¶ 13g, 20b. *See Also*, Ex. F2 [Voluntary Cleanup Agreement for PMC Site]. | **Response:** Disputed as misleading.

**Evidence:** There are more than two contaminants in groundwater at the PMC Site. Mutch Rebuttal Report, Mar. 4, 2012, at § 2.6. Cohen Decl., Ex. 10, at 173_(Waterstone Envtl., Inc., Envtl. Characterization Report—Former Productol Site (July 12, 2000) at 2) (identifying chemicals detected in groundwater at the PMC Site at elevated concentrations, including 2- |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Methyl and 4-Methyl phenol, 2,4-Dimethylphenol and Phenol). |
| | The PMC Defendants' expert, Richard Vogl, has not drawn a representation of the purported "PMC Plume," Cohen Decl., Ex. 9, at 146-147, 162 (R. Vogl Dep. Tr., at 40:22 to 41:14; 162:11-20), nor does the stated fact identify other hazardous substances, including phenol and 2,4-DIMP, that have been detected in groundwater at the PMC Site and downgradient of the PMC Site. Cohen Decl., Ex. 10, at 173 (Waterstone Environmental, Inc. Environmental Characterization Report (Jul. 12, 2000), at 2); *see* Mutch Rebuttal Report, Mar. 4, 2021, at Figure 2-18. |

24. Moving Parties' Response

Plaintiffs do not dispute the uncontroverted fact offered, that the chemicals with the highest concentration in the PMC Plume are naphthalene and benzene.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

| | |
|---|---|
| 25. The groundwater contaminants in the Omega OU-2 Plume show detections of the Omega OU-2 Marker Chemicals are consistently detected at substantially similar magnitudes in both OU-1 and OU-2.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 20f, Ex. P [map depicting well data used re chemical fingerprinting], Q-1, Q- | **Response:** Disputed and immaterial.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.5, 2.6 & Fig. 2-18; Opp'n RFJN, Exs. 2, at 31 (CH2M HILL, Remedial Investigation / Feasibility Study Reports, Operable Unit 2 (Aug. 2010) at 2-1), 3, at 55 (OU-2 Consent Decree (Oct. 6, 2016), Appendix B, at 287); Cohen Decl., Ex. 10, at 173 (Waterstone Environmental, Inc. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 2 [chemical fingerprinting analysis]. | Environmental Characterization Report (Jul. 12, 2000), at 2.<br><br>Plaintiffs object to paragraph 25 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

25.     Moving Parties' Response

This fact is uncontroverted.  While Plaintiffs state it is disputed, they offer no explanation of what is disputed.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
- Vogl Decl., ¶ 20f, Ex. P [map depicting well data used re chemical fingerprinting], Q-1, Q-2 [chemical fingerprinting analysis].

| | |
|---|---|
| 26.     The same maximum downgradient reach or outer edge of TCE, PCE and 1,1 DCE, which migrated onto the PMC Site from upgradient sources, is also defined by non-detect test results in  monitoring wells located less than 450 feet from the PMC Site.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶¶ 19a(viii), 20f, Ex. | **Response:** Disputed and immaterial.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.5, 2.6 & Fig. 2-18; Opp'n RFJN, Exs. 2, at_31 (CH2M HILL, Remedial Investigation / Feasibility Study Reports, Operable Unit 2 (Aug. 2010) at 2-1), 3, at 55 (OU-2 Consent Decree (Oct. 6, 2016), Appendix B, at 287); Cohen Decl., Ex. 10, at 173 (Waterstone Environmental, Inc. Environmental Characterization Report, |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| P [map depicting well data used re chemical fingerprinting], Q-1, Q-2 [chemical fingerprinting analysis]. | Jul. 12, 2000, at 2).<br><br>Plaintiffs object to paragraph 26 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

26.     Moving Parties' Response

While Plaintiff alleges the fact is disputed, it does not explain what is disputed.

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not.  Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

| | |
|---|---|
| 27.     The benzene and naphthalene plume originating from the PMC Site attenuates to non-detect concentrations | **Response:** Disputed and immaterial. The cited evidence does not support the statement. Mr. Vogl's declaration does |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| within 800 feet downgradient from the PMC Site.<br><br>Supporting Evidence<br>• Vogl Decl., ¶ 20a-e, Ex. Q-1 [chemical fingerprinting analysis]. | not include an explanation or graphic depicting the nature or extent of a plume originating from the PMC Property. Contamination from the PMC Property has impacted or threatens to impact OU-2 Groundwater.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.3 & Figs. 2-5 to 2-9, 2-18; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report (May 11, 2020) at Figs. 2.5, 4.7, 5.11).<br><br>Plaintiffs object to paragraph 27 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

27.    Moving Parties' Response

Mr. Vogl describes the non-detects for TCE and PCE at MW-22 and M-23, which are downgradient from MW-21, between the PMC Site and the Omega OU-2 Plume, as well as the Beaumon Trust Site.  Vogl Declaration, 19a(i)-(viii).

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it

<div align="left" style="writing-mode: vertical-rl">GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067</div>

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| does not.  Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.  While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far.  Notably, Plaintiffs did not object to PMC's evidence. | |
| 28.    The trace amount of benzene in the Omega OU-2 Mid-plume and benzene in these three downgradient areas are likely from gasoline or light end hydrocarbon releases on the numerous properties with underground storage tanks and/or Leaky Underground Storage Tank ("LUST"), and other chemical releases.  Supporting Evidence<br>• Vogl Decl., ¶ 20d-g, Ex. Q-1 [chemical fingerprinting analysis]. | **Response:** Disputed and immaterial. The cited evidence does not support the statement that benzene in the Omega OU-2 Mid-plume and benzene in these three downgradient areas are likely from the sources referenced in the fact. Contamination from the PMC Property has impacted or threatens to impact OU-2 Groundwater.  **Evidence:** Mutch Rebuttal Report §§ 2.1, 2.3 & Figs. 2-5 to 2-9, 2-18; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Report, May 11, 2020, Figs. 2.5, 4.7, 5.11).<br><br>Plaintiffs object to paragraph 28 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

28.   Moving Parties' Response

While Plaintiffs state the fact is disputed, it offers no explanation as to what the dispute is.  It simply concludes that "Contamination from the PMC Property has impacted or threatens to impact OU-2 Groundwater."

Mr. Vogl describes the non-detects for TCE and PCE at MW-22 and M-23, which are downgradient from MW-21, between the PMC Site and the Omega OU-2 Plume, as well as the Beaumon Trust Site.  Vogl Decl., ¶ 19a(i)-(viii).

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not.  Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G.,

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.  While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence. | |
| 29.     Three releases at downgradient locations have been documented and are downgradient from the PMC Site; the three locations, include a pipeline release of gasoline that McClaren/Hart Described in the OFRP Groundwater Study; a release at a former drum recycler, the Beaumont Trust Property, which washed out thousands of drums collected from industrial sites and illegally dumped over 60 volatile, semi-volatile, and metals-containing chemical compounds on a single town lot; as well as a LUST site at the Yellow Freight Property.<br><br>Supporting Evidence<br>• Vogl Decl., ¶ 20d-e, Ex. Q-1 [chemical fingerprinting analysis]. | **Response:** Disputed as immaterial and not supported by the evidence cited.<br><br>**Evidence:** The three downgradient releases "selected" by the PMC Defendants' expert, Richard Vogl, as part of his "chemical fingerprinting analysis" are not the only three releases of hazardous substances to groundwater downgradient of the PMC Site. Mutch Rebuttal Report, Mar. 4, 2021, at §§ 2.3, 2.5 & Figures 2-18 (demonstrating that benzene, napthalene, 2,4-DIMP and phenol has migrated from the PMC Site into OU-2 Groundwater).<br><br>Plaintiffs object to paragraph 29 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

29.    Moving Parties' Response

While Plaintiffs contend the fact is disputed, Plaintiffs do not controvert the offered fact, that three releases at downgradient locations have been documented and are downgradient from the PMC Site.

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not.  Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.  While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far.

Notably, Plaintiffs did not object to PMC's evidence.

| | |
|---|---|
| 30.    There are approximately 25 properties with former or current underground storage tanks located within the Omega OU-2 Plume and in the region downgradient from the PMC Site.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 20d-e, Ex. Q-1, [chemical fingerprinting | **Response:** Disputed as immaterial and not supported by the evidence cited.<br><br>Regardless of whether there are approximately 25 properties with former or current underground storage tanks located within the Omega OU-2 Plume and in the region downgradient from the Site, which Vogl. Decl., Ex. Q-1, does not depict or substantiate, does not change the fact that |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| analysis]. | contamination from the PMC Property has impacted or threatens to impact OU-2 Groundwater. Mutch Rebuttal Report §§ 2.1, 2.3 & Figs. 2-5 to 2-9, 2-18; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11).

Plaintiffs object to paragraph 30 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

30.    Moving Parties' Response

While Plaintiffs contend the fact is disputed, ("Regardless of whether there are approximately 25 properties with former or current underground storage tanks located within the Omega OU-2 Plume…"), Plaintiffs do not controvert the offered fact, that there are approximately 25 properties with former or current underground storage tanks located within the Omega OU-2 Plume and in the region downgradient from the PMC Site.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 31.    PMC never used TCE, PCE, or 1,1 DCE in its operations.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶¶ 10e, 19a(viii), Exhibit E [summary of chemicals used and stored at PMC Site] | **Response:** Disputed as immaterial.<br><br>**Evidence:**  Any hazardous substances present in OU-2 Groundwater above screening levels will be addressed by the EPA-required OU-2 remedy. Mutch Rebuttal Report, Mar. 4, 2021, at § 2.5. There are more than three contaminants in OU-2 Groundwater, and benzene is included on the list. *Id*. at §§ 2.5, 2.6; RFJN, Ex. 1, at 42-43 (listing benzene as contaminant of potential concern in OU-2 Groundwater). Benzene was used by both PMC Defendants in plant operations and has been detected in groundwater underneath the PMC Site at elevated concentrations. Cohen Decl., Exs. 2, at 23-24 (Waterstone Envtl., Inc., Envtl. Characterization Report—Former Productol Site (Jan. 18, 1999) at 9-10) (identifying chemicals used in PMC Defendants' operations, including benzene), 10, at 173 (Waterstone Envtl., Inc., Envtl. Characterization Report—Former Productol Site (July 12, 2000) at 2) (identifying chemicals detected in groundwater at the PMC Site at elevated concentrations, including benzene).<br><br>Plaintiffs object to paragraph 31 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

31.     Moving Parties' Response

This fact is uncontroverted.  The stated fact was that PMC never used TCE, PCE, or 1,1 DCE in its operations.  Plaintiffs' response exclusively focuses on benzene, which does not offer any material dispute as to the uncontroverted fact originally stated.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
- Vogl Decl. ¶¶ 10e, 19a(viii), Exhibit E [summary of chemicals used and stored at PMC Site]

| | |
|---|---|
| 32.     TCE, PCE and 1,1 DCE have migrated onto the PMC Site from a source or sources located upgradient of the PMC Site.<br><br>Supporting Evidence:<br>- Vogl Decl. ¶ 19a(viii), Ex. I1, I2 [depiction of PMC Site and monitoring wells], J [historical groundwater data], R [depiction of nearby sites with chlorinated solvent use]. | **Response:** Partially disputed but immaterial. Plaintiffs do not dispute that TCE, PCE, and 1,1-DCE were detected in samples drawn at or near the PMC Source Property. However, the evidence presented does not establish that those chemicals migrated onsite, or from where.<br><br>**Evidence:**  Vogl Decl. ¶ 19a(viii), Ex. I1, I2 [depiction of PMC Site and monitoring wells], J [historical groundwater data], R [depiction of nearby sites with chlorinated solvent use].<br><br>Plaintiffs object to paragraph 31 as immaterial for purposes of deciding this |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |
| 32.   Moving Parties' Response<br><br>This fact is uncontroverted.  Plaintiffs offer nothing to dispute that the low concentrations of TCE, PCE and 1,1-DCE identified migrated from properties upgradient from the PMC Site.  Notably, Plaintiffs did not dispute that PMC never used TCE, PCE, or 1,1 DCE in its operations.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br><br>• Vogl Decl. ¶¶ 10e, 19a(viii), Exhibit E [summary of chemicals used and stored at PMC Site]; Plaintiffs' Statement of Genuine Disputes, at ¶ 31. | |
| 33.   Monitoring wells MW 21, MW 22, and MW 23 are located approximately 350 to 450 feet downgradient and off of the PMC Site.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶¶ 19a(viii), 20e, Ex. I1, I2 [depiction of PMC Site and monitoring wells], J [historical groundwater data], R [depiction of nearby sites with chlorinated solvent use]. | **Response:** Partially disputed but immaterial. Plaintiffs do not dispute that MW 21, MW 22, and MW, 23 are located off of the PMC Property, but the wells do not, according to the map legend, appear to be 350 to 450 feet downgradient.<br><br>**Evidence**: Ex. I1, I2 [depiction of PMC Site and monitoring wells] |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| | Plaintiffs object to paragraph 31 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

33.   Moving Parties' Response

Plaintiffs do not dispute the stated uncontroverted fact.  Plaintiffs' counsels' subjective opinion that the wells do not appear to be 350 to 450 feet is contradicted by the figure itself and does not create a disputed fact.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
- Vogl Decl. ¶¶ 19a(viii), 20e, Ex. I1, I2 [depiction of PMC Site and monitoring wells], J [historical groundwater data], R [depiction of nearby sites with chlorinated solvent use].

| | |
| --- | --- |
| 34.   MW-21, the most upgradient of these monitoring wells shows low concentrations of TCE, PCE and 1,1 DCE, and the concentration levels decrease to non-detect at further downgradient wells M-22 and M-23.<br><br>Supporting Evidence:<br>- Vogl Decl. ¶ 19a(viii), Ex. I1, I2[depiction of PMC Site and monitoring wells], J [historical groundwater data], R [depiction | **Response:** Disputed. The evidence presented does not support the statement.<br><br>**Evidence:** Vogl Decl., Ex. J. |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| of nearby sites with chlorinated solvent use]. | |
| 34.    Moving Parties' Response<br><br>Plaintiffs offer no evidence to dispute this uncontroverted fact.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence. | |
| 35.    The Omega OU-2 Plume is over 2000 feet from the PMC Site.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19a(viii), 20e, Ex. C., I1, I2 [depiction of PMC Site and monitoring wells], J [historical groundwater data], R [depiction of nearby sites with chlorinated solvent use]. | **Response:** Disputed. The eastern boundary of Operable Unit No. 2, according to PMC's expert, Mr. Richard Vogel, passes 1,000 feet to the west of the PMC Source Property, although CH2M HILL appears to have placed it closer.<br><br>**Evidence:** Mot. at 14; Vogl Decl. ¶ 11a; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, at Fig. 1-4).<br><br>Plaintiffs object to paragraph 20 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 35.    Moving Parties' Response<br><br>This fact is uncontroverted.  The only dispute Plaintiffs' note is that the improperly drawn boundary of OU2, which overstates the boundary of the plume, is more than 1,000 feet from the PMC Site.  The fact that the improperly drawn boundary of the OU2 Site is more than 1,000 feet from the PMC Site does not controvert the stated uncontroverted fact, that the actual Omega OU-2 groundwater plume is more than 2,000 feet from the PMC Site.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19a(viii), 20e, Ex. C., I1, I2 [depiction of PMC Site and monitoring wells], J [historical groundwater data], R [depiction of nearby sites with chlorinated solvent use]. | |
| 36.    Groundwater flow immediately adjacent to the PMC does trend in a southwest direction as it leaves the PMC Site.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19a(vi). | **Response:** Disputed. The statement is not supported by the evidence, which discusses groundwater flow rate and not the direction of groundwater flow immediately adjacent to the PMC Property.<br><br>**Evidence:** Vogl Decl. ¶ 19a(vi) |
| 36.    Moving Parties' Response<br><br>Plaintiffs' do not dispute the groundwater flow trending immediately off the site is in a southwest direction as it leaves the PMC Site.<br><br>Supporting Evidence:<br><br>Vogl Decl. ¶ 12f, 19a(a)(i)(ii). | |
| 37.    Groundwater flow from the PMC | **Response:** Disputed. The cited |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Site is deflected to the south - southeast when it runs into the Santa Fe Springs Anticline ("Anticline"), causing it to run parallel to the Omega OU-2 Plume.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶¶ 10a, 12f, Ex. K [divisions of mines bulletin with map depicting Sante Fe Springs Anticline] | evidence does not support the statement.<br><br>**Evidence:** Mutch Rebuttal Report, Mar. 4, 2021, at §§ 2.1, 2.2 & Figs. 2-5 to 2-9, 2-17; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report (May 11, 2020) at Figs. 2.5, 4.7, 5.11). |

37.     Moving Parties' Response

The USGS report titled Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin states: "The trend of the OU2 is inferred to parallel the shallow groundwater gradient (EPA, 2010), which trends southwest from the former Omega facility, turns to the south at about the location of the [Anticline] crest, and then trends slightly to the southeast, south of the site…."

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not. Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling". Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6. Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source], which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18. *Id.* ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18. While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far. | |
| 38.    The Santa Fe Springs Anticline is a 32-story high (350 feet), 2000 plus foot wide dome that lies between the PMC Site and the Omega OU-2 Plume.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶¶ 10a, 12f, Ex. K [divisions of mines bulletin with map depicting Sante Fe Springs Anticline] | **Response:** Disputed.<br><br>**Evidence:** Mutch Rebuttal Report, Mar. 14, 2021, at §§ 2.1, 2.2 & Figs. 2-5 to 2-9, 2-17; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report (May 11, 2020) at Figs. 2.5, 4.7, 5.11). |
| 38.    Moving Parties' Response<br><br>Plaintiffs do not describe what the dispute is, and it is not clear from the documents cited what Plaintiffs allege they are disputing. The cited portions of the documents identified by Plaintiff do not appear to dispute that the Santa Fe Springs Anticline is a 32-story high (350 feet), 2000 plus foot wide dome that lies between the PMC Site and the Omega OU-2 Plume.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶¶ 10a, 12f, Ex. K [divisions of mines bulletin with map depicting Sante Fe Springs Anticline] | |
| 39.    The Anticline physically separates the Omega OU-2 Plume on its | **Response:** Disputed. The cited evidence does not support the |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Western flank from groundwater on its Eastern flank.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 12f, Exs. C [site map], K [divisions of mines bulletin with map depicting Sante Fe Springs Anticline], L [map showing boundaries of PMC Site and anticline], M [excerpts of USGS report Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin Area, LA County, CA], N [modified figure from USGS report depicting groundwater flow]. | statement.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.2 & Figs. 2-5 to 2-9, 2-17; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11). |

39.    Moving Parties' Response

Plaintiffs do not describe what the dispute is, and it is not clear from the documents cited what Plaintiffs allege they are disputing.  Plaintiffs' reference to models and hypothetical flow paths do not controvert the fact that the Anticline physically separates the Omega OU-2 Plume on its Western flank from groundwater on its Eastern Flank.

The USGS report titled Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin states: "The trend of the OU2 is inferred to parallel the shallow groundwater gradient (EPA, 2010), which trends southwest from the former Omega facility, turns to the south at about the location of the [Anticline] crest, and then trends slightly to the southeast, south of the site…."

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| • Vogl Decl. ¶ 12f, Exs. C [site map], K [divisions of mines bulletin with map depicting Sante Fe Springs Anticline], L [map showing boundaries of PMC Site and anticline], M [excerpts of USGS report Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin Area, LA County, CA], N [modified figure from USGS report depicting groundwater flow]. | |
| 40.    Groundwater flow direction on and near the PMC Site has been monitored since at least 1999.  Supporting Evidence: • Vogl Decl. ¶ 12f. | **Response:** Partially disputed. Plaintiffs do not dispute that the groundwater on and near the PMC Property has been monitored from time to time. Plaintiffs dispute PMC's interpretation of the flow direction as represented by Exs. O and N.  **Evidence:** Mutch Rebuttal Report §§ 2.1, 2.2 & Figs. 2-5 to 2-9, 2-17; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex._14, at 181-183_(Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11). |

40.    Moving Parties' Response

Plaintiffs do not controvert the fact that groundwater flow direction on and near the PMC Site has been monitored since at least 1999.

Supporting Evidence:
• Vogl Decl. ¶ 12f.

| 41.    The Omega OU-2 Plume migrates to and is influenced by the | **Response:** Disputed. |
|---|---|

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| west side of the Anticline, while the groundwater from the PMC Site migrates on the east side of the Anticline.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19a (i)-(v), Exs. C [site map], K [divisions of mines bulletin with map depicting Sante Fe Springs Anticline], L [map showing boundaries of PMC Site and anticline], M [excerpts of USGS report Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin Area, LA County, CA], N [modified figure from USGS report depicting groundwater flow]. | **Evidence:** Mutch Rebuttal Report §§ 2.1, 2.2 & Figs. 2-5 to 2-9, 2-17; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex. 14, at 181-183_(Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11). |

41.     Moving Parties' Response

The USGS report titled Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin states: "The trend of the OU2 is inferred to parallel the shallow groundwater gradient (EPA, 2010), which trends southwest from the former Omega facility, turns to the south at about the location of the [Anticline] crest, and then trends slightly to the southeast, south of the site…."

