LATHROP GPM LLP
Nancy Sher Cohen, Bar No. 81706
    nancy.cohen@lathropgpm.com
Ronald A. Valenzuela, Bar No. 210025
    ronald.valenzuela@lathropgpm.com
2049 Century Park East, Suite 3500S
Los Angeles, California 90067-1623
Telephone:    310.789.4600
Facsimile:    310.789.4601

Attorneys for Plaintiffs
BASF Corporation et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BASF CORPORATION, et al., | Case No.  2:14-cv-06456 GW (Ex.) |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR APPOINTMENT OF SPECIAL MASTER AND REQUEST TO SET HEARING DATE ON PENDING SUMMARY-JUDGMENT MOTIONS** |
| v. | |
| APC INVESTMENT CO., et al., | |
| Defendants. | |
| | Judge: Hon. George H. Wu |
| AND RELATED CROSS ACTIONS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS | |

48183269v1

Plaintiffs BASF Corporation et al. ("Plaintiffs") oppose Defendants' Request for Appointment of Special Master for Settlement (the "Request") and ask the Court to reset the hearings on the pending motions for summary judgment and partial summary judgment, in accordance with the schedule set out below, beginning on February 14, 2022.

## I.  INTRODUCTION

This environmental suit was filed over seven years ago, in August 2014. Since then, Plaintiffs have made multiple attempts to explore settlement with Defendants. Those efforts have paid off in the case of former Defendants Mission Linen, Pilot Chemical, and Burke Street, and Plaintiffs are close to finalizing a fourth settlement with Defendant Powerine Oil Company. However, past attempts to settle with the remaining Defendants have gone nowhere.

Still, Plaintiffs have spent the last several months attempting, yet again, to find a way to resolve their dispute with Defendants. As described below, those efforts have made little progress. In fact, of the 19 Defendants that received a settlement demand from Plaintiffs during this latest round of settlement discussions, only 3 Defendants were serious enough about settling this case to muster the effort to provide a counteroffer. And even then, the counteroffers were woefully inadequate.

Defendants believe the solution to this impasse is the appointment of a special master for settlement. However, they offer no credible explanation as to why such an appointment would somehow prove to be successful. Nor can they. Their current recalcitrance to engage meaningfully in exploring settlement shows no signs of abating and is not the result of any lack of effort on Plaintiffs' part or a need for assistance from a third party. The parties already enjoy such assistance from no less than the federal government and a private mediator of Defendants' own choosing.

Plaintiffs will continue their current settlement discussions with any

- 1 -

Defendant that is truly interested and serious about resolving their liability. But Plaintiffs intend to move forward with their case. Plaintiffs ask the Court to proceed with hearings on the pending summary-judgment motions and set them for no later than February. Plaintiffs have been waiting long enough to obtain contribution from Defendants for the tens of millions of dollars Plaintiffs have incurred, and the tens of millions more they will incur, to address the OU-2 groundwater contamination for which Defendants are also responsible.

## II.   ARGUMENT

### A.   Appointment of a Special Master for Settlement Would Not Be Productive at This Time

#### 1.   There has been little progress in settlement discussions.

On May 13, 2021, at the parties' request, this Court reset the hearings on the pending summary-judgment motions to accommodate settlement discussions between Plaintiffs and Defendants. Plaintiffs quickly moved to secure confidentiality agreements from Defendants to promote frank discussions. A few Defendants quickly signed the agreement, but many others dawdled. A few refused to sign an agreement unless Plaintiffs agreed to Defendants' proposed structure for the talks or agreed to use Defendants' choice for a private mediator.

Plaintiffs acceded to several of these demands to break the impasse and move the process forward. Although settlement discussions with some Defendants had already begun, the final agreement with the holdout Defendants was not executed until August—**three months** after the Court paused the litigation to accommodate settlement talks and only one month before the rescheduled summary-judgment hearings.

