LATHROP GPM LLP
Nancy Sher Cohen, Bar No. 81706
    nancy.cohen@lathropgpm.com
Ronald A. Valenzuela, Bar No. 210025
    ronald.valenzuela@lathropgpm.com
2049 Century Park East, Suite 3500S
Los Angeles, California 90067-1623
Telephone:   310.789.4600
Facsimile:    310.789.4601

LATHROP GPM LLP
William F. Ford (*admitted pro hac vice*)
    bill.ford@lathropgpm.com
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
Telephone:   816.292.2000
Facsimile:    816.292.2001

Attorneys for Plaintiffs
BASF Corporation et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASF CORPORATION, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>APC INVESTMENT CO., et al.,<br><br>    Defendants. | Case No. 2:14-cv-06456 GW (Ex.)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON COMMON ISSUES OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN ELEMENTS OF CERCLA LIABILITY**<br><br>Date:    March 14, 2022<br>Time:   8:30 a.m.<br>Place:   350 W. 1st Street<br>           Courtroom 9D, 9th Floor<br>           Los Angeles, CA 90012<br>Judge:  Hon. George H. Wu |

**I.   INTRODUCTION**

Defendants cannot win on the merits on summary judgment, so instead they try to invent a new legal standard, arguing that this is a "multi-site" case requiring Plaintiffs to prove commingling of "multiple site" contaminants in OU2.[1] In doing so, they essentially ask the Court to do what it cannot do: (1) **reverse** two decisions by the EPA concerning the remedy mandated under the OU-2 Consent Decree ("CD Remedy"), and (2) **ignore Defendants' admissions** that the groundwater beneath their properties **is commingled** with contaminants from other sources, including the former Omega Chemical Corporation property ("Omega Property").

EPA's First Decision About the CD Remedy. EPA has decided that the CD Remedy applies to a **single** area of groundwater contamination, a "regional," commingled groundwater plume that EPA has designated as Operable Unit 2 (OU2) of the Omega Chemical Superfund Site—not "multiple sites," as Defendants contend. In the OU2 Consent Decree ("OU2 CD"), EPA defines "OU2" as:

> the contamination in groundwater generally downgradient of the Omega Property, much of which has commingled with chemicals released at other locations into a regional plume containing multiple contaminants which, when considered in total, is more than four miles long and one mile wide.

*See* Dkt. No. 903-9 at 111.[2] The Court adopted this definition in its order approving the OU2 CD, and the Ninth Circuit also adopted it in its August 10, 2019 decision in this case rejecting Defendants' statute-of-limitations defense.

EPA's Second Decision About the CD Remedy. EPA mandated that the CD Remedy must **address all OU2** and must include a containment remedy aimed at

---

[1] As Plaintiffs' property-specific motions establish, Defendants are liable under CERCLA because releases or threatened releases of hazardous substances from their properties have, or threaten to, impact OU2.

[2] For convenience, EPA's map of OU2 from the 2011 Interim Record of Decision is attached at Appendix A (identifying source properties evaluated by EPA as of 2011). The map showing the locations of Defendants' properties within (or bordering) OU2, which Plaintiffs attached to their Complaint (Dkt. No. 526-2), is attached at Appendix B.

preventing **any** groundwater from escaping the OU2 boundary north of Telegraph Road. **All** the groundwater that must be addressed by that remedy's containment component must be contained, **regardless of where the contamination originated**. Plaintiffs must help finance and implement this work and have already spent over $35 million doing so.

Defendants ask the Court to reverse these two EPA decisions by redefining (a) "OU2" to be only the contamination from the Omega Property and (b) the CD Remedy to address only that contamination originating from the Omega Property. But the Court lacks jurisdiction to grant that request. *See* 42 U.S.C. § 113(h). And the "two-site cases" cited by Defendants, which are not followed in the Ninth Circuit, do not change that result. In those cases—unlike here—the defendant's "site" was **not within the same larger site** (i.e., geographic area) that the plaintiff was required to remediate. In "one-site" cases, a plaintiff need not establish a nexus between the release or threatened release from defendant's property and plaintiff's response costs or "commingling" of contaminants from each facility at the site.

Finally, all but two Defendants have admitted to the very fact they claim Plaintiffs must prove: "commingling." They admit that the contaminants in the groundwater beneath their properties originated from the Omega Property. *See*, *e.g.*, Dkt. No. 942 at 98 ("[h]azardous substances in groundwater underlying the Chrysler Property indisputably originate from the … Omega [Property]"). Thus, any release from soils at their properties has, or necessarily threatens to, commingle with contaminants that originated from the Omega Property. This alone is enough to defeat Defendants' disingenuous argument. This Court should reject it.

