PETER A. NYQUIST (SBN 180953)
pnyquist@ggfirm.com
SEDINA L. BANKS (SBN 229193)
sbanks@ggfirm.com
SHERRY E. JACKMAN (SBN 274030)
sjackman@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY
[Additional Counsel Listed on Following Pages]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BASF CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>APC INVESTMENT CO., et al.,<br><br>Defendants.<br><br>AND RELATED CROSS ACTIONS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS | Case No. 2:14-CV-06456-GW (Ex)<br>Assigned to Honorable George H. Wu<br><br>**CERTAIN DEFENDANTS' JOINT SUPPLEMENTAL BRIEF RE COMMON LEGAL ISSUES**<br><br>Hearing Date: March 14, 2022<br>Time: 8:30 a.m.<br>Place: Courtroom 9D, 9th Floor<br>       350 W. 1st Street<br>       Los Angeles, CA 90012<br>Judge: Hon. George H. Wu |

<u>Counsel for "Moving Defendants"</u>

PETER A. NYQUIST (SBN 180953)
pnyquist@ggfirm.com
SEDINA L. BANKS (SBN 229193)
sbanks@ggfirm.com
SHERRY E. JACKMAN (SBN 274030)
sjackman@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
Telephone:  310.553.3610
Fax:  310.553.0687
*Attorneys for Defendant*
UNION PACIFIC RAILROAD COMPANY

WILLIAM D. WICK (SBN 063462)
bwick@ww-envlaw.com
ANNA L. NGUYEN (SBN 226829)
anguyen@ww-envlaw.com
WACTOR & WICK LLP
3640 Grand Avenue, Suite 200
Oakland CA 94610-2023
Telephone: (510) 465-5750
*Attorneys for Defendant*
HALLIBURTON AFFILIATES, LLC

EARL L. HAGSTRÖM, ESQ. (SBN 150958)
ehagstrom@eghblaw.com
DANIEL E. TROWBRIDGE, ESQ. (SBN 301301)
dtrowbridge@eghblaw.com
EDLIN GALLAGHER HUIE + BLUM
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:  (415) 397-9006
Facsimile:   (415) 397-1339
*Attorneys for Defendants*
PMC SPECIALTIES GROUP, INC. and FERRO CORPORATION

FARHEENA HABIB, ESQ. (SBN 243405)
fhabib@eghblaw.com
EDLIN GALLAGHER HUIE + BLUM
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:  (415) 397-9006
Facsimile:   (415) 397-1339
*Attorneys for Intervenors*
FIREMAN'S FUND INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, AS INSURERS FOR PALLEY SUPPLY COMPANY

| | |
|---|---|
| 1 | VICTOR J. OTTEN (SBN 165800) |
| | vic@ottenlawpc.com |
| 2 | OTTEN LAW, PC |
| | 3620 Pacific Coast Hwy Suite 100 |
| 3 | Torrance, CA 90505 |
| | Telephone:   (310) 378-8533 |
| 4 | Facsimile:    (310) 347-4225 |
| | *Attorneys for Defendant* |
| 5 | KEKROPIA, INC. |

6   Counsel for "Opposing Defendants"

7 PETER A. NYQUIST (SBN 180953)
pnyquist@ggfirm.com
8 SEDINA L. BANKS (SBN 229193)
sbanks@ggfirm.com
9 SHERRY E. JACKMAN (SBN 274030)
sjackman@ggfirm.com
10 GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
11 Los Angeles, California  90067
Telephone:  310.553.3610
12 Fax:  310.553.0687
*Attorneys for Defendant*
13 UNION PACIFIC RAILROAD COMPANY

14 ZACHARY R. WALTON (SBN 181041)
zack@ssllawfirm.com
15 ROBERT B. MARTIN III (SBN 235489)
rob@ssllawfirm.com
16 SSL LAW FIRM LLP
505 Montgomery Street, Suite 620
17 San Francisco, CA 94111
Telephone:   (415) 814-6400
18 Facsimile:    (415) 814-6401
*Attorneys for Defendants*
19 PHIBRO-TECH, INC. and FIRST DICE ROAD COMPANY

