FRED M. BLUM, ESQ. (SBN 101586)
fblum@eghblaw.com
DANIEL E. TROWBRIDGE, ESQ. (SBN 301301)
dtrowbridge@eghblaw.com
EDLIN GALLAGHER HUIE + BLUM
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:  (415) 397-9006
Facsimile:   (415) 397-1339

Attorneys for Defendant
PMC SPECIALTIES GROUP, INC.
and FERRO CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCONIC INC. et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>APC INVESTMENT CO., et al.,<br><br>　　　　Defendants. | Case No. 2:14-cv-06456-GW-E<br><br>**PMC SPECIALTIES GROUP, INC. AND FERRO CORPORATION'S SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　May 26, 2022<br>Time:　　8:30 a.m.<br>Dept.:　　9D |

3390208

I. **SUMMARY OF ARGUMENTS**

Plaintiffs admit the PMC Site is not within, and does not overlie the OU-2 Plume, unlike all other sites at issue in this case.[1] Declaration of Daniel Trowbridge in Support of PMC's Supplemental Briefing ("Supp. Trowbridge Decl."), Ex. A, Transcript, March 14, 2022 Hearing, p. 26:6-13.

Despite decades of investigation by the United States Environmental Protection Agency ("EPA") the EPA has never sent PMC a general or special notice letter and has never identified PMC as a potentially responsible party ("PRP") for the OU-2 Plume contamination. Dckt 1019, Plaintiffs' Supplemental Brief on Common Issues in Support of MSJ, p. 2:10-20. After millions of dollars and years spent investigating, monitoring and analyzing potential source areas, EPA has not identified PMC as a Potentially Responsible Party ("PRP") and the PMC Site was not identified as a source of OU-2 Plume contamination.

Data collected and analyzed after the summary judgement briefing concluded in April 2021 reconfirmed that there is no plausible pathway for contaminants from the PMC Site to have migrated to and comingled with contaminants within the OU-2 Plume. The PMC Site was decommissioned in 1993, and the new test data reconfirmed contaminants have not migrated more than 700 feet from the PMC Site, attenuating to non-detect far short of the OU-2 Plume.

Plaintiffs must produce evidence that a plausible migration pathway through which **hazardous substances from the PMC Site** are transported to OU-2 exists. *Castaic Lake Water Agency v. Whittaker*, 272 F.Supp.2d 1053, 1066 (2003). It is not enough for Plaintiffs simply to argue that groundwater from the area in the

---

[1] It is undisputed that there is geographic separation between the PMC Site and the OU-2 Plume. As set forth in detail in PMC's initial moving papers (Dckt. 902, pp. 42:2-44:8), Plaintiffs' depiction overstates the "process areas" at the PMC Site, and draws an exaggerated boundary of the OU-2. Further, Plaintiffs' admit that groundwater does not flow from the northwest corner of the PMC site to the northwest (towards the OU-2) plume, but travels from the process areas of the PMC Site in a southerly direction. Based on Plaintiffs' Experts own diagrams, groundwater from the PMC Site would have to travel 2,000 to 9,000 feet to intersect the OU-2 Plume.

