LATHROP GPM LLP
Nancy Sher Cohen, Bar No. 81706
  nancy.cohen@lathropgpm.com
Ronald A. Valenzuela, Bar No. 210025
  ronald.valenzuela@lathropgpm.com
2049 Century Park East, Suite 3500S
Los Angeles, California 90067-1623
Telephone:   310.789.4600
Facsimile:   310.789.4601

LATHROP GPM LLP
William F. Ford (*admitted pro hac vice*)
  bill.ford@lathropgpm.com
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108
Telephone:   816.292.2000
Facsimile:   816.292.2001

Attorneys for Plaintiffs
BASF Corporation et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASF CORPORATION, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>APC INVESTMENT CO., et al.,<br><br>    Defendants. | Case No. 2:14-cv-06456 GW (Ex.)<br><br>**PLS.' SUPPLEMENTAL BRIEF IN SUPPORT OF (1) MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST KEKROPIA, INC. AND (2) OPPOSITION TO PATSOURAS PROPERTY DEFS.' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   May 26, 2022<br>Time:   8:30 a.m.<br>Place:   350 W. 1st Street<br>         Courtroom 9D, 9th Floor<br>         Los Angeles, CA 90012<br>Judge:  Hon. George H. Wu |

## I. INTRODUCTION

Beginning no later than the early 1940s—**30 years before Omega Chemical Corporation existed**—and continuing for the next several decades, two companies – Globe Oil, a predecessor of defendant Halliburton Affiliates, LLC, and defendant Palley Supply Co. ("Palley") – conducted industrial operations at the Santa Fe Springs property on Burke Street now owned by defendant Kekropia, Inc. (the "Patsouras Property"). Those operations generated significant amounts of waste contaminated with hazardous substances like hexavalent chromium, solvents, waste oil, and industrial metal cleaning compounds. That waste was discharged to ground for decades, **including directly to ground,** and via leaky sewer pipes and from clogged, overflowing, or leaky or decrepit concrete and brick clarifiers. Property inspections noted ponding of unidentified liquids on the ground and stained soils.

Globe Oil and Palley received numerous citations, notices of violation, orders to cease and desist, and in the case of Palley, a **criminal complaint**, for their waste handling and disposal practices. And not surprisingly, hazardous substances were detected in the soils and groundwater at the Patsouras Property, including in **high concentrations near an area where clarifiers and a chemical storage shed were once located**. Soon after Kekropia purchased the property in 1995, the Regional Water Quality Control Board-Los Angeles (the "Board") directed Kekropia to take action to protect the underlying groundwater from further or threatened impacts.

Kekropia does not dispute any of this. Instead, it claims it is not liable because it has "cleaned" the soils at the Patsouras Property. But efforts to remove impacted soils did not begin until the late 1990s. By then, there had been **decades of releases of hazardous substances to soils**, and ample time for those contaminants to leach into the underlying groundwater. Kekropia has not addressed that contaminated groundwater. Instead, Plaintiffs will have to clean it, removing the very same types of contaminants that were used at the Patsouras Property, discharged to ground, and released to soils, like PCE and hexavalent chromium.

Moreover, by its own admission Kekropia has removed only *some* of the contaminated soils. It does not deny that contaminants, like PCE and TCE, in deeper soils throughout the property are still there and in concentrations that **Kekropia's own expert admits** one must assume will eventually leach to groundwater. Hexavalent chromium is almost certainly in those deeper soils as well, though—inexplicably—Kekropia never tested the soils for it despite knowing that wastewater containing hexavalent chromium had been discharged to ground and hexavalent chromium was detected in the groundwater beneath the property.

Kekropia is liable under CERCLA. It must contribute to the costs Plaintiffs have incurred, and will incur, to address the contamination in the groundwater within the boundary delineated by EPA as OU2 ("OU2 Groundwater").

## II. ARGUMENT

**CERCLA imposes strict liability**. *Burlington N. & Santa Fe Ry. Co. v. United States,* 556 U.S. 599, 608 (2009). "The remedy that Congress felt it needed in CERCLA is sweeping: *everyone* who is potentially responsible for hazardous waste contamination may be forced to contribute to the costs of cleanup." *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 21 (1989) (italics in original).

