NANCY SHER COHEN, SBN 81706
nancy.cohen@lathropgpm.com
RONALD A. VALENZUELA, SBN 210025
ronald.valenzuela@lathropgpm.com
LATHROP GPM LLP
2029 Century Park East, Suite 1280
Los Angeles, California 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601

Attorneys for Plaintiffs
[See List of Plaintiffs, attached as Exhibit A]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASF CORPORATION; BAXTER HEALTHCARE CORPORATION; C.T.L. PRINTING INDUSTRIES, INC. (FORMERLY KNOWN AS CAL-TAPE & LABEL CO.); CINTAS CORPORATION; COLUMBIA SHOWCASE & CABINET COMPANY, INC.; CROSBY & OVERTON, INC.; DISNEY ENTERPRISES, INC.; FHL GROUP; FORENCO, INC.; GENERAL DYNAMICS CORPORATION; HEXCEL CORPORATION; HONEYWELL INTERNATIONAL INC.; INTERNATIONAL PAPER COMPANY; LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY; MACOM CONNECTIVITY SOLUTIONS, LLC (FORMERLY KNOWN AS APPLIED MICRO CIRCUITS CORP.); MASCO BUILDING PRODUCTS CORP. (INADVERTENTLY NAMED AS MASCO CORPORATION OF INDIANA); MATTEL, INC.; MERCK SHARP & DOHME CORPORATION; PILKINGTON GROUP LIMITED; QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; RAYTHEON COMPANY; SAFETY-KLEEN SYSTEMS, INC.; SPARTON TECHNOLOGY, INC.; THE BOEING COMPANY; THE DOW CHEMICAL COMPANY; TRIMAS CORPORATION; UNIVAR SOLUTIONS USA LLC (FORMERLY KNOWN AS UNIVAR USA INC.) <br><br> Plaintiffs, <br><br> v. | Case No.: 2:14-cv-06456 GW (Ex.) <br><br> **SIXTH AMENDED COMPLAINT** <br><br> 1. Contribution; Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*; <br> 2. Abatement of Imminent and Substantial Endangerment, Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq.; and <br> 3. Declaratory Judgment For Contribution |

FOSS PLATING COMPANY, INC.; FRED R. RIPPY, INC.; JOHN LARKIN, IN HIS CAPACITY AS SUCCESSOR TRUSTEE OF THE FRED R. RIPPY QTIP TRUST; FRANCINE RIPPY, AN INDIVIDUAL; and Does 1 – 250, INCLUSIVE

Defendants.

Plaintiffs BASF Corporation; Baxter Healthcare Corporation; C.T.L. Printing Industries, Inc. (formerly known as Cal-Tape & Label Co.); Cintas Corporation; Columbia Showcase & Cabinet Company, Inc.; Crosby & Overton, Inc.; Disney Enterprises, Inc.; FHL Group; Forenco, Inc.; General Dynamics Corporation; Hexcel Corporation; Honeywell International Inc.; International Paper Company; Los Angeles County Metropolitan Transportation Authority; MACOM Connectivity Solutions, LLC (formerly known as Applied Micro Circuits Corp.); Masco Building products Corporation (inadvertently named as Masco Corporation of Indiana); Mattel, Inc.; Merck Sharp & Dohme Corporation; Pilkington Group Limited; Quest Diagnostics Clinical Laboratories, Inc.; Raytheon Company; Safety-Kleen Systems, Inc.; Sparton Technology, Inc.; The Boeing Company; The Dow Chemical Company; TriMas Corporation; Univar Solutions USA LLC (formerly known as Univar USA Inc.); (collectively, "Plaintiffs"), by their attorneys, Lathrop GPM LLP, against Defendants Foss Plating Company, Inc.; Fred R. Rippy, Inc.; John Larkin, in his capacity as successor trustee of the Fred R. Rippy QTIP Trust; Francine Rippy, an individual; and DOES 1 through 250 (collectively, "Defendants"), allege upon knowledge as to themselves and upon information and belief as to others the following:

## NATURE OF THE ACTION

1.     This is a civil action arising from environmental contamination caused in part by Defendants and by which Plaintiffs seek contribution and a declaratory judgment under sections 113(f) and 113(g)(2) of the federal Comprehensive Environmental Response, Compensation and Liability Act, as amended 42 U.S.C. §§ 9601-9675 ("CERCLA"); and abatement of an imminent and substantial endangerment to health or the environment under section 7002 of the federal Resource Conservation and Recovery Act, as amended 42 U.S.C. §§ 6901-6992k ("RCRA").

2.    Groundwater underlying portions of the Whittier and Santa Fe Springs communities is purportedly contaminated with high concentrations of numerous substances that are hazardous to the environment and human health, including hexavalent chromium and chlorinated and non-chlorinated solvents.  According to the United States Environmental Protection Agency ("EPA"), action to address the contamination is necessary to protect the public health and the environment.  EPA has designated this regional groundwater contamination, which covers an area approximately 4½ miles long, as Operable Unit No. 2 of the Omega Superfund Site ("OU-2").

3.    For decades, Defendants have owned properties or operated businesses that sit atop or very near OU-2 at which substantial quantities of hazardous substances and hazardous waste, including chlorinated and non-chlorinated solvents and hexavalent chromium, have been spilled or discharged onto the ground and migrated downward into the soil and groundwater.  The soil and groundwater underlying these source properties have been contaminated by operations conducted there, resulting in multiple plumes of contamination that have blended together into regional groundwater contamination.

4.    EPA has evaluated many Defendants in connection with OU-2 and has concluded that certain of them are potentially responsible parties ("PRPs") warranting receipt of a Special Notice Letter ("SNL") from EPA.  In the SNL sent to these Defendants (the "SNL Defendants"), the EPA identifies each recipient as potentially liable under CERCLA Section 107 for the OU-2 groundwater contamination as well as past and future costs to clean up that contamination, provides information concerning its basis for this conclusion, and solicits offers from the SNL Defendants to (a) perform the OU-2 remedial design and remedial action selected by EPA and (b) pay the unreimbursed response costs EPA has incurred in connection with OU-2.  According to EPA, the primary purposes of each SNL are to invoke the statutory moratorium on certain EPA actions and to initiate

formal settlement negotiations with the recipient for a response action and the recovery of EPA's unreimbursed costs.