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not.  Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.  While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far. ||
| 42.    A 2014 United States Geological Survey report recognizes the change in direction, noting that "The Trend of the OU2 plume….turns to the south at about the location of the Santa Fe Springs Anticline." <br><br> Supporting Evidence: <br> • Vogl Decl. ¶ 19a (i)-(v), Ex. M [excerpts of USGS report Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin Area, LA County, CA], N [modified figure from USGS report depicting groundwater flow]. | **Response:** Partially disputed. Plaintiffs do not dispute that the 2014 United States Geological Survey states what is quoted, but flow path directions in the OU-2 area are not influenced by the anticline as represented in Exhibit N. <br><br> **Evidence:** Mutch Rebuttal Report §§ 2.1, 2.4 & Figs. 2-5 to 2-9, 2-18; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex._14, at 181-183_(Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11). |
| 42.    Moving Parties' Response <br><br> Plaintiffs do not controvert the offered fact, that a 2014 United States Geological Survey report recognizes the change in direction, noting that "The Trend of the ||

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| OU2 plume….turns to the south at about the location of the Santa Fe Springs Anticline." Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence. Supporting Evidence:<br>• Vogl Decl. ¶ 19a (i)-(v), Ex. M [excerpts of USGS report Characterization of Potential Transport Pathways and Implications for Groundwater Management near an Anticline in the Central Basin Area, LA County, CA], N [modified figure from USGS report depicting groundwater flow]. | |
| 43.   The K-values (estimated rate of groundwater migration in feet per day) immediately southwest of the PMC Site are extremely low, meaning the soils on the east flank of the Anticline, which lies between the PMC Site and the Omega OU-2 Plume, are relatively impermeable. Supporting Evidence:<br>• Vogl Decl. ¶ 19a(vi), Ex O [map depicting hydraulic conductivity]. | **Response:** Partially disputed, immaterial. Flow path directions in the OU-2 area are not influenced by the values referenced in the statement as represented in Exhibit O. **Evidence:** Mutch Rebuttal Report §§ 2.1, 2.4 & Figs. 2-5 to 2-9, 2-18; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11). Plaintiffs object to paragraph 54 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | applicable law.") (citation omitted). |
| 43.    Moving Parties' Response<br><br>Plaintiffs do not dispute the offered fact, the K-values (estimated rate of groundwater migration in feet per day) immediately southwest of the PMC Site are extremely low, meaning the soils on the east flank of the Anticline, which lies between the PMC Site and the Omega OU-2 Plume, are relatively impermeable. In fact, in the cited portion of Mr. Mutch's report he states "the presence of lower permeability sediments in some portions of the area between PMC and the designated eastern edge of OU-2 area may be accurate," and Mr. Mutch acknowledges that the flow paths are influenced by the anticline.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19a(vi), Ex O [map depicting hydraulic conductivity].<br>• Mutch Rebuttal Report §§ 2.1, 2.4 | |
| 44.    The low permeability of the east flank of the Anticline inhibits groundwater flow and the Anticline itself then causes the plume to "deflect" or change direction from generally southwest to south.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19a(vi), Ex O, [map depicting hydraulic conductivity]. | **Response:** Disputed.<br><br>**Evidence:** Mutch Rebuttal Report, Mar. 4, 2021, at §§ 2.1, 2.2 & Figs. 2-5 to 2-9, 2-17; Opp'n RFJN, Ex. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4); Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11). |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 44.    Moving Parties' Response<br><br>Plaintiffs do not dispute the offered fact, the K-values (estimated rate of groundwater migration in feet per day) immediately southwest of the PMC Site are extremely low, meaning the soils on the east flank of the Anticline, which lies between the PMC Site and the Omega OU-2 Plume, are relatively impermeable. In fact, in the cited portion of Mr. Mutch's report he states "the presence of lower permeability sediments in some portions of the area between PMC and the designated eastern edge of OU-2 area may be accurate," and Mr. Mutch acknowledges that the flow paths are influenced by the anticline.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19a(vi), Ex O [map depicting hydraulic conductivity].<br>• Mutch Rebuttal Report §§ 2.1, 2.4 | |
| 45.    Groundwater monitoring data at and adjacent to the PMC Site demonstrates PMC Plume has migrated too short a distance offsite to possibly intersect, mix with, or commingle with the Omega OU-2 Plume.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 10b. | **Response:** Disputed and immaterial. Plaintiffs need only establish a plausible migration pathway, not mixing, commingling or intersection.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.3, 2.6 & Fig. 2-18; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11).<br><br>Plaintiffs object to paragraph 45 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

45.    Moving Parties' Response

Plaintiffs do not controvert state fact, that the groundwater monitoring data at and adjacent to the PMC Site demonstrates PMC Plume has migrated too short a distance offsite to possibly intersect, mix with, or commingle with the Omega OU-2 Plume, they just argue they are not required to prove that the plumes have commingled.

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not.  Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source], which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18.  *Id.*  ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.  While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 46.     The PMC Plume did not and does not have a large enough chemical mass to have migrated far enough off site to commingle with or intersect the Omega OU-2 Plume.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 19. | **Response:** Disputed and immaterial. Plaintiffs need only establish a plausible migration pathway, not mixing, commingling or intersection.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.3, 2.6 & Fig. 2-18; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11).<br><br>Plaintiffs object to paragraph 46 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

46.     Moving Parties' Response

Plaintiffs do not controvert state fact, that the groundwater monitoring data at and adjacent to the PMC Site demonstrates PMC Plume has migrated too short a distance offsite to possibly intersect, mix with, or commingle with the Omega OU-2 Plume, they just argue they are not required to prove that the plumes have commingled.

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not. Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling". Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6. Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source], which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18. *Id.* ¶ 3-4, Ex. G., Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18. While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far.

In Mr. Mutch's addendum (Docket No. 949-80) at page 25, Figure 1-4 depicts MW-12 as showing a non-detect for benzene.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

| 47.   PMC has removed the source of contamination cutting off the source of contaminates for the PMC Plume.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 21. | **Response:** Disputed.<br><br>**Evidence:** The PMC Defendants have not started remediating the PMC Property. Mutch Rebuttal Report, Mar. 14, 2021, at § 2.8. There was already significant soil contamination at the PMC Property by the time operations were discontinued in 1992. *Id.* at § 2.7 & Appendix A, pp. 6-14. Contamination remains in soil and groundwater at the PMC Property at present. Cohen Decl., Ex. _3, at 31-37 (Waterstone Envtl., Inc., Removal |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Action Workplan, May 22, 2020) at 40-46). Site assessments are not equivalent to cleaning up the site and, to date, PMC has only submitted workplans to DTSC but not undertaken actual cleanup of the site. Mutch Rebuttal Report, Mar. 4, 2021, at § 2.8<br><br>*See also* Mot. at 14-15 |

47.    Moving Parties' Response

While Plaintiffs assert they dispute this fact, the assertion that PMC has not started remediating the PMC Property is belied by Plaintiffs' earlier admissions. Plaintiffs do not dispute the all of the site operational equipment was removed by November 1993.  Plaintiffs do not dispute that PMC Site was capped with asphalt and rolled base material and engineering controls were placed in certain areas to prevent rainwater from causing chemicals to leach in the soil in groundwater. Plaintiffs did not dispute that PMC performed each of the actions on its Summary of PMC cleanup actions to date.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
- Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions].
- Plaintiffs' Responses to Statement of Genuine Disputes, at 12-13.

| 48.    PMC Site operations ceased in the early 1990s, and demolition activities were completed by November, 1993.<br><br>Supporting Evidence<br>- Vogl Decl. ¶ 21, Ex. S [summary of cleanup actions at PMC Site]. | **Response:** Partially disputed as incomplete and misleading. Immaterial.<br><br>**Evidence:** Plaintiffs incorporate their responses to paragraphs 10, 12 and 13 herein. |

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 48.    Moving Parties' Response<br><br>While Plaintiffs assert they dispute this fact, Plaintiffs do not dispute the all of the site operational equipment was removed and/or demolished by November 1993.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions]<br>• Plaintiffs' Responses to Statement of Genuine Disputes, at 12-13. | |
| 49.    Additional actions, including capping the property with asphalt, were taken to prevent rainwater infiltration into subsurface soils, minimizing or eliminating the leaching of chemicals to groundwater.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 21, Ex. S [summary of cleanup actions at PMC Site]. | **Response:** Partially disputed. Plaintiffs do not dispute that actions were taken at the PMC Property such as laying asphalt.<br><br>**Evidence:** The PMC Defendants have not started remediating the PMC Site. Mutch Rebuttal Report, Mar. 14, 2021, at § 2.8. There was already significant soil contamination at the PMC Property by the time operations were discontinued in 1992. *Id*. at § 2.7 & Appendix A, pp. 6-14. Contamination remains in soil and groundwater at the PMC Property at present. Cohen Decl., Ex. 3, at 31-37 (Waterstone Envtl., Inc., Removal Action Workplan, May 22, 2020) at 40-46). Site assessments are not equivalent to cleaning up the site and, to date, PMC has only submitted workplans to DTSC but not undertaken actual cleanup of the site. Mutch Rebuttal Report, Mar. 4, 2021, at § 2.8<br><br>*See also* Mot. at 14-15 |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 49.    Moving Parties' Response<br><br>While Plaintiffs assert they dispute this fact, the assertion that PMC has not started remediating the PMC Property is belied by Plaintiffs' earlier admissions. Plaintiffs do not dispute the all of the site operational equipment was removed by November 1993.  Plaintiffs do not dispute that PMC Site was capped with asphalt and rolled base material and engineering controls were placed in certain areas to prevent rainwater from causing chemicals to leach in the soil in groundwater. Plaintiffs did not dispute that PMC performed each of the actions listed on its Summary of PMC cleanup actions to date.<br><br>Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions].<br>• Plaintiffs' Responses to Statement of Genuine Disputes, at 12-13. | |
| 50.    PMC is conducting further remediation leading to the ultimate closure of the PMC Site, and has been proceeding under the supervision of the DTSC since entering into a 2006 Voluntary Cleanup Agreement.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 22, Ex. F2 [voluntary cleanup agreement]. | **Response:** Disputed as not supported by the evidence and misleading.<br><br>**Evidence:** The PMC Defendants have not started remediating the PMC Site. Mutch Rebuttal Report, Mar. 14, 2021, at § 2.8. There was already significant soil contamination at the PMC Property by the time operations were discontinued in 1992. *Id.* at § 2.7 & Appendix A, pp. 6-14. Contamination remains in soil and groundwater at the PMC Property at present. Cohen Decl., Ex. 3, at 31-37 (Waterstone Envtl., Inc., Removal Action Workplan, May 22, 2020) at 40-46). Site assessments are not equivalent to cleaning up the site and, to date, PMC has only submitted workplans to DTSC but not undertaken actual cleanup of the site. Mutch |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Rebuttal Report, Mar. 4, 2021, at § 2.8 *See also* Mot. at 14-15. |

50.     Moving Parties' Response

While Plaintiffs assert they dispute this fact, the assertion that PMC has not started remediating the PMC Property is belied by Plaintiffs' earlier admissions. Plaintiffs do not dispute the all of the site operational equipment was removed by November 1993.  Plaintiffs do not dispute that PMC Site was capped with asphalt and rolled base material and engineering controls were placed in certain areas to prevent rainwater from causing chemicals to leach in the soil in groundwater. Plaintiffs' did not dispute that PMC performed each of the actions on its Summary of PMC cleanup actions to date.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
- Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions].
- Plaintiffs' Responses to Statement of Genuine Disputes, at 12-13.

| 51.     Extensive site investigation has been performed to evaluate the PMC Site, including the collection of over 800 samples for analysis of soil, soil gas, and groundwater, all in compliance with DTSC approved work plans. Supporting Evidence: <br>• Vogl Decl. ¶ 22, Ex. F2, [voluntary cleanup agreement]. | **Response:** Partially disputed as misleading and immaterial. Plaintiffs do not dispute that limited site investigations have been performed at the PMC Property, including the collection of soil, soil, gas, and groundwater samples. **Evidence:** The PMC Defendants have not started remediating the PMC Site. Mutch Rebuttal Report, Mar. 14, 2021, at § 2.8. There was already significant soil contamination at the PMC Property by the time operations were discontinued in 1992. *Id.* at § 2.7 & Appendix A, pp. 6-14. Contamination remains in soil and groundwater at the |

66

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | PMC Property at present. Cohen Decl., Ex. 3, at 31-37 (Waterstone Envtl., Inc., Removal Action Workplan, May 22, 2020) at 40-46). Site assessments are not equivalent to cleaning up the site and, to date, PMC has only submitted workplans to DTSC but not undertaken actual cleanup of the site. Mutch Rebuttal Report, Mar. 4, 2021, at § 2.8<br><br>*See also* Mot. at 14-15.<br><br>Plaintiffs object to paragraph 51 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

51.   Moving Parties' Response

Plaintiffs do not dispute the uncontroverted fact offered, that extensive site investigation has been performed to evaluate the PMC Site, including the collection of over 800 samples for analysis of soil, soil gas, and groundwater, all in compliance with DTSC approved work plans.

Supporting Evidence:
- Vogl Decl. ¶ 22, Ex. F2, [voluntary cleanup agreement].
- Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions]

| 52.   The monitoring data shows that the PMC Plume is stable or shrinking in | **Response:** Disputed and immaterial. The cited evidence does not support the |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| size, and stable or decreasing in concentration due to source removal and natural attenuation.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 21, Ex. F2 [voluntary cleanup agreement]. | statement that source removal and natural attenuation has caused the PMC Plume to stable or shrink in size and stable or shrink in concentration. No meaningful remediation has been completed.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.7, 2.8, 2.9 & Fig. 2-18; Mot. at 15; Cohen Decl., Ex. 3, at 31-37 (Waterstone Environmental, Inc., Removal Action Workplan, May 22, 2020, at 40-46). |

52.    Moving Parties' Response

While Plaintiffs assert they dispute this fact, the assertion that PMC has not started remediating the PMC Property is belied by Plaintiffs' earlier admissions. Plaintiffs do not dispute the all of the site operational equipment was removed by November 1993.  Plaintiffs do not dispute that PMC Site was capped with asphalt and rolled base material and engineering controls were placed in certain areas to prevent rainwater from causing chemicals to leach in the soil in groundwater. Plaintiffs did not dispute that PMC performed each of the actions on its Summary of PMC cleanup actions to date.

Supporting Evidence:
• Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions].
• Plaintiffs' Responses to Statement of Genuine Disputes, at 12-13.

| 53.    Groundwater monitoring wells on Bloomfield Avenue north of Telegraph Road, approximately 1000 feet from the PMC Site, and approximately 1000-1800 feet from the edge of the Omega OU-2 Plume show non-detections for the PMC Marker Chemicals. | **Response:** Disputed.<br><br>**Evidence**: Mutch Rebuttal Report §§ 2.5, 2.6, 2.9 & Fig. 2-18; Opp'n RFJN, Exs. 2, at 30-31 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, at 1-4, 2-1), 3, at 55 (OU-2 Consent Decree |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Supporting Evidence:<br>• Vogl Decl. ¶¶ 12a-f; 23, Ex. C [site map]. | (Oct. 6, 2016), Appendix B, at 287); Cohen Decl., Ex. 10, at 173 (Waterstone Environmental, Inc. Environmental Characterization Report, Jul. 12, 2000, at 2). |

53.   Moving Parties' Response

While Plaintiffs allege this fact is disputed, they do not describe any such dispute and the evidence referenced does not support a dispute.  Mr. Mutch does not dispute that these wells showed non-detect for these marker chemicals only that after the line of non-detects, that further downgradient wells show detections of the same chemicals.  However, Mr. Mutch completely fails to take into account the number of other source properties which lie between PMC and the OU-2 Plume which account for these detections further downgradient.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
• Vogl Decl. ¶¶ 12a-f; 23, Ex. C [site map].
• In Mr. Mutch's addendum (Docket No. 949-80) at page 25, Figure 1-4 depicts MW-12 as showing a non-detect for benzene.

| 54.   The K values in the area immediately adjacent to the PMC Site are low, on the order of 2, 3 or 5 feet per day.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶¶ 19(v)-(vi), Ex. O [map depicting hydraulic conductivity]. | **Response:** Disputed and immaterial. Flow path directions in the OU-2 area are not influenced by figures in the statement as represented in Exhibit O.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.4 & Figs. 2-5 to 2-9, 2-18; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow |

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11).<br><br>Plaintiffs object to paragraph 54 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

54.    Moving Parties' Response

While Plaintiffs state the fact is disputed, it does not dispute the fact with any explanation or evidence.  The fact that the K values in the area immediately adjacent to the PMC site are low, on the order of 2, 3 or 5 feet per day.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

| 55.    The K values on the west side of the Anticline, in the flow path of the Omega OU-2 Plume, range from 40 to 60 feet per day.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶¶ 19(v)-(vi), | **Response:** Disputed and immaterial. Flow path directions in the OU-2 area are not influenced by figures in the statement as represented in Exhibit O.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.4 & Figs. 2-5 to 2-9, 2-18; CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4; Cohen Decl., Ex. 14, at 181-183 (Intera Incorporated, Final Groundwater Flow |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Model Development and Calibration Report, May 11, 2020, Figs. 2.5, 4.7, 5.11). Plaintiffs object to paragraph 55 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

55.    Moving Parties' Response

While Plaintiffs state the fact is disputed, it does not dispute the fact with any explanation or evidence.  The offered fact is uncontroverted, the K values on the west side of the Anticline, in the flow path of the Omega OU-2 Plume, range from 40 to 60 feet per day.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

| | |
|---|---|
| 56.    Plaintiffs' inaccurately portray the PMC Site on Ex. B of the 5AC to include areas which were never owned or operated by PMC, as well as areas at the PMC Site which were never used for chemical processing or storage, including parking lots. | **Response:** Disputed and immaterial. Exhibit B to the Fifth Am. Complaint is a demonstrative presented to show the approximate locations of the source properties that have contributed hazardous substances to OU-2 Groundwater. |
| Supporting Evidence:<br>• Vogl Decl. ¶¶ 19(v)-(vi), Ex. G [actual boundaries of PMC Site]. | **Evidence**: Fifth Am., Compl. ¶ 119. Plaintiffs object to paragraph 56 as immaterial for purposes of deciding this |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

56.    Moving Parties' Response

Plaintiffs not dispute the uncontroverted fact, that the depiction on Ex. B inaccurately portrays the PMC Site to include areas which were never owned or operated by PMC, as well as areas at the PMC Site which were never used for chemical processing or storage, including parking lots.

| | |
|---|---|
| 57.    As depicted in Ex. B to Plaintiffs' 5AC, the eastern edge of Omega OU-2 Plume boundary appears to be drawn using a mapping method that widens and lengthens the extent of the plume area to its maximum possible extent, closely bordering wells where no chemicals are found.<br><br>Supporting Evidence:<br>• Vogl Decl. ¶ 16a-b, Ex. C [site map]. | **Response:** Disputed and immaterial. The cited evidence does not support the statement that the plume was drawn closely bordering wells where no chemicals are found.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.1, 2.9, 2.10 & Figs. 2-5 to 2-9, 2-18; Opp'n, Exs. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4), 3, at 52-53 (OU-2 Consent Decree (Oct. 6, 2016), Appendix A, 273-74); Cohen Decl., Exs. 17, at 200, 298-299 (McLaren-Hart, Oil Field Reclamation Project Study Area (Jul. 31, 1996), at v, Fig. 4, Fig. 5), 9, at 153-154 (R. Vogl Dep. Tr., at 100:25 to 101:2). |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Plaintiffs object to paragraph 57 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

57. Moving Parties' Response

This fact is uncontroverted by any admissible evidence.  Mr. Mutch simply states there is data for the portion designated "Area of No Data" on Vogl, Ex. C., however he fails to identify any of the wells he claims exist, and the "square" that he has drawn where he contends there is data is largely outside of the border of the OU2 Plume (see Mutch Figure 2-20).  Plaintiffs have offered no admissible evidence to controvert this offered fact.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
- Vogl Decl. ¶ 16a-b, Ex. C [site map].

| | |
|---|---|
| 58.   The dashed Omega OU-2 Plume boundary drawn by CH2MHill indicates that this boundary as drawn was inferred or estimated.<br><br>Supporting Evidence:<br>- Vogl Decl. ¶ 16b, Ex. C, [site map]. | **Response:** Disputed and immaterial. The cited evidence does not support the statement.<br><br>**Evidence:** Mutch Rebuttal Report §§ 2.9, 2.10 & Fig. 2-18; Opp'n, Exs. 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports (Aug. 2010) at Fig. 1-4), 3, at |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 52-53 (OU-2 Consent Decree (Oct. 6, 2016), Appendix A, 273-74); Cohen Decl., Exs. 17, at 200, 298-299 (McLaren-Hart, Oil Field Reclamation Project Study Area (Jul. 31, 1996), at v, Fig. 4, Fig. 5), 9, at 153-154 (R. Vogl Dep. Tr., at 100:25 to 101:2).