Plaintiffs provided a lengthy and detailed presentation to each Defendant regarding the context and rationale underlying Plaintiffs' settlement demand.[1]

---

[1] In two instances, at the insistence of certain Defendants associated with a single source

48183269v1

1   Plaintiffs did not simply write a dollar figure on a piece of paper and slide it across
2   the table. The presentations were prepared at significant expense to Plaintiffs in
3   time, effort, and money. Plaintiffs also provided supplemental briefings, more than
4   once, to numerous Defendants that had follow-up questions.

5       Attorneys with the United States Environmental Protection Agency and
6   Department of Justice have joined the settlement discussions with five of the
7   Defendants. The role of the federal government in these discussions has been
8   important given its oversight role at the Omega Chemical Superfund Site, its
9   selection of the containment remedy required under the 2017 OU-2 Consent Decree
10  approved by this Court, and its strong interest in seeing that the parties responsible
11  for environmental contamination at Superfund sites generally, and for the
12  groundwater contamination at OU-2 specifically, contribute to the costs to address
13  that contamination.

14      Plaintiffs have engaged the use of a private mediator in discussions with all
15  but two of the remaining Defendants.[2] As noted, Plaintiffs acceded to **Defendants'**
16  **choice** for mediator as an act of good faith and to move the process forward.

17      Despite the efforts by Plaintiffs, the federal government, and the private
18  mediator, there has been little progress in settlement talks between Plaintiffs and
19  Defendants. Indeed, of the 19 Defendants with whom Plaintiffs have engaged in
20  settlement discussions since last May, only 3 have provided counteroffers.

21         **2.**      **There is no merit to Defendants' contention that the lack of**
22                   **progress in settlement discussions is due to a lack of transparency.**

23      Defendants argue that the lack of progress in the parties' settlement
24  discussions is due to Plaintiffs' insistence that negotiations be conducted separately

25  _____

26  property, Plaintiffs made the presentation to that group of Defendants.

27  [2] Discussions between Plaintiffs and those two Defendants broke down almost immediately
28  after those Defendants insisted, as a condition to discussing settlement, that Plaintiffs agree
    to certain terms.

48183269v1

with each individual Defendant.[3] According to Defendants, if Plaintiffs met with Defendants as a group, Defendants would somehow be able to present a counteroffer to Defendants that would result in a "global settlement." Defendants made the same argument in May, when Plaintiffs approached them about exploring settlement after the parties had finished briefing the pending summary-judgment motions. However, Defendants have never offered any explanation, not last May and not now, why group discussions would be more conducive to settlement.

Plaintiffs are unaware of any circumstances or conditions which would necessitate group settlement discussions or otherwise make such discussions a more productive alternative. Defendants are not all affiliates of one another; they are not all associated with the same source property; and they share no connection to one another except that they are all current or former owners of a facility from which, Plaintiffs contend, there were releases of hazardous substances to OU-2 groundwater.

Indeed, Defendants' contention that individual settlement discussions are not conducive to settlement is belied by the fact that Plaintiffs have already settled with three other Defendants in this action and are in the process of finalizing their settlement with a fourth.[4] All of these settlements were negotiated individually with each of these four settling Defendants.

Defendants' Request also makes no mention of the fact that Plaintiffs have already **twice** explored settlement with Defendants as a group. Both efforts yielded

---

[3] As noted above, the premise of Defendants' argument is false. Plaintiffs are meeting collectively with certain subgroups of Defendants associated with the same source properties.

[4] This Court approved Plaintiffs' settlement, over the objection of the current Defendants, with Defendants Mission Linen, Burke Street, and Pilot Chemical. Plaintiffs have also agreed to settle with Defendant Powerine Oil Company and former Defendant Lakeland Development and are merely waiting to obtain approval by the Bankruptcy Court of the settlement given Lakeland's bankruptcy.