## II.  ARGUMENT

### A. Defendants Ask the Court to Reverse Two EPA Decisions About the CD Remedy

#### 1. Defendants mischaracterize the area of contamination EPA has designated for remediation.

Defendants' "commingling" contention rests entirely upon equating the term

"OU2" with "**the**" allegedly discrete plume of groundwater contamination flowing from the Omega Property. *See*, e.g., Defs.' Br. On Common Legal Issues (Dkt. No. 930), at 1. Defendants admit that this "Omega Plume" *may be commingled* with contaminants "sourced from other properties" but argue that unless contaminants originating from Defendants' properties *have commingled* with the Omega Plume, Defendants are not liable. *Id.* This is false.

EPA's definition of OU2 belies Defendants' interpretation of the extent of the OU2 CD Remedy. Under the OU2 CD's definition, OU2 is a **single, widespread area** of groundwater contamination within the boundaries fixed by EPA. *See* Dkt. No. 903-9 at 111. It is a "regional plume" generally downgradient of the Omega Property that is "commingled with chemicals released from CERCLA facilities near or within the OU2 boundary." *Id.* at 111, 387. EPA has specified the boundaries of OU2 by providing a map showing those boundaries. *See* Appendix A. And because OU2 is a single, bounded area of groundwater contamination under the OU2 CD, EPA's CD Remedy requires that Plaintiffs address **the entire area**, not just the portion that contains Omega Property contaminants.

Under Defendants' unfounded recharacterization, OU2 is not a single Operable Unit nor one area of contamination. Instead, it consists of dozens of separate sites, because each source of OU2 contamination, including Defendants' properties, is "subject to site-specific cleanup requirements under regulatory oversight." *See* Defs.' Brief No. 1 at 4. However, EPA is not required to designate **each** facility from which there has been a release or threatened release as a separate site; a widely contaminated area may be treated as a single site, as EPA has done here. *See, e.g., United States v. P.H. Glatfelter Co.*, 768 F.3d 662, 675 (7th Cir. 2014) ("Where, as here, releases from multiple facilities contaminate an interconnected environmental system like a river, the entire system falls within this definition [of 'site']."); *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 191 F.3d 409, 418-19 (4th Cir. 1999) (defendant's attempt to divide widely

contaminated area into separate facilities so defendant was responsible only for "its portion" rejected because it amounted to a thinly veiled attempt to avoid liability).

Defendants' attempt to redefine OU2 is inappropriate given that this Court and the Ninth Circuit have already adopted EPA's definition of "OU2." In its order approving the OU2 CD, this Court incorporated EPA's definition of "OU2." *See* Civil Minutes in *United States v. Abex Aerospace*, No. 2:16-cv-2696-GW-E, Dec. 15, 2016, at 2 ("OU2 consists of groundwater downgradient of Omega Chemical, which has commingled with chemicals released at other locations into a regional plume containing multiple contaminants"). The Ninth Circuit also adopted this definition. *See Arconic v. APC Investment,* 969 F.3d 945, 950 (9th Cir. 2020) ("chemicals from the Omega plant had migrated through groundwater and commingled with hazardous waste released from other facilities, forming a toxic plume extending over four miles downgradient of OU-1").

Moreover, nearly all the Defendants (or their consultants) involved in the pending motions, including all that Plaintiffs are moving against, have **admitted** that contaminants emanating from the Omega Property are in the groundwater beneath their properties. *See* Dkt. Nos. 902 at 64 (Patsouras Property Defendants), 933 at 17, 21-22, 53-54, 110, 120 (Phibro-Tech and Earl Mfg. Property Defendants, and Defendant Kekeropia), 942 at 98 (Chrysler Property Defendant, Union Pacific), 973-15 at 190-91, 973-21 (Associated Plating Property Defendants) 973-21 at 228-30 (same). Thus, these Defendants have conceded the very fact they claim Plaintiff must prove, that a release from soils at their properties has, or necessarily threatens to, commingle with contaminants that originated from the Omega Property.

### 2. Defendants' recharacterization of the extent of the CD Remedy is contrary to the actual remedy EPA mandated.

Under the OU2 CD, Plaintiffs must address the entire, widespread area of groundwater contamination, OU-2, by implementing EPA's CD Remedy. In addition to performing certain investigatory and monitoring work throughout OU2,

1  Plaintiffs must finance and implement the OU2 containment remedy selected by
2  EPA to address all the OU2 groundwater contamination within the enormous work
3  area specified under the OU2 CD. *See* Dkt. No. 903-9 at 387-90, 402-05, 422.
4  Plaintiffs must strategically place groundwater extraction wells to ensure no
5  groundwater leaves the OU2 boundary north of Telegraph Road or moves into
6  deeper OU2 groundwater. *Id.* at 388-89. Once captured, the extracted groundwater
7  is extensively treated then transported to the spreading grounds to replenish the
8  regional groundwater system. *Id.* at 389. This work will continue for decades to
9  ensure the continued efficacy of the containment remedy until EPA concludes that
10 the OU2 CD's groundwater quality requirements are met. *Id.* at 387-90, 400-02.