20 CHRISTOPHER G. FOSTER (SBN 119142)
cfoster910@gmail.com
21 One South Orange Grove Boulevard No. 2
Pasadena, CA 91105
22 Tel: (626) 799-4950
*Attorneys for Defendants*
23 APC INVESTMENT COMPANY, ASSOCIATED PLATING COMPANY,
ASSOCIATED PLATING COMPANY, INC., CLARE GOLNICK, CHERYL
24 GOLNICK, DARRELL GOLNICK, GORDON MCCANN, AND LYNNEA
MCCANN

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

88151-00029/4278047.6

CERTAIN DEFENDANTS' JOINT SUPP.
COMMON LEGAL ISSUES BRIEF

TAMMY M.J. HONG (SBN 241660)
tmjhong@ddsffirm.com
DEMETRIOU, DEL GUERCIO, SPRINGER & FRANCIS, LLP
915 Wilshire Boulevard, Suite 2000
Los Angeles, California 90017
Tel: (213) 624-8407
Fax (213) 624-0174
*Attorneys for Defendants*
CLAUDETTE A. EARL and EARL MANUFACTURING COMPANY

VICTOR J. OTTEN (SBN 165800)
vic@ottenlawpc.com
OTTEN LAW, PC
3620 Pacific Coast Hwy Suite 100
Torrance, CA 90505
Telephone: (310) 378-8533
Facsimile: (310) 347-4225
*Attorneys for Defendant*
KEKROPIA, INC.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

88151-00029/4278047.6

CERTAIN DEFENDANTS' JOINT SUPP.
COMMON LEGAL ISSUES BRIEF

## I. INTRODUCTION

Moving Defendants[1] seek summary judgment or, alternatively, partial summary judgment, as to Plaintiffs' First and Third Claims under CERCLA in the Fifth Amended Complaint, on the grounds that Plaintiffs cannot prove (i) releases of hazardous substances from Moving Defendants' Properties impacted OU2—which as designated by the U.S. EPA is the approximately 4.5-mile groundwater contaminant plume originating from the former Omega Chemical facility,[2] or (ii) specifically as to the Chrysler Property, that Union Pacific Railroad Company ("Union Pacific") is a "covered person" under CERCLA section 107(a). Separately, Plaintiffs' Motions for Partial Summary Judgment should be denied for the reasons set forth in Opposing Defendants' Joint Opposition (Dkt. 930) and related property-specific Opposition briefs.

Accordingly, Defendants respectfully submit that the Court should address three key issues at the forthcoming hearing on common legal issues to guide how it considers subsequent property-specific motions and oppositions: (1) Which elements of CERCLA liability are at issue in this phase of the litigation? (2) Are Plaintiffs required to prove that releases of hazardous substances from each Defendant's facility have impacted OU2? (3) What is the applicable legal framework for evaluating a CERCLA case involving an upgradient source of a

---

[1] "Moving Defendants" and "Opposing Defendants" are identified in the counsel list above, and are collectively referred to herein as "Defendants."

[2] "OU2"—or the Omega Plume—is defined by the U.S. EPA in its "Interim Action Record of Decision" for the Omega Chemical Corporation Superfund Site, dated September 20, 2011, as follows: "Operable Unit (OU) 2 of the Site is the contamination in groundwater generally downgradient and **originating from the former Omega Chemical Corporation (Omega Chemical) facility** in Whittier, California…" *Id.* at p. 1-1 (emphasis added) (https://semspub.epa.gov/work/09/1128496.pdf). Any assertions by Plaintiffs' that OU2 should be defined by reference to the OU2 Consent Decree (*see* Dkt. No. 903-9) are unfounded and incorrect.

regional groundwater plume and downgradient, non-contiguous alleged contributing source sites?[3]