3390208

1
PMC AND FERRO CORP.'S SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  vicinity of the PMC Site might intersect the OU-2 Plume thousands of feet from
2  the PMC Site at some unknown time in the future.  Plaintiffs must prove this
3  groundwater contains hazardous substances from the PMC Site and that those
4  substances have migrated to or are more likely than not to migrate to the OU-2
5  Plume in the future.  All that the hypothetical groundwater flow lines Plaintiffs'
6  litigation expert relies upon show is that groundwater may migrate thousands of
7  feet in the general direction of OU-2.  Decl. of Earl Hagström in Support of
8  Moving Defendant's Reply in Support of MSJ ("Hagström Reply Decl."), Ex. H.
9  Such speculation is insufficient to prove Plaintiffs' CERCLA claims.
10     Moreover, groundwater flow direction based on the potentiometric contour
11 lines in the September 2018 groundwater flow map prepared by Geosyntec,
12 Plaintiffs' technical experts responsible for Plaintiffs' OU-2 investigation, show
13 groundwater flowing "out of OU-2" in an East South East direction, the opposite
14 direction from that opined by Mr. Mutch.  Ex. Z, Leading Edge Figure.
15     The OU-2 Plume and PMC Site are distinct and physically separate sites and
16 governed under the *Castaic Lake* "two-site" standard adopted by the Court.  *See*
17 Dckt 1028, Court's Tent. Ruling on Common Issues of Law, p. 17-19; *Castaic*, 272
18 F.Supp.2d 1053 (2003).
19
20 **II.    ARGUMENT**
21        A.    **PLAINTIFFS AGREE THEY MUST ESTABLISH A "RELEASE" OF**
22              **HAZARDOUS SUBSTANCES HAS OR WILL REACH AND COMINGLE**
23              **WITH OU-2 GROUNDWATER**
24     All parties agree that "OU-2 Groundwater contamination is at the center of
25 this dispute." Dkt. 903-201, Valenzuela Declaration ISO Plaintiffs' MSJ, ¶ 5.
26 Plaintiffs have agreed that with regard to PMC they must show a release to "OU-2
27 groundwater" in this phase of the litigation:
28

3390208

> THE COURT: So both sides are asking me to decide that issue, whether or not there has been a release, an actual release or a threatened release. Both sides want me to decide that issue, right?  MR. VALENZUELA: Into OU2 groundwater, yes, sir, Your Honor.  THE COURT: Into OU2 groundwater?  MR. VALENZUELA: Yes…

March 14, 2022 Hearing Transcript, p. 45:8-15.

Plaintiffs further agree that they must show migration or potential migration from the PMC Site to OU-2 in order to defeat PMC's motion. *Id.* at 50:18-51:16.

Plaintiffs cannot prove there was a release of hazardous substances from the PMC Site that has migrated to and comingled with contamination in the OU-2 Plume or that there is a reasonable and likely threat this will occur in the future. Plaintiffs must prove that hazardous substances released from the PMC Site have a plausible pathway to OU-2.  A showing that groundwater may eventually intersect without consideration of a pathway for hazardous substances is insufficient. Plaintiffs must prove the groundwater is also transporting hazardous substances from the PMC Site to OU-2, otherwise it is just groundwater and Plaintiffs' CERCLA claims fail.

### B. PLAINTIFFS HAVE NOT ESTABLISHED A "PLAUSIBLE PATHWAY" FOR HAZARDOUS SUBSTANCES TO MIGRATE TO THE OU-2 PLUME

Plaintiffs have not met their burden to establish the existence of a plausible migration pathway for hazardous substances between the PMC Site and the OU-2 Plume.  Plaintiffs rely exclusively on hypothetical modeling and interpretations of groundwater flow direction and do not take into account the mechanics of contaminant transport.  Mr. Mutch admitted he did not undertake any "fate and transport analysis," and did nothing more than attempt to determine the general direction of groundwater flow, which he himself admits, "is not akin to contaminant transport."  Hagström Reply Decl., ¶ 3, Ex. G, Mutch Depo VII, pp. 825:3-6; 840:13-16.  Mr. Mutch further admitted that he had not done a "careful

analysis" to determine the sources of the contamination he baselessly attributes to the PMC Site. *Id.* 860:19-25; 861:1-10; 861:15-18.