**Kekropia is liable under CERCLA's strict-liability provisions.** Kekropia is liable for contribution, because CERCLA holds current property owners liable when: (1) the property is a "facility" (2) the defendant falls within one of four categories of "covered persons" subject to liability, and (3) a release or threatened release has occurred at or from the facility. 42 U.S.C. § 9607(a); *United States v. Sterling Centrecorp, Inc.*, 977 F.3d 750, 756 (9th Cir. 2020).[1]

    1.    The Patsouras Property is a CERCLA "facility," because hazardous

---

[1] Section 107(a) also requires a plaintiff to prove that it has incurred "response costs" that are "consistent with the national contingency plan." *Sterling Centrecorp*, 977 F.3d at 756. The parties agreed to litigate the amount of Plaintiffs' response costs in the second phase of this case, the allocation phase.

<u>substances have come to be located there</u>.[2] Kekropia concedes this element in admitting that hazardous substances, including chromium, PCE and TCE, have been identified at the property, including in the subsurface soils.[3] Moreover, this Court has already determined that the "facility" element of CERCLA liability under Section 107(a) is uncontested and not at issue as to any Defendant. *See* Tr. of Hr'g on Common Legal Issues at 43:13-44:14, Mar. 14, 2022, ECF No. 1033.

  2. <u>Kekropia is a "covered person" under CERCLA because it is the current owner of a "facility" – the Patsouras Property</u>. A current owner of contaminated property is classified as a "covered person" that is strictly liable under CERCLA. *Sterling Centrecorp, Inc.*, 977 F.3d at 756. Kekropia concedes this element in admitting that it has owned the Patsouras Property since 1995.[4]

  3. <u>There have been both releases and threatened releases of hazardous substances from the Patsouras Property</u>.[5] Establishing this element is straightforward and undemanding. One need only establish that hazardous substances have been spilled, leaked, or discharged into the environment at or from the defendant's facility. *See* 42 U.S.C. §§ 9607(a), 9601(22); *Carson Harbor Vill., Ltd v. Unocal Corp.*, 270 F.3d 863, 870-71 (9th Cir. 2001); *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1059, (C.D. Cal. 2003). As this Court has stated, "[t]o establish a release or threatened release, Plaintiffs need to show (1) that a hazardous substance was spilled, leaked, pumped, poured, emitted, emptied, discharged, injected, or disposed into the environment or that it escaped or

---

[2] CERCLA defines "facility" as "any … area where a hazardous substance has … come to be located." 42 U.S.C. § 9601(9).

[3] Pls.' Reply to Opposing Parties' Response to Statement of Uncontroverted Facts ("PSUF") ¶ 34, ECF No. 974; Defs.' Jt. Opp'n to Pls.' Mot. For Partial Summ. J. ("Opp'n") at 104 (conceding hexavalent chromium disposal), ECF No. 933.

[4] PSUF ¶ 33; *see also* Opp'n at 96-121.

[5] To be clear, under CERCLA, an actual release is not necessary to hold a party liable. A *threat* of release is sufficient to establish liability. *See* 42 U.S.C. § 9607(a)(4); *Sterling Centrecorp*, 977 F.3d at 756; *Burlington N.R. Co. v Woods Indus., Inc.*, 815 F. Supp. 1384, 1392 (E.D. Wash. 1993).

1  leached into the environment … or (2) defendant's ownership of corroding or
2  deteriorating tanks, a lack of expertise in handling hazardous wastes, or even the
3  failure to license the facility."[6] Tentative Ruling on Def. Union Pacific's Mot. for
4  Summ. J., and Pls.' Mot for Summ. J. Against Phibro-Tech and Chrysler Properties,
5  at 15. Evidence of the mere presence of hazardous substances in soil at a property,
6  regardless of how the chemicals came to be located there, establishes a "release"
7  from that property. *Lincoln Properties, Ltd. v. Higgins,* 1993 WL 217429, at *19
8  (E.D. Cal. Jan. 21, 1993); *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066,
9  1075 (9th Cir. 2006); *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp.
10 2d 1053, 1076-77 (C.D. Cal. 2003) (passive migration of contaminants from one
11 property to defendant's property constitutes a "release" from defendant's property).

12       Here, Kekropia, and the other Patsouras Property defendants, **concede** this
13 element. They **admit** that there were actual releases of CERCLA hazardous
14 substances to the soils at the Patsouras Property, including PCE and TCE.[7]
15 Kekropia contends that only a "miniscule" amount of contaminants have been
16 detected in the property soils. But this contention is not only false, it is irrelevant.
17 **Any amount** of hazardous substances released into the environment is enough to
18 trigger liability. *Cose v. Getty Oil Co.*, 4 F.3d 700, 709 (9th Cir. 1993).