5.    EPA also utilizes General Notice Letters ("GNLs"), which inform the recipient that EPA considers it potentially liable for cleanup costs at a Superfund site and invite the recipient to discuss its involvement at the site.  Each GNL also serves to begin or continue the process of information exchange, and to initiate the process of "informal" negotiations with EPA.  Generally speaking, EPA issues a GNL after concluding that there is sufficient information to name the recipient as a PRP, and as a means to open a dialogue with EPA and to offer the recipient an opportunity to explain why it should not receive an SNL.  EPA sent GNLs to several PRP Defendants (the "GNL Defendants"), since dismissed from this action, that identify the GNL Defendants as potentially liable under CERCLA Section 107 for the OU-2 groundwater contamination, and for past and future costs to clean up that contamination.  The GNLs all requested responses as to the GNL Defendants' willingness to negotiate regarding their potential liability for OU-2 response costs.

6.    Upon information and belief, EPA recognizes that there are a large number of industrial properties are located atop or near OU-2, continues to evaluate whether there are additional source properties and PRPs as time and resources allow, and encourages those persons and entities it has already named as PRPs to perform the work necessary to identify other PRPs.

7.    Plaintiffs, or their predecessors, affiliated entities, assignees or obligees, are companies that allegedly sent chemicals to Omega Chemical Corporation ("Omega Chemical") in Whittier for appropriate processing and recycling.  EPA contends that Omega Chemical failed to properly process, recycle or dispose of those chemicals, resulting in groundwater contamination, and that Plaintiffs are responsible to remediate the groundwater contamination underneath the Omega Chemical property.

8.      EPA, however, has not limited Plaintiffs' responsibility for remediation to the groundwater underneath the Omega Chemical property.  Because EPA contends that the Omega Chemical property is one of multiple source properties of the OU-2 groundwater contamination, and that CERCLA imposes joint and several liability for releases of hazardous substances in actions brought by the government, EPA asserts that Plaintiffs are responsible for remediating OU-2.

9.      Plaintiffs have each voluntarily incurred significant costs to investigate the sources to, and the remediation of, OU-2, collectively spending millions of dollars to address it, and will incur millions of dollars more in future response costs. EPA has determined that the contaminated groundwater should be contained, extracted, and treated so that it can be used in a beneficial manner.  This remedy will require tens of millions of dollars in capital and operating expenditures for years to come.  Upon information and belief, Defendants are responsible for releases of hazardous substances to the OU-2 groundwater and therefore should bear a share of the costs to clean up the resulting contamination.

10.      EPA's proposal to contain regional groundwater to address the contaminants that have already migrated away from Defendants' properties, however, would not address the imminent and substantial endangerment to human health and the environment that is presented by the failure of some of the Defendants to implement source control measures to prevent groundwater exceeding health-based levels from continuing to leave the source property as a result of contaminated on-site soils or other on-site contamination including groundwater above health-based levels that is directly below site sources.  The lack of adequate property source control at Defendant properties results in groundwater exceeding health-based levels continuing to migrate into OU2.  A subset of the Defendants associated with those source properties have thus far failed to adequately address the problem, despite having been on notice of the contamination for a very long time. In addition, without appropriate monitoring to determine the extent of offsite

- 4 -

groundwater contamination resulting from each Defendants' handling of solid or hazardous waste at their properties, including contaminated soils, and without measures to control the contamination at its source, the contamination will continue to pose a threat to human health and the environment, and swell the costs and duration of efforts to contain and eventually clean-up the OU2 groundwater.

11. By this action, Plaintiffs seek to recover from Defendants a share of the necessary costs of response that Plaintiffs have incurred and will continue to incur in a manner consistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300 *et seq.*, caused by the release or threatened release of hazardous substances that have contaminated the OU-2 groundwater. Plaintiffs also seek a declaratory judgment that Defendants are liable for future response costs or damages that will be binding on any subsequent actions to recover further response costs or damages. Through this suit, Plaintiffs also seek an injunction requiring certain Defendants to stop the release of the hazardous substances coming from the source properties they own or operate and to remediate the soil and groundwater contamination emanating from their source properties to control the further spread and migration of the hazardous substances in OU-2.

**PARTIES**

**A.    Plaintiffs**

12. Plaintiff BASF Corporation is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Florham Park, New Jersey.

13. Plaintiff Baxter Healthcare Corporation is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Deerfield, Illinois.

14. Plaintiff C.T.L. Printing Industries, Inc. (formerly known as Cal-Tape & Label Co.) is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Anaheim, California.

15.    Plaintiff Cintas Corporation is a corporation duly organized and existing under the laws of the State of Washington with its principal place of business in Mason, Ohio.

16.    Plaintiff Columbia Showcase & Cabinet Company, Inc. is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Sun Valley, California.

17.    Plaintiff Crosby & Overton, Inc. is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Long Beach, California.

18.    Plaintiff Disney Enterprises, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Burbank, California.

19.    Plaintiff FHL Group is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Palos Verdes Estates, California.

20.    Plaintiff Forenco, Inc. is a corporation duly organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

21.    Plaintiff General Dynamics Corporation is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Reston, Virginia.

22.    Plaintiff Hexcel Corporation is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Stamford, Connecticut.

23.    Plaintiff Honeywell International Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey.

24.     Plaintiff International Paper Company is a corporation duly organized and existing under the laws of the State of New York with its principal place of business in Memphis, Tennessee.

25.     Plaintiff Los Angeles County Metropolitan Transportation Authority is a public corporation and county commission, duly authorized by California law to plan, construct and operate public mass transit in the County of Los Angeles.

26.     Plaintiff MACOM Connectivity Solutions, LLC (formerly known as Applied Micro Circuits Corp.) is a limited liability company duly organized and existing under the laws of the state of Delaware with its principal place of business in Lowell, Massachusetts.

27.     Plaintiff Mattel, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in El Segundo, California.

28.     Plaintiff Masco Building products Corporation (inadvertently named as Masco Corporation of Indiana) is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Taylor, Michigan.