Plaintiffs object to paragraph 60 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

58. Moving Parties' Response

Plaintiffs do not dispute the uncontroverted fact offered, that the dashed Omega OU-2 Plume boundary drawn by CH2MHill indicates that this boundary as drawn was inferred or estimated.

Supporting Evidence:
- Vogl Decl. ¶ 16b, Ex. C, [site map].

| 59. The boundary of the Omega OU-2 Plume is approximately 2000 feet away from the PMC Site.

Supporting Evidence:
- Vogl Decl., ¶ 16b, Ex. C, [site | **Response:** Disputed. The cited evidence does not support the statement.

**Evidence:** Mutch Rebuttal Report §§ 2.9, 2.10 & Fig. 2-18; Opp'n RFJN, Ex. |

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| map]. | 2, at 30 (CH2M HILL, Final Remedial Investigation / Feasibility Study Reports, August 2010, Fig. 1-4); Cohen Decl., Exs. 17, at 200, 298-299 (McLaren-Hart, Oil Field Reclamation Project Study Area (Jul. 31, 1996), at v, Fig. 4, Fig. 5), 9, at 153-154_(R. Vogl Dep. Tr., at 100:25 to 101:2). |

59.    Moving Parties' Response

This fact is uncontroverted, and Plaintiff offers no explanation of any dispute. The only dispute Plaintiffs note is that the improperly drawn boundary of OU2, which overstates the boundary of the plume, is more than 1,000 feet from the PMC Site.  The fact that the improperly drawn boundary of the OU2 Site is more than 1,000 feet from the PMC Site does not controvert the stated uncontroverted fact, that the actual Omega OU-2 groundwater plume is more than 2,000 feet from the PMC Site.

The cited evidence does not support Plaintiffs' stated dispute.

| 60.    The past and ongoing removal and remedial work performed at the source areas of the PMC further serve to limit the distance the PMC Plume would have or could have traveled.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ 12b. | **Response:** Disputed and immaterial. PMC has not performed any meaningful remedial work at the Property, and it only recently submitted its workplan for remedial actions.<br><br>**Evidence:** Mot. at 14-15; Cohen Decl., Ex. 3, at 31-37 (Waterstone Environmental, Inc., Removal Action Workplan, May 22, 2020) at 40-46); Mutch Rebuttal Report §§ 2.7, 2.8<br><br>Plaintiffs object to paragraph 60 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA,* |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | *LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

60.     Moving Parties' Response

While Plaintiffs assert they dispute this fact, the assertion that PMC has not started remediating the PMC Property is belied by Plaintiffs' earlier admissions. Plaintiffs do not dispute the all of the site operational equipment was removed by November 1993.  Plaintiffs do not dispute that PMC Site was capped with asphalt and rolled base material and engineering controls were placed in certain areas to prevent rainwater from causing chemicals to leach in the soil in groundwater. Plaintiffs did not dispute that PMC performed each of the actions on its Summary of PMC cleanup actions to date.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

Supporting Evidence:
- Vogl Decl. ¶ 12e, 21-23, Ex. S [Summary of PMC cleanup actions].
- Plaintiffs' Responses to Statement of Genuine Disputes, at 12-13.

| 61.     Groundwater monitoring data from wells instead on the PMC Site, and downgradient demonstrate that the PMC Plume, has migrated less than 1000 feet to the southwest, well short of the Omega OU-2 Plume.<br><br>Supporting Evidence:<br>• Vogl Decl., ¶ ¶ 19(viii). | **Response:** Disputed and immaterial. Plaintiffs need only establish a plausible migration pathway, not mixing, commingling or intersection. CH2M HILL has indicated that the PMC Property is closer.<br><br>**Evidence:** Opp'n RFJN, Ex. 2, at 31 (CH2M HILL, Remedial Investigation / Feasibility Study Reports, Operable Unit 2 (Aug. 2010) at 2-1); Mutch Rebuttal Report § 2.9 & Fig. 2-18. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Plaintiffs object to paragraph 61 as immaterial for purposes of deciding this motion for summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted). |

61.    Moving Parties' Response

Plaintiffs do not controvert the stated fact, that Groundwater monitoring data from wells instead on the PMC Site, and downgradient demonstrate that the PMC Plume, has migrated less than 1000 feet to the southwest, well short of the Omega OU-2 Plume.

Notably, Plaintiffs did not assert any evidentiary objections to PMC's evidence.

The cited portion of Mr. Mutch's report offers no explanation for his conclusory disagreement with this statement.

To the extent Plaintiffs claim that Mr. Mutch's rebuttal report disputes this fact, it does not.  Mr. Mutch's conclusory assertions are speculative and lack support. The groundwater modeling relied upon by Mr. Mutch does not take into account the "diffusion, biodegradation, retardation and other factors" that "you include" in "contaminant transport modeling".  Hagström Reply Decl. ¶ 3, Exh. G, Mutch Depo VII, p. 825:3-6.  Mr. Mutch admits that he has not done the "careful analysis" [to determine the contaminant source],  which would include "field work" … additional drilling, well construction, soil sampling, and I think certain forensic technologies, certainly chemical fingerprinting, probably compound specific isotope analysis, what we call CSIA analysis in selected wells" to determine the source of the contamination shown in the area immediately adjacent to the OU-2 boundary as drawn by Mr. Mutch on Figure 2-18. *Id.*  ¶ 3-4, Ex. G.,

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Mutch Depo VII at pp. 860:19-25; 861:1-10; 861:15-18; Ex. H, at 2-18.  While Mr. Mutch contends groundwater flow from the PMC Site reaches OU-2 Groundwater, he makes no effort to establish that contaminants (and admits he has not done the work to support such a conclusion), with varying chemical properties, would have traveled that far. | |

|  |  |
|---|---|
| **II.  Chrysler Source Property** | |
| **Moving Party: Union Pacific Railroad Company** | |

| | |
|---|---|
| 100.   Union Pacific's predecessors acquired the various parcels that comprise the approximately 40-acre Chrysler Property through a series of transactions from 1888 through 1967.<br><br>Supporting Evidence:<br>• Declaration of Sedina L. Banks ("Banks Decl."), Exhibit ("Exh.") 1 [Deeds for the Chrysler Property 1888-1967];<br>• Declaration of James A. Levy ("Levy Decl."), ¶ 8. | **Response:** Undisputed. |
| 100.   Moving Parties' Response<br><br>No response is required, because the fact is undisputed. | |
| 101.   On January 21, 1974, Union Pacific's predecessor, Southern Pacific Transportation Company, transferred the entire Chrysler Property to Southern Pacific Company (formerly S.P. Inc.) ("New Southern Pacific Company").<br><br>Supporting Evidence: | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| • Banks Decl., Exh. 9 [January 21, 1974 Deed];<br>• Levy Decl., ¶ 9. | |
| 101.   Moving Parties' Response<br><br>No response is required, because the fact is undisputed. | |
| 102.   New Southern Pacific Company is not a predecessor of Union Pacific.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 6 [February 20, 1969 Merger Agreement];<br>• Levy Decl., ¶ 7. | **Response**: Undisputed. |
| 102.   Moving Parties' Response<br><br>No response is required, because the fact is undisputed. | |
| 103.   Union Pacific does not currently own the Chrysler Property.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 36 [Plaintiffs' Supplemental Responses to Union Pacific's First Set of Requests for Admission No. 3]. | **Response:** Undisputed |
| 103.   Moving Parties' Response<br><br>No response is required, because the fact is undisputed. | |
| 104.   The original Chrysler Property | **Response:** Undisputed. |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| was subdivided into four properties identified as the LaSalle Property, North-Central Property, Multitenant Property, and the Central Property.<br><br>Supporting Evidence:<br>• Plaintiff's Fifth Amended Complaint, November 1, 2016, ¶ 138 [Dkt. 526];<br>• Banks Decl., Exh. 16 [Map of the Chrysler Property, March 1988] | |
| 104.   Moving Parties' Response<br><br>No response is required, because the fact is undisputed. | |
| 105.   The Central Property, also referred to by EPA as "Site A," is located at approximately 12128 Burke Street, Santa Fe Springs, CA.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 34, p. 219 [U.S. EPA's Final Remedial Investigation / Feasibility Study Reports Omega Chemical Corporation Superfund Site Operable Unit 2, Los Angeles County, California, Volume 1];<br>• Request for Judicial Notice ("RJN"), ¶ 24. | **Response:** Undisputed, but misleading.<br><br>**Evidence:** Plaintiffs do not dispute U.S. EPA's Final Remedial Investigation / Feasibility Study states: "'Site A' is located at 12128 Burke Street, Santa Fe Springs, California." Banks Decl., Ex. 34 (Docket No. 902-41), at 219. However, it further states: "Site A and several surrounding properties collectively comprised a 40-acre new car preparation facility from 1965 to 1988. At least five 10,000-gallon USTs, four 3,000-gallon USTs, two 550-gallon USTs, five 550-gallon waste oil tanks, seven concrete clarifiers ranging in size from 500 to 5,000 gallons, 17 hydraulic hoists, seven service pits, several fuel pump islands, three car washes, three spray booths, and a paint spill area were |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | installed and operated at the 40-acre site, with four of the seven clarifiers located at Site A." *Id.*<br><br>With the exception of Parcel Nos. 15 and 16, Defendant Union Pacific Railroad Company's ("Union Pacific") predecessors-in-interest acquired all of the parcels depicted on the Jan. 23, 1888, map submitted as Exhibit 1 to Union Pacific's July 13, 2012, response to EPA's 104(e) request, including the entirety of "Site A", by December 3, 1963. *Compare* Banks Decl., Exs. 1 (Docket No. 902-8), at 27-33 (May 23, 1950 indenture), 34-39 (Feb. 9, 1960 indenture), 40-45 (Aug. 8, 1963 corporation grant deed), 46-51 (Dec. 3, 1963 grant deed), 16, at 136 (map) *and* Levy Decl., ¶ 8 (Docket No. 902-8), *with* Declaration of William F. Ford ("Ford Decl."), Exs. 8, at pp. 92-94, 97-100, 119-124, 127, 156, 156-161, 182-186, 240-250 (Union Pacific's Response to EPA 104(e) Request No. 4 (Jul. 13, 2012), at 1-3, 6-9 & Index of Exhibits, Exs. 1 (undated map showing parcel numbers), 5 (acquired parcel #1 as shown on undated map by May 23, 1950), 8 (acquired parcel #4 as shown on undated map by Feb. 9, 1960), 16 (acquired parcel #10 as shown on undated map by Aug. 8, 1963), 17 (acquired parcel #12 as shown on undated map by Dec. 3, 1963)), *and* 6, at 57-58, 71 (Dames & Moore, Remedial Investigation Workplan (Jan. |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 10, 1992), at 4-5, Figure 2). |
| 105.   Moving Parties' Response<br><br>No response is required, because the fact is undisputed. | |
| 106.   Chrysler conducted auto preparation operations on the Chrysler Property from in or around 1965 through 1988.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 21, p. 167 [Final Report – Soil and Ground Water Investigation by Converse Environmental West regarding the Chrysler Property, dated August 29, 1991];<br>• Banks Decl., Exh. 32, p. 209 [California Regional Water Quality Control Board, Los Angeles Region ("RWQCB"), Closure Letter dated August 6, 1999];<br>• RJN, ¶¶ 11, 22. | **Response:** Undisputed, but incomplete.<br><br>**Evidence:** Union Pacific's predecessors-in-interest leased the Chrysler Property to various entities prior to 1965, including General Motors' predecessor, Dallas Smith Service Corporation. Ford Decl. Exs._8, at 92-94, 102-103, 119-124, 273-294 (Union Pacific's Response to EPA 104(e) Request (Jul. 13, 2012), at 1-3, 11-12 & Index of Exhibits & Exs. 20, 21, 22, 23), 6, at 57-58 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992) at 4-5), 10, at 654, (McLaren, Santa Fe Pacific Realty Property Assessment (Apr. 27, 1990), at 8). |
| 106.   Moving Parties' Response<br><br>No response is required, because the fact is undisputed. | |
| 107.   There is no evidence that Union Pacific ever operated on the actual Chrysler Property, other than on a right-of-way that went through a portion of | **Response:** Disputed.<br><br>**Evidence:** Union Pacific's predecessors-in-interest leased the |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| the property.<br><br>Supporting Evidence:<br>• Levy Decl., ¶ 10;<br>• Banks Decl., Exh. 2 [Map of the Chrysler Property dated February 20, 1964 and revised March 6, 1964];<br>• Banks Decl., Exh. 5 [Map of the Chrysler Property dated October 16, 1964 and revised September 26, 1967];<br>• Banks Decl., Exh. 3 [1962 Aerial Photo of the Chrysler Property];<br>• Banks Decl., Exh. 4 [1964 Aerial Photo of the Chrysler Property];<br>• Declaration of David Ruiz ("Ruiz Decl."), ¶¶ 17-22. | Chrysler Property to various entities from approximately 1964 to 1974, including to General Motors' predecessor, Dallas Smith Service Corporation, and to Chrysler's predecessors, Automotive Precheck and New Car Preparation System, Inc. (a/k/a Nu Car Prep). Ford Decl. Exs. 8, at 92-94, 102-112, 119-124, 203-210, 273-294, 316-342, 366-397, 401-434 (Union Pacific's Response to EPA 104(e) Request Nos. 7, 8, 9 & 10 (Jul. 13, 2012), at 1-3, 11-21 & Index of Exhibits & Exs. 12, 20, 21, 22, 23, 27, 28, 29, 30, 33, 34, 35, 36, 37, 39, 40, 41, 42, 43), 6, at 57-58 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992) at 4-5), 10, at_654 (McLaren, Santa Fe Pacific Realty Property Assessment (Apr. 27, 1990), at 8), 11, at_656-684, (Letter from Deborah J. Schmall, Paul Hastings LLP, to Steve Berninger, Esq., Office of Regional Counsel, U.S. EPA Region 9 (Nov. 23, 2011), at 1-8, Attachment A, Attachment B, Attachment C).<br><br>In 1963 and 1964, building permits were approved, listing structures including "Employee Facilities," "Dual Automobile Washing," and "New Car Undercoat." The owner is listed as Union Pacific's predecessor-in-interest, Pacific Elec. R. R. Ford Decl., Exs. 7, at 74, 75-80, 82-90 (Prof'l Serv. Indus., Inc., Phase I Envtl. Site Assessment |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | (Sept. 25, 1998) at 1, 5-6, 12-14, 31, 41-49) (building permits indicating buildings constructed onsite), 8, at 92-96, 109-110,_119-124, 144-154, 258-275, 346-365, 444, 452-462 (Union Pacific's Response to EPA 104(e) Request Nos. 2, 3, 10 (Jul. 13, 2012), at 1-5, 18-19 & Index of Exhibits & Exs. 4, 19, 20, 32, 46, 48, 49, 50) (describing merger of Pacific Electric Railway Company into Southern Pacific Company ("SPCo I"), merger of SPCo I into Southern Pacific Transportation Company, and subsequent transactions leading to Feb. 1, 1998 merger of Union Pacific Railroad Company and Southern Pacific Transportation Company), 6, at 58 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992) at 5) (aerial photo showing at least six buildings onsite in 1963)

In 1973, Union Pacific's predecessor-in-interest, Southern Pacific Transportation Co., completed an addition to the "Hot Start Emission Facility", which was located on the Chrysler Property and leased to Chrysler Corp. Ford Decl., Ex. 8, at 112, 119-124, 428-434 (Union Pacific's Response to EPA's 104(e) Request No. 10 (Jul. 13, 2012), at 21 & Index of Exhibits & Ex. 43)

*Known disposals*

One or more hazardous substances, |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

84

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | such as hexavalent chromium, were spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, or disposed of at the Chrysler Property between 1964 to 1974. Opp'n RFJN, Ex. 23, at 148 (LACE Notice of Violation and Order to Comply (Mar. 20, 1970), (1970 discharge of liquid waste containing hexavalent chromium to storm drain); Ford Decl., Exs. 2, at 16 (McLaren, Property Transaction Envtl. Assessment (Jan. 11, 1989), at 13) (hexavalent chromium), 6, at 59-60 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 6, 8)) (same)<br><br>Ford Decl., Exs. 10, at 655 (McLaren, Santa Fe Pacific Realty Property Assessment (Apr. 27, 1990), at 9) (PCE and TCE used in carwash operations), 2, at 16  (McLaren, Property Transaction Evtl Assessment (Jan. 11, 1989), at 13) (wastewater from carwash to concrete clarifiers, sewer), 6, at 62-63, 66, 69-70 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 12-13, 20, 38-39) (solvents used onsite, common industry use of solvents in carwash, runoff from carwash to floor drains, waste streams carried throughout site via permeable clay or concrete pipes, including wastestream containing solvents sent to clarifier); RFJN, Exs. 80 (LACE IDWP (May 28, 1964) car wash and floor |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | wash down to storm drain and flood control channel), 77 (LACE Industrial Waste Survey (Oct. 21, 1971) (same), 81 (LACE, Notice (Jan. 14, 1964) (cited for discharging car wash wastewater to the sewer without the proper interceptor), 82 (Industrial Waste Disposal Permit App. (Apr. 10, 1964) (wastewater discharges containing detergents used in automatic car wash were estimated to be 60,000 gallons per day in 1964), 78 (LA Cnty. Sanitation Dist., Industrial Wastewater Discharge Permit No. 926 (Nov. 21, 1973) (discharges of wastewater from car wash operations using decosmoline solvent estimated at 24,000 gallons per day in 1973); *see also* Mutch Report, Jan. 14, 2021, at 5-9 to 5-11 (Docket No. 903-204, at #25356-25358) (permeability and exfiltration rates of sewer lines)<br><br>RFJN, Ex. 83 (LACE, Notice of Non-Compliance (Feb. 1971)) (sewer traps "heavy with oil and solvent"); Ford Decl., Ex. 6, at 61 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 9)<br><br>*Other discharges*<br><br>Mutch Report, Jan. 14, 2021, at Tables 5-2, 5-4 (Docket No. 903-204, at #25352-25355, 25361-25363)<br><br>*Car prep operations involved hazardous substances such as* |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | *chromium, decosmoline solvents*<br><br>Ford Decl., Ex. 6, at 62-65 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 12-15); RFJN, Exs. 78 (1973 IWDP No. 926) (listing "decosmoline" and solvent as raw materials that were used and discharged to the sewer system from the car wash), 77_(LACE, Resurvey of Indus. Waste (Oct. 21, 1971) (PALM000564-565, 567)) (car prep operations included painting and spot plating using chromium)<br><br>40 C.F.R. § 302.4<br>As stated in Plaintiffs' Memorandum of Points & Authorities in Opposition to Union Pacific's Partial Motion for Summary Judgment, Union Pacific was responsible for constructing and maintaining the sewer system (which is itself a CERCLA "facility") at the Chrysler Property when car prep operations were conducted there. Accordingly, Plaintiffs reserve their rights to seek contribution from Union Pacific under a "former operator" theory of liability at trial, if necessary. |

107. Moving Parties' Response

Plaintiffs rendered this fact immaterial by conceding in their Opposition that they are not contending that Union Pacific is a current or former operator of the Chrysler Property at this time. Plaintiffs specifically state in their response to Fact No. 107 and in their Opposition that they "reserve their rights to seek contribution under a 'former operator' theory of liability at trial, if

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

necessary." Plaintiffs' Opposition, p. 20, n. 15 (Dkt. 950-1). Plaintiffs have also conceded for purposes of this Motion that they are not contending that Union Pacific is an operator: "[f]or purposes of [Union Pacific's] motion, <u>Plaintiffs do not contend that Union Pacific</u> is the current owner or <u>operator of the property.</u>" Plaintiffs' Opposition, p. 20, n. 15 (Dkt. 950-1)(emphasis added).