- 4 -

1    even less progress than the present effort. To be clear, Plaintiffs are not

2    categorically ruling out all joint settlement meetings in the future. There may come

3    a time when it would make sense to meet collectively with all Defendants. But now

4    is not that time.

5            **3.**    **Appointment of a settlement master is not the answer to the**

6                    **current the lack of progress in the parties' settlement discussions.**

7    Plaintiffs have provided Defendants ample opportunity to find a way to

8    resolve the parties' dispute. And it is not the case here that the parties have

9    exchanged multiple offers and counteroffers, but they are simply too far apart to

10   bridge the gap. As indicated, only 3 of the 19 Defendants have presented a

11   counteroffer to Plaintiffs' settlement demand.[5] Thus, Plaintiffs fail to see any basis,

12   and the Request provides none, for concluding that Defendants would suddenly be

13   inclined to provide a counteroffer upon appointment of a settlement master when

14   the vast majority of Defendants have thus far refused to provide one.

15   Appointment of a special master would do little more than increase the costs

16   and cause further delay. Selection of the special master would likely take weeks if

17   the pace of obtaining confidentiality agreements from Defendants is any guide. The

18   parties would then need to brief the special master concerning the background of

19   this case, the claims and defenses asserted, and the issues currently being litigated

20   via the pending summary-judgment motions. Plaintiffs would also need to brief the

21   special master concerning the basis for Plaintiffs' settlement demands.

22   Given how little progress has been made in settlement talks over the last

23   eight months, Plaintiffs have no confidence that the time, effort, and cost involved

24   in conducting settlement negotiations before a special master would yield

25   significant progress.

26   _____

27   [5] One of those offers was so disingenuous that it was rejected out of hand and that
     Defendant has done nothing in the intervening months to present a more suitable

28   counteroffer.

Plaintiffs also note that settlement discussions before a special master would come at the cost of losing the federal government's participation in those discussions. The government is not a party to this action and thus cannot be compelled to participate in discussions before a special master appointed in this case. Further, the government has already advised Plaintiffs that it will not participate in discussions before a special master in a matter in which it is not a party. Plaintiffs believe that the federal government, given its statutory interest in a fair settlement, is an important participant in these discussions.

Whether appointment of a special master for settlement purposes may be appropriate in this case at some time in the future, Plaintiffs take no position. But that time is not now. Accordingly, Plaintiffs respectfully submit that the Court should deny Defendants' request for appointment of a special master.

**B. The Court Should Reset the Hearings on the Pending Motions**

Given the bleak prospect for reaching settlement with any Defendant over the next several months, Plaintiffs are prepared to move forward in prosecuting their contribution case. Currently pending before the Court are motions for summary judgment and partial summary judgment brought by both Plaintiffs and Defendants. Those motions are:

    1. Plaintiffs Brief No. 1 On Common Issues of Law

    2. Plaintiffs' Motion for Partial Summary Judgment as to CERCLA Liability against Defendants associated with the following source properties:

        a. Phibro-Tech Source Property;[6]

        b. Associated Plating Source Property[7]

---

[6] The Defendants associated with the Phibro-Tech Source Property are: Phibro-Tech, Inc., First Dice Co., and Union Pacific Railroad Co.

[7] The Defendants associated with the Associated Plating Source Property are Associated Plating Co., APC Investment Co. Darrell Golnick, Clare Golnick, Cheryl Golnick, Gordon McCann, Lynnea McCann, and Associated Plating Co., Inc.