11       Importantly, Plaintiffs must implement the CD Remedy regardless of the
12 source of the OU2 contaminants in that groundwater. Neither the OU2 definition
13 nor the required remedy differentiates the source of contamination or whether it
14 consists of commingled groundwater. *Id.* at 111, 385-420. Thus, Plaintiffs' right to
15 contribution for this remedy is not conditioned on any "commingling" of
16 contaminants from different source properties impacting OU2 groundwater.

17       That right to contribution is also independent of any *actual* releases of
18 hazardous substances into OU2 from Defendants' properties. A *threatened* release
19 is sufficient to trigger Defendants' liability, because Plaintiffs must continue to
20 operate the containment remedy to ensure that threatened future releases within the
21 OU2 CD-defined containment area do not escape the OU2 boundary. EPA has
22 acknowledged this. *See id.* at 103, 111, 115, 390 (while the CD Remedy does not
23 mandate source control, EPA recognizes its importance in that "[t]imely Source
24 Control at these individual properties may facilitate the expeditious and cost-
25 effective achievement of … cleanup standards and other measures of achievement
26 of remedial objectives" of the OU2 CD). In fact, various Defendants' obligations to
27 perform Source Control on their properties—at the insistence of state regulatory
28 authorities and in coordination with EPA—demonstrates that there have been actual

and threatened releases from their properties to OU2 and establishes their liability.

Defendants' attempt to inject "commingling" into the liability analysis for OU2 effectively amounts to asking the Court to *reject* EPA's mandated CD Remedy for **all** OU2 groundwater contamination. But Defendants may not now challenge EPA's remedial decision incorporated in the OU2 CD. *See* 42 U.S.C. §§ 113(b), (h); *Atl. Richfield Co. v. Christian*, __ U.S. __, 140 S. Ct. 1335, 1342, 206 L. Ed. 2d 516 (2020) ("[t]o insulate cleanup plans from collateral attack, §113(b) of … [CERCLA] provides federal district courts with 'exclusive original jurisdiction over all controversies arising under' … and §113(h) then strips such courts of jurisdiction 'to review any challenges to removal or remedial action,' except in five limited circumstances").

### B. Defendants Invoke the Wrong Legal Standard

Given that Defendants' proffered legal standard is inconsistent with EPA's definition of this Site, it must be rejected.[3] Moreover, none of the "two-site" cases relied on by Defendants supports the legal standard they ask the Court to apply. In each of those cases, the defendant's "site" was not within the "larger site" (i.e., geographic area) that the plaintiff was required to remediate. *See, e.g., Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1067 (6th Cir. 1999) (defendant's site over half mile away from site requiring remediation).

Here, each of Defendants' properties are located within, or border, the same CERCLA operable unit, OU2. OU2 is not hundreds of individual CERCLA sites, with Defendants' properties counted among them, as Defendants contend. It is one site. Under these facts, a plaintiff need not establish commingling of contaminants released from each of the individual facilities within the site, here, OU-2. *See State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir. 1985); *State of Ariz. v.*

---

[3] Defendants' "common liability" argument must be rejected for the same reasons. The "single harm" here is OU2, the single, widespread area of contaminated groundwater that Plaintiffs must address by implementing the CD Remedy.

1    *Motorola, Inc.*, 805 F. Supp. 742, 746 (D. Ariz. 1992).[4] Plaintiffs need only

2    demonstrate a release or threatened release of hazardous substances into OU2.

3          Even assuming the factual circumstances of this case are viewed as a "two-

4    site case" (under the *Castaic Lake* "minimal nexus" standard applied in this circuit,

5    *see* Dkt. No. 972 at 7), the "two sites" are not the Omega Plume and Defendants'

6    facilities. Instead, they would be the (1) soils at Defendants' facilities, and (2)

7    groundwater at those facilities. These two "sites" sit directly on top of one another.

8    Accordingly, the "plausible migration pathway" between them is obvious and shifts

9    the burden to Defendants to prove that there is no nexus between the releases and

10    threatened releases from their facilities and Plaintiffs' response costs. *See, e.g.,*

11    *United States v. Wash. State Dep't of Transp.*, No.08-5722RJB, 2010 WL 4273718,

12    at *4 (W.D. Wash. Nov. 17, 2010). Plaintiffs need not show "commingling."

### III. CONCLUSION

        The definition of OU2 and its EPA-mandated CD Remedy have been repeatedly affirmed by EPA and adopted by this Court and the Ninth Circuit. Defendants attempt to reopen and mischaracterize those decisions and seek to devise a recharacterization of OU2 and the CD Remedy that denies the obvious facts. Plaintiffs respectfully submit that this Court must reject Defendants' invitation to reopen those issues.

DATED: February 28, 2022         LATHROP GPM LLP

By:      /s/ Ronald A. Valenzuela
        Ronald A. Valenzuela
        Attorneys for Plaintiffs BASF Corporation et al.

---

[4] Indeed, the First Circuit found that for current owners, merely owning the facility which overlays contaminated groundwater is sufficient for prima facie liability; evidence of soil contamination is not required. *See United States v. Puerto Rico Indus. Dev. Co.*, 18 F.4th 370, 378-80 (1st Cir. 2021).