### 1. Which Elements of CERCLA Liability Are at Issue in this Phase of the Litigation?

The parties agreed in 2017 to address only the following three elements of CERCLA liability in this phase of the litigation: (1) whether each Defendant's property is a "facility," (2) whether each Defendant falls within one of the four classes of "persons" subject to liability under CERCLA, and (3) whether releases of hazardous substances from Defendants' respective facilities have impacted OU2. (Dkt. 615, 1:14-21.) The parties further agreed to defer the issue of "whether the release or threatened release caused Plaintiffs to incur response costs that were necessary and consistent with the National Contingency Plan" ("NCP"). (Dkt. 615, 2:1-4.) This is referred to as the "Deferred Element." (Dkt. 930, 3:18-4:4.)

Importantly, in this current phase, the Court need not render a final determination on the "causal" aspect of Defendants' alleged liability for Plaintiffs' response costs, but rather only whether alleged releases of hazardous substances from Defendants' facilities have impacted OU2.[4] Any subsequent phase will

---

[3] For the Court's convenience, Exhibit 1 to the concurrently-filed Declaration of Sherry E. Jackman depicts the approximate locations of the properties relevant to the parties' respective briefs, and clearly identifies the former Omega Chemical facility as the upgradient source of the Omega Plume, or OU2.

[4] The element of "causation" in CERCLA suits is rarely addressed "because the 'release' of the hazardous waste is almost always at the same site that has been contaminated …" but must be addressed in "two-site" (or multi-site) cases such as this one. *Thomas v. FAG Bearings Corp.*, 846 F.Supp. 1382, 1386-87 (W.D. Mo. 1984). Plaintiffs have alleged "each Defendant Source Property is a 'facility' within the meaning . . . of CERCLA…" (Dkt. 526, Fifth Amended Complaint, ¶ 400.) Since this case involves an upgradient polluting facility for which Plaintiffs are responsible, and multiple downgradient, non-contiguous Defendant facilities, Plaintiffs must establish the "Defendant Source Properties" actually impacted the media (i.e., groundwater) that is the subject of the cleanup. To require otherwise would create boundless CERCLA liability—"[a] party who discovers . . . groundwater . . . contamination [at one site] could successfully sue every party who released [contamination] in the entire country." *Thomas*, 846 F.Supp. at 1387 (summary judgment granted against party failing to show impacts to groundwater).

separately address the Deferred Element, at which time Plaintiffs will need to prove that if a Defendant's facility released contaminants that commingled with the Omega Plume, any such release <u>caused</u> Plaintiffs to incur response costs necessary and consistent with the NCP in an amount exceeding their fair share of overall liability as the source of the Omega Plume. In other words, Defendants cannot be deemed liable parties under CERCLA unless Plaintiffs prevail in both phases.

### 2. **Do Plaintiffs Have to Prove that Releases of Hazardous Substances from each Defendant's Facility Have Impacted OU2?**

Yes. This stems from Plaintiffs' own admissions, along with applicable caselaw. Plaintiffs have repeatedly conceded this point, as set forth in Section I of Moving Defendants' Joint Reply (Dkt. 958, 2:2-3:19): e.g., Joint Status Conference Reports filed in April-May 2017 (Dkts. 600, 7:21-8:2; 602, 3:6-10; 615, n. 2 (OU2 impacts "should be litigated in the current phase"); April 27, 2017 Status Conf. Tr. at 26:3-8); *see also*, Fifth Am. Compl. (Dkt. 526, ¶¶ 2, 9, 404). Most recently, Plaintiffs reiterated that they seek contribution from "all current or former owners of a facility from which … there were <u>releases of hazardous substances to OU2 groundwater</u>." (Dkt. 1004, 4:12-14) (emphasis added).[5]

Critically, Plaintiffs previously stated that "all Defendants [except two at the time] are unwilling to stipulate to the <u>fundamental fact that is essential to the question of their liability, namely, that releases of hazardous substances *from* their respective properties have impacted OU2</u>." Dkt. 600, 7:21-8:2 (emphasis added).