Mr. Mutch's conclusory statements that contaminants from the PMC Site have or will reach OU-2 groundwater are admittedly speculation. An expert opinion that is demonstrably unreliable cannot form the basis for showing a genuine issue of fact. *See Triton Energy Corp. v. Square D. Co,* 68 F.2d 1216, 1222 (9th Cir. 1995) (excluding expert's opinion regarding an alleged defect of a circuit breaker that he never examined). Applying the *Castaic Lake* standard adopted by the Court, Plaintiffs must produce evidence that a plausible migration pathway by which **hazardous substances** are transported to OU-2 exists, not simply a pathway for groundwater flow. *Castaic Lake*, 272 F.Supp.2d at 1066[2]. It is not enough for Plaintiffs simply to argue groundwater from the area in the vicinity of the PMC Site might intersect the OU-2 Plume, thousands of feet from the PMC Site, at some unknown time in the future. Plaintiffs must establish a plausible pathway for hazardous substances. Mr. Mutch admitted that he made no effort to determine how far along groundwater flow direction lines contaminants could travel based on different source concentrations. Hagstrom Reply Decl., Ex. G, ¶ 3, Ex. G, Mutch Depo VII, pp. 839:7-16. Groundwater direction is not enough to prove Plaintiffs' CERCLA claims. Moreover, groundwater flow maps prepared by Plaintiffs' technical consultant Geosyntec in September 2018 show groundwater flowing "out of OU-2" in an ESE direction. Supp. Vogl Decl., Ex. Z. By contrast, here, PMC offered admissible, scientifically based evidence through its expert, Richard Vogl, which showed that based on several lines of evidence, including the

---

[2] In *Castaic*, the Court noted that plaintiffs' expert's opinion took into account the physical and chemical properties of the contaminants at issue and the hydrogeology of the Site; and further that defendants expert agreed that surface water had the potential to transport the specific hazardous substances "considerable distances in short periods of time." Here Plaintiffs argument that groundwater from the vicinity of the PMC Site may eventually intersect OU-2 does not take into account the characteristics of the hazardous substances in question. *Id. at* 1067-1068.

3390208

characteristics and concentrations of the contaminants associated with the PMC Site, the geologic features and subsurface characteristics present at or between the PMC Site and the OU-2 Plume, and remedial measures taken at the Site, that there is no plausible pathway for the migration of contaminants from the PMC Site to reach the OU-2 Groundwater Plume in the past, present or future. Dckt 902-53, Vogl Decl. ¶¶ 9-19; Supp. Vogl Decl. ¶¶ 9-12, 18-19, 22-23.

Mr. Mutch's opinions, which do not take into account contaminant transport principles, are not reliable to the extent he concludes, on groundwater direction alone, that contaminants from the PMC Site have or will impact OU-2.

### C. NEW DATA RECONFIRMS THAT NO PLAUSIBLE SUBSURFACE PATHWAY EXISTS FOR HAZARDOUS SUBSTANCES FROM THE PMC SITE TO REACH AND COMMINGLE WITH THE OU-2 PLUME

Groundwater monitoring data demonstrate hazardous substances from the PMC Site have not and will not reach the OU-2 Plume. Dckt 902-53, Vogl Decl. ¶¶ 9-19; Supp. Vogl Decl., ¶¶ 9-12, 18-19, 22-23.

Data collected after briefing concluded in April 2021 reconfirms PMC's position, that the concentration levels combined with the chemical and physical characteristics of the contaminants at PMC Site make clear the contamination has not and will never reach the OU-2 Plume. Contaminant concentrations at Monitoring Well 10R, which prior to April 2021, detected the highest concentrations of benzene and naphthalene at the PMC Site, have decreased from 350 micrograms per liter ("ug/L") in April 2019, to 65 ug/L in April 2021 to 4.1 ug/L in October 2021. Supp. Vogl Declaration, ¶ 10i, Exs. T-V. These decreases are the result of the continued removal of benzene and other VOCs and SVOCs during air sparging and vapor extraction activities in the vicinity of monitoring well MW-10R combined with ongoing biodegradation and natural attenuation. *Id*.