19       Although the Court has tentatively decided to defer the issue of whether there
20 has been a release or threatened release from Defendants' properties *to OU2*
21 *Groundwater* until the allocation phase, this question may be decided now, in
22 Plaintiffs' favor, based upon the uncontroverted evidence already before the Court.[8]

---

[6] CERCLA defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) …." 42 U.S.C. § 9601(22). The term "environment" is defined under CERCLA to include "ground water … land surface or subsurface strata." 42 U.S.C. § 9601(8).

[7] PSUF ¶ 34; Defs.' Joint Statement of Uncontroverted Facts ¶¶ 221-227, 244-45, 247, 260, ECF No. 902-1.

[8] PSUF ¶¶ 34-36; Decl. of R. Valenzuela in Supp. of Opp'n to Defs.' Motion for Summ. J. ("Valenzuela Opp'n Decl."), Exs. 1-3, ECF Nos. 949-28 to 949-30, Ex. 4 at 11-13, 15, 27-28, 30, 32, 35, ECF No. 949-31,

Specifically: (i) there have been discharges to ground of hazardous substances, like hexavalent chromium, at various locations at the Patsouras Property; (ii) hazardous substances, including chromium, PCE, and TCE, have been detected in the soil at the Patsouras Property; (iii) the subsurface soils at the Patsouras Property are permeable and will not prevent contaminants in the soil from leaching into OU2 Groundwater; (iv) the same hazardous substances in the soils at the Patsouras Property, including PCE and TCE, are in the OU2 Groundwater beneath it; and (v) soil and groundwater data indicate that hazardous substances found in the OU2 Groundwater beneath the property leached there from the soil. For example, PCE was detected in soils near abandoned clarifiers and a solvent storage shed down to the contemporaneous level of OU2 Groundwater beneath the property, and concentrations of PCE in OU2 Groundwater increase as the groundwater flows underneath the property. These uncontroverted facts establish that there has been a release or threatened release of hazardous substances from the soils at the Patsouras Property to OU2 Groundwater.[9]

**Kekropia cannot evade liability under the claim that the Patsouras Property is "cleaned up."** Defendants' counsel has inaccurately represented to the

---

Ex. 8 at 66, ECF No. 949-35, Ex. 9 at 77-79, 81; Pls.' Request for Judicial Notice ("RFJN"), Ex. 85 at 1191-92, ECF No. 903-89, Ex. 93 at 1207-08, ECF No. 903-97, Ex. 94, ECF No. 903-98, Ex. 87 at 1194, ECF No. 903-91, Ex. 88, ECF No. 903-92, Ex. 90, ECF No. 903-94; Decl. of S. Lintecum in Supp. of Mot. for Partial Summ. J. ("Lintecum Decl."), Ex. 74 at 4334-36, ECF No. 903-180, Ex. 75, ECF No. 903-181, Ex. 76 at 4339, 4342, ECF No. 903-182, Ex. 77 at 4345, ECF No. 903-181; Ex. 78 at 4350, 4353, ECF No. 903-184, Ex. 79 at 4365, 4369, ECF No. 903-185, Ex. 80 at 4373-78, ECF No. 903-903-186, Ex. 82 at 4453, ECF No. 903-188; Pls.' Request for Judicial Notice in Supp. of Opp'n to Defs.' Motion for Summ. J. ("Opp'n RFJN"), Ex. 15-A at 117-25, ECF No. 949-16; Decl. of V. Otten in Supp. of Opp'n ("Otten Decl."), Ex. D, Table 1 (pp. 4, 6), Table 3, ECF. No. 931-4, Ex. H at 8, ECF No. 931-8, Ex. G at 1, ECF No. 931-7; Expert Report of Robert D. Mutch, Jr., P.Hg., P.E. in Support of Plaintiffs' Mot. For Summ. J. ("Mutch Report") at pp. 2-4 to 2-9, 3-5, 5-9 to 5-11, 5-13, 7-7, 7-8, 7-10 to 7-13, 7-16, 7-17, 7-25, Tables 3-1 and 7-4, ECF No. 903-204; *see also* Mutch Report, Figs. 7-1, 7-2, 7-9, 7-10, 7-12 to 7-21, ECF No. 903-210.