29.     Plaintiff Merck Sharp & Dohme Corporation is a corporation duly organized and existing under the laws of the State of New Jersey with its principal place of business in Whitehouse Station, New Jersey.

30.     Plaintiff Pilkington Group Limited, formerly known as Pilkinton PLC, is a private limited company duly organized and existing under the laws of England with its principal place of business in Lathom, England.

31.     Plaintiff Quest Diagnostics Clinical Laboratories, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Seacaucus, New Jersey.

32.     Plaintiff Raytheon Company is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business

- 7 -

in Waltham, Massachusetts.

33.     Plaintiff Safety-Kleen Systems, Inc. is a corporation duly organized and existing under the laws of the State of Wisconsin with its principal place of business in Norwell, Massachusetts.

34.     Plaintiff Sparton Technology, Inc. is a corporation duly organized and existing under the laws of the New Mexico with its principal place of business in Schaumberg, Illinois.

35.     Plaintiff The Boeing Company is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

36.     Plaintiff The Dow Chemical Company is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Midland, Michigan.

37.     Plaintiff TriMas Corporation is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Bloomfield Hills, Michigan.

38.     Plaintiff Univar Solutions USA LLC (formerly known as Univar USA Inc.) is a limited liability company duly organized and existing under the laws of the State of Washington with its principal place of business in Downers Grove, Illinois.

**B.     Defendants**

39.     Each Defendant falls into one of four categories: (i) a PRP that received an SNL from EPA in connection with its ownership of, or operational activities at, a contamination source property ("Source Property"); (ii) a PRP that received a GNL from EPA in connection with its ownership of, or operational activities at, a Source Property; or (iii) a PRP that has not yet received a notice letter from EPA.

### 1. Special Notice Letter Defendant PRPs & Other PRPs Associated With SNL Source Properties

#### a. *Foss Plating SNL Source Property*

40.     Defendant Foss Plating Company, Inc. ("Foss Plating") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Santa Fe Springs, California.  As alleged more fully herein, Foss Plating is a current or previous "owner" or "operator," as those terms are defined under CERCLA, of the Foss Plating Source Property, as that term is defined below in Paragraph 67.  As alleged more fully herein, Foss Plating is a "person" and is, or was, a generator, transporter, or owner or operator of a "treatment," "storage," or "disposal" facility who has contributed or is contributing to the past or present handling, "storage," "treatment," transportation, or "disposal" of a "solid waste" or "hazardous waste," as those terms are defined under RCRA.

### 2. Non-Notice Letter Defendant PRPs

#### a. *Fred R. Rippy, Inc.*

41.     Defendant Fred R. Rippy, Inc. ("Rippy Inc.") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Whittier, California.  As alleged more fully herein, Rippy Inc. is a current or previous "owner" or "operator," as those terms are defined under CERCLA, of the Omega Chemical Source Property and the 12471 Washington Property, as those terms are defined below in Paragraphs 85 and 97.

#### b. *John Larkin, in his capacity as successor trustee of the Fred R. Rippy QTIP Trust*

42.     Defendant John Larkin, in his capacity as successor trustee of the Fred R. Rippy QTIP Trust ("Larkin Trustee"), is a current or previous "owner" or "operator," as those terms are defined under CERCLA, of the Omega Chemical Source Property, as that term is defined below in Paragraph 85.

- 9 -

c.    *Francine Rippy*

43.    Francine Rippy is an individual who resides in Hacienda Heights, California. As alleged more fully herein, Francine Rippy is a current or previous "owner" or "operator," as those terms are defined under CERCLA, of the Omega Chemical Source Property, or a parcel thereof, as that term is defined below in Paragraph 85.

**C.    Doe Defendants**

44.    Plaintiffs are ignorant of the true names and capacities of the defendants sued fictitiously as DOES 1 through 100, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained, but are presently informed and believe that each of the fictitiously named defendants is an owner, member, or affiliate of a named Defendant with such unity of interest and ownership that the separate personalities between the Doe Defendant and the named Defendant no longer exist and that failure to disregard their separate identities would result in fraud or injustice.

45.    Plaintiffs are ignorant of the true names and capacities of the defendants sued fictitiously as DOES 101 through 250, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained, but are presently informed and believe that each of the fictitiously named defendants is a person or entity that arranged for the disposal of hazardous substances at a Source Property, which is responsible in some manner for some or all of the acts alleged herein.

**JURISDICTION AND VENUE**

46.    This is a civil action arising under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et

- 10 -

seq.  This Court has original jurisdiction pursuant to 42 U.S.C. § 9613(b), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1331.

47.    In addition, the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, and Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), authorize this Court to grant Plaintiffs declaratory relief.

48.    Venue is proper in this district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), because the releases of hazardous substances and endangerment to health and environment which give rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

### A.    OU-2 Regional Groundwater Contamination

49.    EPA has concluded that the groundwater underlying portions of Whittier and Santa Fe Springs, California is contaminated with hazardous substances.  Although the concentration of chemicals in the groundwater vary throughout the region, the contamination extends approximately 4½ miles as specifically defined by EPA in the OU-2 Consent Decree, as that term is defined below in Paragraph 60.  The chemicals in the groundwater include but are not limited to:

- Antimony;
- Arsenic;
- Benzene;
- Chloroform;
- Chromium;
- Hexavalent chromium;
- Total chromium;
- 1,2-Dibromo-3-chloropropane ("DBCP");
- 1,1-Dichloroethane ("1,1-DCA");
- 1,2-Dichloroethane ("1,2-DCA);

- 1,1-Dichloroethene ("1,1-DCE");
- Cis-1,2-dichloroethene ("c-1,2-DCE");
- Methylene chloride ("DCM");
- Cis-1,3-dichloropropene ("c-1,3-DCP");
- Trans-1,3-dichloropropene ("t-1,3-DCP");
- Bis (2-ethylhexyl) phthalate ("DEHP");
- 1,4-Dioxane;
- 1,2-Dibromoethane ("EDB");
- Carbon tetrachloride;
- Trichlorofluoromethane ("Freon 11");
- 1,1,2-Trichloro-1,2,2-trifluoroethane ("Freon 113");
- Isopropyl alcohol ("IPA");
- Manganese;
- Mercury;
- Methyl tert-butyl ether ("MTBE");
- N-nitrosodimethylamine ("NDMA");
- Naphthalene;
- Nickel;
- 1,1,2,2-Tetrachloroethane;
- Tetrachloroethylene ("PCE");
- Selenium;
- 1,1,1-Trichloroethane ("1,1,1-TCA");
- 1,1,2-Trichloroethane ("1,1,2-TCA");
- Trichloroethylene ("TCE");
- Thallium;
- Toluene; and
- Vinyl chloride.