Moreover, the evidence that Plaintiffs cite—regarding leases entered into by Union Pacific's predecessors—does not support that Union Pacific was an operator at the Chrysler Property and is entirely irrelevant to this issue.

| | |
|---|---|
| 108.   The right-of-way was removed between 1962 and 1964.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 2 [Map of the Chrysler Property dated February 20, 1964 and revised March 6, 1964];<br>• Banks Decl., Exh. 5 [Map of the Chrysler Property dated October 16, 1964 and revised September 26, 1967];<br>• Banks Decl., Exh. 3 [1962 Aerial Photo of the Chrysler Property];<br>• Banks Decl., Exh. 4 [1964 Aerial Photo of the Chrysler Property];<br>• Ruiz Decl, ¶¶ 17-22. | **Response:** Undisputed, but immaterial<br><br>**Evidence:** Plaintiffs object to Fact No. 108 as immaterial for purposes of deciding this summary judgment because it does not bear on whether Plaintiffs can meet their burden to demonstrate the Chrysler Property is a CERCLA facility; (2) Defendant Union Pacific is one of the four classes of persons that are liable under CERCLA; and (3) whether there has been a "release" or "threatened release" of hazardous substances from the Chrysler Property into OU-2 Groundwater. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted).<br><br>As set forth in Plaintiffs' response to paragraph 105, Union Pacific's |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | predecessors-in-interest acquired most of the Chrysler Property, including all of "Site A", by December 3, 1963. |
| | As set forth in Plaintiffs' response to paragraph 107, Union Pacific's predecessors-in-interest leased the Chrysler Property to various entities from approximately 1964 to 1974, including to General Motors' predecessor, Dallas Smith Service Corporation, and to Chrysler's predecessors, Automotive Precheck and New Car Preparation System, Inc. (a/k/a Nu Car Prep). |
| | As further set forth in Plaintiffs' respnse to paragraph 107, one or more hazardous substances, such as hexavalent chromium, were spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, or disposed of at the Chrysler Property between 1964 to 1974. |
| | Plaintiffs incorporate their responses to paragraphs 105 and 107 herein. |
| 108.  Moving Parties' Response    No response is required, because the fact is undisputed. | |
| 109.   In 1988, Chrysler terminated its leasehold of the Chrysler Property and demolished all buildings and removed | **Response:** Partially disputed and immaterial |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| all structures, including clarifiers.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 19, p. 155 [Letter from Ric Notini of Catellus Development Corporation ("Catellus") to the RWQCB, dated January 4, 1991];<br>• Banks Decl., Exh. 20, p. 158 [Letter from Ric Notini of Catellus to the Los Angeles Department of Public Works, Waste Management Division regarding the Chrysler Property, dated January 17, 1991];<br>• Banks Decl., Exh. 33, p. 213 [Letter from Scott Strine of Palmtree Acquisition Corporation to the U.S. Environmental Protection Agency ("U.S. EPA"), dated May 15, 2009];<br>• RJN, ¶¶ 9, 10, 23. | **Evidence:**  Plaintiffs object to paragraph 109 as immaterial for purposes of deciding this summary judgment. The parties do not dispute Union Pacific's predecessor-in-interest transferred the entire Chrysler Property to an unrelated entity on January 21, 1974. *See* paragraph 101 and Plaintiffs' response thereto. Post-1988 activities at the Chrysler Property do not bear on whether Plaintiffs can meet their burden to prove certain of the elements of Union Pacific's liability under CERCLA. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the suit under the applicable law.") (citation omitted).<br><br>In addition, the cited documents do not prove Chrysler removed "all" structures, including clarifiers, from the site. In 1988, Chrysler Motors Nu-Car Prep Center contracted with Colorado Pacific Constructors, Inc. to remove a defined number of structures from the Chrysler Property: one 10,000-gallon gasoline tank; two 6,000-gallon gasoline tanks; two 3,000 gallon gasoline tanks; five 550-gallon waste oil tanks; and seven concrete lined clarifiers of various capacities. Ford Decl., Exs. 1, at 5 (Petroleum Industry |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Consultants, Inc., Tank Removal Geological Report (Mar. 31, 1988) at 1). This does not establish all structures were removed. Moreover, the documents cited by Union Pacific post-date 1988 and do not document actual removal of onsite structures from the property . |

109.   Moving Parties' Response

Plaintiffs contend that this fact is immaterial, therefore, Plaintiffs' purported dispute of the fact is also immaterial.

Plaintiffs do not dispute that in 1988 Chrysler terminated its leasehold of the Chrysler Property.  Plaintiffs have cited no evidence that disproves statements made in Union Pacific's supporting evidence that Chrysler demolished all buildings and removed all structures, including clarifiers in 1988.  *See, e.g.*, Banks Decl., Exh. 33, p. 213 [Letter from Scott Strine of Palmtree Acquisition Corporation to U.S. EPA, dated May 15, 2009]("Upon the termination of the leasehold in 1988, Chrysler demolished all existing improvements and removed all underground structures including a clarifier on the Property.").

Plaintiffs have not objected to the supporting evidence.  *See* Dkt. 949-81 [Plaintiffs' Request for Ruling on Specified Evidentiary Objections].

| | |
|---|---|
| 110.   Site investigations uncovered soil contamination beneath the area of a former 750-gallon clarifier used by Chrysler (the "Chrysler Clarifier") in conjunction with Chrysler's auto body repair shop referred to as the Body Works building.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 18 | **Response:** Disputed<br><br>**Evidence:**  Site plans from 1973 and 1974 show a clarifier near the southeast corner of the Body Works building. RFJN, Exs. 77 (Los Angeles County Dept. of Engineers, Resurvey of Industrial Waste Survey, Oct. 21, 1971, at 2, 4); Opp'n RFJN_Ex. 13, at 115 (Los Angeles County Dept. of County Engineer, Industrial Waste Survey, |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| [Preliminary Report – Soil and Ground Water Investigation by Converse Environmental West, dated December 28, 1990];<br>• Banks Decl., Exh. 21 [Final Report – Soil and Ground Water Investigation" by Converse Environmental West, dated August 29, 1991]<br>• RJN, ¶¶ 8, 11. | Dec. 14, 1976, at 2); Banks Decl., Exs. 11 (Docket No. 902-18), at 121, 13 (Docket No. 902-20), at 126. Those documents describe that clarifier as the "Nottingham Interceptor." *Id*.<br><br>It is unclear whether the clarifier from the 1973 and 1974 site plans is the same clarifier that later environmental consultant reports identify as being the source of soil contamination near the Body Works building, namely Clarifier 2.  The Nottingham Interceptor (or clarifier) No. 2 is described as a 1,200 or 1,250-gallon clarifier. RFJN, Exs. 77 _ (Los Angeles County Dept. of Engineers, Resurvey of Industrial Waste Survey, Oct. 21, 1971, at 2, 4), _, at _ (Los Angeles County Dept. of County Engineer, Industrial Waste Survey, Dec. 14, 1976, at 2); Banks Decl., Ex. 13 (Docket No. 902-20), at 126.<br><br>The 1988 Tank Removal Report states that *one* clarifier near the Body Works building was removed in 1988. *See* Ford Decl., Ex. 1, at 11 (Petroleum Industry Consultants, Inc., Tank Removal Geological Report (Mar. 31, 1988), at Figure 2B).<br><br>The documents Union Pacific cites do not establish when the clarifier at issue was installed at the Chrysler Property. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

110.   Moving Parties' Response

The evidence cited by Plaintiffs does not create a dispute regarding Fact No. 110.

Union Pacific's supporting evidence states that the environmental site investigation report is "a culmination of work conducted at the former Chrysler facility to investigate the source(s) and extent of <u>soil and ground water contamination identified beneath and in the vicinity of the 750 gallon clarifier</u>, previously <u>used by Chrysler at their Body Works Building</u>."  Banks Decl., Exh. 21 [Final Report – Soil and Ground Water Investigation by Converse Environmental West, dated August 29, 1991](emphasis added).  Plaintiffs have not objected to the supporting evidence.  *See* Dkt. 949-81 [Plaintiffs' Request for Ruling on Specified Evidentiary Objections].

None of the evidence cited by Plaintiffs states that contamination was discovered beneath a 1200-gallon or 1250-gallon clarifier.  In fact, the Tank Removal Report cited by Plaintiffs identifies the removed clarifier near the Body Works Building as 750-gallons.  Banks Decl., Exh. 17, pp. 142 and 145 (figure 2B).

Plaintiffs also repeatedly asserted in their interrogatory responses to Union Pacific that the contamination was discovered beneath a 750-gallon clarifier near the Body Works Building:

in the course of performing an environmental due diligence for the property, elevated levels of halogenated hydrocarbons were discovered in soil beneath and in the vicinity of a former <u>750-gallon clarifier</u> near the former Bodyworks Building, located on the Central Property portion of the CHRYSLER PROPERTY.

. . .

Groundwater sampling conducted on November 15, 1990, November 28, 1990, December 3, 1990, and December 11, 1990 indicated the presence of [hazardous substances] in the groundwater at the Central Property near the former <u>750-gallon clarifier</u>.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Declaration of Sedina L. Banks in Support of Union Pacific's Reply ("Banks Reply Decl."), Exh. 1, pp. 23, 29 [Plaintiffs' Interrogatory Responses](emphasis added).<br><br>Therefore, Plaintiffs' response does not create a dispute regarding the source of contamination as being identified as a 750-gallon clarifier used by Chrysler in connection with the Body Works Building. | |
| 111.   The only identified source of potential groundwater contamination on the Chrysler Property is the Chrysler Clarifier.<br><br>Supporting Evidence:<br>• Banks Decl., Exh. 18 [Preliminary Report – Soil and Ground Water Investigation by Converse Environmental West, dated December 28, 1990];<br>• Banks Decl., Exh. 21 [Final Report – Soil and Ground Water Investigation" by Converse Environmental West, dated August 29, 1991];<br>• Banks Decl., Exh. 24 [Report Phase II Investigation, dated September 6, 1996, prepared by Debra B. Stott of Dames & Moore];<br>• Banks Decl., Exh. 19 [Letter from Ric Notini of Catellus Development Corporation ("Catellus") to the RWQCB, dated January 4, 1991];<br>• Banks Decl., Exh. 20 [Letter from Ric Notini of Catellus to the | **Response:** Disputed<br><br>**Evidence:**  Mutch Rebuttal Report, Mar. 4, 2021, at 1-1 through 1-8.<br><br>As set forth in Plaintiffs' response to paragraph 105, Union Pacific's predecessors-in-interest acquired most of the Chrysler Property, including all of "Site A", by December 3, 1963. Plaintiffs incorporate their response to paragraph 105 herein.<br><br>As set forth in Plaintiffs' response to paragraph 107, Union Pacific's predecessors-in-interest leased the Chrysler Property to various entities from approximately 1964 to 1974, including to General Motors' predecessor, Dallas Smith Service Corporation, and to Chrysler's predecessors, Automotive Precheck and New Car Preparation System, Inc. (a/k/a Nu Car Prep). Plaintiffs incorporate their response to paragraph 107 herein.<br><br>Car preparation operations at the Chrysler Property from the early 1960s to 1974 resulted in multiple disposals |

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Los Angeles Department of Public Works, Waste Management Division regarding the Chrysler Property, dated January 17, 1991];<br>• Banks Decl., Exh. 33 [Letter from Scott Strine of Palmtree Acquisition Corporation to the EPA, dated May 15, 2009];<br>• Banks Decl., Exh. 32 [RWQCB's Closure Letter for the Central Property dated August 6, 1999];<br>• RJN, ¶¶ 8-11, 14, 22, 23. | of CERCLA hazardous substances during Union Pacific's ownership of the property.<br><br>*Known disposals*<br><br>One or more hazardous substances, such as hexavalent chromium, were spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, or disposed of at the Chrysler Property between 1964 to 1974. Opp'n RFJN, Ex. 23, at_148 (LACE Notice of Violation and Order to Comply (Mar. 20, 1970), (1970 discharge of liquid waste containing hexavalent chromium to storm drain); Ford Decl., Exs. 2, at 16 (McLaren, Property Transaction Envtl. Assessment (Jan. 11, 1989), at 13) (hexavalent chromium), 6, at 59-60 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 6, 8) (same)<br><br>Ford Decl., Exs. 10, at 655 (McLaren, Santa Fe Pacific Realty Property Assessment (Apr. 27, 1990), at 9) (PCE and TCE used in carwash operations), 2, at 16, 18 (McLaren, Property Transaction Evtl Assessment (Jan. 11, 1989), at 13, 15) (wastewater from carwash to concrete clarifiers, sewer), 6, at 62-63, 66, 68-70 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 12-13, 20, 37-39) (solvents used onsite, common industry use of solvents in carwash, runoff from |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | carwash to floor drains, waste streams carried throughout site via permeable clay or concrete pipes, including wastestream containing solvents sent to clarifier); RFJN, Exs. 80 (LACE IDWP (May 28, 1964) (car wash and floor wash down to storm drain and flood control channel), 77 (LACE Industrial Waste Survey (Oct. 21, 1971) (same), 81 (LACE, Notice (Jan. 14, 1964) (cited for discharging car wash wastewater to the sewer without the proper interceptor), 82 (Industrial Waste Disposal Permit App. (Apr. 10, 1964) (wastewater discharges containing detergents used in automatic car wash were estimated to be 60,000 gallons per day in 1964), 78 (LA Cnty. Sanitation Dist., Industrial Wastewater Discharge Permit No. 926) (Nov. 21, 1973) (discharges of wastewater from car wash operations using decosmoline solvent estimated at 24,000 gallons per day in 1973); *see also* Mutch Report, Jan. 14, 2021, at 5-9 to 5-11 (Docket No. 903-204, at #25356-25358) (permeability and exfiltration rates of sewer lines)<br><br>RFJN, Ex. 83 (LACE, Notice of Non-Compliance (Feb. 1971) (sewer traps "heavy with oil and solvent")); Ford Decl., Ex. 6, at 61 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 9)<br><br>*Other discharges* |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Mutch Report, Jan. 14, 2021, at Tables 5-2, 5-4 (Docket No. 903-204, at #25352-25355, 25361-25363) *Car prep operations involved hazardous substances such as chromium, decosmoline solvents* Ford Decl., Ex. 6, at 62-65 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 12-15); RFJN, Exs. 78 (1973 IWDP No. 926) (listing "decosmoline" and solvent as raw materials that were used and discharged to the sewer system from the car wash), 77 (LACE, Resurvey of Indus. Waste (Oct. 21, 1971) (PALM000564-565, 567) (car prep operations included painting and spot plating using chromium)) 40 C.F.R. § 302.4 By 1971, there were seven clarifiers at the Chrysler Property. RFJN, Ex. 77_ (Los Angeles County Dept. of Engineers, Resurvey of Industrial Waste Survey (Oct. 21, 1971)); *see* Mutch Report, Jan. 14, 2021, at 5-9 to 5-10 (noting that 1,100 feet of six-inch, vitrified clay sewer pipe, like present at the Chrysler property, could conservatively leak 2.19 million gallons of wastewater over the course of a year). |
| 111.   Moving Parties' Response | |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO
STATEMENT OF GENUINE DISPUTES

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

The evidence cited by Plaintiffs does not create a dispute regarding the Chrysler Clarifier being the only identified potential source of groundwater contamination. Plaintiffs' cited evidence is also irrelevant, unauthenticated, and/or inadmissible. *See* Union Pacific's Request for an Evidentiary Ruling on this point.

Plaintiffs' supporting evidence does not create a dispute for the following reasons:

1. Plaintiffs and Mr. Mutch have already admitted that the Chrysler Clarifier is the identified source of groundwater contamination.
   - Plaintiffs' MSJ at 86:19-87:10 and at 87, n. 60
   - January Mutch Report (Dkt. 903-204)("January Report"), 5-30 (the "most unequivocal evidence of [contaminants] from operations at the Property reaching groundwater" is from the Chrysler Clarifier);
   - Banks Reply Decl., Exh. 5 [Mutch Depo. Tr. 457:11-18; *see also* Mutch Depo. Tr. 433:20-23].

2. Prior environmental site investigations and the Los Angeles Regional Water Quality Control Board in granting no further action for the Chrysler Property ruled out other sources of groundwater contamination.
   - Banks Decl., Exh. 25, p. 191 ("an onsite source [of VOCs] has not been identified.") [North Central Property Assessment]
   - Banks Decl., Exh. 22, p. 176 ("former site features located on the LaSalle property (such as the clarifier) have not adversely impacted soil and groundwater.") [LaSalle Property Assessment].
   - Banks Decl., Exh. 23, p. 184 ("No evidence for an onsite source of VOCs has been detected.") [Multitenant Property Assessment].
   - Banks Decl., Exhs. 27, 28, 30, and 32 [Closure Letters].

3. There is no sampling data that indicates that hexavalent chromium was spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, escaped, leached, dumped, or disposed of at the Chrysler Property.
   - January Report 5-34 (soil investigations did not include hexavalent chromium)
   - Banks Reply Decl., Exh. 5 [Mutch Depo. Tr. 465:17-22] (no soil investigation for hexavalent chromium)

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

o Plaintiffs' Motion for Summary Judgment, at 81:3-4 (admitting that there has been "no testing for hexavalent chromium [] undertaken at the property.")

4. Plaintiffs have not included any notice of violation regarding hexavalent chromium in their cited supporting evidence. Plaintiffs' Opposition Request for Judicial Notice, Ex. 23 at 148, pertains to the wrong party (Globe Oil Tools Company), for the wrong site location (11630 Burke Street, Santa Fe Springs, CA), and on the wrong date (March 20, 1970).

5. Plaintiffs have not provided evidence connecting the alleged violations occurring during Union Pacific's ownership of the Chrysler Property to specific soil and groundwater impacts to the Chrysler Property and the alleged violations do not address soil and groundwater impacts.
   o Banks Reply Decl., Exh. 5 [Mutch Depo. Tr. 424:13-20; 425:5-8; 425:19-21; 426:12-16; 429:13-17; 432:4-6; 443:7-17; 450:17-23] (repeatedly testifying that he has not connected any of the alleged violations to soil and groundwater contamination on the Chrysler Property)

6. Plaintiffs have provided no evidence of a sewer inspection on the Chrysler Property to determine if the sewers leaked.
   o Banks Reply Decl., Exh. 5 [Mutch Depo. Tr. 415:9-12; 464:17-20; 465:3-5; 465:7-11]
   o January Report 5-11 ("sewer lines had not been investigated in 1992 and I would add that they have not been adequately investigated since that time").

7. Plaintiffs do not have results of exfiltration or infiltration rate testing for the sewers at the Chrysler Property.
   o Banks Reply Decl., Exh. 5 [Mutch Depo. Tr. 415:9-12] (testifying that he does not have exfiltration or infiltration rate testing for the sewers at the Chrysler property).

8. The below citations to evidence are violations or prior operations summarized in expert reports prepared decades after the alleged violation occurred and thus, are inadmissible hearsay, which cannot be used to prove

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

that the violations actually occurred.  FED. R. EVID. 801(c); *Orr v. Bank of Am.*, 285 F.3d 764, 773, 778 (9th Cir. 2002).

- o Ford Decl., Exh. 2, at 16 (McLaren, Property Transaction Envtl. Assessment (Jan. 11, 1989), at 13): The references are from a 1989 report and do not contain the alleged violations.
- o Ford Decl., Exh. 6, at 59-60 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 6, 8): The references are from a 1992 report and do not contain the alleged violations.
- o Ford Decl., Exh. 2, at 16, 18 (McLaren, Property Transaction Envtl. Assessment (Jan. 11, 1989), at 13, 15):  The references are from a 1989 report and do not contain the alleged violations.
- o Mutch Report, Tables 5-2, 5-4

9. Plaintiffs' references to the following occurred after Union Pacific sold the Chrysler Property on January 21, 1974 and cannot be used as evidence against Union Pacific. *See* CERCLA, 42 U.S.C. § 9607(a)(2).
    - o Ford Decl., Exh. 6 , at 62-63, 66, 68-70 (Dames & Moore, Remedial Investigation Workplan (Jan. 10, 1992), at 12-13, 20, 37-39):  The list of substances used was from a site inspection that was conducted in 1988 and contained in a report prepared in 1992.
    - o Ford Decl., Exh. 10, at 655 (McLaren, Santa Fe Pacific Realty Property Assessment (Apr. 27, 1990), at 9):  The list of substances used is from a site inspection that was conducted in 1988.  *See* Ford Decl., Exh. 10, at 654-55.
    - o RFJN, Exh. 78:  The cited permit to use decosmoline was not granted until January 1974 and references Permit No. 926.  The County of Los Angeles did not issue the permit for the clarifier associated with Permit No. 926 until April 2, 1974 – several months after Union Pacific sold the Chrysler Property.  Banks Decl., Exh. 13 [Permit Approval]

10. Union Pacific objects to Plaintiffs' characterization of their supporting evidence as "known disposals." Disposal is a legal CERCLA term of art.  *See* CERCLA, 42 U.S.C. § 9601(29).  Plaintiffs' supporting evidence does not support that there were any impacts to groundwater other than from the Chrysler Clarifier.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 112. The Chrysler Clarifier was located in the former Chrysler Body Works building.<br><br>Supporting Evidence:<br><ul><li>Banks Decl., Exh. 17 [Tank Removal Geological Report Prepared by Petroleum Industry Consultants, Inc. dated March 31, 1988];</li><li>Banks Decl., Exh. 18 [Preliminary Report – Soil and Ground Water Investigation by Converse Environmental West, dated December 28, 1990];</li><li>Banks Decl., Exh. 21 [Final Report – Soil and Ground Water Investigation" by Converse Environmental West, dated August 29, 1991];</li><li>Ruiz Decl., ¶¶ 4-6;</li><li>RJN, ¶¶ 7, 8, 11.</li></ul> | **Response:** Disputed<br><br>**Evidence:** Mutch Rebuttal Report, Mar. 4, 2021, at 1-1 through 1-8.<br><br>Documents indicate Clarifier 2, or the "Chrysler Clarifier," was located outside the Body Works Building. Ford Decl., Exs. 1, at 6-8, 11 (Petroleum Industry Consultants, Inc., Tank Removal Geological Report (Mar. 31, 1988), at 2-4, Figure 2B) (describing removal of clarifiers by removing concrete and using cranes and track-mounted backhoe; figure showing clarifier located outside Body Works building), 2, at 13-15 (McLaren Envtl. Eng'g, Property Transaction Environmental Assessment, Jan. 11, 1989, at 1, 6 & Figure 1) (Body Works building fully intact shortly after removal of clarifiers), 4, at 43 (Converse Envtl. West, Final Report – Soil & Groundwater Investigation, Aug. 29, 1991, Figure Map 5).<br><br>Clarifiers almost always sit below the surface to facilitate connection to underground sewer lines carrying waste water to the clarifier for pretreatment before disposal to the sewer. Mutch Rebuttal Report, Mar. 4, 2021, at 1-2, 1-7 through 1-8.<br><br>Large concrete clarifiers like those used in the 1960s and 1970s at the Chrysler Property are not ordinarily installed |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | inside a building or other enclosed structure. RFJN Ex. 77 (Los Angeles County Dept. of Engineers, Resurvey of Industrial Waste Survey, Oct. 21, 1971); Mutch Rebuttal Report, Mar. 4, 2021, at 1-7. |

112.  Moving Parties' Response

The evidence cited by Plaintiffs does not create a dispute regarding whether the Chrysler Clarifier was installed within the Body Works Building.