- 6 -

c.  Earl Mfg. Source Property;[8]

d.   Chrysler Source Property;[9]

e.  Patsouras Source Property.[10]

3.  Defendant Union Pacific Railroad Co.'s Motion for Summary Judgment as to CERCLA Liability;

4.  Defendants Halliburton Affiliates, LLC's Palley Supply Co.'s and Kekropia, Inc.'s Motion for Summary Judgment as to CERCLA Liability; and

5.  Defendants PMC Specialty Group, Inc.'s and Ferro Corp.'s Motion for Summary Judgment as to CERCLA Liability.

Plaintiffs ask the Court to reset the January 31, 2022 hearing on these motions in accordance with the following schedule.

| Hearing Date | Motion / Property |
|---|---|
| February 14, 2022 | Brief No. 1 – Legal Standards<br>Phibro-Tech |
| February 28, 2022 | Associated Plating<br>Earl Mfg. Co., Inc. |
| March 7, 2022 | Chrysler |
| March 21, 2022 | PMC<br>Patsouras |

The schedule set out above promotes efficient management of multiple

---

[8] The Defendants associated with the Earl Mfg. Source Property are Earl Mfg. Co., Inc. and Claudette Earl.

[9] The Defendants associated with the Chrysler Source Property are Union Pacific Railroad Co. and Palmtree Acquisition Corp. ("Palmtree"). However, Defendant Palmtree has stipulated to facts supporting a judgment as to CERCLA liability and is not, therefore, a party to the pending motions.

[10] The Defendants associated with the Patsouras Source Property are Kekropia, Inc., Haliburton Affiliates, LLC, and Palley Supple Company. However, Plaintiffs have chosen to move against only one of these Defendants at this time, Kekropia, Inc.

48183269v1

hearings concerning multiple properties and parties, conserves resources, and promotes efficiencies and judicial economy in several respects. First, hearing all motions involving six separate source properties and almost two dozen Defendants on the same day, during the same hearing, would prove to be an unwieldy and protracted hearing. By contrast, the schedule set out above allows the parties and the Court to proceed in an orderly fashion and affords ample time for the parties to address the Court's questions without engaging in a marathon hearing on all motions.

Second, grouping the pending motions by property (versus by Defendant) allows the parties and the Court to address all common issues associated with a single source property during a single hearing. To be clear, all motions associated with the same source property would be heard the same day, regardless of who is the moving party. For example, under the proposed schedule, Plaintiffs' partial-summary judgment motion against Union Pacific involving the Chrysler Source Property and Union Pacific's motion for partial summary judgment against Plaintiffs involving that same property would be argued during the same hearing.

Third, the order in which the motions will be heard under the proposed schedule promotes efficiencies.

- Brief No. 1 sets out the elements of CERCLA liability and the evidentiary burden in establishing those elements, issues which apply to all Defendants. Similarly, the issues argued by the Defendants associated with the Phibro-Tech Source Property are representative of many of the same issues argued by other Defendants. Given this, Plaintiffs propose that these submissions be heard first.

- Operations conducted at both the Associated Plating and Earl Mfg. Source Properties involved metal plating. Additionally, Defendants associated with those properties have raised similar defenses to Plaintiffs' partial summary-judgment motions. Given these legal and factual similarities, Plaintiffs

- 8 -

1   propose that the motions involving these two source properties be heard on

2   the same day.

3   • Under the proposed schedule, the motions involving the Chrysler Source

4   Property would be heard separately from any other motion, because the

5   motions involving the Chrysler Source Property present unique issues

6   concerning Union Pacific's former ownership of that property that have not

7   been raised in any of the other pending motions.

8   • The PMC and Patsouras Source Property Defendants have asserted

9   conceptually similar arguments concerning whether releases of hazardous

10   substances at their properties have impacted OU-2 groundwater. Further,

11   these Defendants have filed their own affirmative motions for summary

12   judgment on the issue of liability. As such, the summary-judgment motions

13   involving these two properties will be heard on the same day under the

14   proposed schedule.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that the Court should deny Defendants' request to appoint a special master for settlement and reset the hearings on the pending summary-judgment and partial summary-judgment motions in accordance with the schedule set out above.

DATED: January 21, 2022                     LATHROP GPM LLP


By:          /s/ Nancy Sher Cohen
            _____
            Nancy Sher Cohen
            Attorneys for Plaintiffs BASF Corporation et al.

48183269v1