---

[5] Consistent with these admissions, in seeking early CERCLA liability stipulations from Defendants in 2017, Plaintiffs stated that the "<u>critical question</u>" was "**whether Defendants' releases have impacted OU2**." (Dkt. 602, 3:2-3) (emphasis added.) Indeed, Plaintiffs declined to enter into any such stipulations with any Defendant unwilling to concede that hazardous substances from its respective "Source Property" were "<u>spilled, leaked, emptied, escaped, leached, poured, or were emitted, injected, discharged, dumped or disposed</u>, into the soil at the … Source Property **and into OU2**." (*See* Dkts. 594, ¶ 8; 596 ¶ 9; 678, ¶ 9) (emphasis added).

1  In reliance on Plaintiffs' multiple reiterations of this position, Defendants have
2  made significant strategic decisions, including the decision by Moving and
3  Opposing Defendants to proceed with the present motions and oppositions.
4  Plaintiffs now contend they need only show a "threatened release" of hazardous
5  substances "into OU2 Groundwater." (*See* Dkt. 948, 5:10-22.) However, Plaintiffs
6  must be held accountable for their many prior representations to the Court and
7  Defendants on this important issue.

As explained further below, requiring proof that Defendants have impacted OU2 is also entirely consistent with relevant caselaw.

### 3. What Is the Applicable Legal Framework for Evaluating a CERCLA Case Involving an Upgradient Source of a Regional Groundwater Plume and Downgradient, Non-Contiguous Alleged Contributing Source Sites?

A CERCLA "two-site" case (or multi-site case, such as this, involving many non-contiguous properties), is a case in which the plaintiff "contends not that the defendant directly dumped or otherwise disposed of its wastes at the site but rather that hazardous materials migrated there from the defendant's facility or from a different dumpsite elsewhere . . . " *See Solutia, Inc. v. McWane, Inc.,* No. 1:03-cv-1345-PWG, 2012 WL 2031350, at *8 (N.D. Ala. June 1, 2012).

In such cases, "it may be 'much less obvious how [a defendant] could be responsible for contamination … of the [site where the plaintiff has incurred response costs.]'" *Id*. (internal quotations and citations omitted.)  Courts generally require a plaintiff in two-site cases to prove that a release that originates from a defendant's facility contaminated a second facility. *See Innis Arden Golf Club v. Pitney Bowes, Inc.,* 629 F.Supp.2d 175, 185-86 (D. Conn. 2009); *Thomas,* 846 F.Supp. at 1386-87. Plaintiffs must show more than a mere <u>possibility</u> that the contamination from the defendant's site caused contamination on the plaintiff's site. *Kalamazoo River Study Group v. Rockwell Int'l Corp.,* 171 F.3d 1065, 1068 (6th

Cir. 1999).  In practical terms, this requires more than a "threatened" release of hazardous substances from Defendants' Properties and, instead, requires an actual release of hazardous substances that has impacted OU2 groundwater.

The Ninth Circuit has not ruled on the applicable standard that applies in two-site CERCLA cases. Accordingly, this Court "must determine what type of link CERCLA requires between an offsite release and the resulting contamination." *Thomas*, 846 F.Supp. at 1387 (causal link required between contamination and response costs incurred in cleaning it up—to "hold otherwise would mean that the scope of liability … would be unlimited"*); see also Farmland Indus. Inc. v. Morrison–Quirk Grain Corp.*, 987 F.2d 1335, 1340 (8th Cir. 1993) (same). Fortunately, numerous cases provide "a rational framework for analyzing the causal link in a CERCLA claim" involving multiple sites. *Thomas*, 846 F.Supp. at 1390.