Groundwater data from the PMC Site and the off-site monitoring wells confirm that the benzene plume is rapidly degrading. *Id.*

As a result of the limited and continually decreasing mass and the physical and chemical characteristics of the hazardous substances at the PMC Site, primarily benzene and naphthalene, the data shows hazardous substances have migrated less than 700 feet from the PMC Site. At their closest point to OU-2, hazardous substances used by PMC at the PMC Site attenuate to less than 0.5 ug/L[3] more than 1,300 feet from the OU-2 Plume. This distance conservatively assumes groundwater flows "as the crow flies" directly west towards the OU-2 Plume, which it undisputedly does not. Dckt 902-53, Vogl Decl. ¶ p. 16:1-17:2; 19:11-18; 21:26-22:10. Hagström Reply Decl., ¶ 4, Ex. H, Mutch Rebuttal Report Figures, at Figs. 2-5-2-9. While Mr. Mutch argues that his interpretation of the potentiometric contours indicating groundwater flow direction demonstrate that groundwater from the PMC Site **may** ultimately intersect the OU-2 Plume, the groundwater flow arrows drawn by Mr. Mutch, even if accurate, require that hazardous substances from the PMC Site travel 2,000 to 9,000[4] feet horizontally to reach the outer edge of the OU-2 Plume, which they have not and will not do. Hagström Reply Decl., ¶ 4, Ex. H, Mutch Rebuttal Report Figures, at Figs. 2-5-2-9; Supp. Vogl Decl. ¶ 12i.

### D. ONGOING REMEDIATION WILL CONTINUE TO REMOVE CONTAMINATION FROM SOURCE AREAS AT THE PMC SITE

In addition to the ongoing remediation, PMC installed engineering controls and capped the PMC Site in 1993 and has consistently cooperated with DTSC and its predecessors in investigating and remediating the PMC Site. Dckt. 959, p. 18:22-22:19, Uncontroverted Facts 11-13. Groundwater monitoring data collected following a pilot test performed in March 2019 near the Monitoring Well 10R the

---

[3] The Maximum Contaminant Level in California is 1 ug/l. The detection limit is 0.5 ug/l. https://www.waterboards.ca.gov/gama/docs/coc_benzene.pdf.

[4] The approximate distances for the respective figures in feet are as follows: 2-5: 4,000-7,000; 2-6: 8,000-9,000; 2-7: 2,300-3,000; 2-8: 3,500-5,200; 2-9: 2,000-2,500.

3390208

well with the highest concentrations of benzene at the site showed a significant and continuous decline in benzene concentrations.  As a result of the mass extracted and ongoing natural attenuation, which has accelerated as a result of the introduction of oxygen associated with the pilot test benzene concentrations have dropped from 370 ug/l in March 2019, to 65 ug/l in April 2021, and to 4.1 ug/l in October 2021.  Supp. Vogl Declaration, ¶ 10i, Ex. T-V.  Since the April 15, 2021 reply briefing was filed, DTSC has approved PMC's Remedial Design and Implementation Plan, which in addition to the previously implemented capping and engineering controls, will further reduce the mass of contaminants at the PMC Site reducing the potential for off-site migration in the future.  *Id.* ¶ 12b.

### III. CONCLUSION

Even if *arguendo* Plaintiffs were able to prove, and it is their burden, the general direction of groundwater flow from the vicinity of the PMC Site is towards the southern boundary of the OU-2 Plume, below the Leading Edge Area, this groundwater must contain hazardous substances from the PMC Site and migrate 2,000 to 9,000 feet to reach the southern boundary of the OU-2 Plume - otherwise it is just groundwater and Plaintiffs CERCLA claims fail. Plaintiffs have not met their burden of proof.  PMC has met its burden under *Castaic Lake* and Fed. R. Civ. P. 56(a), and respectfully requests that its Motion should be granted.

Date:   May 2, 2022                        EDLIN GALLAGHER HUIE + BLUM


                                                     */s/ Daniel E. Trowbridge*
                                    By:_____
                                        DANIEL E. TROWBRIDGE
                                        Attorneys for Defendants
                                        PMC SPECIALTIES GROUP, INC. AND
                                        FERRO CORPORATION

3390208