[9] The same facts establishing a release or threatened release of hazardous substances into OU2 Groundwater also satisfy Plaintiffs' burden under *Castaic Lake*. Plaintiffs have shown: (1) the presence of a contaminant (e.g., PCE) in OU2 Groundwater, (2) the same substance is at the Patsouras Property, and (3) a plausible migration pathway (i.e., permeable soils) by which the substance in the soils at the Patsouras Property could travel to OU2 Groundwater beneath the property. *Id; Castaic Lake,* 272 F. Supp. 2d at 1066.

Court that the source properties at issue "have been cleaned up." *See* Tr. of Hr'g on Common Legal Issues at 37:18-38:1, Mar. 14, 2022 (Dkt. No. 1033). Kekropia also claims that the Water Board has reached the same conclusion. However, contaminants detected in deeper soils (i.e., at or below 20 feet bgs) at the Patsouras Property, like PCE, have not been cleaned up and remain in the soils.[10]

The Board acknowledges that "hazardous materials ... [are] in the soil, soil gas, and groundwater at the property," and it has imposed strict requirements on Kekropia to "<u>limit</u>" contaminants in the soil from leaching into OU2 Groundwater.[11] For example: the property is restricted to industrial use; Kekropia cannot disturb the soils at the property without the Board's consent; all pavement and building cover at the property must remain intact; and Kekropia must immediately contact the Board if there is "any disturbance" to that infrastructure. These restrictions "run with the property" in perpetuity and violating them will subject Kekropia to liability under the State's Water Code. The Board would not have imposed these stringent restrictions if it concluded the property was "cleaned up" and the remaining soil contaminants posed no threat to OU2 Groundwater.

Moreover, even if all contaminated soil at the Patsouras Property had been removed, Kekropia would still be liable. Localized source control may reduce further contamination of the OU2 Groundwater in the future, but it does nothing to clean up decades of **past** releases from the Patsouras Property that helped create the OU2 Groundwater plume. In fact, the Board has expressly advised Kekropia that any liability for past releases at the property has not been resolved.[12] EPA has also made this same point to this Court. *See* Second Supp. Praskin Decl. in Supp. of

---

[10] *See* Otten Decl., Ex. D, Table 1 (pp. 4 and 5), Table 2 (p. 1) (same), Fig. 3; Otten Decl., Ex. G at 1, 3, Fig. 2, Ex. D at 6, 7, 13, Fig. 4; Lintecum Decl., Ex. 81 at 4379-80, Fig. 2; *see also* Opp'n at 102: 16-17 ("most … impacted soil in the **upper ten feet** … [was] removed") (boldface type added).

[11] Otten Decl., Ex. B at 2, ECF No. 931-2, Ex. I at 1, 4-6, ECF No. 931-9.

[12] Otten Decl., Ex. B at 3.

Mot. to Enter Consent Decree ¶ 7, *United States v. Abex Aerospace*, No. 2:16-cv-02696-GW-E, ECF No. 38-1 (cleanup does not affect amount of contamination property previously contributed to OU2 Groundwater).

### III. THE PATSOURAS PROPERTY DEFENDANTS' AFFIRMATIVE MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

Defendants Kekropia, Halliburton Affiliates, LLC, and Palley (collectively, "Patsouras Property Defendants") seek summary judgment against Plaintiffs on the **single** ground that there is no evidence of a release or threatened release of hazardous substances from the Patsouras Property *into OU2 Groundwater*. The motion must be denied for two reasons. First, Defendants are wrong. The uncontroverted evidence supporting Plaintiffs' motion against Kekropia shows that releases or threatened releases have occurred. Second, the Court has tentatively decided to defer ruling on the question of whether there has been a release or threatened release of hazardous substances from the Patsouras Property into OU2 Groundwater until the allocation phase.

### IV. CONCLUSION

Hazardous substances present at the Patsouras Property have been discharged to the ground at the property, they are in the soil there, and they had leached into the underlying OU2 Groundwater long before any "cleanup" occurred at this property. Accordingly, Plaintiffs' Motion for Partial Summary Judgment against Defendant Kekropia, Inc. as to CERCLA liability must be granted, and the motion for summary judgment filed by the Patsouras Property Defendants must be denied.

DATED: May 2, 2022                          LATHROP GPM LLP

                                            By:    /s/ Nancy Sher Cohen
                                            Nancy Sher Cohen
                                            Attorneys for Plaintiffs BASF Corporation et al.