Each of these substances is a "hazardous substance" as that term is defined under CERCLA and, when discarded, a "solid waste", and potentially a "hazardous waste", as those terms are defined under RCRA. The groundwater is also contaminated with aluminum; perchlorate; 1,2,3-Trichloropropane ("TCP"); chlorides; nitrates; sulfates; and dissolved solids, as well as any other hazardous substances identified by EPA from time to time as contaminants of concern in OU-2. Upon information and belief, EPA contends that exposure to one or more of these substances poses a risk to human health and safety. Because hazardous substances were deposited, stored, disposed of, placed, or otherwise came to be located in groundwater underlying portions of the Whittier and Santa Fe Springs communities, this area consists of numerous "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

50.     Historically, the land that sits atop OU-2 has been used mostly for industrial or commercial purposes. The area includes chemical manufacturing and processing plants, oil refinery and oil production facilities, including wells and pipelines, industrial laundry operations, metal processing and heat treating plants, railroad operations, gas stations, and machine shops, many of which involved storage of significant quantities of chemicals for use in operations.

51.     Certain Defendants currently operate, or formerly operated, such businesses, or currently own, or formerly owned, the property on which those businesses operated. In addition, Foss Plating (the "RCRA Defendant") contributed or is contributing to the past or present handling, "storage," "treatment," transportation, or "disposal" of a "solid waste" or "hazardous waste," as those terms are defined under RCRA.

52.     State and regulatory agencies have identified the properties owned by certain Defendants, or upon which they operated, as well as the Omega Chemical property, as sources of the OU-2 groundwater contamination. They have identified

numerous instances of releases of hazardous substances onto the ground and into the soil at and underneath those properties.

53.    EPA believes that the subsurface directly beneath these source areas consists of portions of permeable soil containing lower concentrations of water, resulting in migration of contaminants generally downward by gravity.  As the contaminants in the soil sink to lower depths and reach the saturated zone, the contaminants travel laterally and downgradient with the flow of the groundwater.

54.    EPA reports that it has searched and reviewed records and state and local agency files, performed field investigations at several of the confirmed and potential source areas of the OU-2 groundwater contamination, and has determined that many source areas of significantly contaminated soil and groundwater have likely contributed contaminants to OU-2.  EPA has issued an SNL to Defendant Foss Plating, identifying that Defendant as potentially liable for past and future costs to remediate the contaminated regional groundwater.  Upon information and belief, the content of EPA's Remedial Investigation / Feasibility Study, and the SNL itself, provide information concerning the basis for EPA's belief that the Defendant has contributed to OU-2 and the SNL invites Foss Plating to discuss with EPA the future cleanup work.

55.    The majority of the groundwater contamination in OU-2 is limited to the upper portion of the groundwater aquifer. The contamination, however, if left unabated, could spread into other portions of the aquifer beyond the current OU-2 boundaries that are sources of drinking water.

56.    EPA has concluded that the contamination described above poses a threat to public health, welfare and the environment and that a response to address the contamination is therefore necessary.  Accordingly, EPA has identified a groundwater pump-and-treat system that is intended to remove contaminant mass from the groundwater, limit the movement of contaminated groundwater, and prevent any further spreading of hazardous substances to uncontaminated areas of

- 14 -

the aquifer and nearby water production wells (the "Selected Remedy"). Implementing the Selected Remedy is estimated to cost in the tens of millions of dollars.

57.     The contamination at and near the source property at which the RCRA Defendant contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous wastes continues to migrate away from that source property presenting an imminent and substantial endangerment to human health and the environment.  Upon information and belief, the RCRA Defendant has long been on notice of the contamination but it has failed to adequately address it.  The Selected Remedy does not address the need to control the continuing release of hazardous substances to groundwater from this source property ("Source Control"), nor is it intended to.  In fact, EPA has indicated that the OU2 interim remedy would need to operate indefinitely without property source control and it has recognized the importance of source controls for successful long-term remediation.

58.     EPA contends that Plaintiffs, which sent chemicals to Omega Chemical for proper treatment, processing and disposal, and others, should bear the costs of the Selected Remedy, as well as past costs EPA has incurred in connection with OU-2.

59.     Beginning no later than 2009, each Plaintiff has incurred significant costs to monitor, assess and evaluate OU-2, to investigate the environmental conditions associated with OU-2, including the sources of contamination, to identify PRPs, and to evaluate the means to address the contamination.  Plaintiffs collectively have incurred millions of dollars to date in such costs.  In addition, Plaintiffs have spent and may in the future spend significant sums to address the contamination contributed to OU-2 by Defendants that may affect soil, around or adjacent to the contaminated groundwater, that is not already impacted, including but not limited to soil at or underneath public property and infrastructure.  These

- 15 -

costs have neither been reimbursed nor indemnified, nor are they duplicative of any costs incurred by any other person, entity, or governmental entity in connection with OU-2.

### B.      The *Abex* Action and OU-2 Consent Decree

60.      Plaintiffs have entered into a consent decree memorializing a settlement between the United States, the California Department of Toxic Substances Control, Plaintiffs, and others with respect to certain liability for the OU-2 regional groundwater contamination ("the OU-2 Consent Decree").  Under the OU-2 Consent Decree, "work parties," a group of settling PRPs that includes Plaintiffs and McKesson Corporation, an entity associated with a source property downgradient of several of the Defendants' Source Properties, will implement certain response actions at OU-2 which will address the regional groundwater contamination.  None of the Defendants in this action are signatories to the OU-2 Consent Decree, and those Defendants continue to refuse to participate in, or pay for, the action necessary to address the regional groundwater contamination to which they contributed and, in most instances, continue to contribute.  The United States has filed a companion complaint against the PRP signatories to the OU-2 Consent Decree, including Plaintiffs, titled *United States of America, et al. v. Abex Aerospace, et al.*, Case No. 2:16-CV-02696 ("*Abex*"), asserting claims under Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607, and Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973 alleging that defendants in that action are liable for contributing to the OU-2 regional groundwater contamination. On March 31, 2017, the court presiding over the *Abex* action, the Hon. George H. Wu, entered an order approving the OU-2 Consent Decree.