All environmental reports, including those cited by Plaintiffs, depict the Chrysler Clarifier as located in the same location as where an L-shaped addition to the Body Works Building was added sometime between 1983 and 1987.  Banks Decl., Exhs. 17, p. 144-45 [Tank Removal Report]; Banks Decl., Exhs. 18, p. 152 and 21, p. 174 [Converse Reports]; Ruiz Decl., ¶¶ 5 & 6; Ford Decl., Exh. 2, p. 14 [McLaren Report]; January Report, Figure 5-10.  The only difference in these depictions is some diagrams show the "L-shaped" addition to the Body Works Building as depicted in contemporaneous aerial photographs and some do not.

Even if the hand-drawn site figures do not accurately depict the L-shaped expansion, we know the expansion was installed sometime between 1983 and 1987 based on the contemporaneous aerial photographs identified by Union Pacific's expert, David Ruiz.  Ruiz Decl., ¶ 4-6, 7-10, 12-16.  Plaintiffs' expert, Mr. Mutch, in his March 4, 2021 Rebuttal Report ("Rebuttal Report") agreed that Mr. Ruiz' aerial photograph analysis "is adequate to assess the timing of the building expansion."  Rebuttal Report (Dkt. 949-78), 1-8.

Mr. Mutch in both his January Report and Rebuttal Report agrees that the Chrysler Clarifier was located within the L-shaped addition of the Body Works Building.  In Figure 5-10 to his January Report, Mr. Mutch identifies the location of the Chrysler Clarifier consistent with Mr. Ruiz' identification:

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|   Ruiz Figure 1 |   Mutch Figure 5-10 |

Likewise, in his Rebuttal Report, Mr. Mutch admitted that "[t]he annotated site photograph referenced by Mr. Ruiz <u>does indeed support that the Chrysler Clarifier was excavated from a location within the expanded footprint of the Body Work Building</u>."  Mutch Report, p. 1-7 (emphasis added).

Plaintiffs have not objected to the supporting evidence.  *See* Dkt. 949-81 [Plaintiffs' Request for Ruling on Specified Evidentiary Objections].

| 113. The Chrysler Clarifier was installed after Union Pacific sold the Chrysler Property.  Supporting Evidence: <ul><li>Banks Decl., Exh. 17 [Tank Removal Geological Report Prepared by Petroleum Industry Consultants, Inc. dated March 31, 1988];</li><li>Banks Decl., Exh. 18, p. 152; [Preliminary Report – Soil and Ground Water Investigation by Converse Environmental West, dated December 28, 1990, Figure No. 5];</li></ul> | **Response:** Disputed  **Evidence:** Defendants base this claim on their unsupported allegation that the Chrysler Clarifier was located inside the Body Works building. *See*, *e.g.*, Mot. at 33, 34, 39, 50. As fully set out in response to paragraph 112 above, the evidence does not support this allegation. Plaintiffs incorporate their response to paragraph 112 herein. |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| • Banks Decl., Exh. 21, p. 174 [Final Report – Soil and Ground Water Investigation" by Converse Environmental West, dated August 29, 1991, Figure No. 10];<br>• Banks Decl., Exh. 14 [Aerial Photograph of the Chrysler Property dated 1983];<br>• Banks Decl., Exh. 15 [Aerial Photograph of the Chrysler Property dated 1987];<br>• Banks Decl., Exh. 9 [January 21, 1974 Deed];<br>• Banks Decl., Exh. 10 [Los Angeles County Sanitation District Letter dated January 31, 1974];<br>• Banks Decl., Exh. 7 [Los Angeles County Sanitation District Letter dated October 16, 1973];<br>• Banks Decl., Exh. 8 [Site Plan marked as approved on October 16, 1973 by the Los Angeles County Sanitation District, in connection with an Industrial Wastewater Discharge Permit No. 787];<br>• Banks Decl., Exh. 11 [Site Plan marked as approved on January 31, 1974 by the Los Angeles County Sanitation District, in connection with an Industrial Wastewater Discharge Permit Nos. 926, 927 and 928 for the | |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

104

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Chrysler Property]; <br> • Banks Decl., Exh. 13 [Map depicting work to be performed under Industrial Wastewater Discharge Permit Nos. 787, 926, 927 and 928]; <br> • Ruiz Decl., ¶ 4-6, 7-10, 12-16; <br> • RJN, ¶¶ 1-4, 6-8, 11. | |

113.   Moving Parties' Response

Notably, in their response to Fact No. 113, Plaintiffs do not dispute that if the Chrysler Clarifier was installed inside the Body Works Building's L-shaped addition then it was installed after Union Pacific sold the Chrysler Property. Plaintiffs only dispute Union Pacific's Fact No. 112 that the Chrysler Clarifier was installed inside the Body Works Building's L-shaped addition.

As discussed in response to Fact No. 112, incorporated by this reference, Plaintiffs' evidence does not create a dispute regarding the location of the Chrysler Clarifier as being within the L-shaped addition to the Body Works Building.

### III.  Patsouras Source Property

**Moving Defendants: Halliburton Affiliates, LLC; Intervenors Fireman's Fund Insurance Company and Federal Insurance Company, as Insurers of Palley Supply Company; and Kekropia, Inc.**

| | |
|---|---|
| 200.   On November 1, 2016, Plaintiffs filed a Fifth Amended Complaint ("FAC") against Defendants Halliburton Affiliates, LLC; Kekropia, Inc.; William K. Palley, an individual; and Palley Supply Company (the "Patsouras Property Defendants") alleging that | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| each was a "covered person" within the meaning of 42 U.S.C. § 9607(a)(1)-(4).<br><br>Supporting Evidence: FAC ¶ 398; Ex. A to the Declaration of William D. Wick | |
| 200.   Moving Parties' Response<br><br>    No Response as Paragraph 200 is undisputed. | |
| 201.   EPA concluded that certain parties were potentially responsible parties ("PRPs") for the contamination of OU-2 groundwater, and sent Special Notice Letters to them.<br><br>Supporting Evidence:  FAC ¶ 4; Ex. A to the Declaration of William D. Wick | **Response:** Undisputed, but immaterial.<br><br>**Evidence:**  Plaintiffs object to paragraph 201 as immaterial for purposes of deciding this summary judgment because it does not bear on whether Plaintiffs can meet their burden to demonstrate the Patsouras Property is a CERCLA facility; (2) Defendants Halliburton Affiliates, LLC, Palley Supply Company and Kekropia, Inc. (collectively, the "Patsouras Defendants") are one of the four classes of persons that are liable under CERCLA; and (3) whether there has been a "release" or "threatened release" of hazardous substances from the Patsouras Property into OU-2 Groundwater (as defined in Footnote 1 above). *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927, 930 (C.D. Cal. 2018) ("A material fact for purposes of summary judgment is one that might affect the outcome of the |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | suit under the applicable law.") (citation omitted). |

201.   Moving Parties' Response

Contrary to Plaintiff's response, the evidence is material.  It is material because it demonstrates that the US EPA, the governing regulatory agency, conducted its own analysis of which properties overlying the Omega Plume may have contributed to the groundwater contamination.  EPA's policy is to issue notice letters "to *all* parties where there is *sufficient evidence to make a preliminary determination* of *potential* liability under §107 of CERCLA." 53 Fed. Reg. 5298, 5301 (Feb. 23, 1988)(emphasis added).  EPA issued notice letters to 42 owners or operators of properties overlying the Omega Plume, but did NOT issue a notice letter to any of the Patsouras Property Defendants, indicating that there was not sufficient evidence to make a preliminary determination that the Patsouras Property Defendants were potentially liable.

| 202.  EPA has *not* sent a Special Notice Letter to any of the Patsouras Property Defendants.<br><br>Supporting Evidence:  FAC, p. 18 ("Non-Notice Letter Defendants PRPS,"), ¶ 93-96; Ex. A to the Declaration of William D. Wick | **Response:** Undisputed, but immaterial.<br><br>**Evidence:** Plaintiffs do not dispute EPA has not sent a Special Notice Letter to any of the Patsouras Property Defendants to date. Declaration of William D. Wick ("Wick Decl."), Ex. A (Docket No. 526, Fifth AC, ¶¶ 68, 93-96 (alleging each defendant received a SNL, GNL or has not yet received a notice letter)).<br><br>The OU-2 Remedial Investigation Report ("OU-2 RI"), portions of which the Patsouras Defendants cite below, plainly states that EPA recognizes its investigations to date "may not have identified all sources of contamination within the OU2 area, and the EPA may conduct additional investigations in the |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | future." *See* Hagstrom Decl., Ex. A, at 6 (Docket No. 902-47, at # 17799) (OMEGA OU-2 RI/FS, at 8-4). EPA could issue a GNL or SNL to the Patsouras Defendants in the future. |
| | Under CERCLA, EPA is not required to send notice letters to all entities that contributed contamination to OU-2 Groundwater and the Agency has not done so. EPA acknowledges there are state-led actions to clean up known source properties that are continuing to contribute to the OU-2 Groundwater contamination and that those actions must work in parallel with the EPA OU-2 Groundwater containment remedy. *See* Docket No. 770-2, at #14433, #14440-14441 (Ex. A, 17, 24-25) (OU-2 ROD, at 1-2, 2-4 to 2-5). |
| | Though strong circumstantial evidence of Defendants' liability, EPA's issuance of a notice letter to the Patsouras Defendants would not directly prove any of the elements of the Patsouras Defendants' liability under CERCLA and is, therefore, immaterial. *See* Plaintiffs' Response to Patsouras Defendants' paragraph 201. Plaintiffs incorporate their Response to paragraph 201 herein by reference. |

202.   Moving Parties' Response

Contrary to Plaintiff's response, the evidence is material.  The fact remains that following many years of investigation, the EPA has <u>not</u> issued a Special

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Notice Letter to any of the Patsouras Property Defendants, and, as stated in the Response to Paragraph 201, it is a material fact for the Court to consider. Plaintiffs provide mere conjecture that the EPA *may* identify additional sources of contamination to OU-2, it *may* conduct additional investigations in the future, and that it *could* issue either a General or Special Notice Letter to the Patsouras Property Defendants but this is pure conjecture on Plaintiff's part (especially considering the LARWQCB has issued the Patsouras Property a No Further Action letter). The fact that cannot be disputed is that EPA has been issuing notice letters for 15 years relating to the properties overlying the Omega Plume and has not issued any letters to the Patsouras Property Defendants. The only actual evidence for the Court to consider is that the EPA has not issued these letters to the Patsouras Property Defendants and has not named them as PRPs with regard to OU-2 contamination. Moving parties incorporate their Response to paragraph 201 by reference. | |
| 203. EPA concluded that certain parties were potentially responsible parties ("PRPs") for the contamination of OU-2 groundwater warranting receipt of a General Notice Letter ("GNL") from EPA and sent GNLs to them.<br><br>Supporting Evidence: FAC ¶ 5; Ex. A to the Declaration of William D. Wick | **Response:** Undisputed, but immaterial.<br><br>**Evidence:** Plaintiffs incorporate their response to paragraph 201 herein. |
| 203. Moving Parties' Response<br><br>    This fact is material. See responses to Paragraph 201 and 202 incorporated by reference herein. | |
| 204. EPA has *not* sent a General Notice Letter to any of the Patsouras Property Defendants.<br><br>Supporting Evidence: FAC, p. 18 ("Non-Notice Letter Defendants | **Response:** Undisputed, but immaterial.<br><br>**Evidence:** Plaintiffs incorporate their responses to paragraphs 201, 202 and 203 herein. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| PRPS,"), ¶ 93-96; Ex. A to the Declaration of William D. Wick | |
| 204.   Moving Parties' Response<br><br>This fact is material.  See responses to Paragraph 201, 202 and 203 incorporated by reference herein. | |
| 205.  The Patsouras Property is located at 11630-11700 Burke Street, Santa Fe Springs, CA.<br><br>Supporting Evidence:  FAC ¶ 343, Ex. A to the Declaration of William D. Wick | **Response:** Undisputed. |
| 205.   Moving Parties' Response<br><br>No Response as Paragraph 200 is undisputed. | |
| 206.   From 1968 to 1972, Globe Oil Tools Company operated on the Patsouras Property, manufacturing and treating oil well drilling equipment and tools.<br><br>Supporting Evidence:  Los Angeles Regional Water Quality Board Letter, Jan. 4, 2017, Ex. B to the Declaration of William D. Wick<br><br>AIG Consultants, Inc. Phase I Environmental Site Assessment, June 30, 1994, pp. 10-11 (PTFS00024775-PTFS00024804); Ex. C to the Declaration of William D. Wick | **Response:** Disputed.<br><br>**Evidence:** Globe Oil operated on the Property from at least 1941, and perhaps as early as the 1930's. Opp'n RFJN, Exs. 15-A, at 117-125 (building permits for oil tool manufacturing plant on Sorenson Lane); Valenzuela Decl., Exs. 8, at 66_(Environmental Audit, Inc., Supplemental Subsurface Investigation, Mar. 3, 1997, at 3), 19, at 190-191 (Letter dated Mar. 19, 1959 addressed to Mr. John Bertaina" of Globe Oil Tool at "11630 Burke, Santa Fe Springs, Calif."); Mutch Report, Jan. 14, 2021, at 7-18 & Figs. 7-1, 7-12 |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Environmental Audit, Inc. Updated Site Conceptual Model and Request for Low Risk Closure, June 17, 2010, p. 1 [which corrects a typo in a March 3, 1997 EAI report which stated that operations began in "1958"](PTFS00024509-PTFS00024643); Ex. D to the Declaration of William D. Wick | (Docket No. 903-210 (1928 map indicating Burke Street used to be named Sorenson Lane & 1938 aerial photograph)). |

206. Moving Parties' Response

　　Undisputed. The *date* that Globe began operations is not material. Plaintiffs' Fifth Amended Complaint alleged that operations began in 1958. The Regional Board, AIG, and EAI all stated that Globe began operations in 1968. Only recently did Plaintiffs argue that operations began at least as of 1941. Patsouras Property Defendants have not had an opportunity to assess Plaintiffs' most recent allegations, but do not dispute that operations could have begun earlier than 1968.

| 207. On March 20,1970, the Los Angeles County Engineer issued a notice to Globe Oil Tools Company alleging that "the discharge of liquid waste from your rinse operation to ground" is in violation of Section #6301 of Santa Fe Springs City Ordinance No. 79 because the concentration of dissolved solids exceeded the allowable limitation.<br><br>Supporting Evidence: PTFS00022295, PTFS00023219-20; Ex. E to the Declaration of William D. Wick | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 207. Moving Parties' Response<br><br>No Response as Paragraph 207 is undisputed. | |
| 208. The County alleged that a sample of the liquid waste taken on March 9, 1970 showed "a concentration of dissolved solids that greatly exceeds the allowable limitation." The sample form indicated that "Chromium, hexavalent" was measured at a concentration of 19.5 parts per million.<br><br>Supporting Evidence: PTFS00022295, PTFS00023219-20; Ex. E to the Declaration of William D. Wick | **Response:** Undisputed. |
| 208. Moving Parties' Response<br><br>No Response as Paragraph 208 is undisputed. | |
| 209. After receiving a copy of the notice, the Globe plant manager "stated that he would have discharge discontinued at once."<br><br>Supporting Evidence: PTFS00022293; Ex. E to the Declaration of William D. Wick | **Response:** Undisputed. |
| 209. Moving Parties' Response<br><br>No Response as Paragraph 209 is undisputed. | |
| 210. On March 24, 1970, Globe submitted a formal application to the | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

112

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| County Engineer for approval of an industrial waste disposal system to be installed on the Property in which liquid waste would flow into the sewer after passing through two interceptors.<br><br>Supporting Evidence: PTFS00022294; Ex. E to the Declaration of William D. Wick | |
| 210.   Moving Parties' Response<br><br>    No Response as Paragraph 210 is undisputed. | |
| 211.  The Globe plant manager "stated that all liquid waste would be collected in impervious containers and not discharged to ground until sewer system is completed."<br><br>Supporting Evidence: PTFS00022293; Ex. E to the Declaration of William D. Wick | **Response:** Undisputed. |
| 211.   Moving Parties' Response<br><br>    No Response as Paragraph 211 is undisputed. | |
| 212(a).  On June 19, 1970, the government determined that Globe's Industrial waste facilities were "constructed according to cleared plans." | **Response:** Disputed as incomplete.<br><br>**Evidence:** The referenced exhibit states that "the facilities constructed [to address Globe's violation of waste water disposal standards] were constructed according to cleared plans." Wick Decl., Ex. E (Docket No. 902-80, |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Supporting Evidence: PTFS00022291; Ex. E to the Declaration of William D. Wick | at #18397) (City of Santa Fe Springs, Industrial Waste Survey of Globe Oil Tool Co. (June 19, 1970)). However, the referenced plans were only put into place after Globe was ordered to "cease and desist" from discharging liquid waste to ground that contained dissolved solids that "greatly exceed[ed] the allowable limitation." *Id.* at # 18392 (Cnty. of Los Angeles, Dept. of Cnty. Eng'r, Notice of Violation & Order to Comply to Globe Oil Tools Co. (Mar. 20, 1970)).<br><br>Globe Oil conducted tooling and heat treating of oil tools, bits, and device, manufacturing hundreds of devices and pieces of equipment each month. *Id.* at # 18397 (City of Santa Fe Springs, Industrial Waste Survey of Globe Oil Tool Co. (June 19, 1970)). The metal heat treating operations generated wastewater heavily contaminated with hexavalent chromium. *Id.* at #18393 (Cnty. of Los Angeles, Dept. of Cnty. Eng'r, Industrial Waste Division, Chemical Analysis, Job No. 3240.10 (Mar. 17, 1970)); *see also* RFJN, Ex. 93 (City of Santa Fe Springs, Industrial Waste Disposal Permit Application (May 18, 1970)).<br><br>Globe Oil used a degreaser and steam cleaned newly manufactured parts and equipment, which created waste streams contaminated with hazardous substances. Valenzuela Decl., Ex. 8, at |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 66 (Environmental Audit, Inc., Supplemental Subsurface Investigation (Mar. 3, 1997) at 3); Wick Decl., Ex. E (Docket No. 902-80, at #18397) (City of Santa Fe Springs, Industrial Waste Survey of Globe Oil Tool Co. (June 19, 1970)). This waste undoubtedly included chlorinated solvents, given the common usage of those solvents in the metal fabricating industry during the pertinent time.