Plaintiffs incorrectly assert that *Castaic Lake Water Agency v. Whittaker Corp.,* 272 F.Supp.2d 1053 (C.D. Cal. 2003) provides the framework for evaluating Defendants' alleged liability under CERCLA. However, the minimal causal nexus set forth in *Castaic* is wholly inapplicable to the facts in this case and, in any event, to this phase of the proceedings (which is not addressing the "Deferred Element"). (*See* Dkt. 958, Section III.B.) Most fundamentally, unlike the situation in *Castaic*, this case does not involve an innocent, <u>downgradient</u> plaintiff whose property has been impaired solely by alleged <u>upgradient</u> contaminant sources. The *Castaic* court acknowledged that the "geography of the [defendant's] site and surrounding area" must be considered in determining whether a release by defendant caused plaintiff to incur response costs. *Castaic*, 272 F.Supp.2d at 1064. The facts in this case are plainly distinguishable from *Castaic*, and from the overwhelming majority of cases involving hazardous waste disposal sites where it "is not necessary to connect the actual waste disposed of at a site to the waste actually released." *Thomas,* 846 F.Supp. at 1386.

Importantly, "where the response costs are incurred solely as a result of and

in response to the actual contamination [like here, as opposed to a "threatened release"], the plaintiff must prove that the release by the defendant actually caused the contamination at plaintiff's site. . . ." *Id.* at 1387-90, *citing and discussing Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453 (1st Cir. 1992) and *Artesian Water Co. v. New Castle*, 659 F. Supp. 1269 (D. Del. 1987), *aff'd*, 851 F.2d 643 (3rd Cir.1988). Further, many courts "recognize that a plaintiff must provide some evidence linking its response costs to the . . . off-site release of contaminants." *Innis,* 629 F.Supp.2d at 185-87 (granting defendant's CERCLA liability motion for summary judgment when plaintiff lacked proof that contamination was causally linked to defendants); *Solutia,* 2012 WL 2031350 at *8 (same and stating that in a two-site case, plaintiff must "present evidence that will 'provide the necessary causal link between [the defendants activities] and the contamination which is the subject of [the] suit.'") (citation omitted). Thus, to prevail, Plaintiffs must at least establish in this phase that contaminants from soil released at Defendants' Properties impacted OU2 groundwater.

      Defendants submit that the appropriate legal framework for evaluating the causal component of Defendants' alleged liability in this case was established in *Kalamazoo River*, 171 F.3d 1065, and various subsequent decisions adopting its analysis (*see* Dkt. 958, Section III.A). In affirming the grant of summary judgment in defendant's favor, the Sixth Circuit held that "[i]n a 'two-site' [or multi-site] case such as this, where hazardous substances are released at one site and allegedly travel to a second site, in order to make out a prima facie case, the plaintiff must establish a causal connection between the defendant's release of hazardous substances and the plaintiff's response costs incurred in cleaning them up." *Id.* at 1072-73. The same result—granting summary judgment in favor of defendants based on plaintiff's inability to prove a causal connection between contamination at more than one site—based on similar analyses was reached in the *Innis* and *Solutia* cases.

# CONCLUSION

To prevail in this phase of the litigation, and to establish a *prima facie* claim for contribution under CERCLA section 113, Plaintiffs must prove there was a release of a hazardous substance at the Defendants' Properties that impacted OU2. Defendants acknowledge that the phased structure of this case, coupled with its unique facts, present novel issues for the Court's consideration. Most notably, Defendants are unaware of a single reported "two-site" (or multi-site) CERCLA case—and Plaintiffs have cited none—involving an upgradient plaintiff whose facility is the known source of groundwater contamination seeking to impose CERCLA liability on downgradient facilities for alleged contributions to the groundwater plume created by the upgradient plaintiff. Therefore, Plaintiffs cannot rely on *Castaic's* minimal-nexus "plausible migration pathway" discussion, because that case involved an innocent downgradient plaintiff while this case involves upgradient Plaintiffs that have admitted to liability under CERCLA section 107(a) for creating the Omega Plume designated by U.S EPA as OU2.

No matter how the Court decides Moving Defendants' motions for summary judgment, the Court cannot make a final determination regarding Defendants' alleged liability under CERCLA for response costs at this time under Plaintiffs' motion for summary judgment. This is because the determinative causal aspect of CERCLA liability—i.e., whether Plaintiffs incurred response costs, in excess of their fair share, as a result of hazardous substances releases from Defendants' Properties that were "necessary" and "consistent with the national contingency plan"—is the "Deferred Element" that would only be addressed if the case progresses.