61.      Plaintiffs are members of an unincorporated association of public and private entities known as the Omega Chemical PRP Organized Group ("OPOG")

- 16 -

that was formed several years ago to efficiently work together and with government regulators to preform necessary response actions at the Omega Chemical Superfund Site.

62.    After approval of the OU-2 Consent Decree, certain members of OPOG, listed on Exhibit B hereto, agreed with Plaintiffs to withdraw from OPOG and further agreed that those former members would thereafter be recognized, or will be recognized, as "Settling Cash Defendants" under the OU-2 Consent Decree, as that term is defined under the consent decree. Those former members of OPOG are hereafter referred to as the "Assignors."

63.    Upon their withdrawal from OPOG, the Assignors individually entered into express agreements with Plaintiffs to transfer and assign to Plaintiffs the rights, title, and interest, then held by the Assignors, in and to certain claims and causes of action arising under federal and state law and based upon the obligations that Assignors were required to perform under the OU-2 Consent Decree. Those assigned claims include, but are not limited to, causes of action against Defendants for contribution under the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. § 9601 *et seq* and declaratory relief under the Federal Declaratory Judgments Act, 28 U. S.C. § 2201, and CERCLA § 113(g)(2) (the "Assigned Claims").

64.    The Assignors were, at the time of the assignments described above, entitled to contribution from Defendants. The Assignors are companies and other entities that: (i) incurred significant costs to investigate the sources to, and the remediation of, OU-2 in a manner consistent with the NCP; (ii) have entered into the OU-2 Consent Decree and are subject to the work party obligations arising thereunder, including payment of past and future response costs to implement the work required under the OU-2 Consent Decree; (ii) have paid more than their fair share of response costs arising under the OU-2 Consent Decree, all as alleged more fully under Paragraphs 9, 59, and 60 above, which are repeated and re-alleged as to

- 17 -

the Assignors as though fully set forth herein. The Assignors are also entitled to recover against Defendants because releases of hazardous substances at Defendants' Source Properties are contributing and or have contributed to the OU-2 contamination, but Defendants have not paid any response costs arising under the OU-2 Consent Decree.

65.    Accordingly, by this action, Plaintiffs seek to recover against Defendants under the Assigned Claims in addition to the claims asserted herein on Plaintiffs' own behalf.

**C.    Defendants Have Contributed to the OU-2 Regional Groundwater Contamination**

66.    Each of the source properties set forth below is located above or adjacent to OU-2.  Upon information and belief, each is a source of the OU-2 groundwater contamination.

**1.    The SNL Defendants' Source Properties**

*a.    The Foss Plating Source Property – 8140 Secura Way*

67.    Upon information and belief, releases of contamination have occurred from property located at and/or adjacent to 8140 Secura Way, Santa Fe Springs, California and businesses operating thereon (the "Foss Plating Source Property").

i.    Source Property Ownership and Operation

68.    Upon information and belief, in or around 1960, Foss Plating purchased the Foss Plating Source Property and, as of 1968, was operating on the property. Defendant Foss Plating conducted metal plating operations at the Foss Plating Source Property, consisting primarily of chrome and nickel plating of parts and metal polishing.

69.    In 2002, Devr Properties, a company related to Foss Plating, purchased portions of the Foss Plating Source Property, including portions of the property upon which hazardous waste was stored.  Devr Properties leased back the portion of

the property it had purchased to Foss Plating, which continued its operations on the property until 2005.

ii.     Disposal & Releases of Hazardous Substances

70.     Upon information and belief, hazardous substances were disposed of at the Foss Plating Source Property between 1960 and 2005.

71.     Metal plating is the process by which a thin surface coating of one metal is applied to a part by placing the part in a bath of chemical plating solution, with or without the use of an electric current.  Metal plating generates wastewater containing chromium and other metals as well as toxic organic chemicals. Additionally, before a part can be plated, it is typically cleaned of foreign substances, such as oil and grease, using, for example, a vapor degreaser and a solvent, resulting in solvent waste.

72.     Upon information and belief, beginning in 1968 until 1994 or 1995 (when Foss Plating reportedly removed its vapor degreasing system), Foss Plating operated one or more vapor degreasers on the property that used PCE until 1985, and thereafter used 1,1,1-TCA.  Each month, Foss Plating used as much as 120 gallons of solvent in its degreasing operations, and generated as much as 35-40 gallons of solvent sludge.  Additionally, Foss Plating used compounds containing hexavalent chromium to plate items with that metal as part of the chromium plating process.

73.     Foss Plating has repeatedly been found in violation of hazardous substance regulations.  In 1983, Foss Plating was cited for discharging wastewater from the property that contained chromium, and in 1999, Foss Plating was cited for discharging wastewater containing hexavalent chromium (and, potentially, other chromium compounds).  In 1989, Foss Plating was issued a notice of violation for disposing of solvent sludge with wastewater.  In 1998, Foss Plating was informed that its hazardous substance storage and containment procedures, including its

- 19 -

containment of chemicals used in plating, were out of compliance with regulatory requirements.