After 1970, the waste streams were run through permeable concrete or brick subsurface clarifiers, units now known to commonly result in subsurface releases, to settle out solids before being discharged to the public sewer system. Valenzuela Decl., Exs. 8, at 66 (Environmental Audit, Inc., Supplemental Subsurface Investigation (Mar. 3, 1997) at 3), 4, at 28 (AIG Consultants, Inc., Phase 1 Environmental Assessment (June. 30, 1994) at 18). Sewer pipes made of vitrified clay, the common material used during the early and middle part of the 20th century, also invariably leak, either through cracks, pipe joints, or simply via exfiltration. *See* Mutch Report, Jan. 14, 2021, at 5-9 to 5-11, 5-30. Given the permeability of these units and infrastructure, contaminated waste water carried through those systems is virtually certain to reach the environment. *Id.* |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | In March 1970, Globe Oil was issued a Notice of Violation for discharging industrial waste to the ground. Wick Decl., Ex. E (Docket No. 902-80, at #18392-18393) (Los Angeles Cnty., Dept. of Cnty. Eng'r, Notice of Violation & Order to Comply (Mar. 20, 1970) & Cnty. of Los Angeles, Dept. of Cnty. Eng'r, Industrial Waste Division, Chemical Analysis, Job No. 3240.10 (Mar. 17, 1970)). The discharge included rinse water from the heat-treating operations containing hexavalent chromium at 19.5 parts per million, a level 975,000 times higher than the current level considered protective in groundwater. *Id*. at #18393 (Cnty. of Los Angeles, Dept. of Cnty. Eng'r, Industrial Waste Division, Chemical Analysis, Job No. 3240.10 (Mar. 17, 1970)); Mutch Report, Jan. 14, 2021, at 7-7. |

212(a).      Moving Parties' Response

Plaintiffs' response that Paragraph 212 is "incomplete" is without merit. Moving parties proffered a straightforward piece of evidence which demonstrates that as of June 19, 1970, the government had deemed Globe's Industrial waste facilities were "constructed according to cleared plans."  Plaintiffs do not dispute that fact, but go on to make irrelevant and unsubstantiated statements about other matters.  Plaintiffs' non-responsive statement should be stricken and disregarded by the Court.  The Moving Parties' evidence remains undisputed and complete.

| 212(b).  On August 23, 1971, the City of Santa Fe Springs issued Industrial Waste Disposal Permit No. 4485 to Globe to discharge into the sewer | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| washdown and wastes from manufacturing and processing oil well drilling tools.<br><br>Supporting Evidence: PTFS00022288; Ex. E to the Declaration of William D. Wick | |
| 212(b).     Moving Parties' Response<br><br>No Response as Paragraph 212(b) is undisputed. | |
| 213.  In 1972, William D. Palley and Defendant William K. Palley acquired the Patsouras Property from Rucker.  In 1973, Defendant William K. Palley obtained sole ownership of the property.<br><br>Supporting Evidence: FAC ¶ 345; Ex. A to the Declaration of William D. Wick | **Response:** Undisputed. |
| 213.   Moving Parties' Response<br><br>No Response as Paragraph 213 is undisputed. | |
| 214.  During Palley's ownership, the Property was occupied by a government surplus order house, by industrial auctioneers, by a paper box company, and by a plastic reprocessing business.<br><br>Supporting Evidence: Los Angeles Regional Water Quality Board Letter, | **Response:** Disputed as incomplete.<br><br>**Evidence:** Palley's use of the Property was not simply as a "government surplus order house." Instead, this business involved hydraulics and hydraulic equipment maintenance, aircraft, government surplus, and warehousing. Valenzuela Decl., Exs. 9, |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Jan. 4, 2017, Ex. B to the Declaration of William D. Wick | at 77-78 (Environmental Audit, Inc., Summary of Site Assessments, Mar. 2009, at 1-2), 14, at 140-142 (W. Palley Dep. Tr. at 20:9 to 21:5; 69:19-23). |

214.   Moving Parties' Response

Plaintiffs' response that Paragraph 214 is incomplete is without merit. Paragraph 214 does not state that the Property was used during Palley's ownership solely as a "government surplus order house" and clearly states that the property was used by a paper box company and by a plastic reprocessing business.  Plaintiffs improperly insert additional evidence in response to this fact which remains undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| | |
|---|---|
| 215.  On May 18, 1988, the Santa Fe Springs Fire Department issued a notice of violation alleging that "oil from 2 clarifiers spilled out onto Master Box Co. access/loading area."<br><br>Supporting Evidence:  EAI00897, Ex. F to the Declaration of William D. Wick | **Response:** Undisputed. |

215.   Moving Parties' Response

No Response as Paragraph 215 is undisputed.

| | |
|---|---|
| 216.  On May 19, 1988, the Santa Fe Springs Fire Department issued a notice of violation alleging that two abandoned clarifiers contained "excessive oil and grease."<br><br>Supporting Evidence:  EAI00896, Ex. F to the Declaration of William D. Wick | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 216.   Moving Parties' Response<br><br>No Response as Paragraph 216 is undisputed. | |
| 217.  Palley disposed of waste from the clarifiers and drums and the clarifiers were subsequently abandoned-in-place by filling with cement.<br><br>Supporting Evidence:  AIG Consultants, Inc. Phase I Environmental Site Assessment, June 30, 1994, p. 18; (PTFS00024775-PTFS00024804); Ex. C to the Declaration of William D. Wick | **Response:** Disputed as incomplete.<br><br>**Evidence:** The cited authority does not state that Palley disposed of waste from the clarifiers and drums—unless Palley is referring to his criminal prosecution in July 1988 for illegally transporting and disposing of hazardous waste. Valenzuela Decl., Ex. 4, at 29 (AIG Consultants, Inc., Phase I Environmental Site Assessment (June 30, 1994, at 19). In 1987, the County of Los Angeles Department of Health Services filed a criminal complaint against Palley Supply's owner for maintaining two subsurface structures containing a black oily liquid resembling waste oil. Valenzuela Decl., Ex. 8, at 66 (Environmental Audit, Inc., Supplemental Subsurface Investigation, Mar. 3, 1997, at 3). A year later, on May 18, 1988, an inspection report noted that the abandoned clarifiers were filled with trash and oil, and that during a rainstorm, "industrial waste" was overflowing and discharging to the street. *Id.*; RFJN, Ex. 101 (Inspection Record for Talco Plastics, May 18, 1988.) Palley received two more notices of violation on the same day, one for excessive waste in two abandoned clarifiers and another notice |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | of violation for overflow from a sump and two abandoned clarifiers, due to a plugged sewer line, that was discharging to ground at the property's access and loading area. Opp'n RFJN, Exs. 17, at_141 (Santa Fe Springs Fire Dept. ("SFSFD"), Notice of Violation No. 74 (May 18, 1988)), 18, at 142 (SFSFD, Notice of Violation No. 75 (May 18, 1988).

Industrial waste from steam cleaning operations by Palley was discharged to the sanitary sewer through one or more clarifiers that had been present on the property since Globe Oil Tools operated there. Valenzuela Dec., Ex._9, at 77-78 (Environmental Audit, Inc., Summary of Site Assessments, Mar. 2009, at 1-2). Clarifiers leak and are common sources of groundwater contamination. *See* Mutch Report, Jan. 14, 2021, at 2-6, 3-5.

This statement is further disputed to the extent it suggests that Palley properly and fully remediated all sources of contamination from the Property—this is not the case. In addition to 2 brick clarifiers which were historically used to store waste oil and solvents at the Property, there are also 3 USTs on the Property—one of which is not registered and regulatory agencies were not aware of its presence. Valenzuela Decl., Ex. 4, at 27-28 (AIG Consultants, Inc., Phase I |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| | Environmental Site Assessment (June 30, 1994, at 17-18). There was no documentation of the condition of the clarifiers or surrounding soil before they were abandoned in place or of the unregistered UST and surrounding soil that remains on the Property. *Id*. at 30 (AIG Consultants, Inc., Phase I Environmental Site Assessment (June 30, 1994, at 20). |
| | This statement fails to recognize the contamination caused by the 2 clarifiers before (and after) they were purportedly "abandoned in place." In an August 18, 1988 letter, the County of Los Angeles Department of Health expressed great concern "over potential problems with two existing underground storage structures located on the west section of the site. We have observed two brick "clarifiers" built prior World War II which possibly contain[] waste oil or a similar material We also feel that these structures have long since lost their integrity to withhold any of its contents." RFJN, Ex. 87 (L.A. County DHS Letter to C. Sjoberg (Aug. 18, 1988)). These brick clarifiers pre-dated the connection of the property to the sewer system in 1970 and discharged to lagoons present on the Property. *See* Mutch Report, Jan. 14, 2021, at 7-27 to 7-28. No meaningful investigation of the role the lagoons had upon the nature and extent of the contamination of the Property |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| | was ever completed. *Id.* The lagoons have been present on the Property from at least 1938 – 1973, but, inexplicably, have never been a major focus of investigation. *Id.*<br><br>On November 28, 1995, the Los Angeles County Fire Department ordered Kekropia to "determine the nature, concentration, and the vertical and lateral extent of contamination" and submit a "site characterization plan" by the end of December, noting that there had been "releases" at the Property. RFJN, Ex. 84 (T. Klinger, Supervisor, Los Angeles County Fire Dept., Health / HazMat Div., Letter to L. Patsouras, Kekropia, Nov. 28, 1995).<br><br>The Los Angeles County Fire Department concluded that the locations of clarifiers and a storage shed on the eastern parcel of the Patsouras Property were impacted with volatile organic compounds, such as PCE and TCE, and needed to be remediated. *See* RFJN, Ex. 92 (Los Angeles County Fire Dept., Memorandum, Jan. 9, 1996, at 1-2). |

217. Moving Parties' Response

Plaintiffs' response to Paragraph 217 is non-responsive to the simple factual statement that "Palley disposed of waste from the clarifiers and drums and the clarifiers were subsequently abandoned-in-place by filling with cement," which is supported by the proffered evidence. Plaintiffs make a litany of

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

irrelevant and unsubstantiated statements that do not controvert this fact or demonstrate any evidence that contaminants in the soil migrated to the groundwater.  Palley Supply Company received notices of violation but they were "paper violations" - - that is, Palley was cited for not having applied for the applicable waste discharge permits.  Plaintiffs list a litany of facts to confuse the Court as to the simple fact that the clarifiers were abandoned in place.  Critically, none of the statements listed by Plaintiffs support any fact regarding contribution to groundwater contamination by Palley's operations.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| | |
|---|---|
| 218.  In 1994, AIG Environmental Consultants performed a Phase I Environmental Site Assessment of the Property.  AIG concluded that "the greatest potential risk to the subject property" was the total of 37 sites less than ¼ mile away whose potential off-site contamination may have impacted the Property, and AIG also recommended additional investigation of the Property itself.<br><br>Supporting Evidence:  AIG Consultants, Inc. Phase I Environmental Site Assessment, June 30, 1994, p. 3; (PTFS00024782); Ex. C to the Declaration of William D. Wick | **Response**: Disputed as incomplete<br><br>**Evidence:** The statement is necessarily qualified by the failure of AIG to investigate other sources of potential contamination. The AIG assessment specifically identified numerous other potential sources of contamination (including the unregistered UST, potentially hazardous materials in storage containers and 55-gallon drums located at the Property, and dark-stained soil in the area of "Bay Traps"), stated that AIG did not investigate these other sources, and recommended that these other potential sources be investigated and evaluated to determine their potential impact to the soil and groundwater. Mutch Rebuttal Report, Mar. 4, 2021, at § 3. AIG states that, based on the results of its inspection of the Property and its historical records of land use and regulatory inquiries, "there is evidence of past activity at the Site which may represent environmental risks and/or liabilities. The extent of these environmental risks |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | could possibly be determined with further investigation. Therefore, AIG recommends that additional investigation be performed to further evaluate the potential for impact to the soil, air, and/or ground water at the Site." *Id.* at 3. |

218.  Moving Parties' Response

Plaintiffs' response is not responsive to the evidence provided in Paragraph 218. Plaintiffs' averment that Paragraph 218 is incomplete is without merit.

There can be no dispute that AIG concluded that "the greatest potential risk to the subject property" was the total of 37 sites less than ¼ mile away whose potential off-site contamination may have impacted the Property, and AIG also recommended additional investigation of the Property itself.

Plaintiffs cannot dispute this evidence and instead discuss what investigation was or was not done on the Patsouras Property, which is not relevant to the statement in Paragraph 218.  Further, Moving Parties included the statement by AIG recommending additional investigation on the Property, therefore Plaintiffs' response is wholly without merit.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| | |
|---|---|
| 219. In 1995, Kekropia, Inc. acquired the Patsouras Property from William K. Palley.  In 1997, El Greco Wholesale Grocers, Inc. and its owner Larry Patsouras began operating on the Property as a wholesale grocery warehouse.<br><br>Supporting Evidence: FAC ¶ ¶ 347, 350; Ex. A to the Declaration of William D. Wick | **Response:** Undisputed. |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 219.  Moving Parties' Response<br><br>No Response as Paragraph 219 is undisputed. | |
| 220.  Kekropia continues to own the Property today, which is still used for a wholesale grocery warehouse and a tattoo artist supply business.<br><br>Supporting Evidence: Los Angeles Regional Water Quality Board Letter, Jan. 4, 2017, Ex. B to the Declaration of William D. Wick | **Response**: Undisputed. |
| 220.  Moving Parties' Response<br><br>No Response as Paragraph 220 is undisputed. | |
| 221.  Kekropia retained Environmental Audit, Inc. (EAI) to perform an environmental investigation of the Property.  EAI's investigation indicated that "the majority of the soil contamination is heavy end petroleum product."  EAI considered a variety of in-situ technologies for remediation of the heavy end petroleum hydrocarbons in the soil, but determined that they were impracticable "for the relatively small volume of contaminated soil at the Site, and therefore recommended excavation and off-site disposal of the impacted soil.<br><br>Supporting Evidence: Environmental Audit, Inc., "Remedial Action Plan, | **Response:** Partially disputed.<br><br>**Evidence:** Plaintiffs do not dispute that Kekropia retained EAI to perform an investigation of the Patsouras Property. Wick Decl., Ex. H, Docket No. 902-83 at #18469 (Envtl. Audit, Inc., Remedial Action Plan (June 16, 1997) at 3 (PTFS0002242)). Plaintiffs do not dispute that EAI purported to investigate the Patsouras Property, however, the remedial action chosen at the property was excavation of a significant amount of contaminated soil. Valenzuela Decl., Ex. 16, at 175 (Los Angeles Regional Water Quality Board Letter, Jan. 4, 2017, at 2) (noting soil removal actions in 1998, 2006, |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 11630-11700 Burke Street," June 16, 1997, at PTSF00022451, 22453; Ex. H to the Declaration of William D. Wick | 2010 and 2014). In addition, the selected remedial action did not test for hexavalent chromium. Mutch Report, Jan. 14, 2021, at 7-11 to 7-13.<br><br>Plaintiffs do not dispute the report discusses considering in-situ technologies, but Plaintiffs dispute there was a relatively small volume of contaminated soil in light of the fact that a significant amount of soil was excavated. Wick Decl., Ex. H, Docket No. 902-83 at #18478 (Envtl. Audit, Inc., Remedial Action Plan (June 16, 1997) at 10 (PTFS00022451)); Valenzuela Decl., Ex. 16, at 175 (Los Angeles Regional Water Quality Board Letter, Jan. 4, 2017, at 2) (noting soil removal actions in 1998, 2006, 2010 and 2014). |

221.   Moving Parties' Response

Plaintiffs mischaracterize the statements made in the January 4, 2017 Los Angeles Regional Water Quality Control Board Letter (Valenzeula Decl., Ex. 16 at 175).  While the letter does refer to soil removal during the years 1998, 2006, 2010 and 2014, it does not provide, anywhere in the letter, the volume of soil removed.  It simply states that these removal actions "removed the majority of Wastes at the Site."  Plaintiffs' conflation of the number of times an unknown quantity of soil was excavated with the actual volume of soil excavated is misleading and incorrect.  Rather, the evidence in the EAI RAP that a "relatively small volume of soil" at the Patsouras Property was contaminated is the only valid evidence regarding the volume of contaminated soil at the Patsouras Property. Plaintiffs' partial dispute is without merit and should be disregarded by the Court. The Court should disregard Plaintiffs' assertion that this fact is partially disputed.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 222.  In 2006, Biophysics Environmental Assessments, Inc. ("BEA") performed confirmation testing and removal of environmentally impacted soil identified in previous site testing.<br><br>Supporting Evidence: Biophysics Environmental Assessments, Inc., Soil Remediation Report of Findings for El Greco, Inc., Sept. 14, 2006; (PTFS00023600-PTFS00023663); Ex. G to the Declaration of William D. Wick | **Response:** Undisputed. |
| 222.   Moving Parties' Response<br><br>     No Response as Paragraph 222 is undisputed. | |
| 223.  BEA concluded that the sampling results "showed no threat to groundwater since boring B-7 demonstrated vertical attenuation of both PCE and TCE to non-detect at termination depth of 35' below grade surface (bgs)."<br><br>Supporting Evidence: Id. at PTFS00023604 | **Response:** Disputed.<br><br>**Evidence:** Testing performed at the B-7 boring was incomplete and failed to take into account the soil composition and the water table at the location. The data from samples taken from 15, 20, 25, and 35 feet bgs "can by no means be taken to indicate that the maximum depth of PCE penetration was limited to 25 feet at B-7" because:<br><br>1. No sample was taken at 30 feet, and it may have contained PCE. Mutch Report, Jan. 14, 2021, at 7-11.<br><br>2. The testing done by BEA, EAI and any others of this area only tested for |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | "vertical" migration when "[i]t is well-recognized that infiltrating moisture in the vadose zone can follow complex pathways because of capillary action and complex lithologies." *Id.* "Assuming purely vertically-downward migration in the vadose zone is a perilous and often incorrect assumption." *Id.* "[O]ne cannot reliably define the vertical extent of contamination in the vadose zone with a single boring. What may appear in a single borehole to be the base of the contamination may simply indicate that the plume has been diverted laterally due to lithologic variability and is now outside the vertical trajectory of the boring." *Id.*<br><br>3. The 35-foot sample was taken from a clay stratum. *Id.* at 7-11. It is probable that the PCE plume migrating downward through the vadose zone diverted around this low permeability stratum. *Id.*<br><br>4. In the late 1990s, the groundwater table was approximately 32 to 36 feet bgs. *Id.* Thus, the water table was above the 35-foot sample location. *Id.* Thus, the PCE plume migrating vertically-downward through the vadose zone was intercepted by laterally flowing groundwater in the upper part of the saturated zone and not carried further downward to the 35-foot depth. *Id.* Groundwater would have |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | been contaminated in this location by PCE migrating downward through the vadose zone. *Id.* The Los Angeles County Fire Department found that soil and groundwater contaminated with VOCs at the Property and indicated that VOCs in the eastern portion of the Property "have been found to extend to GW [i.e., groundwater]." RFJN, Ex. 92 (Los Angeles County Fire Department Memorandum re Palley Property, Jan. 1996). They further observed that the "clarifier area" at the Property is "contaminated to GW with VOCs." *Id.* |
| | PCE was also continuously detected in boring E-9, near a storage shed, at depths of 10, 15, 20, 24, and 30 feet at concentrations between 23 and 104 ug/kg. Mutch Report, Jan. 14, 2021, at 7-11. This data indicates that PCE was transported through the vadose zone to the historic elevation of the groundwater table and impacted the groundwater with PCE. *Id.* |
| | This statement is also disputed because it rests on the faulty premise that testing showed there was no PCE contamination. On the contrary, tests do not show the presence of PCE, TCE, hexavalent chromium or other VOCs <u>because they were not tested for these substances.</u> In the report cited as support for this statement, BEA clearly states that it was hired solely to remove soil from 2 areas identified by other |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | investigations in 1994 and 1997. Valenzuela Decl., Exs. 17, at 180 (Biophysics Environmental Assessments, Inc., Soil Remediation Report, Sept. 14, 2006, at 1). BEA did not test any other areas of the Property to determine whether they were contaminated by PCE, TCE, hexavalent chromium or other VOCs. *Id.* Despite evidence of discharge of waste containing <u>975,000</u> times more than the health-protective level amounts of hexavalent chromium (19.5 ppm), no follow up testing was ever done. Mutch Report, Jan. 14, 2021, at 7-7. No testing of the soil or groundwater was ever completed beneath the storm drain or the flood control channel where Globe—for decades—disposed of industrial waste before sewers were installed at the Property. *Id*. In 1988, the clarifiers were filled with trash and oil and waste was discharging <u>to the street</u>; however, no testing was done in these areas for TCE, PCE, or other VOCs. Mutch Report, Jan. 14, 2021, at 7-8. RFJN, Ex. 101 (Inspection Record for Talco Plastics, May 18, 1988). Stained ground surface was noted in the southwest corner of the Property in the area of four partially-filled 55-gallon drums; but, still, no testing for TCE, PCE, or other VOCs was completed. Valenzuela Decl., Ex. 4, at 31 (AIG Consultants, Phase I Environmental Site Assessment, June 30, 1994, at 21). No meaningful investigation of the role |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | the lagoons had upon the nature and extent of the contamination of the Property has ever been completed. *See* Mutch Report, Jan. 14, 2021, at 7-27 59 7-28. The lagoons have been present on the Property from at least 1938 – 1973, but, inexplicably, have never been a major focus of investigation. *Id.* |

223.  Moving Parties' Response

    This a simply a statement of *BEA's* conclusion.  The BEA document says what it says, and Plaintiffs do not dispute that it says what it says.  Instead, they re-argue their Opposition.  The fact that BEA's report says what it says is undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken.

| | |
|---|---|
| 224.  BEA concluded that "no threat exists to groundwater from metals, solvents, and total petroleum hydrocarbons, based upon the low level and isolated low volume of all potentially hazardous materials identified in initial testing by EAI in 1994." Supporting Evidence: Id. at PTFS00023607 | **Response:** Disputed. **Evidence:** Because minimal testing was done for TCE, PCE, hexavalent chromium or other VOCs, it is impossible to say that there is "no threat" from such substances. Mutch Report, Jan. 14, 2021, at 7-11. Total chromium measured in Phase II samples ranged from below detection limits (200 ug/kg) to 71,100 ug/kg, with the highest levels at B-8 which lies in a stained soil area identified in historical photos on the eastern parcel. *Id.* Hexavalent chromium was not tested for on these samples. *Id.* Supplemental assessments in1994, 1996, and 1999 tested samples from 31 locations across the Property. Of these 31 locations, only 1 was tested for total |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | chromium. *Id.* at 7-12. None were tested for hexavalent chromium. *Id.* The samples taken by BEA in its 2006 assessment were not tested for hexavalent chromium though total chromium ranged between 18 and 62 mg/kg. *Id.* |
| | EAI closed 5 subsurface units in 2009, but did not collect samples for 2 of the units. *Id.* Samples from the other 3 units were tested for total chromium, but were not tested for hexavalent chromium. *Id.* The "stockpile" of soil removed from these 3 units was tested for total chromium only, and was found to have the second highest concentration on the entire Property (224 mg/kg)—but, this soil was not tested for hexavalent chromium. *Id.* |
| | The failure to test for hexavalent chromium is inexplicable—particularly when there are at least 2 documented discharges of hexavalent chromium to the soil and/or groundwater of the Property. Mutch Report, Jan. 14, 2021, at 7-13 (citing 1970 discharge of waste containing <u>975,000</u> times more than the health-protective level amounts of hexavalent chromium and 1988 discharge from clarifiers to the street). Contaminated waste water from the clarifiers and other sources were disposed of—for decades—to a storm drain/flood control channel before the Property was connected to sewers. |