Finally, Defendants will be prepared at the hearing to address their Objections (Dkt. 951) to Plaintiffs' untimely-filed Opposition (Dkts. 949, 950).

RESPECTFULLY SUBMITTED:

DATED: February 28, 2022      GREENBERG GLUSKER FIELDS
                              CLAMAN & MACHTINGER LLP

                              By: /s/ Peter A. Nyquist
                                  PETER A. NYQUIST (SBN 180953)
                                  Attorneys for Defendant
                                  UNION PACIFIC RAILROAD COMPANY

DATED: February 28, 2022      WACTOR & WICK LLPC

                              By: /s/ William D. Wick
                                  WILLIAM D. WICK (SBN 063462)
                                  ANNA L. NGUYEN (SBN 226829)
                                  Attorneys for Defendant
                                  HALLIBURTON AFFILIATES, LLC

DATED: February 28, 2022      EDLIN GALLAGHER HUIE + BLUM

                              By: /s/ Earl L. Hagstrom
                                  EARL L. HAGSTROM (SBN 150958)
                                  DANIEL E. TROWBRIDGE (SBN 301301)
                                  Attorneys for Defendants
                                  PMC SPECIALTIES GROUP, INC. and
                                  FERRO CORPORATION

DATED: February 28, 2022      EDLIN GALLAGHER HUIE + BLUM

                              By: /s/ Farheena Habib
                                  FARHEENA HABIB (SBN 243405)
                                  Attorneys for Intervenors
                                  FIREMAN'S FUND INSURANCE COMPANY
                                  and FEDERAL INSURANCE COMPANY, AS
                                  INSURERS FOR PALLEY SUPPLY
                                  COMPANY

DATED: February 28, 2022      OTTEN LAW, PC

                              By: /s/ Victor J. Otten
                                  VICTOR J. OTTEN (SBN 165800)
                                  Attorneys for Defendant
                                  KEKROPIA, INC.

| | | |
|---|---|---|
| 1 | DATED: February 28, 2022 | SSL LAW FIRM |
| 2 | | By: /s/ Robert B. Martin |
| 3 | | ZACHARY R. WALTON (SBN 181041)<br>ROBERT B. MARTIN III (SBN 235489) |
| 4 | | Attorneys for Defendants<br>PHIBRO-TECH, INC. and FIRST DICE ROAD |
| 5 | | COMPANY |
| 6 | DATED: February 28, 2022 | CHRISTOPHER FOSTER LAW OFFICES |
| 7 | | By: /s/ Christopher G. Foster<br>CHRISTOPHER G. FOSTER (SBN 119142) |
| 8 | | Attorneys for Defendants<br>APC INVESTMENT COMPANY, |
| 9 | | ASSOCIATED PLATING COMPANY,<br>ASSOCIATED PLATING COMPANY, INC., |
| 10 | | CLARE GOLNICK, CHERYL GOLNICK,<br>DARRELL GOLNICK, GORDON MCCANN, |
| 11 | | AND LYNNEA MCCANN |
| 12 | DATED: February 28, 2022 | DEMETRIOU, DEL GUERCIO, SPRINGER &<br>FRANCIS, LLP |
| 13 | | |
| 14 | | By: /s/ Tammy M.J. Hong<br>TAMMY M.J. HONG (SBN 241660) |
| 15 | | Attorneys for Defendants<br>CLAUDETTE A. EARL and EARL |
| 16 | | MANUFACTURING COMPANY |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## CERTIFICATION OF CONCURRENCE FROM ALL SIGNATORIES

I, Peter A. Nyquist, am the ECF user whose ID and password are being used to file this Parties' Certain Defendants' Joint Supplemental Brief Re: Common Legal Issues. In compliance with C.D. Cal. Civ. L.R. 5-4.3.4(a)(2)(i), I hereby attest that I have obtained the concurrence of each signatory to this document.

/s/ Peter A. Nyquist
Peter A. Nyquist