74.     Upon information and belief, Foss Plating's operations and waste disposal practices resulted in one or more hazardous substances, including but not limited to the solvents PCE and 1,1,1-TCA and chromium, being placed onto the ground or into the soil at or near the Foss Plating Source Property.  Soil and soil vapor samples taken at the Foss Plating Source Property have detected: chloroform; hexavalent chromium (and, potentially, other chromium compounds); 1,1-DCE; nickel; PCE; 1,1,1-TCA; and TCE.  Soil contaminated with PCE and hexavalent chromium was concentrated around one of the plating lines and a trench drain on the property, which a consultant of Foss Plating concluded was the likely source of a plume of chromium contamination in the soil under the plant.  Soil samples taken near Foss Plating's wastewater treatment system revealed PCE and high levels of chromium.  During a joint inspection by the California Department of Toxics Substance Control ("DTSC") and the Santa Fe Springs Fire Department, inspectors found the ground around the plating line soaked with plating solution and found evidence of releases of PCE, chromium, and nickel to the soil on the property.  In 2003, a corroded clarifier was removed from the property and contemporaneous soil samples found the soil contaminated with chromium.

75.     Upon information and belief, the hazardous substances present in the soil at the Foss Plating Source Property have migrated and continue to migrate downward into the saturated zone beneath the property and have come to be located in the groundwater, resulting in contamination of the groundwater with: chloroform; hexavalent chromium (and, potentially, other chromium compounds); 1,1-DCE; PCE; and TCE.  In 2006, a consultant for Foss Plating concluded that, based on Foss Plating's historical use of PCE and chromium and the contamination data, Foss Plating could be a source of groundwater contamination on the property.

76. Because hazardous substances were deposited, stored, disposed of, or placed, or otherwise came to be located at the Foss Plating Source Property, the Foss Plating Source Property is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

77. Upon information and belief, contaminants in the soil and in the groundwater from the soil at the Foss Plating Source Property have migrated offsite in the same general direction as the groundwater flow. In 2003, DTSC concluded that hazardous wastes released at the Foss Plating Source Property had migrated, or may migrate, offsite through soil, surface water, groundwater, air, particulate matter, and water run-off channels.

78. In 2010, EPA concluded that hexavalent chromium, PCE, and TCE had been released at the Foss Plating Source Property, and indicated that investigations had concluded that Foss Plating was a contributor to soil and groundwater contamination with chromium, PCE, and zinc. In or around September 2012, Plaintiffs allege on information and belief, EPA sent an SNL to Foss Plating, which, among other things, identifies Foss Plating as a PRP for the OU-2 groundwater contamination, and solicits an offer for Foss Plating to perform the OU-2 remedial design and remedial action and pay EPA's unreimbursed response costs.

iii. Continuing Migration of Contaminants

79. As alleged above, releases of contaminants have occurred at the Foss Plating Source Property and are continuing to occur. The contaminants continue to migrate away from the property, posing a continuing threat to the regional groundwater and the health of area residents.

80. Foss Plating has not taken adequate steps to remediate the onsite and near-site soils, from which contaminants are migrating. Nor has Foss Plating adequately monitored the extent to which contaminants continue to migrate from the Foss Plating Source Property into offsite groundwater. The Foss Plating Source Property does not have a groundwater monitoring system in place that is sufficient

to demonstrate that releases from the property to regional groundwater above health-based levels have been fully controlled.

81. Site soils at the Foss Plating Source Property are highly contaminated. In 1999, PCE was detected up to 48 ppb in very shallow soils at the property. In 2004, concentrations for hexavalent chromium were widespread with the highest reading at 807 ppm at a 10 foot depth. In 2006, hexavalent chromium was found in certain borings up to 1,800 ppm. Soil vapor data in 2006 indicated PCE to depths of 15 feet bgs.

82. The extent of onsite soil contamination at the Foss Plating Source Property has not been fully delineated both vertically and laterally. There remain numerous potential onsite contamination sources including historical degreaser operations, the plating room area, the underground clarifier, and the overall wastewater treatment system.

83. The Foss Plating Source Property has three onsite wells. MW-3 is downgradient of the other two and is located approximately 80 feet within the downgradient property boundary and contains the highest concentrations of PCE at 490 µg/l. Hexavalent chromium has been detected in groundwater at concentrations greater than 900 µg/l.

84. There are no offsite groundwater monitoring wells and the lateral and vertical extent of offsite groundwater contamination from the Foss Plating Source Property has not been assessed.

**2. The Non-Notice Letter Defendants' Source Properties**

*a.* *The Omega Chemical Source Property – 12504 Whittier Boulevard*

85. Releases of hazardous substances have occurred from the Omega Chemical Property, located at 12504 Whittier Boulevard, Whittier, California (the "Omega Chemical Source Property") including releases of hazardous substances

during the time that Omega Chemical Corporation operated there and Defendants Rippy Inc., Larkin Trustee, and Francine Rippy owned or held title to that parcel.

### i. Source Property Ownership and Operation

86. Rippy Inc. acquired the piece of real property located at 12504 Whittier Boulevard in Whittier, California in 1963 and in 1966 transferred title to it to Fred Rippy, the founder of Rippy Inc. Omega Chemical Corporation operated a commercial hazardous waste facility on that parcel from 1976 to 1991.

87. In 1984, Fred Rippy and his wife, Defendant Francine Rippy, acquired title to the piece of real property located at 12512 Whittier Boulevard in Whittier, California (the "12512 Whittier Parcel").

88. In May 1985, Fred Rippy, as settlor and trustee, executed a trust agreement creating the Fred R. Rippy Trust, a revocable living trust (the "Living Trust").

89. In 1986, Fred Rippy transferred title to the Omega Chemical Source Property to the trustee of the Fred R. Rippy Trust and Fred Rippy and his wife, Defendant Francine Rippy, transferred title to the 12512 Whittier Parcel to the trustee of the Fred R. Rippy Trust.

90. Following Fred Rippy's death in October 1986, the Living Trust was divided into two independent and irrevocable sub-trusts, including the Fred R Rippy QTIP Trust, which still exists, and a second sub-trust that no longer exists.

91. Thereafter, in or about 1987, Omega Chemical Corporation acquired the Omega Chemical Source Property and the 12512 Whittier Parcel.

### ii. Disposal & Releases of Hazardous Substances

92. Significant quantities of hazardous substances were stored or were otherwise present in hazardous waste and hazardous substances sent to the Omega Chemical Property for recycling and processing. According to EPA, there have been numerous instances of releases of hazardous substances, including PCE and TCE at the Omega Chemical Source Property. Between 1984 and 1988, Omega

- 23 -

Chemical received numerous Notices of Violation from the Los Angeles County Department of Health Services, but to no avail.  Several years later, assessments conducted by EPA at the Omega Chemical Source Property revealed numerous drums of unprocessed hazardous waste present at the property and drums in various stages of deterioration, many of which were corroded and leaking substances that were migrating to other portions of the Omega Source Property.