132

MOVING DEFENDANTS' RESPONSE TO
STATEMENT OF GENUINE DISPUTES

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Mutch Report, Jan. 14, 2021, at 7-7.<br><br>The ESL for arsenic in soil was exceeded at several locations at the Property from 2 feet to 35 feet bgs, which is indicative of release of arsenic from operations on the Property to the subsurface. *Id.* at 7-13. Because of the inadequacy and sparseness of the monitoring well network at the Property, arsenic impacts to groundwater may not be identifiable. *Id.* at 7-14.<br><br>Despite minimal investigations on the Property, the data that was obtained reveals the extent of groundwater contamination. *Id.* at 7-14. PCE was found in monitoring wells in the vicinity of the clarifiers, where vadose zone soil samples showed penetration of PCE to the depth of the groundwater table. *Id.* This indicates a contribution of PCE to groundwater from the Property. *Id.* Additionally, some higher levels of hexavalent chromium were found in MW-1, MW-1D, and MW-3 in the middle of the Property near the clarifiers than in MW-2, establishing releases of hexavalent chromium from the clarifiers, resulting in groundwater contamination. *Id.* at 7-14 and 7-17. TCE, a "daughter" product of PCE, is found in concentrations higher in MW-1D, MW-3, and MW-4 than in MW-2. *Id.* at 7-17. Concentrations exceeding groundwater ESLs were measured for |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | 1,1-dichloroethene, carbon tetrachloride, chloroform, tetrachloroethene (PCE), trans-1,2-dichloroethene, trichloroethene (TCE), chromium (total), chromium VI, nickel, and vanadium. *Id.*<br><br>Soil gas concentrations in excess of soil gas ESL values were noted for benzene, carbon tetrachloride, chloroform, PCE and TCE. *Id.* The spatial distribution of the PCE and TCE soil gas contamination, along with the shallow soil contamination, indicates that the PCE and TCE came from releases on the Property and not from off-gassing from the underlying groundwater. *Id.* Thus, the contaminated soil gas would serve as a source of OU2 groundwater contamination as it partitioned from the soil gas to recharging groundwater. *Id.*<br><br>PCE, TCE, and chromium, as well as other hazardous substances, have all been identified as present in the subsurface at levels about soil screening levels, meaning that these substances are present in soils at the Patsouras Property at levels that exceed those considered protective of groundwater. *See* Valenzuela Decl., Exs. 5, at 43-45 (Professional Service Industries, Phase II Preliminary Contamination Assessment, Aug. 18, 1994, at 13 & Table 3); 9, at 85-88 (Environmental Audit, Inc., Summary of Site Assessments, Mar. 2009, Table |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | 1); 10, at 98-103 (Environmental Audit, Inc., Ground Water Samples, Confirmation Soil Samples, Aug. 6, 2013, Table 1); Mutch Report, Jan. 14, 2021, Tables 3-1, 7-4.<br><br>The Santa Fe Springs Fire Department, Environmental Services Division, found that "historic Palley site operations contamination probably contributed to the VOC portion " of groundwater contamination at the property. *See* Opp'n RFJN, Ex. 21, at 146-147 (Steve Chase, Santa Fe Springs Fire Department, Environmental Services Division, Memorandum to Dave Klunk, Director, Environmental Services Division, Santa Fe Springs Fire Department, Sept. 29, 1997). Mr. Chase further advised that groundwater at the property was first encountered at 35 feet bgs, and "PCE was found in a [soil] column" from 10 feet bgs to 35 feet bgs. *Id.*<br><br>Even Defendants' expert admits that contamination to groundwater from 1970 hexavalent chromium discharge to ground may have moved off property by now). *See* Valenzuela Decl., Ex. 15, at 172 (J. Kulla Dep. Tr. at 119: 5-21).<br><br>Chromium, PCE, and TCE have been detected in the subsurface soils at the Property, and these same substances are in OU-2 Groundwater below and downgradient of the Property. *See* |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO
STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Valenzuela Decl., Exs. 5, at 43-45 __ (Professional Service Industries, Phase II Preliminary Contamination Assessment, Aug. 18, 1994, at 13 & Table 3); 9, at 85-88 (Environmental Audit, Inc., Summary of Site Assessments, Mar. 2009, Table 1); 10, at 98-103 (Environmental Audit, Inc., Ground Water Samples, Confirmation Soil Samples, Aug. 6, 2013, Table 1); 11, at 109-114 (Environmental Audit, Inc., Third Quarter 2013 Ground Water Monitoring Report, Oct. 23, 2013, Tables 2, 3); Mutch Report, Jan. 14, 2021, Tables 3-1, 7-4 and 7-5.<br><br>The entire OU-2 Groundwater area lies in a recharge area defined as an area where water from precipitation and other shallow water sources, such as leaking sewers and clarifiers, reaches the underlying groundwater from surface infiltration. *See* Mutch Report, Jan. 14, 2021, 2-4 to 2-8. |

224.   Moving Parties' Response

This a simply a statement of *BEA's* conclusion.  The BEA document says what it says, and Plaintiffs do not dispute that it says what it says.  Instead, they re-argue their Opposition.  The fact that BEA's report says what it says is undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken.

| 225.  BEA concluded that the concentrations of petroleum and solvents identified in 1994 "had insufficient mass for vertical migration, | **Response:** Disputed.<br><br>**Evidence:** As discussed in response to #223, "[i]t is well-recognized that |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| with sorption and desorption, in excess of a few feet." <br><br> Supporting Evidence: Id. | infiltrating moisture in the vadose zone can follow complex pathways because of capillary action and complex lithologies." Mutch Report, Jan. 14, 2021, at 7-11. "Assuming purely vertically-downward migration in the vadose zone is a perilous and often incorrect assumption." *Id.* "[O]ne cannot reliably define the vertical extent of contamination in the vadose zone with a single boring. What may appear in a single borehole to be the base of the contamination may simply indicate that the plume has been diverted laterally due to lithologic variability and is now outside the vertical trajectory of the boring." *Id.* <br><br> Additionally, such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference. |

225.   Moving Parties' Response

　　This a simply a statement of *BEA's* conclusion.  The BEA document says what it says, and Plaintiffs do not dispute that it says what it says.  Instead, they re-argue their Opposition.  The fact that BEA's report says what it says is undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 226.  BEA concluded that "intrinsic biodegradation and weathering has removed all measurable solvents and continues to remove the petroleum hydrocarbons."<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:** The entire OU-2 Groundwater area lies in a recharge area defined as an area where water from precipitation and other shallow water sources, such as leaking sewers and clarifiers, reaches the underlying groundwater from surface infiltration. *See* Mutch Report, Jan. 14, 2021, 2-4 to 2-8.<br><br>Defendants' expert admits that contamination to groundwater from 1970 hexavalent chromium discharge to ground may have moved off property by now. *See* Valenzuela Decl., Ex. 15, at 172 (J. Kulla Dep. Tr. at 119: 5-21). |

226.   Moving Parties' Response

  This a simply a statement of *BEA's* conclusion.  The BEA document says what it says, and Plaintiffs do not dispute that it says what it says.  Instead, they re-argue their Opposition.  The fact that BEA's report says what it says is undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken.

| | |
|---|---|
| 227.  BEA concluded that "no mass of petroleum hydrocarbons and no measurable mass of chlorinated solvents are present in the soil column with capability for migration to the groundwater by moisture migration through adsorption and partitioning."<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

227.   Moving Parties' Response

This a simply a statement of *BEA's* conclusion.  The BEA document says what it says, and Plaintiffs do not dispute that it says what it says.  Instead, they re-argue their Opposition.  The fact that BEA's report says what it says is undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken.

| 228.  BEA concluded that "[N]o further action is recommended based upon the very low levels of hazardous materials identified in site testing in 1994 and confirmed in 2006."<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference. |

228.   Moving Parties' Response

This a simply a statement of *BEA's* conclusion.  The BEA document says what it says, and Plaintiffs do not dispute that it says what it says.  Instead, they re-argue their Opposition.  The fact that BEA's report says what it says is undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken.

| 229. EAI concluded that the majority of the soil contamination at the Patsouras Property "is heavy end petroleum product."<br><br>Supporting Evidence: Environmental Audit, Inc., "Remedial Action Plan, 11630-11700 Burke Street," June 16, | **Response:** Disputed.<br><br>**Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1997, at PTSF00022451; Ex. H to the Declaration of William D. Wick | reference. |

229. Moving Parties' Response

    This a simply a statement of *EAI's* conclusion. The EAI document says what it says, and Plaintiffs do not dispute that it says what it says. Instead, they re-argue their Opposition. The fact that EAI's report says what it says is undisputed. The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken. .

| | |
|---|---|
| 230.  EAI concluded that "TGPH-G, TPH-D, and TPH-O have never been identified in ground water" at the Patsouras Property.  "Chlorinated compounds are not generally identified in soil at the Site but are present in ground water at concentrations that are consistent with the regional impact to ground water (see Section 3.0).  In EAI's opinion the chlorinated compounds detected in ground water at the Site are not the result of former site activities."<br><br>Supporting Evidence: Environmental Audit, Inc., "Updated Site Conceptual Model and Request for Low Risk Closure," June 17, 2010, at p. 21, at PTFS00024533; Ex. D to the Declaration of William D. Wick | **Response:** Disputed.<br><br>**Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference.<br><br>PCE and TCE have been identified in the groundwater at the Property. Wick Decl., Ex. I, at 1 (Covenant and Environmental Restriction on Property recorded Oct. 12, 2016).<br><br>The hexavalent chromium on the Property is not derived from groundwater from other properties. Mutch Report, Jan. 14, 2021, at 7-16. In the first hexavalent chromium water analysis performed (February 2009), the highest levels of hexavalent chromium were found in monitoring wells in the middle of the Patsouras |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Property. *Id*. The nearest monitoring wells from adjacent properties are cross-gradient and were non-detect for hexavalent chromium, indicating that the hexavalent chromium on the Property did not migrate from other properties. *Id*. |

230.  Moving Parties' Response

This a simply a statement of *EAI's* conclusion.  The EAI document says what it says, and Plaintiffs do not dispute that it says what it says.  Instead, they re-argue their Opposition.  The fact that EAI's report says what it says is undisputed.  The Court should disregard Plaintiffs' assertion that this fact is disputed and their response should be stricken.

| | |
|---|---|
| 231.  On Sept. 15, 2016, Regional Board Executive Officer Samuel Unger executed the Covenant and Environmental Restriction on Property for the Patsouras Property.<br><br>Supporting Evidence: Covenant and Environmental Restriction; Ex. I to the Declaration of William D. Wick | **Response:** Undisputed. |

231.  Moving Parties' Response

No Response as Paragraph 231 is undisputed.

| | |
|---|---|
| 232.  The Covenant and Environmental Restriction approved by and for the benefit of the Regional Board stated as follows: "Chlorinated solvent compounds present in the groundwater beneath the Site appear to be consistent | **Response:** Disputed as incomplete.<br><br>**Evidence:** The cited document states that the Regional Board "has determined that the [Patsouras] Property is not suitable for unrestricted |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| with the site area regional chlorinated solvent impacts; no dissolved or free phase total petroleum hydrocarbons have been detected in the groundwater." <br><br> Supporting Evidence: Id. | use and that a land use restriction is necessary for the protection of present or future human health, safety, or the environment as a result of the presence of hazardous materials as defined in Section 25260 of the Health and Safety Code in the soil, soil gas, and groundwater at the [Patsouras] Property." Wick Decl., Ex. I at 1 (Covenant and Environmental Restriction on Property recorded Oct. 12, 2016). This Covenant also notes that both PCE and TCE have been found in groundwater sampling on the property. *Id*. at 3. In fact, it states that PCE was found in the groundwater at the level of 18.2 ug/L, more that three times higher than that allowed by the California Maximum Contaminant Level of 5 ug/L. *Id*. |

232. Moving Parties' Response

    Plaintiffs' do not dispute that the quoted statement from the Covenant and Environmental Restriction is in the document. Instead, they add additional statements from the document. Thus, Plaintiffs' "disputed" response is without merit. Moving Parties cite an accurate excerpt from the Covenant and Environmental Restriction approved by the Regional Water Quality Control Board. Plaintiffs insert extraneous and irrelevant additional information to confuse and mislead the Court. These additional statements should be stricken. The Court should disregard Plaintiffs' assertion that this fact is disputed.

| 233. On October 12, 2016, the Covenant and Environmental Restriction was recorded in the Official Records of the Los Angeles County Recorder's Office. | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| Supporting Evidence: Id. | |

233.   Moving Parties' Response

    No Response as Paragraph 233 is undisputed.

| 234.   On Jan. 4, 2017, the Regional Board issued a "No Further Action" Letter to Kekropia for the Patsouras Property.<br><br>Supporting Evidence: Los Angeles Regional Water Quality Board Letter, Jan. 4, 2017; Ex. B to the Declaration of William D. Wick | **Response:** Undisputed but immaterial.<br><br>**Evidence:** While it is uncontroverted that the referenced letter was sent to Kekropia, the Regional Board limited the findings that it made. Specifically, the referenced letter states: "Please note that by issuing this NFA letter, the Regional Board has not made a determination as to whether discharges of waste to regional groundwater occurred as a result of historical activities at the Site." Valenzuela Decl., Ex. 16, at 176 (Los Angeles Regional Water Quality Board Letter, Jan. 4, 2017, at 3). |

234.   Moving Parties' Response

    Plaintiffs' response is without merit.  This is a statement of the Regional Board's action.  The evidence stands that the Regional Water Quality Control Board issued a "No Further Action" letter for the Patsouras Property and instructed the property owner to remove the monitoring wells on the site indicating that it did not expect any further investigation or remediation at the Property.  Plaintiffs insert extraneous and irrelevant statements to confuse the Court and the additional statement should be stricken.

| 235. The Regional Board concluded that the activities at the Patsouras Property resulted "in the cleanup or | **Response:** Undisputed but immaterial. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| abatement of wastes to assure protection of human health and the waters of the State at and near the Site for their beneficial use."<br><br>Supporting Evidence: Id. at p.3. | **Evidence:** CH2M Hill also concluded that "because [OU-2] flows under a densely developed commercial – industrial area, there are additional facilities whose releases of hazardous substances have reached groundwater and become commingled with the Omega contamination." Hagstrom Decl., Dkt. 902-47, Ex. A, at 6 (CH2M HILL, Final Remediation Investigation/Feasibility Study Reports, Aug. 2010, at 8-4). |

235.   Moving Parties' Response

    Plaintiffs' response is without merit and is irrelevant.  This is a statement of the Regional Board's conclusion.  The evidence stands that the Regional Board reached a conclusion that cleanup and abatement has occurred at the Patsouras Property to assure protection of human health and the waters of the State. Plaintiffs insert extraneous and irrelevant statements to confuse the Court and the additional statement should be stricken.

| 236.  The Regional Board determined that there was no reason to monitor groundwater at the Property and required Kekropia to decommission, abandon, and destroy all monitoring wells on the Property.<br><br>Supporting Evidence: Id. | **Response:** Undisputed. |

236.   Moving Parties' Response

    No Response as Paragraph 236 is undisputed.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 237.  EPA's consultant, CH2M Hill, concluded that the former Omega Chemical facility is the main source of groundwater contamination at OU2.<br><br>Supporting Evidence: Final Remediation Investigation/Feasibility Study Reports Omega Chemical Corporation Superfund Site Operable Unit 2 Los Angeles County, California, Volume 1, CH2M HILL, Aug. 2010, § 8.1.2, p. 8-4; Ex. J to the Declaration of William D. Wick | **Response:** Undisputed, but immaterial.<br><br>**Evidence:** CH2M Hill also concluded that "because [OU-2] flows under a densely developed commercial – industrial area, there are additional facilities whose releases of hazardous substances have reached groundwater and become commingled with the Omega contamination. Hagstrom Decl., Dkt. 902-47, Ex. A, at 6 (CH2M HILL, Final Remediation Investigation /Feasibility Study Reports, Aug. 2010). |

237.   Moving Parties' Response

This is a statement of EPA's consultant's conclusion.  Plaintiffs' response and additional supporting evidence is non-responsive to the evidence provided by the moving party.  The evidence stands that EPA's consultant has concluded that the Omega Facility is the main source of groundwater contamination at OU-2. Plaintiffs cannot dispute this, so they respond with additional, irrelevant statements that should be disregarded and stricken by the Court.

| | |
|---|---|
| 238.  The Final Remedial Investigation Report by the US EPA environmental consultant, CH2M Hill, identified properties located over the OU-2 groundwater plume which were sources of chlorinated VOCs (PCE, TCE, 1,1,-DCE) to groundwater, but did not not identify the Patsouras Property as an on-going or historical source of these VOCs to the groundwater.<br><br>Supporting Evidence: Id., § 5.5, pp. 5-12 to 5-30. | **Response:** Undisputed but immaterial. |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 238.   Moving Parties' Response<br><br>This evidence is not immaterial.  EPA's own consultant did *not* include the Patsouras Property as an on-going or historical source of VOCs to the OU-2 groundwater.  This fact does not become immaterial simply because Plaintiffs deem it so. | |
| 239.  The Final Remedial Investigation Report by the US EPA environmental consultant, CH2M Hill, identified properties located over the OU-2 groundwater plume which were sources of non-chlorinated VOCs to groundwater, but did not identify the Patsouras Property as an on-going or historical source of these VOCs to the groundwater.<br><br>Supporting Evidence: Id., § 5.5, pp. 5-12 to 5-30. | **Response:** Undisputed. |
| 239.   Moving Parties' Response<br><br>No Response as Paragraph 239 is undisputed. | |
| 240.  From 1994 through 2010, at least 123 soil samples were taken on the West Parcel of the Patsouras Property.<br><br>Supporting Evidence:  Expert Report of Dr. Jean Kulla; Ex. K to the Declaration of William D. Wick | **Response:** Disputed.<br><br>**Evidence:**  This statement is supported solely by the report of Defendants' "expert," Dr. J. Kulla. However, Dr. Kulla's opinions are unreliable, as she appears not to be aware of, or have evaluated, critical facts that might have informed her opinion. She testified that she knew PCE and TCE were in the soil at the Patsouras Property, but she |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP<br>2049 Century Park East, Suite 2600<br>Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | does not know how those substances came to be located in the soil or ever analyzed this issue. *See* Valenzuela Decl., Ex. 15, at 156-158 (J. Kulla Dep. Tr. at 69:24-70:11; 72:11-21). She did not even analyze whether contamination from historic Palley site operations may have contributed VOCs to OU-2 Groundwater contamination or whether Globe Oil released hazardous substances on the Patsouras property. *Id.*, at 152-153,_167 (J. Kulla, Dep. Tr. at 50:17-51:2; 83:11-23).<br><br>Dr. Kulla was similarly unknowledgeable about Globe Oil's operations. She did not know how Globe handled waste water or what was in it. *Id.*, at 150-151 (J. Kulla, Dep. Tr. at 46:12-20; 49:11-13). Dr. Kulla also believed that Globe Oil operated at the property for only four years, from 1968 to 1972. *Id.,* at 146 (J. Kulla, Dep. Tr. at 37:3-9). She did not know that Globe Oil had been operating at the property for over thirty years. *See* Plaintiffs' response to Defendants' statement #206, which is incorporated herein by reference. Such holes in Dr. Kulla's knowledge of the property leads her to flawed and unreliable conclusions. |

240.   Moving Parties' Response

       Plaintiffs' "Evidence" is non-responsive to the uncontroverted fact stated in Paragraph 240 which refers to *factual data* regarding the number of soil samples

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| taken at the Patsouras Property.  Plaintiffs' response and the extraneous statements are irrelevant to this fact, are confusing, misleading and should be disregarded and stricken by the Court.  The Court should disregard Plaintiffs' assertion that this fact is disputed. | |
| 241.  No PCE, TCE, chloroform, or 1-1-dichloroethene were detected in any of the 123 soil samples taken on the West Parcel between 1994 and 2010.<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:**  As stated in the responses to #223 and #224 (which are incorporated herein), testing performed at the Property was inadequate and, largely, did not test for VOCs or hexavalent chromium. Though insufficient, testing at the B-7 and E-9 borings found PCE and TCE. Mutch Report, Jan. 14, 2021, at 7-9 to 7-14. The data indicates that PCE and TCE were transported through the vadose zone to the historic elevation of the groundwater table and impacted the groundwater. Id. Any tests that are claimed not to have shown the presence of TCE, PCE, hexavalent chromium or other VOCs, did not test for these substances—despite evidence of significant releases of hazardous substances to the soil of the Property. *Id.*<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

148

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | |

241.   Moving Parties' Response

Paragraph 241 states a simple factual statement based on actual data. Plaintiffs cannot dispute this so they include non-responsive and irrelevant statements regarding the adequacy of testing at the Patsouras Property and improperly call in to question Dr. Kulla's opinions.  In fact, this is not an opinion of Dr. Kulla's but a factual statement based on data which Plaintiffs cannot dispute.