93.    Upon information and belief, one or more disposals of hazardous substances occurred at the Omega Chemical Source Property during each of the periods that Rippy Inc., Larkin Trustee, and Francine Rippy owned or held title to the Omega Chemical Source Property, or a portion thereof.

94.    These spills and leaks of various chemicals, as well as other releases of hazardous substances, at the Omega Chemical Source Property have resulted in soil and groundwater contaminated with chlorinated and non-chlorinated solvents, including PCE and TCE.  Because hazardous substances were deposited, stored, disposed of, placed, or otherwise came to be located at the Omega Chemical Source Property, the Omega Chemical Source Property is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

95.    Contaminants from the Omega Chemical Property are reported to have migrated offsite in the same general direction as the groundwater flow.  EPA has concluded that VOCs, such as PCE and TCE, are in soil and groundwater at the Omega Chemical Property and have also migrated into OU-2 and away from the Omega Chemical Property and have commingled with contaminants resulting from releases of hazardous substances at other source areas, including but not limited to Defendants' Source Properties.

96.    Efforts are ongoing to implement the remedial activities required by EPA in the OU-2 Consent Decree.

- 24 -

b.    *The 12471 Washington Property – 12471 Washington Boulevard*

97.    Releases of hazardous substances have occurred from the 12471 Washington Property, located at 12471 Washington Boulevard, Whittier, California (the "12471 Washington Property") including releases of hazardous substances during the time that Rippy Inc. owned and operated at the property.

i.    Source Property Ownership and Operation

98.    Rippy Inc. acquired the 12471Washington Property in 1966 and sold the property in 2018. Rippy Inc. also operated a business that manufactured metal stamps for the electrical motor industry at the 12471 Washington Property from 1966 to at least 2010, and possibly until 2018.

99.    Upon information and belief, Rippy Inc. utilized solvents and a degreaser during its operations, including the use of TCA and PCE and, upon information and belief, generation of TCA and PCE waste. In addition, Rippy Inc. utilized recycled solvents, which, on information and belief, contained chlorinated solvent contaminants.

100.    Waste oil and waste solvents were stored onsite, both inside and outside one or more buildings located at the 12471 Washington Property. Floor drains in the production area of the Rippy Source Property building were connected to a sump until in or about 1996. The sump tied into the sewer servicing the 12471 Washington Property. Upon information and belief, PCE, or wastewater containing PCE, was released from the 12471 Washington Property to the environment via the sewer lines.

101.    Sampling in the area of the degreaser and sump have shown high concentrations of PCE in shallow soil vapor.

102.    Rippy Inc. was cited for its poor practices in the use, handling, storage, and disposal of hazardous substances, and waste containing hazardous substances at the 12471 Washington Property. For example, in November 1990, Rippy Inc. was

- 25 -

issued a Notice of Violation and Order to Comply by the County of Los Angeles Department of Health Services for improper disposal, management, transportation, storage and characterization of hazardous waste and contaminated materials.

103.   Upon information and belief, hazardous substances have leaked, spilled, were disposed of and/or were discharged to the ground at the 12471 Washington Property as a result of Rippy Inc.'s waste handling practices and those hazardous substances have contaminated the surface and subsurface soils at that property. Because hazardous substances were deposited, stored, disposed of, placed, or otherwise came to be located at the 12471 Washington Property, the 12471 Washington Property consists of one or more "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

104.   Upon information and belief, the releases and disposals of hazardous substances at the 12471 Washington Property, as a result of Rippy Inc.'s operations, have migrated downward, through the soils and into the OU-2 regional groundwater and away from the 12471 Washington Property.

**FIRST CLAIM FOR RELIEF**

**Contribution Under CERCLA**

105.   Plaintiffs incorporate and re-allege Paragraphs 1 through 104 above, as though fully set forth herein.

106.   Each Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

107.   Upon information and belief, each Defendant is a covered person within the meaning of one or more of Section 107(a)(1), (2), (3), or (4), 42 U.S.C. § 9607(a)(1)-(4).

108.   Upon information and belief, each Defendant Source Property is one or more "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

109. Upon information and belief, releases and/or threatened releases of hazardous substances into the environment have occurred, and in most cases are still occurring, at each Source Property within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9602(22).

110. Plaintiffs have entered into the OU-2 Consent Decree with the United States and the California Department of Toxic Substances Control memorializing a settlement under which Plaintiffs have resolved certain of their liability for the OU-2 regional groundwater contamination.

111. Plaintiffs are named as defendants in a companion complaint to the OU-2 Consent Decree, filed by the United States in *Abex*, asserting claims under CERCLA Sections 106 and 107 related to the releases and threatened releases of hazardous substances from the Omega Chemical property that have come to be located at OU-2.

112. The costs for which Plaintiffs are liable under the OU-2 Consent Decree constitute necessary costs of response incurred in a manner consistent with the NCP under 42 U.S.C. § 9607(a)(4)(B) to remediate hazardous substances. These costs, which include but are not limited to millions of dollars that Plaintiffs have already expended to address the contamination contributed to OU-2 by Defendants, represent more than Plaintiffs' allocable share of costs related to their releases or disposal of hazardous substances at the Site.

113. Plaintiffs are entitled to contribution from all Defendants under Section 113(f) of CERCLA, 42 U.S.C. §§ 9613(f), for those Defendants' respective equitable shares of all costs and damages incurred by Plaintiffs that exceed Plaintiffs' equitable share of the costs for which Plaintiffs are liable under the OU-2 Consent Decree.

114. Plaintiffs are entitled to attorneys' fees and to interest on the amount recovered on this claim pursuant to 42 U.S.C. § 9607(a)(2).

115. Notice of this action is being provided to the Administrator of the Environmental Protection Agency and the United States Attorney General, pursuant to 42 U.S.C. § 9613(l).