Moving Parties also include their response to Paragraphs 223, 224 and 240 as though incorporated herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| 242.  CAM metals in soils, including total chromium, were within background levels for regional soils (i.e., within the range of concentrations normally found in natural, uncontaminated soil) in all of the 123 samples taken on the West Parcel between 1994 and 2010.<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:** Dr. Kulla opines that 71.1 mg/kc for total chromium is only "slightly above background levels"—though she never says what the "background levels" are. *See* Jean B. Kulla, Expert Opinion on the Patsouras Property ("Kulla Report"), at 3. According to the U.S. Geological Survey, background levels of total chromium roughly range from 30 to 36 mg/kg. *See* Smith, D.B. et al., U.S.G,.S., Geochemical and Mineralogical Data for Soils of the Conterminous United States: U.S. Geological Survey Data Series 801, 19. Defendant's consultant reported background levels of total chromium at and near defendant Phibro-Tech, Inc.'s facility were 20 to 24 mg/kg. *See* Cohen Decl., Ex. 18, at 343_ (Camp Dresser & McKee Inc., RCRA Facility |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Investigation Phase II Report, Apr. 23, 1993, Table 4-1). It reports background levels of hexavalent chromium at and near its facility range from 1 to 2 mg/kg. *Id*.<br><br>Additionally, such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference.<br><br>Patsouras' expert misstates the background levels for arsenic. Kulla contends that the level of arsenic which is "characteristic of background for regional soils" is 55 mg/kg. *See* Kulla Report, at 3. According to the California Department of Toxic Substances Control, the background level for arsenic is several times lower, namely, 12 mg/kg. *See* G. Chernoff et al., Dept. of Toxic Substances Control, Determination of a Southern California Regional Background Arsenic Concentration in Soil, at 1. The ESL for arsenic in soil was exceeded at several locations at the Property from 2 feet to 35 feet bgs, which is indicative of release of arsenic from operations on the Property to the subsurface. *Id*. at 7-13. Because of the inadequacy and sparseness of the monitoring well network at the Property, arsenic |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | impacts to groundwater may not be identifiable. *Id.* at 7-14.<br><br>Soil gas concentrations in excess of soil gas ESL values were noted for PCE and TCE. *See* Valenzuela Decl., Ex. 9, at 82, 89-93 (Environmental Audit, Inc., Summary of Site Assessments, Mar. 2009, at 11 & Tables 8, 9); Mutch Report, Jan. 14, 2021, Table 7-6. Sampling of soil vapor shows a pattern of elevated concentrations of soil gas PCE, as well as other chlorinated VOCs such as TCE (a daughter product of PCE), that are localized in a part of the Property with high PCE soil levels, signifying a definitive onsite source of these hazardous substances. Mutch Report, Jan. 14, 2021, at 7-17 to 7-18.<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

242.  Moving Parties' Response

The Regional Water Quality Control Board determined that metals in soils at the Property were within background levels and chromium and arsenic were dropped as contaminants of concern.

Chromium concentrations in all samples were within the background

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| concentration levels normally found in uncontaminated soil, except for one sample. That one outlier sample was found at two feet and was only slightly above the background level. Moreover, because the heavy petroleum residues in Property soil have rendered the soil anoxic, the resulting reducing conditions convert any hexavalent chromium into trivalent chromium (a harmless substance consumed safely and often by humans). Wick Decl., Exh. C (Dr. Kulla Rebuttal of Mutch Expert Report at 7). The arsenic concentrations found in the soil were within background levels for regional soils as well. EAI so concluded, using the EPA-approved software to determine that the 95% confidence level for arsenic detected in soil at the Property was 12.99 mg/kg, which "is very close to (within the range of) the 12 mg/kg background concentration determined acceptable by DTSC for LAUSD school sites, one of DTSC's most sensitive (restrictive) land uses." (Wick Decl., Exh. B, excerpt from EAI, 2010 Updated Site Conceptual Model, PTDS00024525-26.) These facts are undisputed and Plaintiffs' response should be stricken. Plaintiffs' response about PCE is immaterial to this material fact, which is only about metals. | |
| 243. From 1994 through 2010, at least 137 soil samples were taken on the East Parcel of the Patsouras Property. Supporting Evidence: Id. | **Response:** Undisputed. |
| 243. Moving Parties' Response No Response as Paragraph 243 is undisputed. | |
| 244. PCE and TCE were detected in only a couple of soil samples at very low concentrations in the 137 soil samples taken on the East Parcel between 1994 and 2010. | **Response:** Disputed. **Evidence:** As stated in the responses to ## 223-224 and 241-242, testing performed at the Property was inadequate and, largely, did not test for |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Supporting Evidence: Id. | VOCs or hexavalent chromium. For sake of brevity, Plaintiffs incorporate by reference their responses to ## 223-224 and 241-242, as though set forth fully herein.<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |
| 244.   Moving Parties' Response<br><br>        Plaintiffs' response is not responsive to Paragraph 244.  Paragraph 244 is a statement of fact based on data about PCE and TCE in Property soil samples.  Plaintiffs do not dispute the factual statement in their response.  Plaintiffs' response about extraneous issues should be stricken.<br><br>        Moving Parties incorporate their responses to Paragraphs 223-224 and 241-242 herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed. | |
| 245.  The maximum concentration of PCE was 0.51 mg/kg and of TCE was 0.27 mg/kg in the 137 soil samples taken on the East Parcel between 1994 and 2010.<br><br>Supporting Evidence: Id. | **Response**: Disputed.<br><br>**Evidence:** As stated in the responses to ## 223-224 and 241-242 and 244, testing performed at the Property was inadequate and, largely, did not test for VOCs or hexavalent chromium. For sake of brevity, Plaintiffs incorporate by reference their responses to ## 223-224 and 241-242, and 244 as though set forth fully herein. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

245.   Moving Parties' Response

Plaintiffs' response is not responsive to Paragraph 245.  Paragraph 245 is a statement of fact based on data about the maximum concentrations of PCE and TCE detected in Property soil samples.  Plaintiffs do not dispute the factual statement in their response.  Plaintiffs' response about extraneous issues should be stricken.

Moving Parties incorporate their responses to Paragraphs 223-224 and 241-242 herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| 246.  No chloroform or 1,1-dichloroethene (1,1-DCE) were detected in the 137 soil samples taken on the East Parcel between 1994 and 2010.<br><br>Supporting Evidence: Id. | **Response:** Undisputed. |

246.   Moving Parties' Response

No Response as Paragraph 246 is undisputed.

| 247.  CAM metals in soils were within background levels for regional soils (i.e., within the range of concentrations | **Response:** Undisputed. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| normally found in natural, uncontaminated soil) in all of the 137 samples taken on the East Parcel between 1994 and 2010, with the exception of one chromium sample slightly above background levels (71.1. mg/kg) found at two feet below ground surface and lead found in some stockpiled soil.<br><br>Supporting Evidence: Id. | |

247.   Moving Parties' Response

   No Response as Paragraph 247 is undisputed.

| 248.  Methylene chloride (8.27 mg/kg), naphthalene (4.31 mg/kg), and lead (51,600 mg/kg) were found in one stockpiled soil sample, and the stockpiled soil has been removed from the Property.<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:** The sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

248.   Moving Parties' Response

   Plaintiffs' response is wholly non-responsive to the uncontroverted fact and supporting evidence in Paragraph 248.  Paragraph 248 simply provides a factual statement based on actual data.  Plaintiffs' statement that this fact is based solely on Dr. Kulla's opinion is incorrect and baseless.  Plaintiffs cannot credibly dispute this fact.  The Court should disregard Plaintiffs' assertion that this fact is

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| disputed. | |
| 249.  There is no evidence that the very low concentrations of PCE, TCE or other hazardous substances found in soil have migrated at least 35 feet to the OU-2 groundwater.<br><br>Supporting Evidence: Id. | **Response**: Disputed.<br><br>**Evidence**: Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference.<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |
| 249.   Moving Parties' Response<br><br>    Plaintiffs' response to uncontroverted fact is without merit and non-responsive this fact.  Testing and data at the Patsouras Property supports the fact in Paragraph 249.  Further, Plaintiffs' statements regarding the validity of Dr. Kulla's opinions is without merit.<br><br>    Moving Parties incorporate their responses to Paragraphs 223-224 and 240 herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed. | |
| 250.  Groundwater monitoring was performed on the Property from 1995 through 2013 for petroleum hydrocarbons, VOCs, and metals. | **Response**: Disputed.<br><br>**Evidence**: Such a determination is impossible to make due to the |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Supporting Evidence: Id. | inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference.<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

250.   Moving Parties' Response

    Plaintiffs' response and supporting "evidence" is wholly meritless. Paragraph 250 states the simple fact that groundwater monitoring was performed on the Patsouras Property in a certain date range.  Plaintiffs do not dispute that fact.  Plaintiffs' "dispute" is without merit and should not be considered by the Court.

    Moving Parties incorporate their response to Paragraph 240 herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| 251.  No petroleum hydrocarbon compounds have been found in groundwater beneath the Property even though petroleum hydrocarbons were detected in Property soil.<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:**  Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference. |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

251.   Moving Parties' Response

    Plaintiffs' response and supporting "evidence" is wholly meritless. Paragraph 251 states the simple fact that no petroleum hydrocarbon compounds have been found in groundwater beneath the Patsouras Property.  This is a fact based on data that Plaintiffs cannot dispute and do not actually dispute in their response. Plaintiffs' "dispute" is without merit and should not be considered by the Court.

    Moving Parties incorporate their response to Paragraph 240 herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| | |
|---|---|
| 252.  Toluene and xylene were detected in only trace amounts (below their respective Maximum Contaminant Levels) only in one well in one sampling episode.<br><br>Supporting Evidence: Id. | **Response**: Undisputed. |

252.   Moving Parties' Response

    No Response as Paragraph 252 is undisputed.

| | |
|---|---|
| 253.  All metals detected in groundwater were below their | **Response**: Disputed. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| respective MCLs, including arsenic and hexavalent chromium, with the exception of one sample of 11.8 ug/L hexavalent chromium (slightly above the 10 ug/L conservative MCL used by California).<br><br>Supporting Evidence: Id. | **Evidence:** Despite minimal investigations on the Property, the data that was obtained reveals the extent of groundwater contamination. Mutch Report, at 7-14. PCE was found in monitoring wells in the vicinity of the clarifiers, where vadose zone soil samples showed penetration of PCE to the depth of the groundwater table. *Id.* This indicates a contribution of PCE to groundwater from the Property. *Id.* Additionally, some higher levels of hexavalent chromium were found in MW-1, MW-1D, and MW-3 in the middle of the Property near the clarifiers than in MW-2, establishing releases of hexavalent chromium from the clarifiers, resulting in groundwater contamination. *Id.* at 7-14 and 7-17. TCE, a "daughter" product of PCE, is found in concentrations higher in MW-1D, MW-3, and MW-4 than in MW-2. *Id.* at 7-17. Concentrations exceeding groundwater ESLs were measured for 1,1-dichloroethene, carbon tetrachloride, chloroform, tetrachloroethene (PCE), trans-1,2-dichloroethene, trichloroethene (TCE), chromium (total), chromium VI, nickel, and vanadium. *Id.*<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

MOVING DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

253.   Moving Parties' Response

    Plaintiffs' response does not rebut the data that supports the fact stated in Paragraph 253.  Paragraph 253 is a statement of *fact* based on *data* about metals in groundwater.  Plaintiffs' response and supporting "evidence" is wholly meritless as it focuses on PCE, which is not a metal and has nothing to do with the facts in 253, and should be disregarded by the Court.  The Court should strike Plaintiffs' response and disregard Plaintiffs' assertion that this fact is disputed.

| 254.  The predominant VOC contaminants found in the OU-2 groundwater underlying the Property at concentrations above their respective MCLs were carbon tetrachloride (CT), PCE, and TCE.  Other volatiles, including chloroform and 1,1-DCE, were below their MCLs.<br><br>Supporting Evidence: Id. | **Response**: Disputed.<br><br>**Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference.<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

254.   Moving Parties' Response

    Plaintiffs' response does not rebut the *data* that supports the *fact* stated in

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Paragraph 254. Plaintiffs' response and supporting "evidence" is wholly meritless and should be disregarded by the Court.<br><br>Moving Parties incorporate their responses to Paragraphs 223-224 and 240 herein. The Court should disregard Plaintiffs' assertion that this fact is disputed. | |
| 255. A significant line of evidence in evaluating whether a property is a source of hazardous substances to groundwater is a comparison of the concentrations of a chemical in an upgradient well with the concentrations in an on-property well.<br><br>Supporting Evidence: Id. | **Response:** Undisputed. |
| 255. Moving Parties' Response<br><br>No Response as Paragraph 255 is undisputed. | |
| 256. The concentrations of carbon tetrachloride (CT) in wells upgradient of the Patsouras Property were greater than or similar to the concentrations in wells on the Property in all samples in the groundwater sampling from 2009-2013, except for a single sample of 10.4 ug/L in 2013.<br><br>Supporting Evidence: Id. | **Response:** Undisputed. |
| 256. Moving Parties' Response<br><br>No Response as Paragraph 256 is undisputed. | |
| 257. The concentrations of PCE in wells upgradient of the Patsouras | **Response:** Disputed. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Property were greater than or similar to the concentrations in wells on the Property in all samples in the groundwater sampling from 2009-2013, except for a single sample of 18.2 ug/L in 2013.<br><br>Supporting Evidence: Id. | **Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference. Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

257.   Moving Parties' Response

        Plaintiffs' response does not rebut the *data* that supports the *fact* stated in Paragraph 257.  Plaintiffs' response and supporting "evidence" is wholly meritless and should be disregarded by the Court.

        Moving Parties incorporate their responses to Paragraphs 223-224 and 240 herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| | |
|---|---|
| 258.  The concentrations of TCE in wells upgradient of the Patsouras Property were greater than or similar to the concentrations in wells on the Property in all samples in the groundwater sampling from 2009-2013, except for a single sample of 21.7 ug/L in 2012.<br><br>Supporting Evidence: Id. | **Response:** Disputed.<br><br>**Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to Defendant's statements ## 223-224 which are incorporated herein by reference. |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

258.   Moving Parties' Response

Plaintiffs' response does not rebut the *data* that supports the *fact* stated in Paragraph 258.  Plaintiffs' response and supporting "evidence" is wholly meritless and should be disregarded by the Court.

Moving Parties incorporate their responses to Paragraphs 223-224 and 240 herein.  The Court should disregard Plaintiffs' assertion that this fact is disputed.

| | |
|---|---|
| 259.  In 2009, a soil gas vapor survey was conducted on the West Parcel of the Property at depths of 5 and 15 feet below ground surface.<br><br>Supporting Evidence: Id. | **Response:** Undisputed. |

259.   Moving Parties' Response

No Response as Paragraph 259 is undisputed.

| | |
|---|---|
| 260.  The results of the 2009 soil gas vapor survey showed only very minor amounts of PCE and TCE in soil gas, with the lowest concentrations found in the shallow 5-foot samples relative to higher concentrations in the deeper 15-foot samples. | **Response:** Disputed.<br><br>**Evidence:** Such a determination is impossible to make due to the inadequate testing and investigation of hazardous substances in the soil, as set out in Plaintiffs' responses to |

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Supporting Evidence: Id. | Defendant's statements ## 223-224 which are incorporated herein by reference.<br><br>Further, the sole basis of this statement is an opinion of Dr. Kulla, whose lack of information about the property and its historic uses causes her opinions to be flawed and unreliable, as set out in Plaintiffs' response to Defendants' statement # 240 which is incorporated herein by reference. |

260. Moving Parties' Response

Plaintiffs' response does not rebut the *data* that supports the *fact* stated in Paragraph 260. Plaintiffs' response and supporting "evidence" is wholly meritless and should be disregarded by the Court.

Moving Parties incorporate their responses to Paragraphs 223-224 and 240 herein. The Court should disregard Plaintiffs' assertion that this fact is disputed.

| | |
|---|---|
| 261. The data indicate that PCE, TCE, and other minor VOCs are volatilizing off the OU-2 groundwater plume due to an upward diffusion process governed by Fick's law.<br><br>Supporting Evidence: EAI, 2010, at 17-18; Ex. D and Ex. K to the Declaration of William D. Wick | **Response**: Disputed.<br><br>**Evidence:** The spatial distribution of the PCE and TCE soil gas contamination, along with the shallow soil contamination, indicates that the PCE and TCE came from releases on the Property and not from off-gassing from the underlying groundwater. Mutch Report, at 7-14 to 7-17. |

261. Moving Parties' Response

Plaintiffs' "evidence" is support its dispute against Paragraph 261 is

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| MOVING DEFENDANTS' UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

without merit.  As for soil gas concentrations, the spatial distribution of the PCE and TCE soil gas, with the higher concentrations found in the 15 ft bgs samples and the lower concentrations in the shallower 5 ft bgs, indicate degassing off of a deeper soil source of contamination (i.e., the contaminated OU-2 groundwater), not shallow soil contamination as claimed by Mr. Mutch. Second, the discrete soil testing on the West Parcel showed no signs of shallow soil contaminated with PCE and TCE. In fact, in numerous investigations on the West Parcel, no chlorinated or volatile organic chemicals were detected in any of the discreet soil samples (see Table 2, Kulla Expert Report).  (Id. at 8.)  Additional soil vapor sampling was done on the West Parcel of the Patsouras Property.  No volatile organic compounds were detected in any of the discreet soil samples. (The analytical detection limit was less than 0.005 mg/kg in all samples). These results confirmed that there was no discreet soil source of PCE or TCE (or any other volatile organic compound) in the soil on the West Parcel. Therefore, EAI concluded and the RWQCB agreed that the soil gas vapor measured on the West Parcel of the Patsouras Property resulted from degassing off the contaminated OU-2 groundwater plume.  (Id. at 9.)  An exceedance of the SFB ESLs in soil gas is not relevant to the evaluation of the partitioning of soil gas to groundwater as Mr. Mutch proposes. The ESLs in soil gas were derived and are relevant (according to SFB RWQCB) to the evaluation of the risk of soil gas vapors migrating into homes and buildings, causing toxic vapors in indoor air, and thus posing an inhalation impact to humans. On the Patsouras Property, the soil gas vapor survey was conducted under the direction of the RWQCB, for just for that reason—to determine if there would be a risk of soil gas vapor intrusion into a new building planned on the West Parcel. Soil gas vapor data was used in the site-specific model to evaluate the risk of vapor intrusion into a future building. The model information was documented and submitted to the RWQCB and the California Office of Environmental Health Hazard Assessment (OHHEA), and those agencies found no significant risk.  (Id. at 9-10.)  The Court should disregard Plaintiffs' assertion that this fact is disputed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AS TO PMC PROPERTY DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES NOS. 1 - 61:**

DATED:  April 15, 2021          BASSI EDLIN HUIE & BLUM LLP

By:          /s/ Earl L. Hagström

Earl L. Hagström
Daniel E. Trowbridge

Attorneys for Defendants PMC Specialties Group, Inc. and Ferro Corporation

**AS TO CHRYSLER PROPERTY DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES FACT NOS. 100 - 113:**

DATED: April 15, 2021          GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By:          /s/ Peter A. Nyquist

Peter A. Nyquist
Sedina L. Banks
Sherry E. Jackman

Attorneys for Defendant Union Pacific Railroad Company

1

**AS TO PATSOURAS PROPERTY DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES FACT NOS. 200 - 261:**

2

3

4    DATED:  April 15, 2021          WACTOR & WICK LLP

5

6                                    By:      /s/ William D. Wick

7                                          William D. Wick

8                                          Attorneys for Defendant Halliburton Affiliates, LLC

9

10   DATED:  April 15, 2021          BASSI EDLIN HUIE & BLUM LLP

11

12                                   By:      /s/ Farheena A. Habib

13                                         Farheena A. Habib

14                                         Attorneys for Interveners Fireman's Fund Insurance Company and Federal Insurance Company, as Insurers for Palley Supply Company

15

16

17

18   DATED:  April 15, 2021          OTTEN LAW, PC

19

20                                   By:      /s/ Victor Otten

21                                         Victor Otten
                                           Attorneys for Defendant Kekropia, Inc.

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## **CERTIFICATION OF CONCURRENCE FROM ALL SIGNATORIES**

I, Peter A. Nyquist, am the ECF user whose ID and password are being used to file this Parties' MOVING DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES. In compliance with C.D. Cal. Civ. L.R. 5-4.3.4(a)(2)(i), I hereby attest that I have obtained the concurrence of each signatory to this document.

DATED: April 15, 2021

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By:  /s/ Peter A. Nyquist

Peter A. Nyquist
Sedina L. Banks
Sherry E. Jackman

Attorneys for Defendant Union Pacific Railroad Company

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067