## SECOND CLAIM FOR RELIEF

## Abatement of Imminent and Substantial Endangerment Under RCRA – Against Foss Plating Company, Inc.

116. Plaintiffs repeat and re-allege Paragraphs 1 through 116 above, as though fully set forth herein.

117. Plaintiffs bring this claim for abatement of imminent and substantial endangerment to health or the environment pursuant to Section 7002 of RCRA, 42 U.S.C. § 6972.

118. Each of the RCRA Defendants is a person within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

119. Each of the RCRA Defendants is a past or present generator, past or present transporter, or past or present owner or operator of a solid waste treatment, storage, or disposal facility.

120. Each of the RCRA Defendants has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of a solid or hazardous waste, within the meaning of Sections 1004(3), 1004(5) and 1004(27) of RCRA, 42 U.S.C. §§ 6903(3), (5), (27).

121. The RCRA Defendants have failed to implement adequate Source Control at the source properties with which they are associated, including but not limited to: cessation of improper waste handling, storage, and treatment procedures; remediation of soil and groundwater at the source property; monitoring of the spread of groundwater contamination away from the source property through the installation and operation of an adequate network of site boundary and offsite monitoring wells; reporting of monitoring well data; and implementation of

groundwater containment systems to prevent additional contaminated groundwater above health-based levels from leaving the source property.

122. As a result of the RCRA Defendants' failure to implement adequate Source Control, groundwater contamination above health-based levels originating at the source properties with which they are associated has migrated and continues to migrate away from the Site, expanding the scope of the contamination. Additionally, the RCRA Defendants' failure to implement adequate monitoring at and downgradient from the source properties has impeded assessment of the scope of the migration of contaminants downgradient from the source properties.

123. The presence of the contaminants in the soil, saturated subsurface zone, and in the groundwater, the migration of those contaminants away from the source properties, and the RCRA Defendants' failure to implement adequate Source Control presents or may present an imminent and substantial endangerment to human health or the environment.

124. Each of the contaminants handled, stored, treated, transported, or disposed of by the RCRA Defendants (either directly or by contributing to the handling, storage, treatment, transportation, or disposal) is a solid waste because, among other reasons, each of those contaminants is discarded material resulting from industrial or commercial operations.

125. Each of the contaminants handled, stored, treated, transported, or disposed of by the RCRA Defendants (either directly or by contributing to the handling, storage, treatment, transportation, or disposal), when discarded, is a "solid waste", and potentially a "hazardous waste", as those terms are defined under RCRA because, among other reasons, each of those contaminants may pose a present or potential hazard to human health or the environment when improperly managed because of its quantity, concentration, or physical or chemical characteristics.

- 29 -

126. Plaintiffs provided notice of the actual and threatened endangerment, injury and damage alleged herein by mailing Notices of Endangerment and Intent to Sue Pursuant to Resource Conservation and Recovery Act § 7002(a)(1)(B) ("RCRA Notices") to EPA's Administrator and Regional Administrator, the Director of California's Department of Toxic Substances Control, and all RCRA Defendants.

127. Each of the RCRA Defendants received a RCRA Notice on or before December 9, 2014.

128. Plaintiffs waited at least ninety days after the RCRA Defendants' receipt of the RCRA Notices before bringing this cause of action against each of them.

129. Pursuant to Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), by this action, Plaintiffs are entitled to an injunction ordering the RCRA Defendants to abate the imminent and substantial endangerment to health and the environment by determining the extent of offsite groundwater contamination resulting from handling of solid or hazardous waste and implementing soil and groundwater source control sufficient to prevent continued migration of hazardous constituents to groundwater above health-based levels.

130. Plaintiffs are also entitled to the costs of litigation, including private attorney general fees pursuant to California Code of Civil Procedure § 1021.5 and attorney fees, expert witness fees, and other costs pursuant to Section 7002(e) of RCRA, 42 U.S.C. § 6972(e).

131. Notice of this action is being provided to the EPA Administrator and the United States Attorney General, pursuant to Section 7002(b)(2)(F) of RCRA, 42 U.S.C. § 6972(b)(2)(F).

### THIRD CLAIM FOR RELIEF

**Declaratory Judgment Under Federal Law – Against All Defendants**

132. Plaintiffs repeat and re-allege Paragraphs 1 through 132 above, as though fully set forth herein.

- 30 -

133.   An actual and substantial controversy has arisen between Plaintiffs and Defendants regarding their respective rights and obligations for the Response Costs that have been incurred and the Response Costs that will be incurred to respond to the releases of contaminants from the Source Property facilities.

134.   Pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. § 2201, and CERCLA § 113(g)(2), Plaintiffs are entitled to a declaratory judgment holding Defendants liable under Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), for contribution for those Defendants' respective equitable shares of all costs and damages incurred by Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in its favor and against Defendants, to the extent authorized by law, as follows:

(1)   ON THE FIRST CLAIM FOR RELIEF, for contribution for all costs and damages incurred by Plaintiffs, including pre-judgment interest thereon as allowed by law, that exceed Plaintiffs' equitable share of the costs for which Plaintiffs are liable under the OU-2 Consent Decree;

(2)   ON THE SECOND CLAIM FOR RELIEF, for an injunction ordering the RCRA Defendant to abate the imminent and substantial endangerment to health and the environment; and

(3)   ON THE THIRD CLAIM FOR RELIEF, for a judicial declaration that Defendants are liable for their respective equitable shares of all costs and damages incurred by Plaintiffs, including pre-judgment interest thereon as allowed by law, that exceed Plaintiffs' equitable share of the costs for which Plaintiffs are liable under the OU-2 Consent Decree;

(4)   ON THE FIRST AND SECOND CLAIMS FOR RELIEF, for attorneys' fees;

(5)   AS TO ALL CLAIMS FOR RELIEF, for all costs and expenses incurred in this action, to the extent provided for by law;

- 31 -

(6)    AS TO ALL CLAIMS FOR RELIEF, for such other and further relief as the Court may deem just and proper.

DATED: November 21, 2025                LATHROP GPM LLP


                                        By:  /s/ Ronald A. Valenzuela
                                        _____

                                        Ronald A. Valenzuela
                                        Attorneys for Plaintiffs

- 32 -